## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **Edward Butowsky, in his personal and professional capacities,** | |
| Plaintiff, | |
| **v.** | |
| **Michael Gottlieb, Meryl Governski, Boies Schiller Flexner LLP, Brad Bauman, The Pastorum Group, Leonard A. Gail, Eli J. Kay-Oliphant, Suyash Agrawal, Massey & Gail LLP, Arun Subramanian, Elisha Barron, Gloria Park, Turner Broadcasting System, Inc., Anderson Cooper, Gary Tuchman, Oliver Darcy, Tom Kludt, The New York Times Company, Alan Feuer, Vox Media, Inc., Jane Coaston, and The Democratic National Committee,** | **Case No. 4:19-cv-180** |
| Defendants | |

## ORIGINAL COMPLAINT

NOW COMES Edward Butowsky, the Plaintiff herein, alleging and stating as follows:

## Introduction

1.  Late in the summer of 2017, the lives of Edward Butowsky, his family, and his co-workers were upended by false allegations that he conspired with White House officials to divert attention away from earlier (and equally false) allegations that President

Donald Trump "colluded" with the Russian government to "steal" the 2016 Presidential election from Hillary Clinton. On August 1, 2017, New York attorney Douglas Wigdor and his partners filed a bogus lawsuit alleging that Mr. Butowsky, Fox News reporter Malia Zimmerman, and Fox News itself had fabricated a false story that a former Democratic National Committee ("DNC") employee – not the Russian government – was responsible for stealing DNC emails and giving them to Wikileaks.

2.  The bogus lawsuit portrayed Mr. Butowsky as a ruthless political operative of President Trump when, in reality, he never had (and never has) met President Trump nor spoken with him. In fact, Mr. Butowsky supported three candidates other than Mr. Trump in the primary, and in 2007 he donated $2,700 to the campaign of President Barack Obama.

3.  Mr. Wigdor, et al. nonetheless made the false allegations because they knew that most American journalists were (and are) consumed with hatred of President Trump, and they knew that most American media would publish or broadcast nearly anything – with little concern for accuracy – so long as it portrayed President Trump (or anyone tangentially connected to him) in a negative light. As detailed below, Mr. Wigdor, et al. planned to use the false allegations and the resulting negative publicity to extort money from Fox News.

4.  Mr. Butosky is by no means the only victim of the anti-Trump confirmation bias in American media. On February 20, 2019, for example, the parents of 16-year-old Nick Sandmann sued *The Washington Post* for $250 million in damages because the newspaper smeared him with false accusations of taunting an elderly Native American

veteran following a pro-life rally. The high-school student had made one unforgivable mistake: he wore a "Make America Great Again" (or "MAGA") hat that is affiliated with President Trump's political campaign. Based on that alone, the *Post* and other media comfortably assumed that he was a prejudiced white elitist. Within a day of the incident, however, video emerged that proved Sandmann had not taunted or harassed anyone, and on March 1, 2019 the *Post* belatedly admitted that its previous coverage of Sandmann was inaccurate. Similarly, left-wing media breathlessly trumpeted allegations from actor Jussie Smollett that he had been assaulted on January 29, 2019 by men wearing MAGA hats and uttering anti-gay and racial slurs. Because of their confirmation bias, most journalists ignored immediate and obvious evidence that Smollett was lying, *i.e.*, they were so eager to believe that Trump supporters would assault a gay black man that they forgot to ask why it would have happened at 2 a.m. during a blizzard in overwhelmingly Democratic Chicago. Smollet's story soon unraveled and on March 8, 2019 was indicted on 16 felony counts for lying to police and fabricating a hoax.

5. In Mr. Butowsky's case, the disinformation campaign has taken much longer to unravel. Unscrupulous left-wing journalists and attorneys have perpetuated a myth about a myth, *i.e.*, that Mr. Butowsky pushed a fictitious story about the stolen emails in order to divert attention from the fictitious story about "collusion" with the Russian government. In reality, the "Russia collusion" conspiracy theory is the only myth, and Mr. Butowsky's statements about the stolen emails were accurate.

6. As a result of the lies fabricated and perpetuated by the Defendants, Mr. Butowsky and his family received death threats, he lost one third of his business clients,

rocks were thrown through the windows of his home, his automobiles were burglarized, his computers were hacked, he lost friendships, and he lost the opportunity to host a planned television program. Left-wing extremists even posted a clock on the internet counting down the time until Mr. Wigdor's son would return for classes at Vanderbilt University,  implying that Mr. Butowsky's son would be harmed when he returned. As a result, Mr. Butowsky had to hire a bodyguard for his son.

7. The Defendants' smear campaign never should have begun, and it has lasted for far too long. Now it's time for the Defendants to answer for the lies that they spread and the harm that they caused.

## Jurisdiction and Venue

8.  This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiff resides in Texas, whereas all Defendants reside in other states.

9.  Venue is proper in this district and the Court has personal jurisdiction over all Defendants because (1) they defamed him in national media, or (2) they conspired with other Defendants to defame him in national media.  The injuries from such defamation occurred in this district.

## Parties

10. Plaintiff Edward Butowksy is a financial advisor who resides in Plano, Texas. He brings claims in his personal and professional capacities.

11.  Defendant Michael Gottlieb is an attorney who resides in or near Washington, D.C. He was a partner at all times relevant in the Defendant law firm Boies Schiller Flexner LLP.

12.  Defendant Meryl Governski is an attorney who resides in or near Washington, D.C. She is an associate in the Defendant law firm Boies Schiller Flexner LLP.

13.  Defendant Boies Schiller Flexner LLP is a law firm and professional partnership organized under the laws of New York and headquartered in New York, New York.  Hereinafter, it and Defendants Gottlieb and Schiller are collectively the "Boies Schiller Defendants."

14.  Defendant Brad Bauman is a political communications consultant who lives in Washington, D.C.  He is a partner in Defendant The Pastorum Group.

15.  Defendant The Pastorum Group is a political consulting firm in Washington, D.C.

16.  Defendant Leonard A. Gail is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

17.  Defendant Eli J. Kay-Oliphant is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

18.  Defendant Suyash Agrawal is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

19.  Defendant Massey & Gail LLP is a law firm and professional partnership organized under the laws of Illinois and headquartered in Chicago, Illinois. Hereinafter, it and Defendants Gail, Kay-Oliphant, and Agrawal are collectively the "Massey & Gail Defendants."

20.  Defendant Arun Subramanian is an attorney who resides in New York, New York. He is a partner in the law firm Susman Godfrey LLP.

21.   Defendant Elisha Barron is an attorney who resides in New York, New York. She is an associate in the law firm Susman Godfrey LLP.

22.  Defendant Gloria Park is an attorney who resides in New York, New York. She was at all times relevant an associate in the law firm Susman Godfrey LLP. Hereinafter, Defendants Subramanian, Barron, and Park are collectively the "Susman Godfrey Defendants."

23.   Defendant Turner Broadcasting System, Inc. (hereinafter "Defendant CNN") is a Georgia corporation headquartered in Atlanta, Georgia. CNN is a left-wing media brand that is wholly-owned by Turner Broadcasting System, Inc.

24.   Anderson Cooper is a left-wing media personality who hosts *Anderson Cooper 360*, a program broadcast by CNN. He lives and works in New York, New York.

25.   Defendant Gary Tuchman is a reporter for CNN. He lives and works in Atlanta, Georgia.

26.   Defendant Oliver Darcy is a senior media reporter for CNN. He lives and works in New York, New York.

27.   Defendant Tom Kludt is a media reporter for CNN. He lives and works in New York, New York.

28.   Defendant The New York Times Company ("Defendant NYT") is a New York media corporation in New York, New York. It owns and publishes the *The New York Times*.

29.   Defendant Alan Feuer is a court reporter for *The New York Times* and a resident of New York.

30.   Defendant Vox Media, Inc. is a media company headquartered in New York, New York. It publishes *Vox* online.

31.   Defendant Jane Coaston is a left-wing political activist who masquerades as the "senior political reporter" for *Vox*. She is a resident of Washington, D.C.

32.   Defendant The Democratic National Committee ("Defendant DNC") is a political organization headquartered in Washington, D.C.

## Facts

### Background

33.   As indicated above, this case is the consequence of a conspiracy theory, namely that President Trump "colluded" with the Russian government to swing the 2016 Presidential election in his favor. That conspiracy theory (hereinafter be identified as the "Russia Collusion Hoax" or "RCH") has been crumbling of late, as U.S. Senate Intelligence Committee Chairman Richard Burr admitted in early February that there is no evidence to support it.  That has not deterred unscrupulous political activists like the Defendants herein, however, because they are emotionally invested in the RCH. Most of them have spent more than two years demonizing and defaming anyone who dares to question the RCH.

34.   A key date in the Russia Collusion Hoax is July 22, 2016, when Wikileaks began publishing thousands of email that had been stolen or leaked from the Democratic National Committee ("DNC"). Those emails showed how the campaign of Democratic Presidential nominee Hillary Clinton had corruptly taken control of the DNC for the purpose of sabotaging her primary opponent, Bernie Sanders. The email release proved

damaging to Mrs. Clinton's presidential campaign and, in an effort to shift blame, Mrs. Clinton, the DNC, and the administration of President Barack Obama soon alleged that Russian hackers had stolen the emails to help the Trump campaign.

35.  According to Wikileaks founder Julian Assange, however, the emails were not procured from Russian hackers. Mr. Assange plainly inferred that the emails came from Seth Rich, a DNC employee who had been murdered on July 10, 2016 in what Washington, D.C. police described as a "botched robbery." Wikileaks offered $20,000 for information leading to the capture of Mr. Rich's killers.  This deeply offended anti-Trump activists like the Defendants herein, because it undermined the Russia Collusion Hoax.

36.  Mr. Butowsky  stumbled into the RCH crosshairs after he was contacted by a third party who had recently met with Mr. Assange in London.  According to that third party, Mr. Assange said Seth and his brother, Aaron, were responsible for releasing the DNC emails to Wikileaks.  At the instigation of that third party, Mr. Butowsky contacted Joel and Mary Rich, the parents of Seth, and relayed the information. During that conversation, Mr. Rich told Mr. Butowsky that he already knew that his sons were involved in the DNC email leak. Mr. Rich said he did not have enough money to hire a private investigator, so Mr. Butowsky offered to pay for one.  Mr. Rich accepted the offer and thanked Mr. Butowsky in an email.

37.  Mr. Butowsky referred the Riches to Rod Wheeler, a Fox News contributor and former homicide detective with the Metropolitan Police Department in Washington, D.C. Mr. Butowsky only knew Mr. Wheeler through his occasional guest appearances on

Fox News.  Aaron Rich's wife, Molly Rich, drafted a retainer contract for Mr. Wheeler, and he began working directly for the Rich family. Mr. Butowsky agreed to pay from Mr. Wheeler's services, but he had no control over Mr. Wheeler's work for the Rich family.

38.    On May 16, 2017, FoxNews.com published a story by Malia Zimmerman which claimed that Seth Rich had been involved in the DNC email leak. The article undermined the official narrative of the Metropolitan Police Department that Seth Rich had been murdered in a "botched robbery," and it likewise undermined the Russia Collusion Hoax. The story featured quotes from Mr. Wheeler regarding his investigation, as well as quotes from an unnamed federal official who claimed that federal investigators had copies of Seth Rich's communications with Wikileaks. Shortly thereafter, the Rich family terminated Mr. Wheeler, and Mr. Wheeler was subjected to withering scorn and criticism from anti-Trump media.

39.    On May 18, 2017, Mr. Wheeler told Mr. Butowsky that he needed an attorney to pursue claims against Marina Marraco, a reporter for the local Fox affiliate in Washington, D.C. According to Mr. Wheeler, Ms. Marraco duped him into granting an interview about the Seth Rich investigation so she could "scoop" Ms. Zimmerman and publish her story one day before the Fox News network published Ms Zimmerman's story. Ms. Marraco also edited Mr. Wheeler's videotaped statements to misrepresent what Mr. Wheeler actually said to her. At Mr. Wheeler's request, Mr. Butowsky introduced Mr. Wheeler to some well-known attorneys in Dallas.  Mr. Butowsky participated in the telephone conversation between Mr. Wheeler and the Dallas attorneys, and Mr. Wheeler never once indicated that he had been misquoted or mistreated by Mr. Butowsky, Ms.

Zimmerman, or Fox News (as opposed to the local affiliate in D.C.). On the contrary, Mr.

Wheeler sent a written statement to Ms. Zimmerman at 1 p.m. on May 19, 2017 wherein

he claimed that he had shared the contents of Ms. Zimmerman's story with Joel Rich and

Aaron Rich *the night before it was published*:

> In the contract I have with the family, signed by Joel, Mary and Aaron Rich, I am not allowed to speak to the media on the family's behalf, but I could speak to the media about this investigation of Seth Rich's murder or other stories I was involved in. They knew I was a Fox News contributor and regularly went on television.
>
> I called Joel Rich the night before the Fox News story was going to be published, which was Monday night. During that 18-minute call (phone logs provided), I reviewed the story with Joel Rich, he liked it and was encouraged by the new leads. Joel already knew about the story because Fox had contacted him earlier in the day. He also suggested I contact an investigative reporter, Michelle Sigona, from CrimeWatch Daily with the information. I also spoke with Aaron Rich, Joel's son, for 21 minutes the night before the story came out and told him about the new information that had emerged and the story would likely be coming out in the near future.
>
> I told them both I would be commenting on the case and asking people to come forward if they had insight on the new information. I never violated the terms of our contract as I *never* spoke on behalf of the family.

According to Mr. Wheeler, the Riches did not object to the Fox News story when he

discussed it with them *in advance of its publication*.

40.  On May 23, 2017, Fox News retracted the May 16, 2017 article, claiming that

the article did not meet its editorial standards. Fox News did not identify any errors in the

article.

41.  About a week after speaking with the attorneys in Dallas, Mr. Wheeler told

Mr. Butowsky that he had decided to use another attorney, and that he would receive $4

million for using the other attorney. Mr. Butowsky soon learned that the other attorney

was Douglas Wigdor, an employment attorney in New York who had filed numerous discrimination lawsuits against Fox News.   According to Mr. Wigdor's own public statements, he was hoping to recover $60 million in damages from the ongoing lawsuits against Fox News.  Unbeknownst to Mr. Butowsky at the time, Mr. Wigdor had enlisted Mr. Wheeler in an extortion scheme. As of 2017, Fox News's parent company, 21st Century Fox, Inc., was trying to gain approval from British regulators to purchase Sky Television, and Mr. Wigdor saw Mr. Wheeler's case as an opportunity to extort money from Fox. Rather than pursue claims against the local affiliate in D.C. that had duped Mr. Wheeler and deceptively edited his statements, Mr. Wigdor convinced Mr. Wheeler to fabricate an entirely new story, *i.e.*, that Mr. Butowsky and Ms. Zimmerman had been conspiring with President Trump to divert attention from the Russia collusion narrative. Mr. Wigdor planned to use those explosive allegations to sabotage Fox's attempts to buy Sky, specifically by convincing British regulators that Fox News was entirely unethical and had acted corruptly at the behest of President Trump. In fact, Mr. Wigdor mentioned Fox's attempt to buy Sky News in the lawsuit that he subsequently filed on behalf of Mr. Wigdor, and he later testified before a British parliamentary committee in opposition to the Sky Television purchase.

42.   In his bogus lawsuit, Mr. Wheeler selectively quoted texts and emails from Mr. Butowsky to make it appear that Mr. Butowsky had pushed the May 16, 2017 Fox News story at the behest of President Trump. In reality, Mr. Butowsky never had (and never has) met President Trump nor spoken with him. Although Mr. Butowsky knew people who worked in the Trump White House, he had actively supported Carly Fiorina

in the Republican primary. After she dropped out of the race, he supported Marco Rubio and Chris Christie. Nonetheless, because Mr. Butowsky knew people who worked in the White House, Mr. Wheeler repeatedly begged Mr. Butowsky for help in getting a job there, and Mr. Butowsky has numerous texts and emails to prove that. (When he recommended Mr. Wheeler to the Rich family, Mr. Butowsky did not know that Mr. Wheeler was habitually broke, nor did he know that Mr. Wheeler was fired from the Metropolitan Police Department for marijuana use). As a result of Mr. Wheeler's repeated requests for help in getting a White House job, Mr. Butowsky jokingly told Mr. Wheeler that the White House was anxiously awaiting the results of his Seth Rich investigation. Mr. Wheeler knew full well that Mr. Butowsky was joking, and Mr. Wheeler knew full well that Mr. Butowsky had no personal connection to the President.

43.   When Mr. Wigdor filed suit against Mr. Butowsky, Ms. Zimmerman, and Fox News, he knew that Mr. Wheeler had _not_ been misquoted in the Fox News story, and that's because Mr. Butowsky and his attorneys had provided Mr. Wigdor with texts, emails, and audio evidence proving that Mr. Wheeler had _not_ been misquoted. Mr. Wigdor also knew that the Trump Administration played no role in the May 16, 2017 Fox News story. Mr. Wigdor filed the fraudulent lawsuit anyway.

44.   On May 15, 2018, after Mr. Wigdor got what he needed from Mr. Wheeler in terms of political and public relations impact, Mr. Wigdor and his firm sought to drop Mr. Wheeler as a client. Judge Daniels allowed Mr. Wigdor and his partners to withdraw on May 30, 2018, and Mr. Wheeler's frivolous lawsuit was dismissed on August 2, 2018. The unscrupulous Mr. Wigdor then settled all of his remaining clients' claims against Fox

News for a $10 million lump sum (rather than the $60 million that he had originally sought), and Mr. Wigdor apportioned the $10 million among those clients.

45.  On March 13, 2018, Joel and Mary Rich sued Mr. Butowsky on the grounds of intentional infliction of emotional distress, alleging that Mr. Butowsky knowingly caused them harm by misrepresenting the circumstances of their son's death. The frivolous lawsuit was dismissed on August 2, 2018, the same day that Mr. Wheeler's frivolous lawsuit was dismissed.

**Defendants Bauman and The Democratic National Committee**

46.  In early March of 2017, Joel Rich informed Mr. Butowsky that he had received a call from Defendant Bauman, and that Defendant Bauman said he had been "assigned" to the Rich family Defendant DNC. Defendant Bauman is an unscrupulous left-wing political operative, and Defendant DNC assigned him to the Rich family in order to keep the Russia Collusion Hoax alive.  Defendant Bauman and Defendant DNC knew that Seth Rich leaked emails to Wikileaks, but Defendant Bauman's assignment was to divert attention away from Seth Rich and toward Russian hackers. At all times relevant to this lawsuit, Mr. Bauman acted as an agent of Defendant DNC. When Mr. Wigdor filed suit in New York on behalf of Mr. Wheeler, Defendant Bauman seized on the opportunity to smear and defame anyone involved suggesting that Seth Rich was involved in leaking DNC emails.

47.  As part of his strategy for keeping the RCH alive, Defendant Bauman recruited the Masey & Gail Defendants and the Susman Godfrey Defendants to file the frivolous March 13, 2018 lawsuit on behalf of Joel and Mary Rich. Premised on the

bogus Wheeler lawsuit, the Riches' lawsuit fabricated a wild tale about Mr. Butowsky, Ms. Zimmerman, and Fox News conspiring to harm them by manufacturing a conspiracy theory about the murder of Seth Rich.   Shortly thereafter, Defendant Bauman recruited the Boies Schiller Defendants to file a baseless lawsuit against Mr. Butowsky (and others) on behalf of Aaron Rich. Around the same time, Defendant Bauman filed his own frivolous lawsuit against Mr. Butowsky (and others), alleging that Mr. Butowsky had somehow defamed him by stating that Defendant Bauman had been "assigned" by Defendant DNC.   Mr. Bauman's strategy was to intimidate and discredit anyone who questioned whether the Russians were responsible for giving DNC emails to Wikileaks.

48.   As detailed below, Mr. Bauman's strategy worked, because American journalists launched a full frontal assault on Mr. Butowsky, falsely portraying him as a con man who fabricated a false story about Seth Rich.   Defendants such as CNN, *Vox*, and *The New York Times* alleged that there was "no evidence" to support the "conspiracy theory" that Seth Rich leaked emails from the DNC.   In reality, there was plenty of evidence.

49.   In an unprecedented act on August 9, 2016 on Dutch television station NOS, for example, Wikileaks founder Julian Assange spoke specifically about Seth Rich: "*Whistleblowers go to significant efforts to get us material, often very significant risks. There's a 27-year-old that works for the DNC who was shot in the back, murdered, just two weeks ago, for unknown reasons as he was walking down the street in Washington… I am suggesting that our sources, ah, take risks and they, they become concerned to see things occurring like that…*" Mr. Assanged had not before, and has not since, discussed

the identify of any confidential source for Wikileaks. Wikileaks also offered a $20,000 reward for information leading to the conviction of Seth Rich's killers, yet the anti-Trump media treated this information as if it was part of a hoax.  That's a far cry from the way journalists had treated Mr. Assange and Wikileaks in preceding years, *e.g.*, when Wikileaks published documents about the Iraq War that proved harmful to the Bush Administration. Mr. Assange became a pariah as soon as anti-Trump journalists concluded that Wikileaks had done something harmful to Hillary Clinton and helpful to Donald Trump.

50.  Bill Binney, a former top official at the National Security Agency ("NSA"), was applauded by American media when he exposed widespread electronic surveillance of American citizens nearly 20 years ago.  Like Mr. Assange and Wikileaks, however, he became a pariah to American journalists when he questioned the Russia Collusion Hoax. Mr. Binney presented overwhelming scientific evidence that the DNC emails published by Wikileaks were obtained from an internal leak versus an external hack.  He will testify that it was scientifically and technologically impossible for the Russians (or anyone else) to have downloaded the DNC emails remotely via hack. Instead, both the metadata and download time for the stolen emails indicate that they were downloaded onto a thumb drive or something similar.

51.  Larry Johnson is a retired officer of the Central Intelligence Agency. He and Mr. Binney both observed in a February 14, 2019 article that while some U.S. intelligence agencies reported "high" confidence that Russians hacked the DNC, the NSA reported only "moderate" confidence. *See* "Why the DNC was not hacked by the

Russians," https://www.thegatewaypundit.com/2019/02/exclusive-cyber-security-experts-release-damning-report-why-the-dnc-was-not-hacked-by-the-russians/. As explained in the article (incorporated herein by reference), the NSA's monitoring systems would have collected an electronic record of any internet-based hack on the DNC, which in turn would have prompted a "high" confidence conclusion by the NSA that Russians were responsible for obtaining the emails. The absence of a "high" confidence conclusion means there is no electronic record of a Russian hack on the DNC. Meanwhile, agencies that expressed "high" confidence, like the FBI and CIA, have been implicated in promoting the Russia Collusion Hoax, *e.g.*, via the fraudulent dossier of Christopher Steele.

52.  Even after Mr. Wheeler filed suit against Mr. Butowsky, he alleged that Ms. Brazille had improperly interfered in the Seth Rich investigation. In an August 2, 2017 interview on MSNBC, Mr. Wheeler alleged that interim DNC chairwoman Donna Brazile had called Joel and Mary Rich and asked why Mr. Wheeler was investigating the murder.  If Seth Rich died as the result of a "botched robbery," Ms. Brazile should not have cared one way or another whether the Rich family hired a private detective.

53.  In recorded interviews and written reports, Mr. Wheeler stated that Aaron Rich repeatedly told him not to investigate anything pertaining to Seth Rich's email communications or his work at the DNC, and that Aaron Rich denied him access to Seth Rich's computer and electronic devices. Mr. Wheeler further said Aaron Rich claimed that he had already investigated the emails on his own, and Mr. Wheeler later acknowledged that it was highly suspicious for Aaron Rich to prohibit any review of Seth

Rich's email communications and to prohibit interviews of Seth Rich's former co-workers.

54.     Aaron Rich's suspicious behavior continued after Mr. Wheeler was terminated. Mr. Rich claimed that he was only seeking the truth when he filed suit against Mr. Butowsky, but he refused to sign a waiver authorizing Wikileaks to reveal what it knows about Seth Rich's involvement in the DNC email leaks. His attorneys subsequently claimed that they would issue their own subpoena for Wikileaks. They have since reneged, however, because they realized that Wikileaks would likely construe the subpoena as a waiver, in which case it would likely release records showing that Aaron Rich and Seth Rich were both responsible for leaking the DNC emails.

55.     There are other reasons to question the official version of events about the Seth Rich murder. After the May 16, 2017 FoxNews.com article was retracted, the Metropolitan Police Department ("MPD") claimed that the FBI had never been involved in the Seth Rich investigation, and the anti-Trump media trumpeted this claim as proof that the Fox article was a fraud.  In Aaron Rich's lawsuit against Mr. Butowsky, however, he stated that he had been cooperating with "state and federal law enforcement officials" to solve his brother's murder.  Similarly, the FBI originally claimed that it had no responsive documents about Seth Rich when records were requested in 2018.  After the FBI was sued pursuant to the Freedom of Information Act ("FOIA"), counsel asked the FBI to search for records in its Washington Field Office and with its Computer Analysis Response Team ("CART"). The FBI responded that it had offered assistance to the MPD during the murder investigation and that MPD had declined the offer, but the FBI

supposedly had no records of those communications. On the other hand, the FBI flatly refused to search for responsive records in CART, even though CART is the most likely place to find any pertinent email evidence. The FOIA lawsuit remains pending.

**Massey & Gail  Defendants / Susman Godfrey Defendants**

56.   On March 13, 2018, Defendants Leonard Gail, Eli J. Kay-Oliphant, Suyash Agrawal, Arun Subramanian, Elisha Barron, Gloria Park and their respective law firms filed *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No. 1:18-cv-02223, in the U.S. District Court for the Southern District of New York.  The suit alleged that Mr. Butowsky, Ms. Zimmerman, and Fox News knowingly spread a fake narrative about the death of Seth Rich, and that they did so for the purpose of causing harm to Joel and Mary Rich. The Massey & Gail Defendants and Susman Godfrey Defendants knew that these allegations were false and frivolous when they filed the lawsuit. First, Joel Rich had already admitted that his sons were responsible for leaking emails from the DNC, and the Massey & Gail Defendants and Susman Godfrey Defendants were aware of this fact. Second, the same Defendants knew that there was (and is) no evidence that Mr. Butowsky intended to harm the Rich family.  Third, the same Defendants attempted to file a defamation claim on behalf of a dead person (*i.e.*, Seth Rich) by recharacterizing it as a claim for intentional infliction of emotional stress. Any competent attorney would have known that such a claim was frivolous.

57.   On the same day that lawsuit was filed, Defendant Bauman issued a press release on behalf of himself, the Massey & Gail Defendants, and the Susman Godfrey Defendants that contained the following statement: "With disregard for the truth and for

the obvious harm that their actions would cause the Riches, Fox, Zimmerman and Butowsky propagated and developed a fictitious story that their deceased son, Seth – not Russian hackers or anyone else – provided Democratic National Committee emails to WikiLeaks."  That sentence is false and defamatory and it is not attributed to the lawsuit, therefore it is not privileged. Mr. Butowsky did not disregard the truth nor any "obvious harm," nor did he propagate or develop a fictitious story.

58.  In a March 15, 2018 interview with Andrea Mitchell on MSNBC, Defendant Gail alleged that Mr. Butowsky and the other defendants "propagated a story that was false" and acted with "utter disregard for the fact that the Riches were mourning the life of their son." He further said the defendants "had their own agenda and they moved forward with something that was baseless." These allegations were false and defamatory.

59.  On information and belief, Mr. Butowsky alleges that Defendant Bauman organized and coordinated the frivolous lawsuit, the press release, and the MSNBC interview along with all the other Massey & Gail Defendants and Susman Godfrey Defendants.

60.  On August 2, 2018, U.S. District Judge George B. Daniels dismissed  *Rich v. Fox News Network, LLC* for failure to state a claim in an order that can be found at 322 F.Supp.3d 487.  That order is incorporated by reference.  The Massey & Gail Defendants and the Susman Godfrey Defendants filed and prosecuted the case maliciously and in bad faith.

**The Boies Schiller Defendants**

61.  On March 26, 2018, the Boies Schiller Defendants filed *Aaron Rich v.*

*Edward Butowsky, et al.*, Case No. 1:18-cv-00681, on behalf of Aaron Rich in the U.S. District Court for the District of Columbia. According to the lawsuit, Mr. Butowsky and others defamed Aaron Rich by alleging that he helped his brother leak DNC emails to Wikileaks. At the time the lawsuit was filed, the Boies Schiller Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, ergo they knew that they were filing suit without probable cause.

62.   In a March 27, 2018 interview with Anderson Cooper on CNN regarding the lawsuit, Mr. Gottlieb made false and defamatory allegations that:

(a)   Mr. Butosky had said Aaron Rich "warned Seth Rich's girlfriend to break up with him." In reality, Mr. Butowsky never said such a thing.

(b)   Mr. Butosky "made up a meeting that purportedly occurred at the DNC" where Aaron Rich puroportedly threw a chair. In reality, Mr. Butowksy never said such a thing.

(c)   Mr. Butowsky's statements about Aaron Rich and Seth Rich were fabricated , *i.e.*, "all of this, all of it, is made up." Elsewhere, Mr. Gottlieb said, "It's made up – there is no money in Aaron Rich's account" and it's a "complete fabrication."

(d)   Mr. Butowsky spread a conspiracy theory "as far as possible" to "make money off of it" from t-shirt sales, etc.  In reality, Mr. Butowsky has never spread a conspiracy, and he never made nor sought to make a penny from Seth Rich, Aaron Rich, or any conspiracy theory.

(e)   After Aaron Rich asked for a retraction, Mr. Butowsky and the other defendants purportedly "doubled down on the lies they were telling." In reality, Mr. Butowksy never told any lies about Seth Rich or Aaron Rich.

Before filing this lawsuit, Mr. Butowsky asked Defendant Gottlieb to retract the false allegations above, but he refused.

63.   On May 30, 2018, Plaintiff's Counsel asked Defendant Governski if her client, Aaron Rich, would authorize Wikileaks to reveal what it knew about whether he and his

brother were involved in leaking emails. In an email sent at 3:14 p.m., he wrote:

> I've attached a preservation letter that I sent to eBay and PayPal, and I have also attached a proposed waiver for your client. Julian Assange / Wikileaks likely will not cooperate unless your client consents to the release of information. Please let me know if he is willing to consent. Thanks.

Ms. Governski responded at 4:27 p.m.:

> We believe the appropriate mechanism for obtaining information from third parties is to serve subpoenas to those third parties as contemplated under the Federal Rules of Civil Procedure. Those rules do not require any advance waiver from any party in order to serve or enforce such a subpoena. If any third party has a request to make of our client as a result of a subpoena, we will address those requests directly with those third parties rather than through opposing counsel.

At 8:12 p.m. Plaintiff's Counsel replied as follows:

> Yes, but as a practical matter, Julian Assange, Kim Dotcom, and Wikileaks are beyond U.S. jurisdiction. Furthermore, Assange and Wikileaks have shown that they will not be coerced into revealing the identity of their sources. It is for that reason that I am asking your client to voluntarily waive any objections to the release of such information. If you are saying your client is unwilling to do that, I think the media (and the public) will find that very interesting.

Ms. Governski did not respond, so Plaintiff's Counsel sent a letter via fax and email at

7:51 a.m. on June 1, 2018 to her, Mr. Gottlieb, and a third lawyer at the firm, Randall

Jackson:

> I write concerning your client's pleadings in the case identified above. According to Fed. R. Civ. P. 11(b), an attorney's signature on the pleadings is certification that he or she has performed "an inquiry reasonable under the circumstances" to determine the accuracy and propriety of those pleadings.

> As you know, Ms. Governski and I have exchanged emails about whether your client, Aaron Rich, is willing to voluntarily authorize Wikileaks, Julian Assange, and/or Kim Dotcom to discuss any relationship that they may have had with Mr. Rich or his brother, Seth Rich. Thus far, it appears that your client is unwilling to authorize such disclosures.

> This is very telling. On the one hand, Mr. Rich boldly denies that he and/or his

> brother leaked DNC emails to Wikileaks. On the other, he refuses to authorize disclosures from the witnesses who are in the best position to know who leaked those emails. That begs a question: if your client has nothing to hide, why is he hiding it?
>
> Under Rule 11(b), you have a duty to answer that question. Furthermore, you should ask your client some pointed questions about what funds may have been transferred to him or his brother through eBay accounts. And you should remind him that every trip to a safe deposit box is recorded on video and preserved.
>
> If the evidence leads where we expect it to lead, my client will aggressively seek sanctions against Mr. Rich and everyone else responsible for bringing meritless claims. Thank you for your attention to this matter.

At 3:20 p.m. that afternoon, Plaintiff's Counsel received an email notifying him that Defendants Gottlieb and Governski were serving a subpoena seeking records from Twitter, including private communications from the Twitter Account of Plaintiff's Counsel. In other words, Defendants Gottlieb and Governski tried to use a subpoena to obtain privileged communications from their opposing counsel.  After that stunt received negative media attention, they withdrew the subpoena.

64.   In a bizarre and angry five-page letter sent on June 2, 2018 (a Saturday morning), Defendant Gottlieb offered the following rationale for refusing to authorize Wikileaks to disclose what it knew about the Riches involvement in email leaks:

> [P]roviding such a waiver would create precisely the impression you claim we are seeking to avoid. Namely, the mere act of granting a waiver to disclose communications to these third parties could create an impression that there exist communications that could or should be disclosed, and that is especially so if you were to follow through on your threat of disclosing such information to the media.

Defendant Gottlieb nonetheless wrote that he would be issuing subpoenas to third parties such as Wikileaks.  On June 22, 2018, Defendant Governski wrote in an email that subpoenas would need to be served on Wikileaks, Julian Assange and Kim Dotcom via

letters rogatory, and that she was working on that process. The subpoenas were not issued, however, so Plaintiff's Counsel sent a news article to Defendant Governski on August 20, 2018 noting that a federal court had authorized service of a DNC lawsuit against Wikileaks via Twitter. Defendant Gottlieb responded with baseless accusations that Plaintiff's Counsel was practicing law in D.C. without a license.

65. Nearly ten months after the issue was first raised, and despite repeated inquiries from Plaintiff's Counsel, no subpoenas have been issued to Wikileaks, Julian Assange, or Kim Dotcom by Defendants Governski or Gottlieb. Contrast that with the fact that Defendants Governski and Gottlieb issued a subpoena within a matter of hours for the private communications of Plaintiff's Counsel. The reason for this disparity is straightforward: Defendants Governski and Gottlieb know that if Mr. Butowsky issues a subpoena to Wikileaks, the subpoena will be ignored pursuant to its policies for protecting sources. If, however, Defendants Governski and Gottlieb issue a subpoena to Wikileaks on behalf of Aaron Rich, Wikileaks will likely construe that as a waiver of confidentiality, in which case the damning emails would finally be released. That's the last thing they want, so they have reneged on their earlier statements about issuing their own subpoenas.

66. In an October 1, 2018 story published by *Vox*, a statement from Ms. Governski is quoted as stating that the defendants – to include Mr. Butowsky – are "conspiracy theorists who spread malicious lies for personal and political gain." Ms. Governski is further quoted as saying, ""We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about

Aaron in order to advance their false political narratives." On the contrary, Mr. Butowsky is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise – nor has he done so for personal or political gain.

**The CNN Defendants**

67.   For more than two years, Defendant CNN and its employees have attempted to demonize and discredit anyone who questions the official narrative about the murder of Seth Rich. During that period, CNN has generally portrayed Mr. Butowsky as an unscrupulous political activist who knowingly and maliciously concocted and spread false stories.

68.   A March 14, 2018 story attributed to Defendant Darcy states that Mr. Butowsky and his co-defendants had been sued for "their roles in the publication of a baseless conspiracy theory about Rich's 2016 death." A May 21, 2018 story attributed to Defendant Darcy implicated Mr. Butowsky as someone "who pushed unfounded claims and theories about Rich's death," and an October 1, 2018 article impugned Mr. Butowsky for "peddling a conspiracy theory" without "real evidence."

69.   The top of the March 14, 2018 web story is linked to a propaganda video produced by Defendant Kludt, a left-wing political activist who masquerades as a journalist. In the video, Defendant Kludt falsely states that there is no evidence that Mr. Rich leaked emails to Wikileaks."It's never been supported by any evidence," Defendant Kludt claims. "The question is this: Will the Seth Rich lie ever disappear?" Defendant Kludt also refers to people who question the official "botched robbery" narrative as "conspiracy theorists." The clear purpose of Defendant Kludt's propaganda video is to

discredit and smear anyone who dares to question the official narrative, and it is tied directly to Defendant Darcy's web story about Mr. Butowsky. In other words, Defendant Kludt and Defendant Darcy jointly and intentionally misrepresented Mr. Butowsky as a liar and a crackpot conspiracy theorist.

70. In a March 27, 2018 story on *Anderson Cooper 360* about Aaron Rich's against Mr. Butowsky, Defendant Tuchman flatly stated that there was no evidence whatsoever that Seth Rich leaked DNC emails to Wikileaks. "There wasn't any evidence at all – it was all made up," he said, further describing it as a "conspiracy theory concocted by  right-wing commentators." As the anchor of the show bearing his name, Defendant Cooper decided to broadcast Defendant Tuchman's defamatory statements.

71. The March 27, 2018 story featured the interview of Defendant Gottlieb described in Paragraph 62 above, and Mr. Butowsky was mentioned by name more than once.  Unsurprisingly, Defendant Cooper never pushed back on any of Defendant Gottlieb's allegations, no matter how false or outrageous. Instead, Defendant Cooper endorsed those statements, directly implying that Mr. Butowsky and his co-defendants were responsible for "promoting unfounded claims that Seth Rich was tied to the DNC hacking." In another statement, Defendant Cooper directly implied that Mr. Butowsky was responsible for traumatizing Joel and Mary Rich because of "[having their son] being accused of stuff that there's no evidence of." In yet another, Mr. Cooper alleged that Mr. Butowsky and his co-defendants had been involved in spreading "lies."

72. Defendant Governski formerly served as a spokeswoman for Defendant CNN.

73. On February 02, 2019, Mr. Butowsky (through counsel) requested retractions

from Defendants CNN, Cooper, Tuchman, Darcy, and Kludt.  In a letter dated February 15, 2019, CNN Vice President and Asst. General Counsel Johnita P. Due wrote that no retractions would be forthcoming. "CNN has reported that the claims Mr. Butowsky has made about Seth Rich's connection to the Democratic National Committee (DNC) hack are 'baseless,' 'unfounded,' and 'without real evidence," she confirmed. "Indeed, there is a very long list of official sources who have either directly or indirectly said the claims about Seth Rich are not true." She then parroted the predictable list of official statements by intelligence officials, the office of Special Counsel Robert Mueller, and MPD. "In other words," she wrote, "the claims made by Mr. Butowsky are unfounded, baseless and not supported by real evidence – exactly as CNN reported."

74.  As evidenced by Ms. Due's letter, leftists and American media have come full circle with respect to trusting the government and its intelligence agencies.  In the 1970s, they hailed the work of Senator Frank Church and his Select Committee to Study Governmental Operations with Respect to Intelligence Activities, which exposed widespread corruption and impropriety in the CIA, FBI, and NSA, some of which dated back to the 1950s. Now, leftists and American media have blind faith in those same agencies.

**Defendants *Vox* and Coaston**

75.  On April 19, 2018 and October 1, 2018, Defendant *Vox* published defamatory articles written by Defendant Coaston, a left-wing extremist who masquerades as a journalist.  Both articles conveyed the false overall impression that Mr. Butowsky had lied repeatedly and abused the trust of the Rich family for purposes of advancing a

fraudulent narrative. In her April story, Defendant Coaston alleged that "the Riches' story isn't just about conspiracy theorists — it's about a conspiracy of Fox News contributors who concocted a lie while purporting to be trying to find Seth's killer."  There was no conspiracy, however, and there was no lie.  She further wrote that "[d]espite Butowsky's repeated questions about payments from WikiLeaks (which didn't exist), Joel and Mary repeatedly told both Zimmerman and Butowsky that the conspiracy theories about their son were 'baseless,' and provided Zimmerman with information about Seth's life for stories she said she was writing." In reality, neither Joel nor Mary Rich told Mr. Butowsky that claims of their sons' involvement with Wikileaks were "baseless." Instead, Joel Rich told Mr. Butowsky that he knew his sons were involved in the leak.

76.  The April 19, 2018 story by Defendant Coaston included numerous other false and defamatory allegations, including the following excerpt:

> Wheeler stated later that he received text messages that day from Butowsky telling him what to say in media interviews:
>
> • "If you can, try to highlight this puts the Russian hacking story to rest"
> • "We need to emphasize the FBI has a report that has been suppressed that shows that Seth rich [sic] did this..."

> But none of this was true. As would be revealed just a few days later, Wheeler had never said that there was any emailing between Seth Rich and WikiLeaks, and everything he'd heard had been from Butowsky and Zimmerman. "I've never, ever seen Seth Rich's computer, nor have I talked with the federal investigator." And there was no FBI investigation, either — the FBI had never even seen Seth's laptop.

> In short, Butowsky and Zimmerman had worked with Rod Wheeler, told him the FBI had information about Seth Rich's alleged connection with WikiLeaks, and then set him loose — with absolutely no proof. In fact, when Joel Rich demanded a retraction, Zimmerman told him (according to Wheeler, under direction from Fox producers) that the details about their son's (completely false) WikiLeaks ties

had come from Wheeler — whom Butowsky and Zimmerman had been working with all along.

Most of the foregoing excerpt is false and defamatory.  Mr. Butowsky will show that the FBI provided at least some support to the Metropolitan Police Department during the murder investigation. And Mr. Wheeler *did* say that emails were exchanged between Seth Rich and Wikileaks.  Furthermore, Mr. Butowsky did not "set loose" Mr. Wheeler with "no evidence."  Mr. Wheeler made some of the foregoing allegations in his lawsuit, but Defendant Coastan's allegations above were not premised on that lawsuit. And recall that Mr. Wheeler's own attorneys abandoned him and his frivolous lawsuit was dismissed.

77.  Elsewhere in the April 18, 2019 article, Defendant Coaston wrote, "As recently as this month, far right media articles are still being shared detailing how Joel Rich told Butowsky that he was aware Seth had leaked the emails — all of which is false." It was not and is not false, and Defendant Coaston's allegations to the contrary are defamatory.  Defendant Coaston ended the story with the following paragraph: "But by challenging how the story of their son's murder was manipulated by people who wormed their way into their inner circle — even gaining access to their religious community — the Riches could shine a light on the darkest underbelly of the conservative media apparatus."  Contrary to the inferences in that paragraph, Mr. Butowsky did not manipulate anything, nor did he "worm" his way into the Riches inner circle or religious community (much less for purposes of propagating a false story).

78.  The October 1, 2019 story by Defendant Coaston was comparably malicious and false. She wrote:

> ...Fox News ran a story, 'Slain DNC Staffer Had Contact with WikiLeaks, Say
> Multiple Sources." A second story, also published May 15, said that Wheeler was
> the source. But none of this was true — in fact, the only people who had told
> Wheeler about WikiLeaks contacts or an FBI investigation (also a part of the
> original, and false, story) were Butowsky and Fox News investigative reporter
> Malia Zimmerman.

The foregoing paragraph is false. Mr. Wheeler lied in order to serve his own interests, a

fact that was known to Defendant Coaston by the time she wrote the October 1, 2019

story.  Mr. Wheeler told Mr. Butowsky and Ms. Zimmerman (as well as another

journalist) that Seth Rich had contacts with Wikileaks, then he changed his story when he

joined Mr. Wigdor's scheme to extort Fox News. Regardless, some of Mr. Wheeler's

statements were recorded, and others were in writing, so it doesn't matter how many more

times he tries to change his story.  He said what he said, and he wrote what he wrote. All

of the evidence proving that Mr. Wheeler lied – including the dismissal of his lawsuit –

was publicly known at the time Defendant Coaston wrote her story.  The story itself notes

that Mr. Wheeler's lawsuit had been dismissed, yet Defendant Coaston repeated the false

allegations as if they were true.  She did so knowingly and maliciously.

79.   The October 1, 2018 story by Defendant Coaston also contains the following

false and malicious paragraphs:

> In the retracted *Washington Times* story, Butowsky is also mentioned: "According
> to Ed Butowsky, an acquaintance of the family, in his discussions with Joel and
> Mary Rich, they confirmed that their son transmitted the DNC emails to
> Wikileaks." But this was a lie.

> ...And for Aaron, it would only get worse. Butowsky and Matthew Couch, who
> began working together on the Seth Rich story in the summer of 2017, would go
> on to defame Aaron Rich's character and argue that he was partially responsible
> for his only brother's murder, even after Fox News distanced itself from its own
> false reporting on the Rich family.

> ...They also claimed that Aaron had refused to talk to law enforcement and stated
> that Aaron had known Seth would be murdered and had done nothing to stop it,
> aside from warning Seth's girlfriend to break up with Seth for her own safety. (To
> be crystal clear, *none of this happened*.)

Contrary to the excerpt above, Mr. Butowsky never told a "lie" about Joel Rich's

admission that his sons were involved in the leak, nor did Mr. Butowsky state that Aaron

Rich was "partially responsible for his only brother's murder."  Finally, Mr. Butowsky

never "claimed that Aaron had refused to talk to law enforcement and stated that Aaron

had known Seth would be murdered and had done nothing to stop it, aside from warning

Seth's girlfriend to break up with Seth for her own safety." It was false, defamatory and

malicious to attribute the foregoing statements to Mr. Butowsky.

80.  On February 1, 2019, Mr. Butowsky (through counsel) asked Defendants *Vox*

and Coaston to retract the false statements in the April 19, 2018 and October 1, 2018

articles.  In an arrogant and condescending reply dated February 8, 2019, attorney Jeremy

A. Chase of Davis Wright Tremaine LLP wrote that Defendants Vox and Coaston would

not retract anything. He also went a step further, stating that the contents of the articles

"are demonstrably true." He will now be forced to prove that to a jury.  The April 19,

2018 and October 1, 2018 still appear on the *Vox* website, and the Defendants' refusal to

retract or correct those articles is further proof of actual malice. *See Gonzales v. Hearst*

*Corp.*, 930 S.W.2d 275, 283 (Tex. App.—Houston [14th Dist.] 1996, no writ)("Refusal to

print a retraction is evidence of an action *after* the publication, but it can lend support to a

claim that reckless disregard or knowledge existed *at* the time of publication")(emphasis

in original).

**Defendants *The New York Times* and Fauer**

81.  In an August 2, 2018 article written by Defendant Fauer and published in Defendant NYT, Defendant Fauer cherry-picked quotes from a court order for the purpose of creating a false impression. Defendant Fauer wrote that "[i]n his dismissal of the lawsuit [filed by Joel and Mary Rich], Judge George B. Daniels said he sympathized with Mr. Rich's parents, but added that they had not been personally defamed by the story – despite the fact that it included 'false statements or misrepresentations.'"  Elsewhere, the story reports that Mr. Butowsky was intimately involved in developing this story that purportedly included "false statements or misrepresentations."  In reality, Judge Daniels never made a factual finding that the story included "false statements or misrepresentations."  Judge Daniels's order was premised on Fed. R. Civ. P. 12(b)(6), and the order plainly states that under that rule, "a court 'accept[s] all factual allegations in the complaint as true ... and draw[s] all reasonable inferences' in favor of the plaintiff." *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 498 (S.D.N.Y. 2018), citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  Throughout the order, Judge Daniels made it very clear that he was merely restating the allegations in the Rich's complaint. In one sentence, for example, Judge Daniels wrote that "the only conduct that Plaintiffs specifically attribute to Fox News relates to its publication of articles and news reports containing *allegedly* false statements." *Id*. at 501 (emphasis added). Nowhere in the order did Judge Daniels make a factual finding that the story included "false statements or misrepresentations," and that's because the Fox story did not contain any "false

statements or misrepresentations."

82. The August 2, 2018 story also included the following quote from the order: "It is understandable that plaintiffs might feel that their grief and personal loss were taken advantage of, and that the tragic death of their son was exploited for political purposes." In context, however, it is clear that the foregoing statement is premised on the *assumption* that the Rich's complaint was true. Elsewhere Defendant Fauer wrote, "Judge Daniels dismissed the accusations against [Mr. Butowsky and Malia Zimmerman], as well, saying that even though the story they had put together was untrue, their behavior did not meet the legal standard of 'extreme and outrageous conduct.'" Again, Judge Daniels made no such statement that "the story they had put together was untrue." He never reached that issue, nor could he have reached it under Rule 12(b)(6).

83. A paragraph toward the end of the August 2, 2018 article is similarly misleading about the significance of the order:

> Mr. Wheeler and his partners at Fox news had "embarked on a collective effort to support a sensational claim regarding Seth Rich's murder," Judge Daniels wrote. Mr. Wheeler, the judge concluded, "cannot now seek to avoid the consequences of his own complicity and coordinated assistance in perpetuating a politically motivated story not having any basis in fact."

The foregoing paragraph omits the fact that because Judge Daniels was ruling on a 12(b)(6) motion, he was not and could not make any factual findings. Judge Daniels was ruling *only* on Mr. Wheeler's complaint (and Mr. Wheeler had effectively plead himself out of court). Defendant Fauer's story, however, created the false impression that Judge Daniels made factual findings adverse to Mr. Butowsky.

84. Defendant Fauer normally covers court proceedings for Defendant NYT and

he knew that Rule 12(b)(6) dismissals are not factual findings, yet he deliberately misrepresented Judge Daniels's order for the purpose of discrediting someone affiliated (however loosely) with President Trump, in this case Mr. Butowsky.  Mr. Butowsky (through counsel) asked Defendants Fauer and NYT to correct or withdraw the defamatory statements in a letter dated February 6, 2019, but they refused. The Defendants' refusal to retract or correct those articles is further proof of actual malice. *See Gonzales*, 930 S.W.2d at 283.

## Claims

### Defamation

85.  All previous paragraphs are incorporated herein by reference.

86.  Mr. Butowsky brings defamation claims against Defendants Gottlieb, Governski, Boies Schiller Flexner LLP, Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey & Gail LLP,  Subramanian, Barron, Park, Turner Broadcasting System, Inc., Cooper, Tuchman, Darcy, Kludt, The New York Times Company, Feuer, Vox Media, Inc., Coaston, and the Democratic National Committee because they or their agents published or conspired with others to publish false and defamatory statements about Mr. Butowsky as described above. Notwithstanding any other statement in this complaint, Mr. Butowsky does not assert defamation claims based on allegations made in any lawsuit.

### Business Disparagement

87.  All previous paragraphs are incorporated herein by reference.

88.  Mr. Butowsky brings business disparagement claims against Defendants

Gottlieb, Governski, Boies Schiller Flexner LLP, Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey & Gail LLP, Subramanian, Barron, Park, Turner Broadcasting System, Inc., Cooper, Tuchman, Darcy, Kludt, The New York Times Company, Feuer, Vox Media, Inc., Coaston, and the Democratic National Committee because they or their agents published or conspired with others to publish false and defamatory statements that caused Mr. Butowsky to lose one third of his clients, as described above. Notwithstanding any other statement in this complaint, Mr. Butowsky does not assert business disparagement claims based on allegations made in any lawsuit.

## Malicious Prosecution

89. All previous paragraphs are incorporated herein by reference.

90. Mr. Butowsky brings malicious prosecution claims against Defendants Bauman, The Pastorum Group, The Democratic National Committee, Gail, Oliphant, Agrawal, Massey & Gail LLP, Subramanian, Barron, and Park because they or their agents conspired to prosecute and did prosecute *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No. 1:18-cv-02223 (S.D.N.Y.) with malice and without probable cause.

## New York Judiciary Law § 487

91. All previous paragraphs are incorporated herein by reference.

92. Mr. Butowsky brings claims under New York Judiciary Law § 487 against Defendants Bauman, The Pastorum Group, The Democratic National Committee, Gail, Oliphant, Agrawal, Massey & Gail LLP, Subramanian, Barron, and Park because they or their agents conspired and colluded to deceive the court in *Joel and Mary Rich v. Fox*

*News Network, LLC, et al.*, Case No. 1:18-cv-02223 (S.D.N.Y.).

**Civil Conspiracy**

93.   All previous paragraphs are incorporated by reference.

94.   Defendants Gottlieb, Governski, Boies Schiller Flexner LLP, Bauman, The

Pastorum Group, Gail, Oliphant, Agrawal, Massey & Gail LLP,  Subramanian, Barron,

Park, and The Democratic National Committee conspired either directly or through their

agents to defame Mr. Butowsky and disparage his business.

95.   Defendants Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey

& Gail LLP,  Subramanian, Barron, Park, and The Democratic National Committee

conspired either directly or through their agents with non-parties Aaron Rich, Joel Rich,

and Mary Rich to maliciously prosecute *Joel and Mary Rich v. Fox News Network, LLC,*

*et al.*, Case No. 1:18-cv-02223 (S.D.N.Y.).

96.   Defendants Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey

& Gail LLP,  Subramanian, Barron, Park, and The Democratic National Committee

conspired either directly or through their agents with non-parties Aaron Rich, Joel Rich,

and Mary Rich to violate New York Judiciary Law §487, and they did violate New York

Judiciary Law §487 in *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No.

1:18-cv-02223 (S.D.N.Y.).

**Request for Relief**

97.   The Plaintiff respectfully prays that upon a final hearing of this case,

judgment be entered for him against the Defendants, for damages in an amount within the

jurisdictional limits of the Court; together with pre-judgment interest at the maximum

rate allowed by law; post-judgment interest at the legal rate; back pay; costs of court; attorney fees; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**