**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **EDWARD BUTOWSKY, in his personal and professional capacities,** | |
| **Plaintiff,** | Case No. 4:19-cv-00180-ALM-KPJ |
| **v.** | |
| **MICHAEL GOTTLIEB, *et al.*,** | **ORAL ARGUMENT REQUESTED** |
| **Defendants**. | |

**MOTION TO DISMISS AND SUPPORTING MEMORANDUM FOR DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1) ........................ 3

FACTUAL BACKGROUND ..................................................................................... 4

    A.    The First-Filed Lawsuit: Aaron Rich Sued Edward Butowsky For Defamation In D.D.C. ................................................................................................... 4

    B.    On March 27, 2018, Mr. Gottlieb Appeared On CNN For An Interview About The D.C. Lawsuit. .......................................................................................... 5

    C.    In September 2018, Ms. Governski Was Quoted In *Vox* About A Settlement That Mr. Rich Had Reached With The *Washington Times* In The D.C. Lawsuit. ..................... 5

    D.    Mr. Butowsky Filed This Lawsuit Nearly A Year *After* The D.C. Lawsuit Was Filed. .................................................................................................... 6

    E.    After Mr. Butowsky Filed This Lawsuit, The First-Filed Court Denied His Attempts To Dismiss And Transfer The D.C. Lawsuit To This Court. .................................... 10

LEGAL ARGUMENT ........................................................................................... 11

    I.    THE FIRST-TO-FILE RULE REQUIRES DEFERENCE TO THE FIRST-FILED COURT. ............................................................................................... 11

    II.    THIS CASE MUST BE DISMISSED AS TO MR. RICH'S COUNSEL PURUSANT TO RULE 12(B)(2) BECAUSE THEY ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS. ....................................................................... 16

    III.    THE COURT MUST DISMISS ALL CLAIMS AGAINST MR. RICH'S COUNSEL AND MR. RICH AS AN UNNAMED CO-CONSPIRATOR PURUSANT TO RULE 12(B)(6). ............................................................................................ 18

    A.    The Defamation Cause of Action as to Mr. Rich's Counsel Fails to State a Claim as a Matter of Law. ...................................................................................... 18

        1.    The Statements Of Mr. Rich's Counsel Are Protected By Absolute Privilege. .... 19

        2.    The Complaint Fails To Plead Any Facts Supporting Actual Malice. ................. 23

    B.    The Complaint Fails To Sufficiently Plead Business Disparagement As A Matter Of Law. .................................................................................................... 24

    C.    The Complaint Fails To Sufficiently Plead Conspiracy As A Matter of Law .......... 25

    IV.    RULE 19 REQUIRES THE COURT DISMISS THIS CASE BECAUSE MR. RICH IS A NECESSARY PARTY OVER WHOM THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION AND THE CASE CANNOT PROCEED IN HIS ABSENCE. ......................................................................................... 26

    A.    Mr. Rich Must Be Joined Pursuant to Rule 19(a)(1)(B). ............................... 26

B.      Rule 19(b) Requires Dismissal Because It is Neither Feasible To Join Mr. Rich Nor
        Equitable To Proceed In His Absence.  ..................................................................... 28

CONCLUSION ..................................................................................................................... 29

# TABLE OF AUTHORIITES

**Cases**

*50-Off Store*s, Inc.,
    1997 WL 790739 ................................................................................ 19, 21

*Allstate Ins. Co. v. Plambeck*,
    No. 3-08-CV-0388-M-BD, 2012 WL 2130982 (N.D. Tex. Jan. 4, 2012) ............................ 21

*Allstate Ins. Co. v. Plambeck*,
    No. 3-08-CV-0388-M-BD, 2012 WL 2130912 (N.D. Tex. June 12, 2012) ......................... 21

*Asay v. Hallmark Cards, Inc.*,
    594 F.2d 692 (8th Cir. 1979) ............................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... 18

*Bashore v. Resurgent Capital Servs., L.P.*,
    No. 4:10-CV-585, 2011 WL 1304461 (E.D. Tex. Mar. 15, 2011) ......................... 19

*Bashore v. Resurgent Capital Servs., L.P.*,
    No. 4:10-CV-585, 2011 WL 1258025 (E.D. Tex. Apr. 4, 2011) ......................... 19

*Bashore v. Resurgent Capital Servs., L.P.*,
    No. 4:10-CV-585, 452 F. App'x 522 (5th Cir. 2011) ............................... 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 18

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
    No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065 (E.D. Tex. 2018) ................... 5, 6

*Cadle Co. v. Whataburger, Inc.*,
    97-CA-1502, 1998 U.S. Dist. LEXIS 22017, at *3 (W.D. Tex. Mar. 16, 1998) ................... 19

*Cadle Co. v. Whataburger, Inc.*,
    174 F.3d 599 (5th Cir.1999) ............................................................... 19

*Companion Prop. & Cas. Ins. Co. v. Palermo*,
    723 F.3d 557 (5th Cir. 2013) ............................................................... 17

*Cooper v. City of Plano*,
    No. 4:10-CV-689, 2011 WL 2912808 (E.D. Tex. June 21, 2011) ..................... 5, 19

*Cooper v. City of Plano*,
    No. 4:10-CV-689, 2011 WL 2882074 (E.D. Tex. July 18, 2011) ..................... 5, 19

*Deliverance Poker, LLC v. Tiltware, LLC*,
    771 F. Supp. 2d 658, 2011 WL 1085333 (W.D. Tex. 2011) ................................. 28

*Fielding v. Hubert Burda Media, Inc.*,
    415 F.3d 419 (5th Cir. 2005) ..................................................................................... 17

*Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*,
    No. A-18-CV-369-LY, 2018 WL 6728486 (W.D. Tex. Dec. 21, 2018) ........................ *passim*

*Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*,
    694 F. App'x 225 (5th Cir. 2017) ................................................................. *passim*

*Gray, Ritter, & Graham, PC v. Goldman Phipps PLLC*,
    511 S.W.3d 639 (Tex. App.—Corpus Christi 2015, pet. denied) .......................... 17

*Green Ice Tech., LLC v. Ice Cold 2, LLC*,
    No. 4:17-CV-00341, 2018 WL 3656476 (E.D. Tex. Aug. 1, 2018) ...................................... 16

*Hamaker v. Chase Manhattan Mortg. Corp.*,
    No. 4:12-CV-773, 2013 WL 1195886 (E.D. Tex. Jan. 30, 2013) .......................... 23

*Hamaker v. Chase Manhattan Mortg. Corp.*,
    No. 4:12-CV-773, 2013 WL 1196570 (E.D. Tex. Mar. 22, 2013) .......................... 23

*Hood ex rel.* Mississippi *v. City of Memphis*,
    Tenn., 570 F.3d 625, (5th Cir. 2009) ..................................................................... 29

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
    No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242 (E.D. Tex. Apr. 22, 2008) ................... 12, 15

*Jaffer v. Standard Chartered Bank*,
    301 F.R.D. 256 (N.D. Tex. 2014) ..................................................................... 28, 29

*Johnston v. Cartwright*,
    355 F.2d 32 (8th Cir. 1966) ..................................................................... 22

*KCCR, Inc. v. Brunner*,
    2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) ................................................ 12, 15

*Loyola v. Am. Homes for Rent Prop. II, LLC*,
    2014 WL 12464926 (W.D. Tex. Sept. 3, 2014) ..................................................... 27

*Loyola v. Am. Homes for Rent Prop. II, LLC*,
    2014 WL 12461968 (W.D. Tex. Sept. 26, 2014) .......................................... 27-28

*Mann Mfg. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ..................................................................... 13

*Martinez v. Hellmich Law Grp., P.C.*,
    681 F. App'x 323 (5th Cir. 2017) ..................................................................... 19

*Melgarejo v. 24 Hour Prof'l Janitorial Servs.*,
    No. 3:07-CV-1847-B, 2009 WL 27448 ..................................................... 19, 20

*Nat'l Health Fed'n v. Weinberger*,
    518 F.2d 711 (7th Cir. 1975) ......................................................... 15

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ................................................... 16, 17

*Payne v. Barrett Daffin Frappier Turner & Engel*, LLP,
    No. 4:13CV381, 2014 WL 468243 (E.D. Tex. Feb. 3, 2014) ............... 25

*Pioneer Inv. Servs.* Co. *v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) .................................................................... 15

*Priester v. Long Beach Mortg. Co.*,
    No. 4:10-CV-641, 2011 WL 6116491 (E.D. Tex. Oct. 13, 2011) ......... 19

*Priester v. Long Beach Mortg. Co.*,
    No. 4:10-CV-641, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011) .......... 19

*Priester* v. JP Morgan Chase Bank, N.A.,
    708 F.3d 667 (5th Cir. 2013) ....................................................... 19

*Reddy v. Superior Glob. Sols., Inc.*,
    No. 4:11-CV-845, 2012 WL 6569800 (E.D. Tex. Oct. 2, 2012) .......... 26

*Reddy v. Superior Glob. Sols., Inc.*,
    No. 4:11-CV-845, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012) ........ 26

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ....................................................... 17

*Rosanova v. Playboy Enterprises, Inc.*,
    580 F.2d 859 (5th Cir. 1978) ................................................... 23, 24

*Sangha v. Navig8 Ship Management Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ......................................................... 17

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ....................................................... 13

*Schutten v. Shell Oil Co.*,
    421 F.2d 869 (5th Cir. 1970) ....................................................... 29

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..................................................... 16

*Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993) .............................................. 12

*West v. Dollar Gen. Corp.*,
    No. 4:09CV255, 2010 WL 816992 (E.D. Tex. Mar. 4, 2010) ......... 18, 24

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998) ........................................................................................... 18, 23

**Statutes**

Tex.Civ.Prac. & Rem.Code § 73.001 ......................................................................................... 18

**Rules**

Fed. Rule. Civ. P. 12(b)(7) ......................................................................................................... 26
Fed. R. Civ P. 19 ................................................................................................................... 26, 27

**Other**

Restatement (Second) of Torts § 586 (1977) ....................................................................... 19-20

Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP ("Moving Defendants" or "Mr. Rich's Counsel") move to dismiss this action pursuant to the first-to-file rule and Rules 12(b)(2), 12(b)(6), 12(b)(7), and 19 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Edward Butowsky filed this action against the Moving Defendants in retaliation for their representation of Aaron Rich in a related, and ongoing, federal lawsuit against Mr. Butowsky in Washington, D.C. Nearly a year before this litigation was filed, Mr. Rich filed a lawsuit against Mr. Butowsky in the United States Court for the District of Columbia ("First-Filed Court" or "D.D.C."). Mr. Rich's lawsuit alleges, *inter alia*, that Mr. Butowsky defamed Mr. Rich by accusing him of conspiring with his brother Seth to hack the Democratic National Committee (DNC), and then selling those DNC documents to WikiLeaks. *See* Complaint (Dkt. 3), *Rich v. Butowsky et al*, 1:18-cv-00681-RJL (D.D.C. Mar. 26, 2018) ("D.C. Lawsuit") (attached to this Motion as Ex. A).[1] Rather than wait for the First-Filed Court to rule on his motions to dismiss and transfer the case to this Court—both of which the Court has now considered and denied—Mr. Butowsky filed this action against the law firm and attorneys who represent Mr. Rich in D.D.C. All of Mr. Butowsky's claims against Moving Defendants in this lawsuit rely upon a single allegation—namely, that Mr. Rich's Counsel defamed Mr. Butowsky by accusing him of defaming Mr. Rich.

Mr. Butowsky has openly admitted that he is using this lawsuit as a weapon to retaliate against Mr. Rich's lawyers. As he said publicly in August 2018: "I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves and go through the same crap I had

---

[1] All Exhibit citations refer to the Exhibits attached to the contemporaneously filed Declaration of Paul J. Skiermont in Support of Mr. Rich's Counsel's Motion to Dismiss.

to go through."[2] Mr. Butowsky has made good on his threat. This lawsuit brings claims against 22 defendants who either have represented the Rich family in their efforts to hold Mr. Butowsky and other conspiracy theorists accountable, or who have exercised their First Amendment rights to report on those efforts. In addition to suing Mr. Rich's Counsel here, Mr. Butowsky also filed a separate action in Texas state court against certain lawyers who represent Mr. Rich's parents in their own lawsuit against Mr. Butowsky in New York (*see Rich v. Fox News et al*, 18-cv-02223 (S.D.N.Y. Mar. 13, 2018) ("Rich Parents' Litigation"). On May 22, 2019, the District Court of Collin County, Texas dismissed Mr. Butowsky's lawsuit as baseless and ordered him to pay attorneys' fees. *See* Order, *Butowsky v. Susman Godfrey, LLP*, No. 416-01222-2019, (426th Dist. Ct., Collin Cty., Tex. May 22, 2019) (attached as Ex. B).[3] This lawsuit relies upon the same frivolous allegations that Mr. Butowsky advanced in the *Susman Godfrey* suit, while further accusing Mr. Rich (a non-defendant in this action) of conspiring with his parents and their lawyers to file the Rich Parents' Litigation. Of course, the only way that Mr. Rich could have conspired to file false lawsuits would be if he had actually participated in leaking the DNC's documents to Wikileaks, which is precisely the same fantastical claim that lies at the core of Mr. Rich's D.D.C. lawsuit against Mr. Butowsky.

---

[2] *See* Jeff Benjamin, *Exonerated in Defamation Suits, Ed Butowsky Is Out For Blood,* Investment News (Aug. 6, 2018), https://www.investmentnews.com/article/20180806/FREE/180809955/ exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood. Mr. Butowsky made his statements after Mr. Rich filed his lawsuit, and immediately following the Rule 12(b)(6) dismissal of two *other* federal lawsuits filed against Mr. Butowsky relating to statements about Seth Rich, including one his parents filed that is on appeal. *Wheeler v. Twenty-First Century Fox et al*, No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017); *Rich v. Fox News et al*, 18-cv-02223 (S.D.N.Y. Mar. 13, 2018).

[3] In addition to Mr. Rich's Counsel, 12 defendants are plaintiffs or plaintiffs' counsel in existing actions in other federal courts against Defendant Butowsky. After the dismissal of his state court claim, Mr. Butowsky dismissed the three non-resident Susman Godfrey attorneys from this case. Among the other defendants in this case are journalists who reported on the various lawsuits.

This lawsuit (hereinafter "Complaint" or "Compl.") should be dismissed based on any of four independent grounds. *First*, under the first-to-file rule, there is substantial overlap between this Complaint and the D.C. Lawsuit, which was filed nearly a year before this suit. *See infra* Section I. The Court need go no further. If it does, however, there are at least three additional grounds on which to dismiss Mr. Butowsky's claims: none of Mr. Rich's counsel are subject to personal jurisdiction in Texas, s*ee infra* Section II; the Complaint fails to state a cause of action as to any of its claims, *see infra* Section III; and the Complaint fails to name Mr. Rich as a necessary party, *see infra* Section IV.[4]

### STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)

1. Have the Moving Defendants demonstrated a "likelihood of significant overlap" between this lawsuit and the D.C. Lawsuit, such that the first-to-file rule controls and requires that this Court defer to the First-Filed Court is required? YES.

2. Does Rule 12(b)(2) require this case to be dismissed because none of the Moving Defendants are subject to personal jurisdiction in this State? YES.

3. Does Rule 12(b)(6) require this case be dismissed because the Complaint fails to state a cause of action as to any of its defamation, business disparagement, and conspiracy causes of action? YES.

4. Does Rule 19 require this case be dismissed pursuant to Rule 12(b)(7) for failure to name Aaron Rich as a necessary defendant whose joinder is not feasible and in whose absence the lawsuit cannot in "good conscience" continue? YES.

---

[4] Even where not explicit, this Motion seeks dismissal solely as to Mr. Rich's Counsel and Mr. Rich as an unnamed co-conspirator. However, many of the arguments support dismissing the case in its entirety and the Moving Defendants would not be opposed to the Court so deciding.

## FACTUAL BACKGROUND

### A. The First-Filed Lawsuit: Aaron Rich Sued Edward Butowsky For Defamation In D.D.C.

Mr. Rich's only brother, Seth, was murdered on July 10, 2016, in what law enforcement has described as a botched armed robbery. Ex. A ¶¶ 25-26. Because Seth Rich had worked for the DNC, and because his murder occurred just months before the 2016 presidential election, a conspiracy theory emerged holding that Seth Rich was assassinated because he had been discovered to have stolen emails from the DNC and provided them to Wikileaks.[5] *Id*. ¶ 2. One purpose of this conspiracy theory was to advance a counter-narrative to the intelligence community's conclusion that the Russian Government interfered in the 2016 election; if Seth Rich stole the DNC's emails, the theory goes, Russia was not involved. *Id.* ¶¶ 6; 31; 45; 50.

Mr. Butowsky has played a central role in a mutation of this conspiracy theory by accusing Aaron Rich of conspiring with his brother to steal the DNC documents and sell them to WikiLeaks in exchange for money deposited into his personal bank account. *Id.* ¶¶ 6–7. On March 26, 2018, Mr. Rich filed the D.C. Lawsuit against Mr. Butowsky (along with other co-conspirator defendants), alleging Mr. Butowsky's statements to be defamatory. A number of entities and individuals have retracted the precise statements that Mr. Butowsky has sued in this Court to defend, including The Washington Times, a former defendant in the D.C. Lawsuit, along with Infowars and Dr. Jerome Corsi.[6]

---

[5] Former CIA Director Mike Pompeo declared Wikileaks to be a hostile intelligence service. Mike Pompeo, Remarks at Center for Strategic and International Studies (Apr. 13, 2017), *transcript available at* https://www.cia.gov/news-information/speeches-testimony/2017-speeches-testimony/pompeo-delivers-remarks-at-csis.html.

[6] *See* Ex. D ("Washington Times Retraction"); *Statement on Coverage of Seth Rich Murder Investigation*, Fox News, (May 23, 2017), ; Dr. Jerome Corsi, *Retraction of Dr. Jerome Corsi*

**B. On March 27, 2018, Mr. Gottlieb Appeared On CNN For An Interview About The D.C. Lawsuit.**

On March 27, 2018—the date the D.C. Lawsuit became public on the Court's docket—Mr. Gottlieb appeared on CNN for a live interview with Anderson Cooper. *See* Ex. C ("CNN Interview").[7] Mr. Cooper led the interview with Mr. Gottlieb by stating:

> The lawsuit filed by Seth Rich's brother, Aaron is against the *Washington Times*, an online activist and his media company and a Texas businessman, joining me now is Michael Gottlieb, the attorney for Aaron Rich. Thanks for being with us. The defendants named in today's lawsuit, can you explain how they were dragging your client, Seth's brother into this.

*Id.* at 13. The banner along the bottom of the screen read, "Seth Rich's Brother, Parents Sue Over Conspiracy Theories." During the interview, Mr. Gottlieb described the allegations in the D.C. Lawsuit, including that the defendants "named in the lawsuit today decided to make Aaron Rich, Seth's brother the target of the conspiracy theory" by accusing him of being "the technical mastermind behind the leak and also somebody who took money from WikiLeaks," which are "made up" and "complete fabrication[s]." *Id.*

**C. In September 2018, Ms. Governski Was Quoted In *Vox* About A Settlement That Mr. Rich Had Reached With The *Washington Times* In The D.C. Lawsuit.**

In September 2018, Mr. Rich reached a settlement with the *Washington Times* in connection with a column that cited Mr. Butowsky as the only named source for statements

---

*Regarding The Murder of Seth Rich,* Infowars (Mar. 4, 2019), https://www.infowars.com/retraction-of-dr-jerome-corsi-regarding-the-murder-of-seth-rich/.

[7] The Court "may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 2912808, at *1–2 (E.D. Tex. June 21, 2011), *report and recommendation adopted,* No. 4:10-CV-689, 2011 WL 2882074 (E.D. Tex. July 18, 2011) (Mazzant, J.); *see also* Compl. ¶ 62 (basing allegations on CNN Interview). Likewise, the Court may take notice of facts "where the facts a court is taking notice of may be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065, at *20 n.6 (E.D. Tex. 2018).

accusing Mr. Rich of being involved in stealing the DNC emails and selling them to Wikileaks. *See* Ex. A ¶¶ 38 40. On September 30, 2018, the *Washington Times* published a retraction and apology. *See* Ex. D. The next day, *Vox* published an article about the *Washington Times* Retraction. *See* Ex. E ("*Vox* Article"). The last paragraph of the *Vox* Article quotes Ms. Governski:

> Legal action against Butowsky, Couch, and America First Media is still continuing. In a statement by the attorney representing Aaron Rich, Meryl Governski, part of the team at Boies Schiller Flexner, Governski said, "*The Washington Times*' decision to take responsibility and apologize for its role in propagating lies about our client is a milestone in our case, as well as in the broader effort to shine a light on conspiracy theorists who spread malicious lies for personal and political gain."
>
> She added: "We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives.'"

### D.  Mr. Butowsky Filed This Lawsuit Nearly A Year *After* The D.C. Lawsuit Was Filed.

Mr. Butowsky filed this lawsuit on March 12, 2019, alleging, *inter alia*, that that Mr. Rich's Counsel defamed Mr. Butowsky in the CNN Interview and the *Vox* Article by accusing Mr. Butowsky of making defamatory statements about Mr. Rich. As Mr. Butowsky acknowledges, the statements at issue in this lawsuit are statements that Mr. Rich's Counsel made about the D.C. Lawsuit. *See* Compl. ¶ 62 ("In a March 27, 2018 Interview with Anderson Cooper on CNN *regarding the lawsuit*…"); *id.* ¶ 66 ("…a statement from Ms. Governski is quoted as station that the *defendants – to include Mr. Butowsky*…") (all emphases added). As demonstrated by the following table, Mr. Butowsky is suing Mr. Rich's Counsel for making statements not only about the D.C. Lawsuit, but for repeating verbatim or nearly verbatim statements from Mr. Rich's Complaint in the D.C. Lawsuit.[8]

---

[8] The table below shows the full context of the complained-of statements as set forth in their respective sources. The green and blue material matches the comments that Mr. Butowsky complains of as defamatory and the corresponding statements in the first-filed D.C. Lawsuit.

| **Statements Alleged To Be Defamatory By Mr. Butowsky In <u>This Lawsuit</u>** | **Statements Alleged to be Defamatory by Mr. Rich in <u>the First-Filed D.C. Lawsuit</u>** |
|---|---|
| "It began on a Periscope actually, that the defendant Matt Couch in America First Media hosts, they have about 200,000 Twitter followers and they get tens of thousands of viewers on their Periscopes and Ed Butowsky actually one of the defendants appeared as a guest on their Periscope on August 15th, 2017 and said there is money in Aaron Rich's account, he needs to come out and admit what he did. **It's made up. There is no money in Aaron Rich's account, there's no basis in fact, whatsoever for and it's a complete fabrication.**" Ex. C; *see also* Complaint ¶ 62(c) ("Mr. Butowsky's statements about Aaron Rich and Seth Rich were fabricated, *i.e.*, '**all of this, all of it, is made up**.' Elsewhere, Mr. Gottlieb said, '**It's made up – there is no money in Aaron Rich's account' and it's a 'complete fabrication**.'"). | "Nearly 40 minutes into the August 15, 2017 Periscope, **Defendant Butowsky wrote that 'Aaron Rich needs to come out and admit money is in his account.' That accusation was and is false—Aaron has no money in his account from WikiLeaks or any other organization relating to the alleged leaking of DNC documents**, and no one in the Rich family ever said or suggested otherwise to Defendants." Ex. A ¶ 40 (first emphasis in original); *see also id.* ¶¶ 1, 7, 9–10, 41–52, 67, 83, 85, 100, 118, 131, 140. |
| "From around January until May. After that, these defendants [that are] name[d] in the lawsuit today decided to make Aaron Rich, Seth's brother the target of the conspiracy theory and sort of names [him] as the technical mastermind behind the leak and also somebody who took money from WikiLeaks into his personal bank account. That started around the summer of 2017, and the allegations grew more grotesque from there. **They started to allege[] that Aaron Rich warn[ed] Seth's girlfriend to break up with him** and leave D.C., because he knew in advance that the murder was coming, **they made up a meeting that reportedly occurred at the DNC where Aaron through a chair at Donna Brazile, all of this** -- all of it is made up." Ex. C; *see also* Complaint ¶ 62(a) ("Mr. Butosky [*sic*] had said Aaron Rich '**warned Seth Rich's girlfriend to break up with him**.' In reality, Mr. Butowsky never said such a thing."); *id.* ¶ 62(b) ("Mr. Butosky [*sic*] '**made up a meeting that purportedly occurred at the DNC' where Aaron Rich purportedly threw a chair**. In reality, Mr. Butowsky never said such a thing.") | "Defendants have repeatedly and falsely stated that the Plaintiff received information in advance that Seth would be murdered, and that his prior knowledge caused him to obstruct justice by refusing to provide law enforcement investigators with access to his brother's cell phones and laptop after his murder. **These same allegations also falsely allege that Aaron participated in meetings with Seth and Donna Brazile at the DNC at which Aaron threw a chair,** and that **Aaron warned Seth's girlfriend in advance to break up with Seth.** Each and every aspect of these allegations are fabricated: Aaron did not know that his brother was going to be murdered; he never attended any meeting at the DNC with Seth and Donna Brazile; and he never warned Seth's girlfriend to break up with Seth or leave D.C." Ex. A ¶ 53; *see also id.* ¶¶ 7, 83, 100, 118, 131. |

| **Statements Alleged To Be Defamatory By Mr. Butowsky In <u>This Lawsuit</u>** | **Statements Alleged to be Defamatory by Mr. Rich in <u>the First-Filed D.C. Lawsuit</u>** |
|---|---|
| "I think, the parents have received certain apologies, I mean Fox News obviously retracted the story as mentioned in the piece from before. Aaron Rich hasn't received apologies from anyone, even though he has reached out separately to each of these defendants privately, he reach out to Ed Butowsky privately. He reached out to Matt Couch in America First Media privately, he told them how much pain this was causing him. He asked them to stop spreading lies about him. **He told them this was false, and they -- not only doubled down on lies they were telling, they spread them far and wide** and then worked to place them in an op-ed in the 'Washington Times'." Ex. C; *see also* Complaint ¶ 62(e) ("**After Aaron Rich asked for a retraction, Mr. Butowsky and the other defendants purportedly 'doubled down on the lies they were telling.'** In reality, Mr. Butowsky [*sic*] never told any lies about Seth Rich or Aaron Rich."). | "**After receiving those letters, Defendants doubled and then tripled down on their behavior—they continued to disseminate false statements about Aaron**, and then upped the ante by conspiring to have their lies about Aaron published in a prominent national newspaper." Ex. A ¶ 8; *see also id.* ¶¶ 64-82; 140. |
| "There was **definitely coordination between Ed Butowsky, America First Media and Matt Couch to take this notion or this theory about Aaron Rich's involvement and to spread it as far wide -- as far and wide as they could and to profit off of it. And they have raised money off of it,** they have sold merchandise off it and they now have a team of investigators roaming around in D.C. using that funding in order to go around and talk to people to try approve this theory to be true." Ex. C; *see also* Complaint ¶ 62(d) ("Mr. Butowsky spread a conspiracy theory 'as far as possible' to 'make money off of it' from t-shirt sales, etc. In reality, Mr. Butowsky has never spread a conspiracy, and he never made nor sought to make a penny from Seth Rich, Aaron Rich, or any conspiracy theory.") | "**Defendants published the statements, without privilege, as widely as practicable to multiple third parties**, using the most effective means of distribution available to them including but not limited to, the Internet, newspaper publications, television broadcasts, radio broadcasts, and events open to the public. Ex. A ¶ 101.<br><br>"**Defendants representations have allowed them to attract more viewers, raise more funds**, and tout themselves as 'leading the way' on the Seth Rich 'investigation.'" Ex. A ¶ 86.<br><br>"But Defendants are not interested in the truth. Instead, **Defendants are motivated by personal notoriety, financial gain, and naked partisan aims**…" Ex. A ¶ 1; *see also id.* ¶¶ 10, 56–63; 70 119, 140. |

| Statements Alleged To Be Defamatory By Mr. Butowsky In **This Lawsuit** | Statements Alleged to be Defamatory by Mr. Rich in **the First-Filed D.C. Lawsuit** |
|---|---|
| "In an October 1, 2018 story published by Vox, a statement from Ms. Governski is quoted as stating that the defendants – to include Mr. Butowsky – are **'conspiracy theorists who spread malicious lies for personal and political gain.'** Ms. Governski is further quoted as saying, "**We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives.**" On the contrary, Mr. Butowsky is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise– nor has he done so for personal or political gain." Complaint ¶ 66; *see also* Ex. E. | "But **Defendants are not interested in the truth. Instead, Defendants are motivated by personal notoriety, financial gain, and naked partisan aims**…" Ex. A ¶ 1. <br><br> **Defendants have admitted that their motive for saying these things about Aaron is their desire to advance political arguments**. Ex. A ¶ 10. <br><br> Defendant Butowsky encouraged the publication of defamatory content about the Plaintiff in The Washington Times, a D.C.-based publication, and he has held meetings in D.C. **for the purpose of advancing the same D.C.-centric conspiracy theory**. Ex. A. ¶ 20; *see also id.* ¶¶ 6–8; 64; 82; 140. |

Mr. Butowsky alleges that the statements made by Mr. Rich's Counsel are defamatory because he "never spread a conspiracy theory," and "never told any lies about Seth Rich or Aaron Rich." Compl. ¶ 62; 66. These affirmative claims are identical to Mr. Butowsky's defenses in the D.C. Lawsuit—*i.e.*, whether Mr. Butowsky is liable for making or encouraging the publication of false statements about Mr. Rich, including by and through his co-conspirators. Mr. Butowsky's Complaint centers on proving that his statements about Mr. Rich—*the same ones for which Mr. Rich sued Mr. Butowsky*—are true: "In reality, the 'Russia collusion' conspiracy theory is the only myth, and Mr. Butowsky's statements about the stolen emails were accurate," *id.* ¶ 5; "Aaron Rich and Seth Rich were both responsible for leaking the DNC emails," *id.* ¶ 54; he "never told any lies about Seth Rich or Aaron Rich" *id.* ¶ 62; he "is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise – nor has he done so for personal or political gain,

*id.* ¶ 66.[9] The Complaint alleges that when Mr. Rich's Counsel filed the D.C. Lawsuit, they "knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, ergo they know that they were filing suit without probable cause." *Id.* ¶ 61.

The Complaint alleges that Mr. Rich conspired with his parents and their attorneys and others to file a "false and frivolous" lawsuit against Mr. Butowsky despite knowing that he and his brother "were responsible for leaking emails from the DNC." *Id.* ¶¶ 56–60; 89–92; 95–96. On March 13, 2018, Mr. Rich's parents, Joel and Mary Rich, filed suit against Mr. Butowsky and others in New York for intentionally causing them emotional distress including by orchestrating the publication of a later-retracted Fox News article that accused their son Seth of stealing DNC documents and conspiring with WikiLeaks. *See* Rich Parents' Litigation.[10] Aaron Rich is neither a party to nor a subject of the Rich Parents' Litigation, which his parents, represented by different law firms (Massey & Gail LLP and Susman Godfrey LLP), filed in a different jurisdiction (New York), based on different legal claims and facts.

**E.   After Mr. Butowsky Filed This Lawsuit, The First-Filed Court Denied His Attempts To Dismiss And Transfer The D.C. Lawsuit To This Court.**

On March 29, 2019—17 days after Mr. Butowsky filed this Complaint—the D.D.C. denied Mr. Butowsky's motion to dismiss the D.C. Lawsuit on personal jurisdiction grounds or to transfer the D.C. Lawsuit to this Court. *See* Mar. 29, 2019 D.C. Lawsuit Minute Order (attached as Ex. F).

---

[9] In addition to defamation, this lawsuit accuses Mr. Rich's Counsel of business disparagement, Compl. ¶¶ 87–88, and of conspiring with the Bauman-related defendants, counsel for Mary and Joel Rich, and The Democratic National Committee, *id.* ¶¶ 93–94. Each of these additional claims relates to and arises out of the same allegedly defamatory statements. *See id.* ¶ 88 (alleging business disparagement because "they or their agents published or conspired with others to publish false and defamatory statements…"); *id.* ¶ 94 ("conspired either directly or through their agents to defame Mr. Butowsky and disparage his business").

[10] *See also* Fox News, *Statement on Coverage of Seth Rich Murder Investigation* (May 23, 2017), *available at* http://www.foxnews.com/politics/2017/05/23/statement-on-coverage-seth-rich-murder-investigation.html.

Mr. Rich filed in D.D.C. a motion for an anti-suit injunction that would prohibit Mr. Butowsky from proceeding with his claims against Mr. Rich's Counsel in this Court, which has been fully briefed and awaits resolution. *See* D.C. Lawsuit Dkt. 52 (motion); Dkt. 58 (opposition); Dkt. 59 (reply). On May 28, 2019, Mr. Butowsky filed a belated answer to Mr. Rich's Complaint, in which he admits *inter alia* to having made the statements at issue in the D.C. Lawsuit. Answer (Dkt. 60), D.C. Lawsuit (attached as Ex. G).

## LEGAL ARGUMENT

There are multiple, independent reasons why the Court should dismiss this action. *First*, the first-to-file rule requires this Court defer to the First-Filed Court because there is substantial overlap between this case and the D.C. Lawsuit. *Infra* § I. *Second*, this Court lacks personal jurisdiction over Mr. Rich's Counsel, who have not availed themselves of this state and whose statements were not made in Texas, directed to Texas, related to business conducted in Texas, and do not relate to Texas. *Infra* § II. *Third*, Mr. Butowsky has failed to state a claim pursuant to Rule 12(b)(6) for any of his causes of action against Mr. Rich's Counsel or Mr. Rich, including because the statements at issue are protected by absolute privilege. *Infra* § III. *Fourth*, the lawsuit must be dismissed because it fails to name Mr. Rich as a defendant, even though he is a necessary party subject to Rule 19 who cannot be joined and in whose absence it would not be equitable to proceed. *Infra* § IV.

## I.   THE FIRST-TO-FILE RULE REQUIRES DEFERENCE TO THE FIRST-FILED COURT.

Federal courts, including the Fifth Circuit, "long have recognized that the principle of comity ***requires*** federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728–29 (5th Cir. 1985) ("*West*

*Gulf*") (emphasis added); *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993).[11] Where, as here, two parallel federal actions "substantially overlap," the second-filed court must dismiss or transfer the case to the first-filed court. *West Gulf* at 729; *Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017); *KCCR, Inc. v. Brunner*, 2010 WL 4236868, at *5 (S.D. Tex. Oct. 21, 2010). "Substantial overlap" does *not* require identity of issues or parties but rather requires only that the two lawsuits involve closely related questions. *See Cadle Co. v. Whataburger, Inc.*, 97-CA-1502, 1998 U.S. Dist. LEXIS 22017, at *3 (W.D. Tex. Mar. 16, 1998), *aff'd* 174 F.3d 599 (5th Cir. 1999); *see also KCCR, Inc.,* 2010 WL 4236868, at *5; *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242, at *11-12 (E.D. Tex. Apr. 22, 2008); *Tex. Instruments*, 815 F. Supp. at 997.

The "ultimate determination of whether there *actually* was a substantial overlap" is not for this Court to decide; rather, the First-Filed Court is to make that determination, and this Court need only find a "likelihood" of substantial overlap. *West Gulf*, 751 F.2d at 730 (original emphasis). As the Fifth Circuit has explained, "once the district court found that the issues ***might*** substantially overlap, the proper course of action" is for the second-filed court to defer to the First-Filed Court. *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 605-06 (5th Cir.1999) (emphasis added). Accordingly, because Mr. Butowsky filed this lawsuit one year after Mr. Rich filed the D.C. Lawsuit, the role of this Court is "properly limited" to determining only whether the Moving

---

[11] While appropriate for Mr. Rich to file an anti-suit injunction in the DC Lawsuit, which remains pending, this Court need not and should not wait for an injunction to issue in the First-Filed Court. *West Gulf*, 751 F.2d at 732 ("it seems clearly better for parties to rely on the discretion of the court in the second-filed action to prevent duplicative litigation, rather than to require them to seek an injunction in another court to prevent such duplicative litigation").

Defendants have demonstrated a "likelihood of substantial overlap" between these two federal actions. *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997).

There is no question that substantial overlap exists between this case and the First-Filed Lawsuit—indeed, Mr. Butowsky has already ***conceded*** the point. In his opposition to Mr. Rich's motion for an anti-suit injunction in the First-Filed Lawsuit, Mr. Butowsky admits that many of the statements at issue in this lawsuit "overlap factually with the allegations" in Mr. Rich's complaint. *See* D.C. Lawsuit, Dkt. 58 (emphasis removed). That admission is binding on Mr. Butowsky here, and it is dispositive of the sole question before this Court. In sum, there is a likelihood of substantial overlap between the two cases, including because they involve "closely related questions or common subject matter," share overlapping "core issues," and "much of the proof adduced would be identical." *Gateway*, 694 F. App'x at 227; *Save Power*, 121 F.3d at 950; *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

Separate from Mr. Butowsky's admission, it is plain from the face of the Complaint that Mr. Butowsky's claims here are the mirror image of Mr. Rich's claims against Mr. Butowsky in the First-Filed Lawsuit. In his Answer in the D.C. Lawsuit, Mr. Butowsky does not dispute saying that Mr. Rich worked with his brother to leak the DNC emails in exchange for money from WikiLeaks; his only claim is that the statements were true. *See* D.C. Lawsuit, Dkt. 60 at ¶ 1–2, 51, 65. As a result, the evidence in the two cases (as to the Moving Defendants) will be identical, and incapable of independent development. *See supra*, Side-by-Side Tables at 7-9. In other words, to succeed on his claims here, Mr. Butowsky must prove the same "fact" that is central to his primary defense in the First-Filed Court: that the allegedly defamatory statements Mr. Butowsky made about Mr. Rich were substantially true. Courts must refuse to hear a second-filed case in these circumstances. *See, e.g.*, *Gateway*, 694 F. App'x at 226–27 (dismissal where the first-filed

"proceeding presents the affirmative case" and the second merely "asserts defenses"); *For the Gusto Motorsports, Inc. v. Lane*, No. 3:16-CV-1074-L, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017) (dismissal where the cases are "essentially mirror images of each other").

This action is precisely the sort of suit that the first-to-file rule exists to prevent. Mr. Butowsky has filed this action to defend the very statements already at issue in the First-Filed Court. Thus, because of the overlapping core issues and evidence, there is considerable risk of duplicative and inconsistent adjudications, including the risk that two courts could reach divergent legal conclusions as to precisely the same underlying statements. As the Fifth Circuit explained, the purpose of the first-filed rule is to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing the hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle*, 174 F.3d at 604.

Importantly, Mr. Butowsky's motion to transfer the First-Filed Lawsuit to this Court has already been denied. *See* Ex. F. So Mr. Butowsky is now asking this Court to authorize an end-run around D.D.C.'s authority to adjudicate the veracity of Mr. Butowsky's statements about Mr. Rich. In *West Gulf*, the Fifth Circuit prohibited such a move in nearly identical circumstances. 751 F.2d at 724. In vacating the trial court's decision not to dismiss the second-filed case, the Fifth Circuit found it "especially problematic" that the first-filed court had denied a motion to transfer the case to Texas and held it "plain that in this case the district court should have stayed, dismissed, or transferred" the second-filed case because the first-filed judge "was in a better position" to adjudicate the case. *Id.* at 730–731.

Although the parties in the two case are not identical, that "does not undermine the appropriateness" of applying the first-to-file rule. *Save Power*, 121 F.3d at 951. "[I]t is well-settled law that cases need not be identical or encompass a complete identity of parties to be duplicative

and fall within the purview of the first-to-file rule." *Id.*; *KCCR, Inc.*, 2010 WL 4236868, at \*8. The first-to-file rule applies any time there is, as here, a likelihood of substantial overlap between two cases, irrespective of the identities or complete overlap of the parties. *Huntsman Corp.*, 2008 U.S. Dist. LEXIS 33242, at \*11-12 (holding two cases need not "involve identical parties for a substantial overlap to exist"). What is more, Mr. Rich and his counsel are in privity, rendering Mr. Butowksy's decision to sue only Mr. Rich's lawyers rather than Mr. Rich as well a distinction without a difference. *See, e.g.*, *West Gulf*, 751 F.2d at 731 n.5 (additional defendants in the second-filed case "is not a reason to deny the simultaneous pendency of two essentially identical actions" because "defendants are in privity" with the plaintiff in the first-filed case); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (discussing history of Supreme Court case law holding that clients stand in the shoes of their attorneys for acts and omissions committed pursuant to a lawsuit). Mr. Butowsky could have attempted to file this lawsuit in the First-Filed-Court, but instead chose to circumvent the D.D.C. by filing suit here. This Court should abstain from adjudicating a second-filed second suit that "smacks of gamesmanship" to ensure that Mr. Butowsky is not "allowed to so easily avoid real involvement in litigation in one forum, and then impose on a second federal forum the burden of considering anew the same issues." *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 713-14 (7th Cir. 1975); *see also West Gulf*, 751 F.2d at 731 n.5 (first-to-file rule applies even where additional defendants in the second-filed case in part because "defendants probably can be made parties" to first-filed action).

## II. **THIS CASE MUST BE DISMISSED AS TO MR. RICH'S COUNSEL PURUSANT TO RULE 12(B)(2) BECAUSE THEY ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS.**

Mr. Butowsky has failed to allege a single fact upon which this Court could find that any of Mr. Rich's Counsel are subject to personal jurisdiction in Texas, and he has therefore failed to meet his burden of making a *prima facie* showing that this Court has personal jurisdiction. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Vinmar Overseas Singapore PTE Ltd. v. PTT Int'l Trading PTE Ltd.*, 538 S.W.3d 126, 133 (Tex. App.—Houston (14th Dist.) 2017, pet. denied). The Complaint provides only a single (and entirely general) allegation as to personal jurisdiction. *See* Compl. ¶ 9 ("the Court has personal jurisdiction over all Defendants because (1) they defamed him in national media, or (2) they conspired with other Defendants to defame him in national media. The injuries from such defamation occurred in this district."). That effort is plainly insufficient to establish personal jurisdiction over out-of-state defendants. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Green Ice Tech., LLC v. Ice Cold 2, LLC*, No. 4:17-CV-00341, 2018 WL 3656476, at *7 (E.D. Tex. Aug. 1, 2018) (Mazzant, J.).

The constitutional requirements of minimum contacts and purposeful availment do not permit the exercise of personal jurisdiction over an out-of-state resident whose sole contact with the forum state is having made statements to the national media regarding an in-state resident. As the Fifth Circuit has stated:

> If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment.

*Panda Brandywine Corp.*, 253 F.3d at 870 (internal citation omitted). Accepting such a theory of jurisdiction "would turn the jurisdictional analysis on its head, focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 427 (5th Cir. 2005).

As the Complaint admits, Mr. Rich's Counsel are not Texas residents. Compl. ¶¶ 11–13. Therefore, they may be subject to personal jurisdiction in Texas if *and only if* they have had "sufficient contacts in Texas to satisfy due process limitations on general or specific jurisdiction in the forum state." *Fielding*, 415 F.3d at 422; *Clemens v. McNamee*, 615 F.3d 374, 379–80 (5th Cir. 2010).[12] Mr. Butowsky has not offered a single factual allegation on which this Court plausibly could conclude that Defendants' allegedly defamatory statements were "meaningfully directed" at Texas or that Texas was the "clear focus" or "clear thrust" of the statements. *Fielding*, 415 F.3d at 428; *see also Clemens*, 615 F.3d at 380.

Mr. Butowsky' Complaint concedes that statements made by Mr. Rich's Counsel were "regarding" the D.C. Lawsuit. Compl. ¶¶ 62; 66. As evident from the D.C. court's order denying Mr. Butowsky's motion to transfer the D.C. Lawsuit here, D.C. (not Texas) is the epicenter of Mr. Rich's lawsuit and the location to which Mr. Butowsky peddled his conspiracy theory, including by encouraging its publication in the *Washington Times*. *See* Ex. F. Mr. Rich's Counsel never mentioned nor referenced Texas, never in any way directed their statements to Texas residents, and in the course of litigating the case have taken no actions to advance the case in, or direct it to, Texas. *Fielding*, 415 F.3d at 426; *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir.).[13]

---

[12] The Fifth Circuit has concluded that courts in Texas need only analyze due process concerns because the Texas long-arm statute reaches constitutional limits. *Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 426.

[13] Mr. Butowsky nowhere alleges facts that could support *general* jurisdiction over Mr. Rich's Counsel in Texas. He does not, for example, allege that any of Mr. Rich's Counsel ever has: resided

**III.   THE COURT MUST DISMISS ALL CLAIMS AGAINST MR. RICH'S COUNSEL AND MR. RICH AS AN UNNAMED CO-CONSPIRATOR PURUSANT TO RULE 12(B)(6).**

**A.   The Defamation Cause of Action as to Mr. Rich's Counsel Fails to State a Claim as a Matter of Law.**

Even accepting as true the "facts" in Mr. Butowsky's Complaint, the Court must dismiss the defamation claims for failing "to state a claim to relief that is plausible on its face" because the basis of its claims are protected by absolute privilege, *infra* § IV(A)(1), and there is no factual allegation supporting actual malice, *infra* § IV(A)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *West v. Dollar Gen. Corp.*, No. 4:09CV255, 2010 WL 816992, at *3 (E.D. Tex. Mar. 4, 2010) (Mazzant, J.); Tex.Civ.Prac. & Rem.Code § 73.001.[14]

---

in Texas; maintained a business or office in Texas; owned property in Texas; paid taxes in Texas; had registered agents in Texas; been employed by or employed any Texas residents or companies; owned any assets in Texas; or held professional licenses in Texas. He has not, therefore, met the "difficult" burden of alleging such "extensive contacts" between Mr. Rich's Counsel and Texas so as to establish general jurisdiction. *See Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 101-02 (5th Cir. 2018); *see also Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559-60 (5th Cir. 2013) ("The general-personal-jurisdiction theory has no substance under these facts. Defendants maintained no offices in Texas; they had no personnel stationed there; they paid no Texas taxes and had no registered agent for service of process; and, although sustained over an appreciable period, transacted only limited and discrete business there."); *Gray, Ritter, & Graham, PC v. Goldman Phipps PLLC*, 511 S.W.3d 639, 657 (Tex. App.—Corpus Christi 2015, pet. denied) ("a nonresident attorney who has only sporadic contacts with Texas will not be subject to general jurisdiction in Texas.").

[14] Mr. Rich's Counsel do not concede that Texas law applies or that a choice-of-law analysis will be required. This motion cites Texas defamation law for the purpose of the Rule 12(b)(6) analysis because the elements Mr. Butowsky must, but fails, to sufficiently plead are the same in the other relevant states even though the later substantive application of the elements to the merits may differ. If this Court determines a choice-of-law analysis is required, Mr. Rich's Counsel respectfully request and reserve the right to brief the issue.

1.   <u>The Statements Of Mr. Rich's Counsel Are Protected By Absolute Privilege.</u>

Mr. Butowsky's defamation claims as to Mr. Rich's Counsel are baseless as a matter of law because Texas has recognized since the nineteenth century "an absolute safeguard from libel suits for allegations made in a judicial proceeding no matter whether the statements are irrelevant to the case at hand, false, or even maliciously stated." *Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 3:07-CV-1847-B, 2009 WL 27448, at *3.[15] "This privilege 'applies to out-of-court communications if the communication bears some relationship to the proceeding and is in furtherance of the attorney's representation.'" *Martinez v. Hellmich Law Grp., P.C.*, 681 F. App'x 323, 326 (5th Cir. 2017) (citing Texas state cases); *Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*, No. A-18-CV-369-LY, 2018 WL 6728486, at *3 (W.D. Tex. Dec. 21, 2018) (same); *50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *8 (W.D. Tex. May 20, 1997) ("Statements made to a reporter are covered by the privilege."); *see* Restatement (Second) of Torts § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial

---

[15] Dismissal is warranted in cases involving absolute privilege. *Priester v. Long Beach Mortg. Co.*, No. 4:10-CV-641, 2011 WL 6116491, at *6 (E.D. Tex. Oct. 13, 2011), *report and recommendation adopted,* No. 4:10CV641, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011) (Mazzant, J.), *aff'd sub nom. Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) (dismissal where any derivative claims that are "predicated" on a dismissed claim that is legally barred); *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 2912808, at *4–5 (E.D. Tex. June 21, 2011), *report and recommendation adopted,* No. 4:10-CV-689, 2011 WL 2882074 (E.D. Tex. July 18, 2011) (Mazzant, J.) (communication "related to litigation is absolutely privileged and these claims are barred and should be dismissed" because "no civil remedy" exists); *Bashore v. Resurgent Capital Servs., L.P.*, No. 4:10-CV-585, 2011 WL 1304461, at *4 (E.D. Tex. Mar. 15, 2011), *report and recommendation adopted,* No. 4:10-CV-585, 2011 WL 1258025 (E.D. Tex. Apr. 4, 2011) (Mazzant, J.), *aff'd,* 452 F. App'x 522 (5th Cir. 2011) ("amendment would be futile"); *50-Off Stores, Inc.*, 1997 WL 790739, at *6 ("the issue of absolute privilege is properly raised by a motion to dismiss").

proceeding in which he participates as counsel, if it has some relation to the proceeding.").[16] "All doubt should be resolved in favor of the communication's relation to the proceeding." *Martinez*, 681 F. App'x at 326.

The statements of Mr. Rich's Counsel are absolutely privileged because they bear more than "some relationship" to the D.C. Lawsuit: as pointed out above, their statements are either verbatim or virtually verbatim allegations in Mr. Rich's Complaint in the D.C. Lawsuit. *See Fringe Benefit Grp.*, 2018 WL 6728486, at *4 (absolute privilege applied where statement "largely mirrors the complaint and adds no allegations or factual information not already contained in the complaint"); *Melgarejo*, 2009 WL 27448, at *3 ("the Court has already squarely rejected the idea that the allegations made by Plaintiff in her Original or Amended Complaints are not protected by the litigation privilege"); *Matta v. May*, 888 F. Supp. 808, 813, 67 Fair Empl. Prac. Cas. (BNA) 1137, 1995 WL 358312 (statements "asserting sexual misconduct" by plaintiff absolutely privileged because they "clearly "relate to" complaint claiming "sexual harassment, discrimination, and assault"). Even where the statements are not "verbatim" recitations of allegations in the D.C. Lawsuit, they are in every respect indistinguishable from those allegations—not a single word from either Mr. Gottlieb's or Ms. Governski's statements departs in any substantive respect from the substantive allegations in the Complaint. *See supra,* Factual Background at 5-10.

Further, regardless of whether the statements were "verbatim," they still are protected by absolute privilege because they plainly and expressly reference the allegations in, were made in furtherance of, and, by the Complaint's own admission, were "regarding" the D.C. Lawsuit. *See*

---

[16] "Whether an out-of-court statement is related to a proposed or existing judicial proceeding is a question of law." *Fringe Benefit Grp. Inc.*, 2018 WL 6728486, at *3.

*supra*, Factual Background at 5-10; *Fringe Benefit Grp. Inc.*, 2018 WL 6728486, at *3 (press release "regarding" the litigation because it "specifically discusses the allegations in the case"); *50-Off Stores, Inc.*, 1997 WL 790739, at *8 (dismissing counterclaims where plaintiff's lawyer's statements to a reporter about defendants participating in an "'international scam"' and conspiring to "'break the law'" were absolutely privileged because they were "made in furtherance of the lawyer's representation of his client"); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239–40 (Tex. App.--Dallas 2000, pet. denied) (absolutely privileged where public statements about conduct of defendants and a "basic description of the allegations" to media because it has "no practical effect different from providing the pleadings to the media").

The challenged statements here directly discussed Mr. Rich's lawsuit, and they were offered in connection with and alongside important events in the lawsuit. Mr. Gottlieb's CNN Appearance took place on the day the D.C. Lawsuit publicly appeared on the court's docket and the introduction to the segment made clear that it was designed to discuss the Complaint. Similarly, the *Vox* Article in which Ms. Governski was quoted was published the day after the Washington Times (a former defendant in the D.C. Lawsuit) retracted its article and apologized to Mr. Rich, and the article explicitly discussed that development in the case. *See supra* Factual Background at 5-6; *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M-BD, 2012 WL 2130982, at *6 (N.D. Tex. Jan. 4, 2012), *report and recommendation adopted,* No. 3-08-CV-0388-M-BD, 2012 WL 2130912 (N.D. Tex. June 12, 2012) (statements related to "an elaborate scheme to defraud insurance companies" absolutely privileged both where summarize the allegations and where "appear in the context of articles reporting the filing of this lawsuit and allegations made by plaintiffs in their complaint").

In his opposition to Mr. Rich's motion for an anti-suit injunction in the D.C. Lawsuit, Mr. Butowsky has relied upon the legally and factually unsupportable assertion that the absolute privilege does not apply to the statements of Mr. Rich's Counsel because they were made "without attributing those defamatory statements" to the lawsuit. D.C. Lawsuit, Dkt. 59. But that is not the law. Out-of-court communications are absolutely protected if they bear "*some* relationship to the proceeding" and are "in furtherance of the attorney's representation.'" *Martinez*, 681 F. App'x at 326 (emphasis added). Mr. Butowsky further relies upon obviously inapposite legal opinions, such as *BancPass, Inc. v. Highway Toll Admin., L.L.C.,* 863 F.3d 391 (5th Cir. 2017). D.C. Lawsuit, Dkt. 58 at 3. In *BancPass*, unlike here, the relevant statements (1) were not made by a lawyer (2) did not even arguably relate to *any* existing litigation (3) and were not made in response to a reporter's specific questions about litigation. The *BancPass* court found that the connection between the statements (made in a letter) and later-filed litigation "was attenuated and hypothetical at best" because at the time of the allegedly defamatory letter, "the judicial proceeding vaguely described in the letter" was "entirely hypothetical." *Id.* at 405.[17] Here, in contrast and for reasons discussed above, it is indisputable from the context and text of the CNN Interview and *Vox* Article that the *entire point* of those publications was to discuss the D.C. Lawsuit, on the same day as critical developments in that case. *Supra* at 5-6.

---

[17] The other cases cited by Mr. Butowsky are even less relevant. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692 (8th Cir. 1979), applied Iowa law, which unlike Texas "recognizes a narrow privilege," *id*. at 697, and it involved statements that were *not* made by an attorney and were *not* related to underlying legal proceedings, *id*. at 699 (statements "do not appear pertinent or relevant to his lawsuit for improper termination of his employment"). To the extent that *Asay* is relevant at all, it only supports Moving Defendants' position because the *Asay* court distinguished the case before it from its prior opinion in *Johnston v. Cartwright*, 355 F.2d 32 (8th Cir. 1966), where statements by an attorney to a newspaper concerning impending libel litigation *were* "protected by an absolute privilege warranting dismissal of a defamation claim filed against" the attorney. *Id*. at 698.

2.   <u>The Complaint Fails To Plead Any Facts Supporting Actual Malice.</u>

Mr. Butowsky has failed to plead any concrete facts from which this Court could plausibly conclude that Mr. Rich's Counsel made their statements with actual malice, as he is required to do as a public figure. *See WFAA-TV*, 978 S.W.2d at 571; *Hamaker v. Chase Manhattan Mortg. Corp.*, No. 4:12-CV-773, 2013 WL 1195886, at *2–3 (E.D. Tex. Jan. 30, 2013), *report and recommendation adopted,* No. 4:12-CV-773, 2013 WL 1196570 (E.D. Tex. Mar. 22, 2013) (Mazzant, J.) ("A statement is made with actual malice if it was made with knowledge that it was false or with reckless disregard of whether it was false or not."). Mr. Butowsky is a public figure: he admits on his LinkedIn profile that he is "frequently honored to be interviewed by the national media, including Fox News Channel, Bloomberg TV, FOX Business Channel, The Blaze TV, ABC, NBC, Sports Illustrated, and many of SIRIUS radio channels, including The David Webb Show," that a Sports Illustrated Article posted an "article featuring me," and he was "featured in the movie from ESPN "Broke." Ex. H (Butowsky LinkedIn Profile); *see also Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978) (upholding trial court determination that plaintiff was public figure because she "has been the subject of published newspaper and other media reports of his activities"). At the very least, Mr. Butowsky is a limited-purpose public figure because he has injected himself into the purported Seth Rich conspiracy, which is the precise topic of this litigation. *WFAA-TV*, 978 S.W.2d at 571 (limited-purpose public figure where there is a "public" controversy in which the plaintiff plays "more than a trivial or tangential role" and to which the alleged defamation is "germane"). As pled in the D.C. Lawsuit, Mr. Butowsky unilaterally inserted himself into the Rich family's private tragedy in 2017 while concurrently pushing Fox News to publish a story falsely accusing Seth Rich of providing the DNC documents to WikiLeaks, and subsequently serving as a named source to multiple publications about Seth and

Aaron Rich. Ex. A ¶¶ 5; 27–32; 34–48; 65; 70–82 (citing news reports and online postings showing Butowsky's public involvement in Rich conspiracy).[18]

The Complaint does not state a single fact that would support a finding of actual malice as to Mr. Rich's Counsel. The Complaint does nothing more than offer the conclusory allegation that Mr. Rich's Counsel "knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks," Compl. ¶ 61, but conclusory allegations of that nature are entitled to no weight even at the pleadings stage. *Rosanova*, 580 F.2d at 862 (no actual malice where no "subjective awareness of probable falsity"); *West*, 2010 WL 816992, at *2 (for 12(b)(6) motion, "the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth."). Mr. Butowsky is legally obliged to allege not just the conclusion that Mr. Rich's counsel "knew" that their statements were false, but some fact that (if true) would demonstrate *how* or *why* Mr. Rich's counsel supposedly knew their statements to be false. Mr. Butowsky has not done so.

## B. The Complaint Fails To Sufficiently Plead Business Disparagement As A Matter Of Law.

Because "business disparagement requires publication by the defendant of statements that are false, maliciously stated, not privileged, and result in special damages," Mr. Butowsky's business disparagement cause of action fails for virtually the same reasons as the defamation claims discussed *supra* because it is based on the exact same statements. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 670–71 (S.D. Tex. 2010). *First*, absolute privilege

---

[18] S*ee also, e.g.*, *Ed Butowsky on retracted story (full interview)*, CNN Tonight (Aug. 2, 2018), https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn (showing Butowsky's public involvement); *Ed Butowsky Discusses the Murder of Seth Rich*, Wayne Allen Root Show, Newsmax TV (June 25, 2018), https://www.newsmaxtv.com/Shows/The-Wayne-Allyn-Root-Show/vid/0_qkaeppm7 (same).

argument applies to business disparagement claims as well. *See Martinez*, 681 F. App'x at 327 ("The Supreme Court of Texas has said that the judicial proceedings privilege can bar claims other than defamation where a plaintiff's damages 'are basically defamation damages.'"); *Fringe Benefit Grp. Inc.*, 2018 WL 6728486, at *3 (noting that "absolute privilege of parties and witnesses to participate in judicial proceedings without having to answer civil actions in damages for libel or slander is well established in Texas law" and "[c]learly, the policy behind the privilege" also applies to business disparagement claims). **Second**, the failure to plead actual malice is dispositive because "a claim for business disparagement *always* requires a plaintiff to prove actual malice." *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 671 (emphasis added). **Finally**, a business disparagement claim requires that the statement "be 'of and concerning' a Plaintiff's specific business property," which means that "the disparaging words must refer to an ascertained or ascertainable business, and it must be the Plaintiff's." *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 685–86 (5th Cir. 2000); *cf Vinmar Overseas Singapore PTE*, 538 S.W.3d at 133 (no allegations that the statements concerned customers or business dealings in Texas). Not only do the statements of Mr. Rich's Counsel not even refer to or relate to Texas, *supra* at 5-10, they in no way refer to Mr. Butowsky's business or business dealings.

### C.  The Complaint Fails To Sufficiently Plead Conspiracy As A Matter of Law.

Mr. Butowsky alleges that (1) Mr. Rich himself conspired with lawyers, Mr. Bauman, and the DNC to "maliciously prosecute" the Rich Parents' Litigation, and that (2) Mr. Rich's Counsel conspired with the same to defame Mr. Butowsky. Compl. ¶ 35. He has "asserted no facts that would make these claims plausible." *Payne v. Barrett Daffin Frappier Turner & Engel, LLP*, No. 4:13CV381, 2014 WL 468243, at *2 (E.D. Tex. Feb. 3, 2014) (Mazzant, J.). The Complaint does not even attempt to allege whether Mr. Rich or Mr. Rich's Counsel ever communicated with the

parties with whom they are accused of conspiring, let alone the basis for why they shared "knowledge of, agreed to, or intended a common objective." *Reddy v. Superior Glob. Sols., Inc.*, No. 4:11-CV-845, 2012 WL 6569800, at *8 (E.D. Tex. Oct. 2, 2012), *report and recommendation adopted,* No. 4:11-CV-845, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012). There is no basis by which the Court could conclude the existence of a conspiracy based on this Complaint which does not even make a threadbare attempt to plead the requisite elements.

## IV. RULE 19 REQUIRES THE COURT DISMISS THIS CASE BECAUSE MR. RICH IS A NECESSARY PARTY OVER WHOM THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION AND THE CASE CANNOT PROCEED IN HIS ABSENCE.

The "federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308–09 (5th Cir. 1986). Therefore, dismissal is appropriate where a necessary party is absent and cannot be joined. FED. R. CIV P. 19(b); FED. RULE. CIV. P. 12(b)(7); *Pulitzer-Polster*, 784 F.2d at 1308–09. Rule 19 is "a highly practical, fact-based" and pragmatic analysis whereby a court should "freely consider various harms that the parties and absentees might suffer." *Pulitzer-Polster*, 784 F.2d at 1309. The factors here overwhelmingly require dismissing the case pursuant to Rule 19 because Mr. Rich is a necessary party who cannot feasibly be joined because he not subject to this Court's jurisdiction, and in whose absence the case should not continue in "equity and good conscience." FED. R. CIV P. 19(b); FED. R. CIV. P. 12(b)(7) (dismissal for "failure to join a party under Rule 19").

### A. Mr. Rich Must Be Joined Pursuant to Rule 19(a)(1)(B).

Mr. Rich is a necessary party to this litigation because he "claims an interest relating to the subject" of this lawsuit and "is so situated that the disposition of the action" in his absence may "as a practical matter impair or impede" his "ability to protect that interest." FED. R. CIV P.

19(a)(1)(B); *Pulitzer-Polster*, 784 F.2d at 1310. That Mr. Rich claims an "interest relating to the subject" of the lawsuit is evident from the fact that he filed the D.C. Lawsuit in order to disprove what Mr. Butowsky seeks to prove here: that Mr. Rich conspired with his brother to commit theft, treason, and other illegal acts. *Pulitzer-Polster*, 784 F.2d at 1310; Compl. ¶¶ 85–96.[19] Mr. Rich's interest in proving that he did not, in fact, commit any of the crimes Mr. Butowsky has accused him of committing and in holding Mr. Butowsky accountable for his role in spreading lies will be harmed if this Court adjudicates this lawsuit, which centers on that same core issue. *Pulitzer-Polster*, 784 F.2d at 1310 ("The case law under Rule 19 has recognized that the establishment of a negative precedent can provide the requisite prejudice to the absentee.").

In *Pulitzer-Polster*, the First Circuit upheld the district court's decision to dismiss a lawsuit on grounds that the plaintiff's daughter and sister were necessary parties because the allegations in the federal lawsuit were "identical to the substance" of a pending state case, namely whether another family member acted improperly as the sole voting trustee of a family business. *Id.* at 1306, 1309. The Court held that the absent parties "may be harmed by the federal court's resolution" the "very similar *issues* in the two suits" and the "possibility of a precedent-setting effect" of findings relating to the "very same acts" and the credibility of "the same witnesses will come to the witness stand and say much of the same things in the two lawsuits." *Id.* Other courts have reached similar results. *See Loyola v. Am. Homes for Rent Prop. II, LLC*, 2014 WL 12464926, at *6 (W.D. Tex. Sept. 3, 2014), *report and recommendation adopted,* 2014 WL 12461968 (W.D. Tex. Sept. 26, 2014) (necessary party where resolution of the "core issue" of the litigation involves

---

[19] Moving Defendants acknowledge that not all alleged co-conspirators in civil conspiracy actions are necessary parties, but this lawsuit does not accuse Mr. Rich of garden variety conspiracy. The *entire* action against Moving Defendants relies on proving that Mr. Rich—an absent party—committed federal crimes including theft and treason.

the "conduct" of the absent third party); *Deliverance Poker, LLC v. Tiltware, LLC*, 771 F. Supp. 2d 658, 665, 2011 WL 1085333 (W.D. Tex. 2011) (necessary party where "the heart of this lawsuit" was whether the missing party committed tort and his absence would "as a practical matter impair or impede" his "ability to protect his interests when he is arguing for the opposite result" in another court); *cf Olympus Capital KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV*, 2007 WL 9712192, at *5 (N.D. Tex. Sept. 24, 2007) ("Because Plaintiffs' claims against Defendants are inextricably intertwined with allegations of misconduct" by a third party in concern with the defendant, allowing the Plaintiff to pursue its claims" against the defendant would be "highly inequitable" to the absent third party). This Court should follow suit.

### B. Rule 19(b) Requires Dismissal Because It is Neither Feasible To Join Mr. Rich Nor Equitable To Proceed In His Absence.

It is not feasible to join Mr. Rich to this litigation because this Court lacks personal jurisdiction over him. *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260 (N.D. Tex. 2014) (joinder not feasible under Rule 19(b) if "the court cannot gain jurisdiction over the necessary party"). Mr. Rich is a resident of Colorado, *see* Ex. A ¶ 10, has no presence of any kind in Texas, and has not engaged in any conduct in Texas or directed to Texas.

The Court cannot in good conscience allow this lawsuit to proceed pursuant to the factors enumerated in Rule 19(b). *Pulitzer-Polster*, 784 F.2d at 1312 (Rule 19(b) factors looks to "interests that affect four categories of persons: the plaintiff, the defendant, the absentees and the public"). *First*, Mr. Butowsky's interest in filing this lawsuit in this Court is weak—there is no reason why the Court should permit Mr. Butowsky to pursue a "needless" duplicative lawsuit here that achieve the same objectives as existing litigation in D.C., where Mr. Butowsky is subject to jurisdiction and would adduce the same proof in his defense as in his affirmative case here. *Pulitzer-Polster*, 784 F.2d at 1312 (listing Rule 19(b) factors, including that one of its "purposes" is "the avoidance

of multiple litigation" that seek "the same objectives" and share witnesses); *Jaffer*, 301 F.R.D. at 265 (dismissal where "a proper alternative forum for this litigation does exist").[20] ***Second***, the Moving Defendants possess an interest in avoiding "multiple and repetitive" litigation since defending themselves here will necessarily include the exact same evidence and witnesses as would litigating Mr. Rich's case in the First-Filed Lawsuit. *See Pulitzer-Polster*, 784 F.2d at 1313 (defendant interested in "avoiding multiple and repetitive litigation"). ***Third***, for the reasons discussed above, Mr. Rich would be prejudiced by the possibility of a "negative precedent." *Supra* Section IV.B; *Pulitzer-Polster*, 784 F.2d at 1313; *Jaffer*, 301 F.R.D. at 265; *see also Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 633, (5th Cir. 2009) (the "specter of a determination" of the rights of a non-party without "its participation in the suit is itself sufficiently prejudicial to render" it indispensable); *Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) (prejudice where "though not technically bound a judgment would most assuredly create a cloud" on the missing party). ***Finally***, the public interest in "efficient dispute resolution" favors dismissal here, where permitting a "needless" second lawsuit would add unnecessary "burdens on the parties and the court system." *Pulitzer-Polster*, 784 F.2d at 1313.

## CONCLUSION

For the forgoing reasons, Moving Defendants respectfully request that the Court dismiss this lawsuit as to Mr. Rich's Counsel and Mr. Rich as a non-party co-conspirator. Alternatively, they request the Court transfer the lawsuit to the First-Filed Court.

---

[20] Mr. Butowsky could have, and should have, filed any claims he had against Mr. Rich or his counsel as a counterclaim in the D.C. Lawsuit. Mr. Rich and his counsel reserve any and all rights as to whether Mr. Butowsky has waived his right to do so.

Dated: June 21, 2019      /s/ *Paul J. Skiermont*

          SKIERMONT DERBY LLP
          Paul J. Skiermont (TX Bar No. 24033073)
          Christopher M. Hodge (TX Bar No. 24074423)
          1601 Elm Street, Suite 4400
          Dallas, TX 75201
          Tel: (214) 978-6600
          Fax: (214) 978-6601
          pskiermont@skiermontderby.com
          chodge@skiermontderby.com

          ***Attorneys for Defendants Michael Gottlieb, Meryl***
          ***Governski, and Boies Schiller Flexner LLP***

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2019, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF filing system.


*/s/ Paul J. Skiermont*

30