# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EDWARD BUTOWSKY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-0180-ALM-KPJ |
| | § | |
| MICHAEL GOTTLIEB, *et al.* | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S
## MOTION TO DISMISS UNDER RULE 12(b)(6)

---

**VINSON & ELKINS L.L.P.**
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

*Attorneys for Defendants*
*Vox Media, Inc. and Jane Coaston*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ISSUES .................................................................................................. 3

FACTUAL BACKGROUND ................................................................................................ 4

    A.   Seth Rich's parents sue Fox and Butowsky over the Retracted Fox News Story. ............. 4

    B.   *Vox* reports on the allegations by Joel and Mary Rich. ...................................... 6

    C.   *Vox* reports on *The Washington Times*'s retraction. ...................................... 6

APPLICABLE LEGAL STANDARDS .................................................................................. 7

ARGUMENT ....................................................................................................................... 8

    A.   Some of the challenged statements are not defamatory or otherwise actionable. ............... 9

    B.   All of the challenged statements are protected under the "fair report" privilege and Texas's third-party allegations defense. ........................................................... 12

    C.   Butowsky fails to satisfy his burden as a public figure to plead actual malice. ................. 18

        1.   Butowsky is a limited-purpose public figure. ................................................. 19

        2.   Butowsky fails to plausibly allege actual malice. ............................................. 21

    D.   Butowsky's business disparagement claim fails for the same reasons as his defamation claim. ....................................................................................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*,
  402 P.3d 665 (Nev. 2017) ..................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................... 7, 11

*Barber v. Nationwide Commc'ns, Inc.*,
  No. 3:95-CV-0656-H, 1995 WL 940517 (N.D. Tex. May 30, 1995) ..................... 9

*Bauman v. Butowsky*,
  No. 18-01191 (RJL), 2019 WL 1433595 (D.D.C. Mar. 29, 2019) ............. 10, 19, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................... 7, 8, 11

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ..................................................... 18

*Butowsky v. Folkenflik*,
  No. 4:18-cv-00442-ALM (E.D. Tex.) ..................................................... 21

*Cabello-Rondon v. Dow Jones & Co.*,
  720 F. App'x 87 (2d Cir. 2018) ..................................................... 18

*Dallas Morning News, Inc. v. Hall*,
  -- S.W.3d --, 2019 WL 2063576 (Tex. May 10, 2019) ..................... 13, 14

*Dallas Morning News, Inc. v. Tatum*,
  554 S.W.3d 614 (Tex. 2018) ..................................................... 9

*Danawala v. Hous. Lighting & Power Co.*,
  14 F.3d 251 (5th Cir. 1993) ..................................................... 24

*Egiazaryan v. Zalmayev*,
  No. 11-Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ................. 23

*Ferguson v. Bank of N.Y. Mellon Corp.*,
  802 F.3d 777 (5th Cir. 2015) ..................................................... 8

*Forbes Inc. v. Granada Biosciences, Inc.*,
  124 S.W.3d 167 (Tex. 2003) ..................................................... 24

*Freedom Newspapers of Tex. v. Cantu*,
  168 S.W.3d 847 (Tex. 2005) ..................................................... 24

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ..................................................... 19

*Hancock v. Variyam*,
  400 S.W.3d 59 (Tex. 2013) ..................................................... 9, 10

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986) ..................................................... 24

*Huckabee v. Time Warner Entm't Co.*,
   19 S.W.3d 413 (Tex. 2000) ................................................................. 23

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015) ................................................................ 24

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) ................................................................. 8

*KBMT Operating Co. v. Toledo*,
   492 S.W.3d 710 (Tex. 2016) ................................................................ 13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ................................................................. 8

*Lovelace v. Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ................................................................. 8

*Maxwell v. Henry*,
   815 F. Supp. 213 (S.D. Tex. 1993) ...................................................... 18

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .............................................................. 23

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
   512 F.3d 137 (5th Cir. 2007) ................................................................. 7

*New Times, Inc. v. Isaacks*,
   146 S.W.3d 144 (Tex. 2004) ................................................................ 23

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ................................................................. 8

*Obey v. Frisco Med. Ctr., L.L.P.*,
   No. 4:13-CV-656, 2015 WL 417509 (E.D. Tex. Jan. 30, 2015) ............ 9

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
   113 F.3d 556 (5th Cir. 1997) ......................................................... 21, 23

*Provencio v. Paradigm Media, Inc.*,
   44 S.W.3d 677 (Tex. App.—El Paso 2001, no pet.) ............................. 24

*Reed v. City of Arlington*,
   650 F.3d 571 (5th Cir. 2011) ............................................................... 10

*Rich v. Fox News Network, LLC*,
   No. 18-cv-2223 (D.D.C. filed Mar. 13, 2018) ....................................... 4

*Smith v. Clinton*,
   253 F. Supp. 3d 222 (D.D.C. 2017) *aff'd*, 886 F.3d 122 (D.C. Cir. 2018),
   *cert. denied*, 139 S. Ct. 459 (2018) ..................................................... 11

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ............................................................................. 21

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ............................................................. 19

*Tex. Monthly, Inc. v. Transamerican Nat. Gas Corp.*,
    7 S.W.3d 801 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ................................................ 13

*Trotter v. Jack Anderson Enters., Inc.*,
    818 F.2d 431 (5th Cir. 1987) ................................................................................................ 19

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................................................................ 20

*Wheeler v. Twenty-First Century Fox*,
    322 F. Supp. 3d 445 (S.D.N.Y. 2018) .................................................................................. 10

**Statutes**

Tex. Civ. Prac. & Rem. Code § 73.002(a) ........................................................................... 13, 18

Tex. Civ. Prac. & Rem. Code § 73.002(b)(1)(A) ........................................................................ 13

Tex. Civ. Prac. & Rem. Code § 73.005(b) ....................................................................... 13, 17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... passim

Fed. R. Evid. 201 ......................................................................................................................... 20

Subject to and without waiving their motion to dismiss for lack of personal jurisdiction, Defendants Vox Media, Inc. ("Vox Media") and Jane Coaston ("Coaston") (collectively, the "Vox Media Defendants") move to dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6), and state as follows:

## INTRODUCTION

Plaintiff Edward Butowsky touts himself as an internationally-known financial advisor and political commentator, who has appeared on all the major television networks and cable news channels. Since 2016, however, Butowsky has been known primarily for his controversial role in promoting a widely-discredited conspiracy theory about the murder of Seth Rich, a young staffer with the Democratic National Committee ("DNC"). Seth was killed in a late-night shooting in his Washington, D.C., neighborhood in July 2016. Law enforcement believes Seth's murder was a botched robbery, but his killer has not been apprehended.

From the beginning, Butowsky has exploited this tragedy for his own political and self-promotional ends. According to allegations in lawsuits filed by Seth's family members, Butowsky gained the Rich family's trust by promising to help them find Seth's killer, even arranging for them to hire Rod Wheeler, a former homicide detective, as the family's private investigator. But Butowsky and Wheeler had an ulterior motive: to use their access to the Rich family to promote a conspiracy theory that blamed Seth for the massive leak of DNC emails during the 2016 presidential campaign. This conspiracy theory became the subject of a short-lived Fox News report, which was retracted by the network just one week after its publication in May 2017. Since then, Butowsky has continued to promote the Seth Rich conspiracy theory, even though the government has refuted key elements of it.

According to the Riches, Butowsky's conduct and statements have caused them unimaginable pain, forcing them to deal with baseless allegations while they grieve Seth's death.

In March 2018, Seth's parents, Joel and Mary Rich, filed suit against Butowsky, Fox News, and Fox News producer Malia Zimmerman in federal court in New York. The same month, Seth's brother, Aaron Rich, sued Butowsky and others for defamation over their repeated public statements claiming that Aaron was involved in the DNC email leak and had advance knowledge that Seth would be killed. Joel and Mary's lawsuit was dismissed in August 2018, but Aaron's remains pending in federal court in Washington, D.C.

Jane Coaston, who covers media and politics for Vox Media, reported on the Seth Rich conspiracy theory in two articles published on Vox.com (the "*Vox* Articles"). The first article, published on March 23, 2018, reported primarily on the allegations in Joel and Mary's lawsuit, including additional background on the discredited conspiracy theory and a discussion of the First Amendment hurdles their claims would face.[1] The second article, published on October 1, 2018, covered *The Washington Times*'s retraction of its Seth Rich report as a result of the claims in Aaron's lawsuit.[2] Both articles contained extensive hyperlinks to court filings and various news reports on the Seth Rich conspiracy theory.

With Fox News and *The Washington Times* having retracted their reporting on the Seth Rich conspiracy theory, and while he is still defending himself against defamation claims by Seth's brother in Washington, D.C., Butowsky now seeks to turn the tables on his adversaries and to chill media reporting on his much-criticized role in the controversy. Butowsky asserts claims against (among others) the lawyers who have represented the Riches, the Rich family's spokesperson, and the DNC. He also alleges defamation and business disparagement claims against various news

---

[1] A copy of the first *Vox* Article is attached as Exhibit A to the Declaration of Marc Fuller ("Fuller Decl."). The documents that are hyperlinked in the article are attached as Exhibits A(1)-(17).
[2] A copy of the second *Vox* Article is attached as Exhibit B to the Fuller Declaration. The documents that are hyperlinked in the article are attached as Exhibits B(1)-(12).

outlets and their reporters—including *The New York Times*, CNN, and Vox Media—all of whom covered the public controversy and litigation surrounding the Seth Rich conspiracy theory.

Butowsky's attempt to hold the Vox Media Defendants liable for accurately reporting on the litigation and public controversy surrounding the Seth Rich conspiracy theory is fatally flawed. Most of the statements that Butowsky challenges are not actionable, and all of the challenged statements are protected under the "fair report" privilege and Texas's broad "third-party allegations" defense. Moreover, Butowsky is a limited-purpose public figure, yet fails to plead any facts that would plausibly support a finding of actual malice. And his business disparagement claim fails for the additional reason that he fails to plead special damages. Thus, the Court should dismiss his claims with prejudice and without leave to amend.

## STATEMENT OF ISSUES

1. Should the Court dismiss Butowsky's defamation claim against the Vox Media Defendants on the grounds that certain of the challenged statements in the Vox Articles are not defamatory or otherwise actionable?

2. Should the Court dismiss Butowsky's claim against the Vox Media Defendants on the grounds that the *Vox* Articles are privileged as fair and true reports of judicial proceedings and of allegations by third parties on matters of public concern?

3. Should the Court dismiss Butowsky's claim against the Vox Media Defendants on the grounds that he is a limited-purpose public figure and fails to satisfy his burden to plausibly allege actual malice?

4. Should the Court dismiss Butowsky's business disparagement claim for the same reasons, and for the additional reason that he fails to plead special damages?

## FACTUAL BACKGROUND

**A.    Seth Rich's parents sue Fox and Butowsky over the Retracted Fox News Story.**

On March 13, 2018, Joel and Mary Rich filed suit against Fox News, Fox News producer Zimmerman, and Fox News contributor Butowsky in the United States District Court for the Southern District of New York. *See Rich v. Fox News Network, LLC*, No. 18-cv-2223 (S.D.N.Y. filed Mar. 13, 2018).[3]  The Riches alleged that Fox, Zimmerman, and Butowsky had worked to concoct a false conspiracy theory blaming their murdered son for the DNC email leak.  Their complaint told a story of betrayal.  According to the Riches, Butowsky (a Texan) gained access to them by insinuating himself into their religious community in Omaha, Nebraska.  Fuller Decl. Ex. A(2) at ¶ 25.  Shortly after they met, Butowsky told the Riches that he had heard from a third party that Julian Assange claimed to have obtained the DNC emails from Seth.  *Id.* at ¶ 26.  The Riches say they assured Butowsky that there was no way that was true.  *Id.*

Still, Butowsky continued to pursue the Riches.  So, too, did Zimmerman, who contacted them to request information about Seth, "supposedly to 'bring further attention to his case.'"  *Id.* at ¶ 30.  Butowsky also introduced the Riches to Wheeler, a former Washington, D.C. homicide detective.  *Id.* at ¶ 41.  Butowsky offered to pay for the Riches to hire Wheeler, whom Butowsky presented as an independent private investigator.  *Id.*  In fact, like Butowsky, Wheeler was a Fox contributor and behind-the-scenes operative.  *Id.* at ¶ 33.

According to the Riches, "Wheeler worked with Fox News, Zimmerman, and Butowsky to develop the fictitious article for Fox News without telling [them] he was doing so."  *Id.* at ¶ 59.  The Riches further alleged that Butowsky and Wheeler met with Sean Spicer, then the White House Press Secretary, to discuss their development of the Fox News story.  *Id.* at ¶ 63-64.  Shortly

---

[3] A copy of Joel and Mary Rich's complaint is attached to the Fuller Declaration as Ex. A(2).

before publication, Zimmerman contacted the Riches for a comment on her false assertion that she had been in contact with a federal agent who had seen an FBI report that Seth had emailed with Wikileaks. *Id.* at ¶ 78. Wheeler separately contacted the Riches, who told him that Zimmerman's forthcoming report was baseless. *Id.* at ¶ 80. According to the Riches' complaint, just one day before publication, Butowsky continued to push Wheeler on what the story should say:

- "If you can, try to highlight this puts the Russian hacking story to rest."

- "Just reflecting: we need to emphasize the FBI has a report that has been suppressed that shows that Seth rich [sic] did this. With Comey recently being fired this will gain a lot of attention and it's true."; and

- "The above and stating that the Russian hacking narrative of stealing the records from the DNC is officially dead."

*Id.* at ¶ 86.

The Fox News story was published on May 16, 2017. The story quoted an unnamed federal investigator as saying, "I have seen and read the emails between Seth Rich and Wikileaks." *Id.* at ¶ 87. The report also quoted Wheeler as stating that "[m]y investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks." *Id.* at ¶¶ 88-89. According to the Riches, both of these statements were false. *Id.*

As the Riches' complaint explains, the story quickly fell apart. Wheeler admitted to other media outlets that he had not actually spoken with any federal investigators or seen any emails between Seth and Wikileaks. *Id.* at ¶¶ 92-96. An FBI spokesperson also confirmed that the FBI had played no part in the investigation of Seth's murder. *Id.* at ¶ 97. On May 18, 2018, the Riches demanded a retraction from Fox News. *Id.* at ¶ 98. Several days later, on May 23, they wrote an op-ed in *The Washington Post*, headlined "We're Seth Rich's parents. Stop politicizing our son's murder." Fuller Ex. A(14). The Riches' op-ed confirmed that investigators had found no emails

between Seth and Wikileaks, and that there was no evidence of any leak by Seth. *Id.* That day, Fox News retracted its report, stating: "The article was not initially subject to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed." *Id.* at ¶ 107.

**B.** *Vox* **reports on the allegations by Joel and Mary Rich.**

On March 23, 2018, Coaston published an article on *Vox*'s website, headlined "Seth Rich's parents are taking their fight against Fox News to court." As the headline suggested, the article covered the allegations in the Riches' lawsuit. Fuller Decl. Ex. A. In addition to reporting these allegations, the article contained a link to a complete copy of the Riches' complaint and to highlighted excerpts from that pleading. Fuller Decl. Ex. A(2). The article also provided background context—including links to other news reports—on the Seth Rich conspiracy theory, on the federal government's refutation of key parts of the theory, and on other lawsuits arising out of the controversy. *See, e.g.*, Fuller Decl. Exs. A(1), A(5). Finally, the article included a First Amendment discussion about whether Fox News could be held liable by the Riches on a claim for intentional infliction of emotional distress. Fuller Decl. Ex. A at 8-11.

**C.** *Vox* **reports on** *The Washington Times***'s retraction.**

One of the other cases discussed in Coaston's March 23, 2018 article was the lawsuit brought by Seth's brother, Aaron, against Butowsky and several conservative media outlets, including *The Washington Times*, for spreading "vicious lies" about Aaron's alleged involvement in Seth's death. Fuller Decl. Ex. A at 2; Ex. A(1). On September 30, 2018, Aaron achieved a significant victory against one of the defendants in that case, when *The Washington Times* formally retracted an op-ed column arguing that Seth's death had the "earmarks of a targeted hit job" and asserting that Seth and Aaron had been paid by Wikileaks for the DNC emails. Ex. A at 3. The *Washington Times*' retraction stated:

> The Washington Times published an op-ed column titled, "More cover-up questions: The curious murder of Seth Rich poses questions that just won't stay under the official rug," by Adm. James Lyons (Ret.) (the "Column"), on March 1 online and on March 2 in its paper editions. The Column included statements about Aaron Rich, the brother of former Democratic National Committee staffer Seth Rich, that we now believe to be false.
>
> One such statement was that: "Interestingly, it is well known in the intelligence circles that Seth Rich and his brother, Aaron Rich, downloaded the DNC emails and was paid by Wikileaks for that information." The Washington Times now does not have any basis to believe any part of that statement to be true, and The Washington Times retracts it in its entirety.
>
> The Column also stated: "Also, why hasn't Aaron Rich been interviewed [by law enforcement], and where is he?" The Washington Times understands that law enforcement officials have interviewed Mr. Rich and that he has cooperated with their investigation. The Washington Times did not intend to imply that Mr. Rich has obstructed justice in any way, and The Washington Times retracts and disavows any such implication.
>
> The Washington Times apologizes to Mr. Rich and his family. All online copies of the Column have been deleted and all online content referencing the Column has been deleted to the extent within The Washington Times' control.

*Id.* at 3-4.

The next day, Coaston published a second article on *Vox*'s website, headlined "A right-leaning newspaper is finally retracting the conspiracy theories it published about Seth Rich." Fuller Decl. Ex. B at 1. Like the first article, the second *Vox* Article recounted the Rich family's ordeal and their allegations against Butowsky and others, citing court filings and quoting from her first article summarizing those filings. *Id.* at 5-6. It also reported on developments in the cases, noting that Joel and Mary's lawsuit had been dismissed a month earlier. *Id.* at 5. As with the first *Vox* Article, Coaston's second article provided links to other media reporting on the Seth Rich conspiracy theory. Fuller Decl. Ex. B(1)-B(12).

## APPLICABLE LEGAL STANDARDS

Although a complaint need not contain "detailed factual allegations," it must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to

allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547). A complaint that does no more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the facts stated in the Complaint, documents incorporated by reference or attached to the Complaint, and facts that are subject to judicial notice. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). Documents are incorporated by reference when "'they are central to the claim and referenced by the complaint.'" *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

## ARGUMENT

Butowsky asserts two claims against the Vox Media Defendants—for defamation and for business disparagement—based on statements in the *Vox* Articles. Both claims fail as a matter of law. Some of the statements Butowsky challenges are not capable of defamatory meaning. Moreover, all of the challenged statements merely report on allegations made by others, including members of the Rich family in lawsuits brought by them against Butowsky. These statements are protected under the "fair report" privilege, which Butowsky cannot overcome. Even if Butowsky could identify any actionable, nonprivileged statements in the *Vox* Articles, he does not come close to satisfying his burden as a limited-purpose public figure to plead facts that would plausibly support a finding of actual malice.

8

**A.      Some of the challenged statements are not defamatory or otherwise actionable.**

A libel plaintiff bears the burden of identifying each specific statement upon which his claim is based. *Barber v. Nationwide Commc'ns, Inc.*, No. 3:95-CV-0656-H, 1995 WL 940517, at *3 (N.D. Tex. May 30, 1995). To be actionable, a challenged statement must be defamatory, exposing the plaintiff to public hatred, contempt, or ridicule. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637 (Tex. 2018). Texas law recognizes two types of defamatory speech: defamation *per se* and defamation *per quod*. The former includes statements that inherently injure a person in his office, profession, or occupation, whereas the latter requires an additional showing and proof of actual damages. *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013). Moreover, a defamatory statement must be factually verifiable; opinion and rhetorical hyperbole are not actionable. *Tatum*, 554 S.W.3d at 624. The court decides these issues as a matter of law. *Obey v. Frisco Med. Ctr., L.L.P.*, No. 4:13-CV-656, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015) (Mazzant, J.).

Butowsky does not identify any statement in the *Vox* Articles that satisfies these requirements. As discussed below, *see infra* at 12-18, the statements he challenges are actually reports of allegations made by the Riches and by others, not by the Vox Media Defendants. Nevertheless, even if the challenged statements could be construed as direct accusations, several of those statements are not actionable. For example, Butowsky challenges the following statement in the first *Vox* Article:

> But the Riches' story isn't just about conspiracy theorists—it's about a conspiracy of Fox News contributors who **concocted a lie** while purporting to be trying to find Seth's killer.

Compl. ¶ 75 (emphasis added). According to Butowsky, this statement is defamatory because it accuses him of lying. *Id.* But Butowsky is judicially estopped from making such a claim because he recently prevailed on this issue as a libel defendant. In March 2019, he obtained the Rule

12(b)(6) dismissal of claims by the Rich family's former spokesperson, Brad Bauman. *Bauman v. Butowsky*, No. 18-01191 (RJL), 2019 WL 1433595, at *8-9 (D.D.C. Mar. 29, 2019). One of the challenged statements in that case was Butowsky's assertion on CNN that Bauman had been involved in "crafting a lie." *Id.* at *9. Butowsky successfully argued that such a statement was not defamatory in the context of the broader, back-and-forth public controversy over the truth of the Seth Rich conspiracy theory.[4] *Id.* Thus, Butowsky is judicially estopped from resting his own defamation claims on an essentially identical statement. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (court may apply judicial estoppel if "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) the court accepted the prior position; and (3) the party did not act inadvertently").

Even if Butowsky were not judicially estopped, he cannot base a libel claim under Texas law on a statement accusing him of not telling the truth. The Texas Supreme Court has held that an allegation that someone lacks veracity, or is a liar, is not defamatory *per se* unless the "specific trait of truthfulness is [] peculiar or unique to" to the plaintiff's profession. *Hancock*, 400 S.W.3d 67. Butowsky has not pleaded, nor could he, that his career as a financial advisor depends on a reputation for truthfulness, particularly on issues of political controversy. Accordingly, the statement that he was among a group of Fox News contributors who "concocted a lie" is (at most) defamatory *per quod* and thus requires a showing of actual damages resulting from the alleged defamation. *Id.* at 68. Butowsky does not plead any damages directly resulting from the *Vox* Articles, much less from this challenged statement. His only allegation of economic harm is his

---

[4] Similarly, Butowsky obtained the dismissal of Wheeler's lawsuit against him, in part by arguing successfully that his statement that Wheeler has a "major battle with the truth" was not capable of defamatory meaning. *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 452, 457 (S.D.N.Y. 2018).

general averment that he lost "one third of his clients" as a result of the actions and statements of all 22 defendants. Compl. ¶ 88. Such a vague and conclusory allegation falls far short of satisfying his burden under *Iqbal/Twombly*.

For the same reasons, statements challenging the truth of the Seth Rich conspiracy theory are not actionable. Butowsky contends that the Vox Media Defendants defamed him by repeating Joel Rich's claim that he told Butowsky that Seth was not involved with Wikileaks and by repeating Wheeler's claim that he never told Butowsky he saw emails between Seth and Wikileaks. Compl. ¶¶ 76, 77. On both of these points, Butowsky contends that his version of events is the truth and that Joel Rich and Rod Wheeler are both lying. *Id.* Butowsky also challenges the statement in the first *Vox* Article that "there was no investigation, either—the FBI had never even seen Seth's laptop." *Id.* According to Butowsky, this is incorrect; he contends that "the FBI provided *at least some* support" to local law enforcement. *Id.* (emphasis added).

These statements are not capable of defamatory meaning, as they do not expose Butowsky to public hatred, contempt, or ridicule. Indeed, they do not even accuse him of lying. At most, they endorse a version of events that is different from his version. Such statements are not defamatory, particularly in the context of a hot-button public controversy. *See, e.g.*, *Smith v. Clinton*, 253 F. Supp. 3d 222, 241 (D.D.C. 2017) (dismissing defamation claims against former Secretary of State Hillary Clinton, who disputed the accuracy of plaintiff's version of events surrounding the attack on the U.S. embassy in Benghazi, Libya), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 459 (2018). The truth or falsity of the Seth Rich conspiracy theory should be a matter of public debate, not defamation litigation.

Finally, Butowsky challenges the following statement:

> But by challenging how the story of their son's murder was manipulated by people who wormed their way into their inner

> circle—even gaining access to their religious community—the
> Riches could shine a light on the darkest underbelly of the
> conservative media apparatus.

Compl. ¶ 77. Butowsky alleges that he "did not **manipulate** anything, nor did he ***'worm' his way*** into the Riches' inner circle or religious community[.]" *Id.* (emphasis added). But whether Butowsky did or did not "manipulate" the controversy over Seth Rich's murder is not sufficiently verifiable to support a valid defamation claim. Butowsky's Complaint confirms that he fully appreciates the political dimensions of the controversy and that he engaged in the debate over it in a way that served his political ends, including his desire to discredit what he describes as the "Russia Collusion Hoax." *Id.* ¶¶ 34-35. Whether Butowsky's politically-motivated spin— regardless of its truth—qualifies as "manipulating" the controversy is not something that a jury could determine as a matter of fact.

The same analysis applies to the statement that Butowsky "wormed his way" into the Riches' religious community. Butowsky does not dispute that he gained access to the Rich family by posting a message on Facebook that he was looking to make connections within the Jewish community in Omaha. A Texas resident, Butowsky offers no reason why he would be seeking to make connections in a Nebraska religious community other than that he was trying to work his way into the lives of Joel and Mary Rich. And Butowsky's Complaint confirms that he made that contact in order to explore rumors that Seth had leaked the DNC emails to Wikileaks. *Id.* ¶¶ 35-36. Whether this conduct is accurately described as "worming his way" into the Riches' religious community cannot be the basis of a viable defamation claim.

**B.**   **All of the challenged statements are protected under the "fair report" privilege and Texas's third-party allegations defense.**

Even if Butowsky could show that the statements he challenges in the *Vox* Articles are actionable, he cannot overcome the "fair report" privilege and the third-party allegations defense

that protect them. Under Texas law, "media outlets enjoy a privilege that protects publications describing official proceedings of public concern." *See Dallas Morning News, Inc. v. Hall*, -- S.W.3d --, 2019 WL 2063576, at *8 (Tex. May 10, 2019) (citing Tex. Civ. Prac. & Rem. Code § 73.002(a)). "If the report of the proceeding is substantially true—'a fair, true, and impartial account'—the publication is privileged and not actionable." *Hall*, 2019 WL 2063576, at *8 (citing *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016)). "Similarly, media outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense[,]" without regard for whether the underlying allegation is true. *Hall*, 2019 WL 2063576, at *8 (citing Tex. Civ. Prac. & Rem. Code § 73.002(a)). In determining whether the media report has accurately conveyed the proceedings or allegations, courts grant the media "considerable latitude." *See Tex. Monthly, Inc. v. Transamerican Nat. Gas Corp.*, 7 S.W.3d 801, 806 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("The Texas Supreme Court's application of the substantial truth test to a report of a judicial proceeding demonstrates that considerable latitude has been given in this context."). Minor inaccuracies are overlooked, as the court focuses on whether the report's description of the proceeding is substantially true. *Hall*, 2019 WL 2063576, at *7-8.

The challenged statements in the *Vox* Articles are well within the scope of this broad protection. Tex. Civ. Prac. & Rem. Code §§ 73.002(a), § (b)(1)(A); § 73.005(b). Both articles clearly indicate that they are reporting on allegations by the Riches and others, and the reporting accurately conveys those allegations. The title of the first *Vox* Article—"Seth Rich's parents are taking their fight against Fox News to court"—signals that the article is reporting on a lawsuit by the Riches. Fuller Decl. Ex. A at 1. Moreover, the body of the article is replete with language expressly sourcing the allegations to the Riches' complaint. For example, the article repeatedly

uses the word "***alleges***" when referring to the Riches' account of events. *Id.* at 3-5 ("... the lawsuit alleges ..."; "The lawsuit alleges a conspiracy to create 'fake news'"; "For months, the lawsuit . . . alleges, Butowsky lied to Joel and Mary Rich[.]"). It also repeatedly uses the phrase "***according to***" to clearly indicate the source of its reporting. *Id.* at 4-8. This is precisely the "pervasive sourcing language" that the Texas Supreme Court held in *Hall* to be indicative of privileged reporting. 2019 WL 2063576, at *8. Furthermore, the article contains direct quotes from the Riches' lawsuit and hyperlinks to the Riches' full complaint. *See Adelson v. Harris*, 402 P.3d 665, 669-70 (Nev. 2017) (conspicuously hyperlinking to source material about an official proceeding is sufficient to render a report protected under "fair report" privilege). Construed as a whole, the article leaves no doubt that the "story" being reported is "the Riches' story"—their account of events, as alleged in their lawsuit against Butowsky and others. Fuller Decl. Ex. A at 3-4.

A comparison of the statements Butowsky challenges with the allegations in the lawsuit filed by Joel and Mary Rich confirms that the *Vox* Articles accurately reported these allegations. Several of the challenged statements appear verbatim in the Riches' complaint:

| Challenged statements | Allegations in Complaint in *Rich v. Fox News Network, LLC* |
|---|---|
| "But the Riches' story isn't just about conspiracy theorists — it's about a conspiracy of Fox News contributors who concocted a lie while purporting to be trying to find Seth's killer."<br><br>Compl. ¶ 75 | "In July 2016, Seth Rich, a young Democratic National Committee ("DNC") employee, was murdered in the streets of Washington, D.C., in what authorities have stated publicly was a botched robbery. Fox News, Fox reporter Malia Zimmerman, and Fox News contributor and political operative Ed Butowsky intentionally exploited this tragedy—including through lies, misrepresentations, and half-truths—with disregard for the obvious harm that their actions would cause Joel and Mary."<br><br>Complaint in *Rich v. Fox News Network* (Fuller Decl. Ex. A(2)) ¶ 2 |

| Challenged statements | Allegations in Complaint in *Rich v. Fox News Network, LLC* |
|---|---|
| "Despite Butowsky's repeated questions about payments from WikiLeaks (which didn't exist), Joel and Mary repeatedly told both Zimmerman and Butowsky that the conspiracy theories about their son were 'baseless[.]'"<br><br>Compl. ¶ 75 | "Soon thereafter, on or about January 20, 2017, Butowsky called Joel and encouraged him to look into Seth's bank account for payments from WikiLeaks."<br><br>"Throughout their conversations with Butowsky, Joel and Mary assured Butowsky that the rumors about Seth were baseless."<br><br>Fuller Decl. Ex. A(2) at ¶¶ 31-32 |
| "Joel Rich told Butowsky that he was aware Seth had leaked the emails — all of which is false."<br><br>Compl. ¶ 77 | "Butowsky told Joel and Mary that he had heard second-hand that Julian Assange said Wikileaks received the DNC emails from Seth. Joel and Mary assured Butowsky there was no way that was true."<br><br>Fuller Decl. Ex. A(2) at ¶ 26. |
| "But by challenging how the story of their son's murder was manipulated by people who wormed their way into their inner circle — even gaining access to their religious community — the Riches could shine a light on the darkest underbelly of the conservative media apparatus."<br><br>Compl. ¶ 77 | "The Defendants saw Joel and Mary's personal tragedy as an opportunity: They sought to take the conspiracy theory from the fringe to the front pages and screens of the mainstream media."<br><br>"Butowsky sought out Joel and Mary Rich to further the Defendants' conspiracy. For instance . . . Butowsky sought to use Joel and Mary's Jewish heritage and community ties to gain a favorable introduction to them and posted on Facebook that he was 'looking to connect with anyone Jewish in Omaha, Nebraska.' Through these overtures, Butowsky successfully contacted the Riches."<br><br>Fuller Decl. Ex. A(2) at ¶¶ 24-25. |

A similar analysis applies to the second *Vox* Article, which also reports on Joel Rich's allegation that he never told Butowsky that Seth sent emails to Wikileaks. Butowsky complains that the article characterizes as a "lie" Butowsky's assertion to the contrary. Compl. ¶ 79. But Butowsky ignores that this part of the article is reporting on the claims made by Joel and Mary

Rich in their lawsuit, as well as on claims made by Aaron Rich in his own lawsuit. Fuller Decl. Ex. B at 5 ("According to a lawsuit filed by Aaron Rich and a complaint filed by Seth's parents, Joel and Mary . . . ."). Butowsky cannot dispute that Coaston's reporting on this point is accurate: Joel and Mary Rich **did** accuse Butowsky of lying about what Joel told him. Fuller Decl. Ex. A(2) at ¶¶ 31-32.

Butowsky also complains that the second *Vox* Article refers to Butowsky and others having implicated Aaron in Seth's death:

> They also claimed that Aaron had refused to talk to law enforcement and stated that Aaron had known Seth would be murdered and had done nothing to stop it, aside from warning Seth's girlfriend to break up with Seth for her own safety.

Compl. ¶ 79. According to Butowsky, it is false to attribute such statements to him. *Id.* But, again, the article is merely reporting on allegations made in a lawsuit against Butowsky—this time, in Aaron's lawsuit. Fuller Decl. Ex. B at 5 ("According to a lawsuit filed by Aaron Rich . . ."). And there is no dispute that Aaron Rich **did** allege that Butowsky and his co-defendant, Matthew Couch, engaged in a campaign to defame him by stating that (1) Aaron "[h]ampered the criminal investigation into his brother's death . . . by refusing to talk to law enforcement investigators; and (2) "Aaron learned in advance that Seth would be murdered, and warned Seth's girlfriend to break up with him and leave D.C. for her own safety, yet did nothing to protect or warn Seth." Fuller Decl. Ex. C at ¶ 100.

Finally, in an apparent effort to avoid the "fair report" privilege, Butowsky quotes a passage from the first *Vox* Article statement that he claims is not based on allegations made in a lawsuit:

> Wheeler stated later that he received text messages that day from Butowsky telling him what to say in media interviews:

- "If you can, try to highlight this puts the Russian hacking story to rest"

- "We need to emphasize the FBI has a report that has been suppressed that shows that Seth rich [sic] did this . . ."

But none of this was true. **As would be revealed just a few days later**, Wheeler had never said that there was any emailing between Seth Rich and WikiLeaks, and everything he'd heard had been from Butowsky and Zimmerman. "I've never, ever seen Seth Rich's computer, nor have I talked with the federal investigator." And there was no FBI investigation, either — the FBI had never even seen Seth's laptop.

In short, Butowsky and Zimmerman had worked with Rod Wheeler, told him the FBI had information about Seth Rich's alleged connection with WikiLeaks, and then set him loose — with absolutely no proof. In fact, when Joel Rich demanded a retraction, Zimmerman told him (according to Wheeler, under direction from Fox producers) that the details about their son's (completely false) WikiLeaks ties had come from Wheeler — whom Butowsky and Zimmerman had been working with all along.

Compl. ¶ 76 (quoting March 23, 2018 article). Butowsky acknowledges that "Wheeler made some of the foregoing allegations in his lawsuit[,]" but claims that Coaston's "allegations above were not premised on that lawsuit." *Id.* In doing so, however, Butowsky ignores that the challenged statement includes a conspicuous hyperlink (in bold above, and in a different color in the website version) to a *Newsweek* article that contains all of these allegations. Fuller Decl. Ex. A(10). The *Newsweek* article specifically reported that "the FBI is not involved in the Rich case" and that Wheeler had stated that "I've never, ever seen Seth Rich's computer, nor have I talked with the federal investigator." *Id.* at 3. Such reporting is protected under Texas's third-party allegations defense, which does not require that the allegations be made in an official proceeding. Tex. Civ. Prac. & Rem. Code § 73.005(b).

In sum, because the statements Butowsky challenges are accurate reports of allegations made by others in judicial proceedings and on matters of public concern, they are protected under

the "fair report" privilege and third-party allegations defense. Moreover, Butowsky cannot overcome this privilege. Under Texas law, a plaintiff can defeat the fair report privilege only by a showing of actual malice, and only after the issue reported on had ceased to be a matter of public concern. Tex. Civ. Prac. Rem. Code § 73.002(a). The Seth Rich conspiracy theory (and, of course, Judge Daniels's rulings) were very much still a matter of public concern. And, as demonstrated below, however, Butowsky fails to plead any facts that would plausibly support such a finding. *See infra* at 21-24. In addition, not even a showing a malice can defeat the third-party allegations defense. *Id.* § 73.005(b). Butowsky's claims based on these statements must therefore be dismissed.

**C.      Butowsky fails to satisfy his burden as a public figure to plead actual malice.**

Even if the statements Butowsky challenges were actionable and not privileged, his defamation and business disparagement claims against the Vox Media Defendants must be dismissed because Butowsky fails to satisfy his burden to plead actual malice. As a result of his prominent role in the Seth Rich conspiracy theory and in the media coverage of it, Butowsky is a limited-purpose public figure. As such, he must plausibly plead actual malice to avoid the dismissal of his claims. Courts regularly dismiss defamation claims by limited-purpose public figures at the Rule 12(b)(6) stage. *See, e.g.*, *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 88 (2d Cir. 2018) (affirming the district court's dismissal under Rule 12(b)(6) of limited-purpose public figure's libel claim based on failure to sufficiently plead actual malice (citing *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) (same)); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (same). This Court should do the same. Butowsky does not plead any facts to support a finding that the Vox Media Defendants knew their reporting was false or that they acted with reckless disregard of its truth.

### 1. Butowsky is a limited-purpose public figure.

A limited-purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Under Fifth Circuit precedent, this Court applies a three-part test in determining limited-purpose public figure status: (1) the controversy at issue must be public "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;" (2) the plaintiff must participate in the controversy in more than a trivial role; and (3) the alleged defamation must be related to the plaintiff's participation in the controversy. *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987) (citing *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987)).

These elements are not subject to any legitimate dispute. The much-publicized controversy surrounding the Seth Rich conspiracy theory is clearly a "public controversy" under *Trotter*. And Butowsky's prominent role in that controversy—and in the media storm that surrounded it—is well documented. One court has already found that Butowsky was largely responsible for creating the controversy. *Bauman*, 2019 WL 1433595, at *8 ("Given the controversy surrounding the murder (much of it created by Butowsky himself) . . . ."). This finding is consistent with Butowsky's allegations in this case. Butowsky suggests that he "stumbled" into the controversy, Compl. ¶ 36, but his Complaint confirms that, in fact, he dove headfirst.

According to his Complaint, Butowsky was contacted by an unnamed "third party" who had met with Wikileaks' Julian Assange. *Id.* at ¶ 37. Assange allegedly had told the unnamed individual that Seth and his brother, Aaron, were responsible for leaking the DNC emails to Wikileaks. *Id.* Butowsky then took it upon himself to "contact[] Joel and Mary Rich, the parents of Seth, and relay[] the information." *Id.* Butowsky arranged to have his fellow Fox News

contributor, Rod Wheeler, hired by the Riches—all on Butowsky's dime. *Id.* He then worked

with Wheeler and Fox producer Zimmerman to prepare a news report promoting the conspiracy.

*Id.* at ¶¶ 37-39.

In addition, Butowsky actively participated in the media coverage surrounding the Fox

story and its retraction.[5] Several months before the first *Vox* Article was published, Butowsky

appeared on CNN to discuss the controversy and his role in it.[6] Butowsky then continued to grant

requests for media interviews[7] and to promote the Seth Rich conspiracy theory on social media.

Indeed, several of his public statements—all made before publication of the *Vox* Articles—were

cited by the Riches and by Bauman as the basis for their claims against him. Ex. A(2) at 19 (Twitter

and NPR statements by Butowsky); *Bauman*, 2019 WL 1433595, at *7-9 (noting "[Bauman] and

Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray" and

citing as examples Butowsky's statements to CNN and to the Daily Intelligencer). Butowsky has

even cited his extensive participation in this public controversy in pleadings he has filed in another

---

[5] By his own admission, Butowsky has long sought media attention, even outside the Seth Rich murder controversy. Butowsky's website claims he is "an internationally recognized expert in the investment wealth management industry," who is "regularly heard on radio shows around the country" and who has made "hundreds of appearances on national television" including appearances on CNN, ABC, CBS, NBC, CNBC, Fox Business News, FOX News Channel, Bloomberg TV, and China TV. http://www.edbutowsky.com/ (last visited June 28, 2019). Fuller Decl. Ex. D.

[6] A 22-minute video of that interview is available at https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn (last visited June 28, 2019). The Court may take judicial notice of the fact of these publicly-available media publications in resolving the public-figure issue at this stage in the case. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (holding that it is proper to take judicial notice of various publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"); Fed. R. Evid. 201. Fuller Decl. Ex. E.

[7] Cassandra Fairbanks, *Ed Butowsky Sits Down With Gateway Pundit for First Interview After Being Sued by Family in Seth Rich Murder Mystery*, THEGATEWAYPUNDIT.COM, (Mar. 19, 2018), https://www.thegatewaypundit.com/2018/03/ed-butowsky-sits-first-interview-gateway-pundit-sued-family-seth-rich-murder-mystery/ (last visited June 28, 2019). Fuller Decl. Ex. F.

20

case in this Court. *Butowsky v. Folkenflik*, No. 4:18-cv-00442-ALM (ECF No. 1, Compl. ¶¶ 1-3); Fuller Decl. Ex. G.

Thus, based on materials the Court may consider at this stage, Butowsky is a limited-purpose public figure in connection with the controversy surrounding the Seth Rich conspiracy theory. Because the statements he challenges relate to this controversy, Butowsky must properly plead actual malice to avoid dismissal of his claims against the Vox Media Defendants.

## 2. Butowsky fails to plausibly allege actual malice.

Butowsky's factual allegations fall far short of satisfying his pleading burden on the issue of actual malice. The First Amendment requires a clear and convincing showing by the plaintiff that the defendant knew, at the time of publication, its statement was false or acted with reckless disregard of its truth. *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 560 (5th Cir. 1997). A publisher acts with reckless disregard when it "entertain[s] serious doubts as to the truth of [the] publication" or has a "high degree of awareness of . . . probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted). Here, that requirement is virtually impossible to satisfy, particularly in light of the extensive public record at the time Coaston prepared the *Vox* Articles, much of which Coaston carefully cited and linked to in the articles.

In order to prove actual malice, Butowsky must show that Coaston intended the challenged statements in the *Vox* Articles to be direct accusations against him, not merely reports of accusations made by others. Moreover, Butowsky must show that Coaston believed those accusations to be false, yet still reported them as true. For example, Butowsky alleges that Coaston falsely implied that Joel Rich had told Butowsky that reports of Seth's involvement with Wikileaks were baseless. Compl. ¶ 75. But Joel and Mary Rich's lawsuit *did* allege precisely that:

> In December 2016, Joel and Mary Rich spoke by phone with Butowsky. Butowsky told Joel and Mary that he had heard second-hand that Julian Assange said Wikileaks received the DNC emails

from Seth.  ***Joel and Mary assured Butowsky that there was no way that was true.***

Fuller Decl. Ex. A(2) at ¶ 26 (emphasis added).  Butowsky offers no reason why Coaston would have found Joel Rich not to be credible on this point.  Indeed, the Riches had been telling that story, consistently, for months, including in their *Washington Post* op-ed published in May 2017. Fuller Decl. Ex. A(14).  The first *Vox* Article linked to the Riches' complaint and to their op-ed, and there is no suggestion that Coaston found them not to be credible.  Moreover, as Coaston reported, Wheeler was also claiming that he saw no evidence of any emails between Seth and Wikileaks. Fuller Decl. Ex. A at 6.  In doing so, he was specifically refuting Butowsky's account. *Id.*  Again, Butowsky pleads no facts that would support a finding that Coaston secretly believed Butowsky to be telling the truth on these points, and the Riches and Wheeler to be lying.

Butowsky's credibility on these issues was further undermined by Fox News's retraction of the story he helped prepare.  When Coaston published the first *Vox* article,  Butowsky was still publicly claiming that the Fox News story was true, even though Fox News had joined Wheeler and others in disavowing it.  By the time Coaston published her second article, *The Washington Times* also had retracted its own Seth Rich reporting, specifically stating that the newspaper had "no basis to believe" that Seth had been involved in leaking DNC emails to Wikileaks.  Fuller Decl. Ex. B at 4.  Furthermore, the government had refuted core elements of the Seth Rich conspiracy theory.  The FBI had confirmed that—contrary to Butowsky's claims—it had not been involved in investigating Seth's murder.  Fuller Decl. Ex. A(10).  And the U.S. intelligence community had confirmed that Russian agents, not Seth or Aaron, had been responsible for leaking the DNC's hacked emails to Wikileaks.  Fuller Decl. Ex. A(5).  In light of this extensive public record—all of which was cited and linked to in the *Vox* Articles—any suggestion that Coaston subjectively believed Butowsky is fanciful and frivolous.

In the face of the obvious implausibility that Coaston published any of the challenged statements with actual malice, Butowsky offers nothing more than conclusory allegations that she acted "maliciously." Courts have consistently held that such allegations are insufficient to satisfy a public figure's actual malice pleading burden and should be disregarded. *See, e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016) ("For starters, we can disregard the portions of the complaint where [the plaintiff] alleges in a purely conclusory manner that the defendants were 'reckless' in publishing the article."); *see also Egiazaryan v. Zalmayev*, No. 11-Civ. 2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (plaintiff's "repeated assertion that [defendant] acted with malice is unavailing because it is a legal conclusion not entitled to presumption of truth, and he alleges no facts plausibly supporting that conclusion").

Moreover, Butowsky's attempt to impute political motives to Coaston—calling her a "left-wing" extremist—is also unavailing. Compl. ¶ 75. Butowsky fails to plead any facts that would support the notion that Coaston acted out of political bias. *Michel*, 816 F.3d at 706 (conclusory allegation that newspaper was engaged in a campaign against plaintiff insufficient to satisfy actual malice pleading burden). Moreover, it is well established that even credible allegations of ill will or bias are insufficient to constitute actual malice. *Peter Scalamandre & Sons*, 113 F.3d at 561 (allegation that defendant disliked plaintiff and had profit motive did not support finding of actual malice); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff."); *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 425 (Tex. 2000). ("[E]vidence of pressure to produce stories from a particular point of view, even when they are hard-hitting or sensationalistic, is no evidence of actual malice.").

Finally, Butowsky attempts to rely on the Vox Media Defendants' decision not to issue a retraction after the publication of the *Vox* Articles as proof of actual malice. Compl. ¶ 80. Under Fifth Circuit precedent, however, the focus of a court's actual malice inquiry is on the defendant's state of mind at the time of publication. *Danawala v. Hous. Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993). Accordingly, post-publication developments, such as a publisher's decision not to retract a disputed report, are not relevant. *See Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("[I]naccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication."); *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) ("'Evidence concerning events after an article has been printed and distributed, has little, if any, bearing on that issue.'" (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174 (Tex. 2003)).

In sum, Butowsky's Complaint contains only conclusory allegations that the Vox Media Defendants acted with actual malice and fails to plead any facts that would support such a finding. As a result, his claims must be dismissed.

## D. Butowsky's business disparagement claim fails for the same reasons as his defamation claim.

The same grounds for dismissal of Butowsky's defamation claim apply with equal force to his claim for business disparagement. To plead a valid claim for business disparagement, a plaintiff must allege facts to support the following elements: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (citation omitted); *see also Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 683 (Tex. App.—El Paso 2001, no pet.) ("The same protections which the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same defamatory publication."). Thus,

for the reasons discussed above, Butowsky's failure to plead a valid defamation claim also requires that his business disparagement claim be dismissed.

## CONCLUSION

For the reasons set forth in this motion, and subject to their motion to dismiss for lack of personal jurisdiction, Defendants Vox Media, Inc. and Jane Coaston respectfully request that the Court grant this motion and dismiss Plaintiff Edward Butowsky's claims against them. Moreover, because Butowsky's claims fail as a matter of law, any request for leave to amend should be denied. The Court should enter judgment in the Vox Media Defendants' favor, along with all such other relief to which they are justly entitled.

US 6447869

Respectfully submitted,

/s/      Marc A. Fuller
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

***Attorneys for Defendants***
***Vox Media, Inc. & Jane Coaston***

## CERTIFICATE OF SERVICE

This is to certify that this document was duly served on all counsel of record through the Court's electronic filing system on July 1, 2019.

/s/ *Marc A. Fuller*
Marc A. Fuller