# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EDWARD BUTOWSKY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-0180-ALM-KPJ |
| | § | |
| MICHAEL GOTTLIEB, *et al.* | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANTS THE NEW YORK TIMES COMPANY AND ALAN FEUER'S MOTION TO DISMISS UNDER RULE 12(b)(6)

---

**VINSON & ELKINS L.L.P.**
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

*Attorneys for Defendants*
*The New York Times Company & Alan Feuer*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

STATEMENT OF ISSUES ..................................................................................................... 3

FACTUAL BACKGROUND .................................................................................................. 3

APPLICABLE LEGAL STANDARDS ................................................................................... 5

ARGUMENT .......................................................................................................................... 6

    A.   The challenged statements are not "of and concerning" Butowsky. ................................... 7

    B.   The challenged statements are not capable of defamatory meaning. ................................. 9

    C.   The challenged statements are protected by the "fair report" privilege. ........................... 11

    D.   Butowsky fails to satisfy his burden as a public figure to plead actual malice. ................ 16

        a.   Butowsky is a limited-purpose public figure. ............................................................. 16

        b.   Butowsky fails to plausibly allege actual malice. ....................................................... 19

    E.   Butowsky's business disparagement claim fails for the same reasons as his defamation claim. ................................................................................................................. 22

CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ..................................................................... 6

*Alf v. Buffalo News, Inc.*,
    995 N.E.2d 168 (N.Y. 2013) .............................................................................. 15

*AOL, Inc. v. Malouf*,
    No. 05–13–01637–CV, 2015 WL 1535669 (Tex. App.—Dallas Apr. 2, 2015, no pet.) ......... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 5, 10

*Baraliu v. Vinya Capital, L.P.*,
    No. 07 Civ. 4626 (MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ................. 13

*Barber v. Nationwide Commc'ns, Inc.*,
    No. 3:95-CV-0656-H, 1995 WL 940517 (N.D. Tex. May 30, 1995) ....................... 7

*Basic Capital Mgmt., Inc. v. Dow Jones & Co.*,
    96 S.W.3d 475 (Tex. App.—Austin 2002, no pet.) ................................................ 15

*Bauman v. Butowsky*,
    No. 18-01191 (RJL), 2019 WL 1433595 (D.D.C. Mar. 29, 2019) ................. 10, 17, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 5, 10

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015) .............................................................................. 16

*Butowsky v. Folkenflik*,
    No. 4:18-cv-00442-ALM (E.D. Tex.) .................................................................. 18

*Cabello-Rondon v. Dow Jones & Co.*,
    720 F. App'x 87 (2d Cir. 2018) ......................................................................... 16

*Cholowsky v. Civiletti*,
    887 N.Y.S.2d 592 (N.Y. App. Div. 2009) ..................................................... 12, 15

*Dallas Morning News, Inc. v. Hall*,
    -- S.W.3d --, 2019 WL 2063576 (Tex. May 10, 2019) ..................................... 11, 12

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018) ............................................................................... 9

*Danawala v. Hous. Lighting & Power Co.*,
    14 F.3d 251 (5th Cir. 1993) .............................................................................. 22

*Double Diamond, Inc. v. Van Tyne*,
    109 S.W.3d 848 (Tex. App—Dallas 2003, no pet.) ............................................... 11

*Duncan v. Cessna Aircraft Co.*,
    665 S.W.2d 414 (Tex. 1984) ............................................................................... 6

*Egiazaryan v. Zalmayev*,
    No. 11-Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ................................. 21

*Ferguson v. Bank of N.Y. Mellon Corp.*,
    802 F.3d 777 (5th Cir. 2015) ................................................................................. 5

*Forbes Inc. v. Granada Biosciences, Inc.*,
    124 S.W.3d 167 (Tex. 2003) ................................................................................. 22

*Freedom Newspapers of Tex. v. Cantu*,
    168 S.W.3d 847 (Tex. 2005) .......................................................................... 20, 22

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................................................... 16

*Golub v. Enquirer/Star Grp., Inc.*,
    681 N.E.2d 1282 (1997) ...................................................................................... 9

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013) ............................................................................. 9, 10

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir. 1986) ............................................................................... 22

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
    399 N.E.2d 1185 (N.Y. 1979) ............................................................................. 12

*Huckabee v. Time Warner Entm't Co.*,
    19 S.W.3d 413 (Tex. 2000) .............................................................................. 7, 21

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015) ............................................................................... 22

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019) ............................................................................... 6

*KBMT Operating Co. v. Toledo*,
    492 S.W.3d 710 (Tex. 2016) ............................................................................... 12

*Lan Sang v. Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013) ................................................................ 16

*Langston v. Eagle Printing Co.*,
    797 S.W.2d 66 (Tex. App.—Waco 1990, no writ) ............................................. 15

*Levine v. CMP Publ'ns, Inc.*,
    738 F.2d 660 (5th Cir. 1984) ............................................................................... 6

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................... 6

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ............................................................................... 5

*Maxwell v. Henry*,
    815 F. Supp. 21 (S.D. Tex. 1993) ....................................................................... 16

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ................................................................. 21

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5th Cir. 2007) ..................................................................... 5

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004) .................................................................... 21

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................. 20

*Nix v. ESPN, Inc.*,
    No. 18-14107, 2019 WL 2142038 (11th Cir. May 15, 2019) .................... 6

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ..................................................................... 5

*O'Gara v. Binkley*,
    No. 3:18-CV-2603-B 2019 WL 1864099 (N.D. Tex. Apr. 19, 2019) ........ 6

*Obey v. Frisco Med. Ctr., L.L.P.*,
    No. 4:13-CV-656, 2015 WL 417509 (E.D. Tex. Jan. 30, 2015) .......... 9, 11

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
    113 F.3d 556 (5th Cir. 1997) ............................................................. 19, 21

*Provencio v. Paradigm Media, Inc.*,
    44 S.W.3d 677 (Tex. App.—El Paso 2001, no pet.) ............................... 22

*Reed v. City of Arlington*,
    650 F.3d 571 (5th Cir. 2011) ................................................................... 10

*Rich v. Fox News Network, LLC*,
    322 F. Supp. 3d 487 (S.D.N.Y. 2018) ............................................ 4, 5, 13

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    366 N.E.2d 1299 (N.Y. 1977) ................................................................... 9

*Rizzo v. Edison Inc.*,
    419 F. Supp. 2d 338 (S.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006) ...................... 7

*Smith v. Clinton*,
    253 F. Supp. 3d 222 (D.D.C. 2017), *aff'd* 886 F.3d 122 (D.C. Cir. 2018),
    *cert. denied* 139 S. Ct. 459 (2018) .......................................................... 9

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ..................................................................... 6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ................................................................................. 19

*Tacopina v. O'Keeffe*,
    645 F. App'x 7 (2d Cir. 2016) ........................................................... 11, 12

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ................................................................. 17

iv

*Tex. Monthly, Inc. v. Transamerican Nat. Gas Corp.*,
   7 S.W.3d 801 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ............................... 12

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   65 N.E.3d 35 (N.Y. 2016) ...................................................................................... 7

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971) ............................................................................................... 20

*Trotter v. Jack Anderson Enters., Inc.*,
   818 F.2d 431 (5th Cir. 1987) ................................................................................. 17

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ................................................................................. 18

*Wheeler v. Twenty-First Century Fox*,
   322 F. Supp. 3d 445 (S.D.N.Y. 2018) ............................................................. passim

**Statutes**

Fed. R. Civ. P 12(b)(6) ............................................................................................ passim

N.Y. Civ. Rights Law § 74 ...................................................................................... 11

Tex. Civ. Prac. & Rem. Code § 73.002(a) .................................................. 11, 12, 15

Tex. Civ. Prac. & Rem. Code § 73.002(b)(1)(A) ...................................................... 12

**Rules**

Fed. R. Evid. 201 .................................................................................................... 18

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971) ...................................... 6

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150 (1971) ...................................... 6

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) .......................................... 6

William L. Prosser, *Interstate Publications*,
   51 MICH. L. REV. 959 (1953) .................................................................................. 6

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants The New York Times Company and Alan Feuer[1] (collectively, "The Times") move to dismiss Plaintiff's claims against them, and state as follows:

## INTRODUCTION

Plaintiff Edward Butowsky touts himself as an internationally-known financial advisor and political commentator, who has appeared on all the major television networks and cable news channels. Since 2016, however, Butowsky has been known primarily for his controversial role in promoting a widely-discredited conspiracy theory about the murder of Seth Rich, a young staffer with the Democratic National Committee ("DNC"). Seth was killed in a late-night shooting in his Washington, D.C., neighborhood in July 2016. Law enforcement believes Seth's murder was a botched robbery, but his killer has not been apprehended.

From the beginning, Butowsky has exploited this tragedy for his own political and self-promotional ends. After Seth was killed, Butowsky contacted Joel and Mary Rich, Seth's parents, arranging for them to hire Rod Wheeler, a former homicide detective. Like Butowsky, Wheeler was also a Fox News contributor, and the two men worked with a Fox News producer, Malia Zimmerman, to prepare a report alleging that Seth was assassinated for leaking internal DNC emails during the 2016 presidential campaign. Reaction to the story was swift and critical. Less than a week after publication, Fox News retracted it ("Retracted Fox News Story"). Fox News did not publicly catalogue all of the story's inaccuracies, but the network acknowledged that the story did not meet its editorial standards.

Approximately one year later, Seth's parents, Joel and Mary Rich, sued Fox, Zimmerman, and Butowsky for their roles in the Retracted Fox News Story. Detective Wheeler, apparently

---

[1] Defendant Feuer makes this motion subject to and without waiving his motion to dismiss for lack of personal jurisdiction.

embarrassed by his role in the episode, also filed suit against the same defendants, claiming he had been manipulated and defamed. Neither case survived the Rule 12(b)(6) stage. On August 2, 2018, both cases were dismissed. The Times covered these court rulings in an article published the same day ("*NYT* Article").

Having lost all credibility in the mainstream media, Butowsky has turned to litigation in his efforts to promote the Seth Rich conspiracy theory. This is the third case he has filed in this Court in less than a year, all of them over his role in the controversy. In this latest case, Butowsky asserts claims against 22 defendants, including the lawyers who represented the Riches, the Rich family's spokesperson, and the DNC. Butowsky also alleges defamation and business disparagement claims against various news outlets and their reporters—including The Times, CNN, and Vox Media—all of whom covered the public controversy and litigation surrounding the Seth Rich conspiracy theory.

Butowsky's attempt to hold The Times liable for its article accurately reporting on the court orders dismissing the Parents' Lawsuit and the Wheeler Lawsuit is fatally flawed. Butowsky cannot identify any actionable statement in the *NYT* Article that is "of and concerning" him. The article is primarily about the plaintiffs' claims against Fox News, not Butowsky. Butowsky is mentioned in only a few statements, all of which are either unchallenged or not capable of defamatory meaning. Even if those statements were actionable, it is well-established under Texas law and New York law that the news media's fair and true reporting on court proceedings is privileged. Butowsky cannot overcome this privilege, and, as a public figure, his failure to plead facts that could plausibly support a finding of actual malice also requires dismissal under the First Amendment.

## STATEMENT OF ISSUES

1.      Should the Court dismiss Butowsky's defamation and business disparagement claims against The Times on the grounds that he fails to identify any allegedly defamatory statement in the *NYT* Article that is "of and concerning" him?

2.      Should the Court dismiss Butowsky's claims on the grounds that statements he challenges are not defamatory?

3.      Should the Court dismiss Butowsky's claims against The Times on the grounds that the *NYT* Article is privileged as a fair and true report of judicial proceedings and, as a matter of law, Butowsky cannot overcome this privilege?

4.      Should the Court dismiss Butowsky's claims against The Times on the grounds that he is a limited-purpose public figure and cannot satisfy his burden to plausibly allege actual malice?

## FACTUAL BACKGROUND

On August 2, 2018, *The New York Times* published an article headlined, "Judge Dismisses Two Lawsuits Against Fox News Over Retracted Seth Rich Story."[2]  The article reported on two lawsuits arising out of a May 16, 2017, Fox News story about a conspiracy theory blaming Seth for the leak of 44,000 internal DNC emails to Wikileaks.  Fuller Decl. Ex. A at 1.  As the *NYT* Article explained, the Fox News story had "implied that Mr. Rich's death on the streets of Washington in July 2016 had occurred in retaliation for the leaks, even though no evidence supported that conclusion."  A week after publication, Fox News retracted the report, stating:

> On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich. The article was not initially subjected to the high degree of editorial

---

[2] A copy of the *NYT* Article is attached as Exhibit A to the Declaration of Marc Fuller.  In the paper's New York edition, the article appeared under the headline, "Judge Tosses 2 Lawsuits Against Fox News Over Retracted Story on Murdered Aide."  Fuller Decl. Ex. A at 2.

> scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed.
>
> We will continue to investigate this story and will provide updates as warranted.

Fuller Decl. Ex. B.

In March 2018, Seth's parents filed a lawsuit against Fox News, Fox producer Malia Zimmerman, and Butowsky in the United States District Court for the Southern District of New York, where it was assigned to the Honorable George B. Daniels ("Parents' Lawsuit"). *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 493 (S.D.N.Y. 2018); Fuller Decl. Ex. C. The Riches claimed that the defendants had conspired to produce and publish the Retracted Fox News Story, which caused them mental anguish. *Id.* at 493-96. Because they had no defamation claim— the Retracted Fox News Story was about Seth, not his parents—the Riches asserted claims for intentional infliction of emotional distress and other torts. *Id.* at 493-94.

In addition to the Parents' Lawsuit, Wheeler also filed a lawsuit against Fox, Zimmerman, and Butowsky in the Southern District of New York ("Wheeler Lawsuit"). *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445 (S.D.N.Y. 2018); Fuller Decl. Ex. D. That case, too, was assigned to Judge Daniels. Like the Parents' Lawsuit, the Wheeler Lawsuit arose principally from the Retracted Fox News Story. Wheeler claimed that Fox News and Zimmerman had attributed to him false quotes and misinformation regarding the law enforcement investigation into Seth's murder and that, after the network retracted its reporting, Butowsky continued to defame him on Twitter. *Id.* at 449-52.

On August 2, 2018, Judge Daniels dismissed both cases under Rule 12(b)(6). In the Parents' Lawsuit, Judge Daniels ruled that the defendants' alleged actions did not rise to the level of "extreme and outrageous conduct" sufficient to support an intentional infliction of emotional

distress claim and were not otherwise tortious. *Rich*, 322 F. Supp. 3d at 502-05. Judge Daniels also dismissed Wheeler's defamation claims, holding that the challenged statements were either true based on Wheeler's own admissions or not defamatory. *Wheeler*, 322 F. Supp. 3d at 454-58.

The *NYT* Article reported on the dismissals in both cases. Fuller Decl. Ex. A at 1-2. The article briefly described the Retracted Fox News Story, the plaintiffs' allegations against Fox News and the others, and specific observations Judge Daniels made in his memorandum orders. *Id.* The *NYT* Article also reported that lawyers for Butowsky and Zimmerman had said they were pleased with the court's decisions. *Id.* at 2.

## APPLICABLE LEGAL STANDARDS

Although a complaint need not contain "detailed factual allegations," it must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547). A complaint that does no more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the facts stated in the Complaint, documents incorporated by reference or attached to the Complaint, and facts that are subject to judicial notice. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). Documents are incorporated

by reference when "'they are central to the claim and referenced by the complaint.'" *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

**ARGUMENT**

Butowsky asserts two claims against The Times—for defamation and for business disparagement—based on statements in the *NYT* Article. The fact that Butowsky, a Texas resident, has sued a New York publisher and a New York reporter based on an article covering legal proceedings in New York raises potential choice-of-law issues.[3] Such issues are notoriously fraught in multistate defamation cases. *Adelson*, 973 F. Supp. 2d at 476-78) ("Choice of law analysis in defamation cases remains, as it was in Dean Prosser's time, 'a dismal swamp, filled with quaking quagmires[.]'" (quoting William L. Prosser, *Interstate Publications*, 51 MICH. L. REV. 959, 971 (1953)). On this motion, however, a definitive decision on choice-of-law issues is unnecessary. Regardless of whether Texas or New York defamation law applies, Butowsky's claims must be dismissed, and for the same reasons.

---

[3] As a federal court sitting in diversity, the Court must apply Texas choice-of-law rules. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Texas uses the "most significant relationship" test, as set forth in the Restatement (Second) of Conflict of Laws. *O'Gara v. Binkley*, No. 3:18-CV-2603-B 2019 WL 1864099, at *2 (N.D. Tex. Apr. 19, 2019) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984)); Restatement (Second) of Conflict of Laws §§ 6, 145, 150 (1971)). The Fifth Circuit and other jurisdictions have held that defamation claims are generally governed by the law of the plaintiff's domicile—here, Texas. *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984); *Adelson v. Harris*, 973 F. Supp. 2d 467, 476-78 (S.D.N.Y. 2013). But some courts have held that a privilege, such as the fair report privilege, may be subject to a different analysis. For example, the Eleventh Circuit recently held that New York law governed the fair report defense where the challenged story was first published in New York and covered a lawsuit filed in New York. *Nix v. ESPN, Inc.*, No. 18-14107, 2019 WL 2142038, at *3 (11th Cir. May 15, 2019); *cf. O'Gara*, 2019 WL 1864099, at *2 (court noted parties' agreement that law of California, the plaintiff's domicile, governed multistate defamation claim, but held that law of Texas governed anti-SLAPP issue).

**A.** **The challenged statements are not "of and concerning" Butowsky.**

A libel plaintiff bears the burden of identifying each specific statement upon which his claim is based. *See Barber v. Nationwide Commc'ns, Inc.*, No. 3:95-CV-0656-H, 1995 WL 940517, at *3 (N.D. Tex. May 30, 1995); *Rizzo v. Edison Inc.*, 419 F. Supp. 2d 338, 350 (S.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006). To be actionable, a challenged statement must be "of and concerning" the plaintiff. *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 429 (Tex. 2000); *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.3d 35, 37 (N.Y. 2016). Butowsky fails to satisfy this requirement, as he does not identify any actionable statement that is about him.

As its headline—"Judge Dismisses Two Lawsuits Against Fox News Over Retracted Seth Rich Story"—suggests, the *NYT* Article is not primarily about Butowsky. Fuller Decl. Ex. A at 1. Rather, the article focuses on Fox News as the main defendant in the Parents' Lawsuit and in the Wheeler Lawsuit. *Id.* at 1-2. In its discussion of the Parents' Lawsuit, the article repeatedly refers to the suit as being "against Fox News":

- "A federal judge in Manhattan dismissed a lawsuit Thursday that was brought ***against Fox News*** by the parents of Seth Rich . . . ."

- "Mr. Rich's parents, Joel and Mary, filed the suit in Federal District Court in Manhattan in March, ***arguing that Fox News had caused them emotional distress and engaged in 'extreme and outrageous conduct'*** by publishing a fabricated article . . . ."

- "The story, ***published on the Fox News website*** on May 16, 2017 . . . ."

- "Within a week, ***Fox News retracted the story*** . . . ."

- "But [Judge Daniels] added that he had no choice but to dismiss the suit, ***because Fox's conduct did not amount to the intentional infliction of emotional distress***."

*Id.* at 1 (emphasis added). Butowsky is not mentioned until more than halfway through the *NYT* Article, and then only to note that he and Zimmerman had been named as co-defendants and were being dismissed. *Id.* at 2. Butowsky does not challenge the accuracy of this statement.

Turning to Judge Daniels's dismissal of the Wheeler Lawsuit, the *NYT* Article refers several times to Butowsky, but he does not challenge any of those statements. Specifically, the article reports that:

- "In a related decision, Judge Daniels also dismissed a separate lawsuit brought against Fox News, Ms. Zimmerman and ***Mr. Butowsky*** by a private detective who had played a central role in the retracted story."

- "The detective, Rod Wheeler, was hired by the Rich family on ***Mr. Butowsky's*** recommendation to help them investigate their son's death."

- "Mr. Wheeler also claimed that ***Mr. Butowsky***, a wealthy Trump supporter, had defamed him after the story was retracted by posting comments on Twitter including "Rod Wheeler has a major battle with the truth."

- "The judge also characterized ***Mr. Butowsky's*** social media attacks as largely rhetorical."

- "Lawyers for both ***Mr. Butowsky*** and Ms. Zimmerman said they were pleased by the decisions."

*Id.* (emphasis added). Again, Butowsky does not dispute the accuracy of any of these statements, nor could he. Four of the statements accurately report that Butowsky was dismissed from the Wheeler Lawsuit, and the fifth—reporting that the Riches had hired Wheeler based on Butowsky's recommendation—is admittedly true according to his own allegations. Compl. ¶ 37.

Thus, unable to identify any challenged statements in the *NYT* Article that are "of and concerning him," Butowsky fails to plead a viable defamation or disparagement claim against The Times.

**B.** **The challenged statements are not capable of defamatory meaning.**

Even if the statements Butowsky challenges were "of and concerning" him, they are not defamatory of him. To be defamatory, a challenged statement must expose the plaintiff to public hatred, contempt, or ridicule. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637 (Tex. 2018); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1305 (N.Y. 1977). Texas and New York recognize two types of defamatory speech: defamation *per se* and defamation *per quod*. The former includes statements that inherently injure a person in his office, profession, or occupation, whereas the latter requires an additional showing and proof of actual damages. *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013); *Golub v. Enquirer/Star Grp., Inc.*, 681 N.E.2d 1282, 1283 (1997). The court decides this issue as a matter of law. *Obey v. Frisco Med. Ctr., L.L.P.*, No. 4:13-CV-656, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015) (Mazzant, J.).

Butowsky alleges that the *NYT* Article created a false impression that he was "intimately involved" in the development of the Retracted Fox News Story, which he claims was inaccurately described by The Times as a "false and misleading" news report. Compl. ¶ 81. As demonstrated above, however, the article does not state that Butowsky was "intimately involved" in the development of the Retracted Fox News Story. Rather, the *NYT* Article states Butowsky "assisted Ms. Zimmerman," whom the article identifies as the "author" of the Retracted Fox News Story. Fuller Decl. Ex. A at 2. It then describes Judge Daniels as "saying that even though the story they had put together was untrue, their behavior did not meet the legal standard of 'extreme and outrageous conduct.'" *Id.*

These statements do not rise to the level of defamatory speech. They do not accuse Butowsky of lying or of any contemptible conduct in connection with his role in the Retracted Fox News Story. *See, e.g.*, *Smith v. Clinton*, 253 F. Supp. 3d 222, 241 (D.D.C. 2017) (distinguishing between statement referring to factual assertion as untrue, and statement calling the speaker a

"liar"), *aff'd* 886 F.3d 122 (D.C. Cir. 2018), *cert. denied* 139 S. Ct. 459 (2018). An accusation of merely having been involved with the production of an inaccurate news story is not defamatory. And it is certainly not defamatory *per se* as to Butowsky, because it does not inherently injure him in his profession. Butowsky makes his living as a financial advisor. Compl. ¶ 10. The ability to produce error-free journalism is not a quality uniquely necessary for dispensing financial advice or formulating investment strategies. *Cf. Hancock*, 400 S.W.3d at 67-68 (holding that reputation of honesty is not "a peculiar or unique skill that is necessary" for a medical doctor (citation omitted)). Moreover, Butowsky makes no effort to plead any actual damages directly resulting from publication of the *NYT* Article.[4]

Even if the *NYT* Article could reasonably be construed as accusing Butowsky of crafting a lie, it is not actionable in this particular context. Indeed, Butowsky has prevailed on this issue in two defamation cases against him. Most recently, he obtained the Rule 12(b)(6) dismissal of claims by the Rich family's former spokesperson, Brad Bauman. *Bauman v. Butowsky*, No. 18-01191 (RJL), 2019 WL 1433595, at *8-9 (D.D.C. Mar. 29, 2019). One of the challenged statements in that case was Butowsky's assertion on CNN that Bauman had been involved in "crafting a lie." *Id.* at *9. Butowsky successfully argued that such a statement was not defamatory in the context of the broader, back-and-forth public controversy over the truth of the Seth Rich conspiracy theory. *Id.* Similarly, in the Wheeler Lawsuit, Judge Daniels held that Butowsky's tweet that Wheeler has a "major battle with the truth" was not capable of defamatory meaning. *Wheeler*, 322 F. Supp. 3d at 452, 457. Having prevailed on these issues, Butowsky is judicially estopped from resting his own defamation case on an identical statement. *Reed v. City of*

---

[4] Butowsky's only allegation of economic harm is his general averment that he lost "one third of his clients" as a result of the actions and statements of all 22 defendants. Compl. ¶ 88. Such a vague and conclusory allegation falls far short of satisfying his burden under *Iqbal/Twombly*.

*Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (court may apply judicial estoppel if "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) the court accepted the prior position; and (3) the party did not act inadvertently").

In sum, Butowsky's claims against The Times are not based on any defamatory statement about him, but on the *NYT* Article's references to the Retracted Fox News Story as being "false and misleading" and "untrue." Neither Texas nor New York law permits such a claim to go forward. Butowsky may view such statements as false, unpleasant, or objectionable, but he cannot show that they subject him to hatred, contempt, or ridicule. *Obey*, 2015 WL 417509, at *3 ("'A statement may be false, abusive, unpleasant or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances.'" (quoting *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App—Dallas 2003, no pet.)). The Court should not be dragged into Butowsky's Quixotic quest to use his defamation claim lawsuit to litigate the accuracy of the Retracted Fox News Story or the Seth Rich conspiracy theory, or to chill media reporting on their many critics.

## C. The challenged statements are protected by the "fair report" privilege.

Even if Butowsky could show that the statements he challenges in the *NYT* Article are defamatory of him, those statements are protected under the "fair report" privilege. Texas and New York both recognize this privilege and its broad contours. *See Dallas Morning News, Inc. v. Hall*, -- S.W.3d --, 2019 WL 2063576, at *8 (Tex. May 10, 2019) ("media outlets enjoy a privilege that protects publications describing official proceedings of public concern" (citing Tex. Civ. Prac. & Rem. Code § 73.002(a)); *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) (privilege "prohibits civil actions '. . . for the publication of a fair and true report of any judicial proceeding'" (quoting N.Y. Civ. Rights Law § 74)). "If the report of the proceeding is substantially true—'a

11

fair, true, and impartial account'—the publication is privileged and not actionable." *Hall*, 2019

WL 2063576, at *8 (citing *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016));

*Tacopina*, 645 F. App'x at 8.   In determining whether the reporting accurately conveys the

proceeding, courts in both states hold that the media must be given wide latitude.   *See Tex.*

*Monthly, Inc. v. Transamerican Nat. Gas Corp.*, 7 S.W.3d 801, 806 (Tex. App.—Houston [1st

Dist.] 1999, no pet.) ("The Texas Supreme Court's application of the substantial truth test to a

report of a judicial proceeding demonstrates that considerable latitude has been given in this

context."); *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 399 N.E.2d

1185, 1188 (N.Y. 1979) ("[N]ewspaper accounts of legislative or other official proceedings must

be accorded some degree of liberality.").   Courts overlook minor inaccuracies, focusing on whether

the report's description of the proceeding is substantially true.   *Hall*, 2019 WL 2063576, at *7-8;

*Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 595-96 (N.Y. App. Div. 2009).

The challenged statements in the *NYT* Article are well within the broad scope of the fair

report privilege.   Tex. Civ. Prac. & Rem. Code §§ 73.002(a), (b)(1)(A).   In reporting on the

dismissal of the Parents' Lawsuit, the *NYT* Article accurately describes the Riches' factual

allegations and the court's holding that those alleged facts do not rise to the level of "extreme and

outrageous conduct" sufficient to support a claim for intentional infliction of emotional distress.

Fuller Decl. Ex. A at 1.   As to the Wheeler Lawsuit, the article accurately reports that the court

held that Wheeler had not shown that he had been misquoted in the Fox story and that Butowsky's

Twitter statements were not actionable.   *Id.* at 2.

In addition to reporting the court's holdings, the *NYT* Article reported in its second

paragraph that Judge Daniels had stated that the Retracted Fox News Story was "false and

misleading." *Rich*, 322 F. Supp. 3d at 497. This statement was drawn directly from Judge

Daniels's memorandum order in the Parents' Lawsuit, in which he stated:

> [E]ven though Zimmerman's statements in the Zimmerman/Fox
> Article and to Plaintiffs about the FBI report were false, such "false
> statements or misrepresentations—even if intentionally made—do
> not rise to the level of extreme and outrageous conduct."

*Rich*, 322 F. Supp. 3d at 500 (quoting *Baraliu v. Vinya Capital, L.P.*, No. 07 Civ. 4626 (MHD),

2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009)). A few paragraphs later, the *NYT* Article

paraphrased this statement by Judge Daniels, reporting that:

> Judge Daniels dismissed the accusations against them, as well,
> saying that even though the story they had put together was untrue,
> their behavior did not meet the legal standard of "extreme and
> outrageous conduct."

Fuller Decl. Ex. A at 2.

In discussing the Wheeler Lawsuit, the article reported that Judge Daniels had commented

on Wheeler's role in developing the Seth Rich conspiracy theory:

> Mr. Wheeler and his partners at Fox News had "embarked on a
> collective effort to support a sensational claim regarding Seth Rich's
> murder," Judge Daniels wrote. Mr. Wheeler, the judge concluded,
> "cannot now seek to avoid the consequences of his own complicity
> and coordinated assistance in perpetuating a politically motivated
> story not having any basis in fact."

*Id*. Again, this reporting was drawn directly from Judge Daniels's memorandum order, in which

he stated:

> ***

> In this case, Plaintiff and Defendants embarked on a collective effort
> to support a sensational claim regarding Seth Rich's murder.
> Plaintiff cannot now seek to avoid the consequences of his own
> complicity and coordinated assistance in perpetuating a politically
> motivated story not having any basis in fact.

*Wheeler*, 322 F. Supp. 3d at 457.

Butowsky takes issue with The Times's reporting of these statements, arguing that Judge Daniels's observations should be interpreted through the lens of Rule 12(b)(6)'s legal standard, which requires the court to assume the truth of the plaintiff's factual allegations for the purpose of determining whether those factual allegations state a claim. Compl. ¶ 81. But nothing requires such an interpretation. At various other points in his memorandum order, Judge Daniels cites the Riches' complaint when he sets forth their factual allegations, but he does not do so when he states that the Fox News story was "false" or when he states that Wheeler "cannot now seek to avoid the consequences of his own complicity and coordinated assistance in perpetuating a politically motivated story not having any basis in fact." Indeed, the latter statement is separated from the Rule 12(b)(6) discussion in Judge Daniels's memorandum order by three asterisks, thus signaling a break from that discussion. *Wheeler*, 322 F. Supp. 3d at 457.

Moreover, Rule 12(b)(6) does not prohibit Judge Daniels from recognizing (as opposed to merely assuming) the truth of certain of the plaintiffs' allegations, or from offering his own comments or observations—particularly, where he was dismissing the case anyway. Here, stating that the Fox News story was "false and misleading" is an obvious proposition. After all, Fox's quick retraction was an acknowledgement that the story was not accurate. Moreover, it was entirely appropriate for Judge Daniels to make these observations. As to the Parents' Lawsuit, his acknowledgment that the Retracted Fox News Story was untrue reads as an expression of empathy for a family whose son had been defamed, but for whom the law gave no recourse. As to the Wheeler Lawsuit, Judge Daniels's observation is a censure of a plaintiff whose conduct harmed the Riches, and who then sought to blame others for the consequences of his actions.

Even if The Times's reporting did not perfectly capture the legal context in which these observations were made, the *NYT* Article is well within the broad protection of the fair report

privilege.  Texas courts have repeatedly rejected defamation claims based on inaccuracies far more serious than the alleged errors here.  *See, e.g.*, *AOL, Inc. v. Malouf*, No. 05–13–01637–CV, 2015 WL 1535669, at *5 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (dismissing defamation claim based on reporting that the plaintiff had been charged with criminal fraud when, in fact, the charges were civil); *Basic Capital Mgmt., Inc. v. Dow Jones & Co.*, 96 S.W.3d 475, 481-82 (Tex. App.—Austin 2002, no pet.) (report that a company had been charged with "money laundering" was substantially true even though only two of its employees had been charged individually with fraud and conspiracy, "money laundering" was not among the charges, and the company had not been charged with anything); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69-70 (Tex. App.—Waco 1990, no writ) ("Although it may greatly exaggerate the libel-plaintiff's misconduct alleged in a judicial proceeding, an article is substantially true if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration.").  New York courts are in accord.  *Alf v. Buffalo News, Inc.*, 995 N.E.2d 168, 169 (N.Y. 2013) ("When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." (citation omitted); *Cholowsky*, 887 N.Y.S.2d at 595-96 (affirming dismissal of claim under fair report privilege despite article's overstatement of plaintiff's admitted wrongdoing).

In sum, Butowsky's quibbles over how the *NYT* Article covered Judge Daniels's decisions do not bring The Times's reporting outside the broad scope of the fair report privilege.  As a matter of law, Butowsky cannot overcome the privilege.  Under Texas law, a plaintiff can defeat the fair report privilege only by a showing of actual malice, and only after the issue reported on has ceased to be a matter of public concern.  Tex. Civ. Prac. & Rem. Code § 73.002(a).  The Seth Rich conspiracy theory (and, of course, Judge Daniels's rulings) were very much still a matter of public

concern. And, as demonstrated below, however, Butowsky fails to plead any facts that would plausibly support such a finding. *See infra* at 19-22. And, in New York, the privilege is absolute, so no showing of malice could suffice. *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013).

**D.     Butowsky fails to satisfy his burden as a public figure to plead actual malice.**

Even if the statements Butowsky challenges were actionable and not privileged, his defamation and disparagement claims against The Times must be dismissed because Butowsky fails to satisfy his burden to plead actual malice. As a result of his prominent role in the Seth Rich conspiracy theory and in the media coverage of it, Butowsky is a limited-purpose public figure. As such, he must sufficiently plead actual malice to avoid dismissal. Courts regularly dismiss defamation claims by limited-purpose public figures at the Rule 12(b)(6) stage. *See, e.g.*, *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 88 (2d Cir. 2018) (affirming the district court's dismissal under Rule 12(b)(6) of limited-purpose public figure's libel claim based on failure to sufficiently plead actual malice (citing *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) (same)); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (same). This Court should do the same here. Butowsky does not come close to alleging facts to support a finding that The Times knew its reporting was false or that it acted with reckless disregard of the truth.

### a.     Butowsky is a limited-purpose public figure.

A limited-purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Under Fifth Circuit precedent, this Court applies a three-part test in determining limited-purpose public figure status: (1) the controversy at issue must be public "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;"

(2) the plaintiff must participate in the controversy in more than a trivial role; and (3) the alleged defamation must be related to the plaintiff's participation in the controversy. *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987) (citing *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987)).

These elements are not subject to any legitimate dispute. The much-publicized and widely-discussed controversy surrounding the Seth Rich conspiracy theory is a "public controversy" under *Trotter*. And Butowsky's prominent role in that controversy—and in the media storm that surrounded it—is well documented. One court has already found that Butowsky was largely responsible for creating the controversy. *Bauman*, 2019 WL 1433595, at *8 ("Given the controversy surrounding the murder (much of it created by Butowsky himself) . . . ."). This finding is consistent with Butowsky's allegations in this case. Butowsky alleges that he "stumbled" into the controversy, Compl. ¶ 36, but his Complaint confirms that, in fact, he dove headfirst.

According to his Complaint, Butowsky was contacted by an unnamed "third party" who had met with Wikileaks' Julian Assange. *Id.* ¶ 37. Assange allegedly told the unnamed individual that Seth and his brother, Aaron, were responsible for leaking the DNC emails to Wikileaks. *Id.* Butowsky then took it upon himself to "contact[] Joel and Mary Rich, the parents of Seth, and relay[] the information." *Id.* Butowsky then arranged to have his fellow Fox News contributor, Rod Wheeler, hired by the Riches—all on Butowsky's dime. *Id.* Butowsky then worked with Wheeler and Fox producer Zimmerman to prepare a report promoting the conspiracy. *Id.* at ¶¶ 37-39.

In addition, Butowsky actively participated in the media coverage surrounding the Fox story and its retraction.[5]  Exactly one year before the publication of the *NYT* Article, Butowsky appeared on CNN to discuss the controversy and his role in it.[6]  Over the next several months, Butowsky continued to grant media requests for interviews[7] and to promote the Seth Rich conspiracy theory on social media.  Indeed, several of his public statements—all made well before publication of the *NYT* Article—were cited as the basis for the claims against him in the Wheeler Lawsuit and in the Bauman lawsuit.  *Wheeler*, 322 F. Supp. 3d at 452 (Twitter statements by Butowsky); *Bauman*, 2019 WL 1433595, *7-9 (noting "[Bauman] and Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray" and citing as examples Butowsky's statements to CNN and to the Daily Intelligencer).  Butowsky has even cited his extensive participation in this public controversy in pleadings he has filed in this Court.  *Butowsky v. Folkenflik*, No. 4:18-cv-00442-ALM (ECF No. 1, Compl. ¶¶ 1-3); Fuller Decl. Ex. H.

---

[5] By his own admission, Butowsky has long sought media attention, even outside the Seth Rich murder controversy. Butowsky's website claims he is "an internationally recognized expert in the investment wealth management industry," who is "regularly heard on radio shows around the country" and who has made "hundreds of appearances on national television" including appearances on CNN, ABC, CBS, NBC, CNBC, Fox Business News, FOX News Channel, Bloomberg TV, and China TV.  *See* Fuller Decl. Ex. E.

[6] A 22-minute video of that interview is available at https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn (last visited June 28, 2019); *see* Fuller Decl. Ex. F.  The Court may take judicial notice of the fact of these publicly-available media publications in resolving the public-figure issue at this stage in the case.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (holding that it is proper to take judicial notice of various publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"); Fed. R. Evid. 201.

[7] Cassandra Fairbanks, *Ed Butowsky Sits Down With Gateway Pundit for First Interview After Being Sued by Family in Seth Rich Murder Mystery*, THEGATEWAYPUNDIT.COM, (Mar. 19, 2018), https://www.thegatewaypundit.com/2018/03/ed-butowsky-sits-first-interview-gateway-pundit-sued-family-seth-rich-murder-mystery/ (last visited  June 28, 2019).  *See* Fuller Decl. Ex. G.

Thus, based on materials that the Court may consider at this stage, Butowsky is a limited-purpose public figure in connection with the controversy surrounding the Seth Rich conspiracy theory. Accordingly, because the statements he challenges relate to this controversy, Butowsky must properly plead actual malice to avoid dismissal of his claims against The Times.

### b. Butowsky fails to plausibly allege actual malice.

Butowsky's factual allegations fall spectacularly short of satisfying his pleading burden on the issue of actual malice. The First Amendment requires a clear and convincing showing by the plaintiff that the defendant knew its statement was false or acted with reckless disregard of its truth. *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 560 (5th Cir. 1997). A publisher acts with reckless disregard when it "entertain[s] serious doubts as to the truth of [the] publication" or has a "high degree of awareness of . . . probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted). Butowsky does not plead any facts that would support such a finding as to the *NYT* Article.

As demonstrated above, the premise of Butowsky's claims against The Times is that the *NYT* Article inaccurately characterized two of Judge Daniels's statements as asserting facts when, according to Butowsky, they were merely describing allegations by the plaintiffs. In order for Butowsky to satisfy his actual malice burden, he must plead and prove not only that Feuer got it wrong, but that Feuer *knew* he was getting it wrong and that he intended to mislead readers on this point. There is no textual basis in Judge Daniels's memorandum orders, or alleged factual basis in Butowsky's pleading, for such a finding. As noted above, Judge Daniels did not cite the plaintiffs' complaints for his statements that the Retracted Fox News Story was false, nor did he attribute those statements to the plaintiffs. Rather, the most reasonable interpretation of those statements is that Judge Daniels was simply acknowledging the consensus fact that the Retracted Fox News Story and the conspiracy theory it posited were "untrue."

Even if Judge Daniels's statements were susceptible of the interpretation Butowsky proposes, it is well established that such ambiguity cannot support a finding of actual malice. *See Time, Inc. v. Pape*, 401 U.S. 279, 291-92 (1971). In *Pape*, the plaintiff challenged *Time* magazine's coverage of a government commission's report on civil rights violations. *Id.* at 282. The magazine erroneously reported as findings certain statements that were actually allegations by third parties. *Id.* One of the subjects of those allegations sued, arguing that the mischaracterization of the report was sufficient to support a finding of malice. The Supreme Court disagreed, noting that the misinterpretation of a government document is not reckless disregard, especially where the report contains ambiguity. *Id.* at 292 ("[I]f 'the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive,'" misstatements of this kind must have the protection of the First and Fourteenth Amendments." (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)). The same analysis applies with equal force to Butowsky's claim based on The Times's coverage of Judge Daniels's statements in the Parents' Lawsuit and the Wheeler Lawsuit. Even if Butowsky could show that Feuer mistook Judge Daniels's recitation of factual allegations by the plaintiffs for his own independent observations, such an error is precisely the type of misinterpretation that *Pape* holds to be constitutionally protected. 401 U.S. at 290; *see also Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 856 (Tex. 2005) (no actual malice where reporter allegedly misinterpreted statement) (citation omitted).

Butowsky's inability to plead actual malice is highlighted by the conclusory nature of his allegations on this issue. Without pleading any facts to support it, Butowsky alleges that The Times "deliberately misrepresented Judge Daniels's order[s] for the purpose of discrediting someone affiliated (however loosely) with President Trump." Compl. ¶ 84. This allegation is nothing more than a conclusory assertion that The Times's alleged misinterpretation was

deliberate. Courts have consistently held that such allegations are insufficient to satisfy a public figure's actual malice pleading burden. *See, e.g., Egiazaryan v. Zalmayev*, No. 11-Civ. 2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (finding plaintiff's "repeated assertion that [defendant] acted with malice is unavailing because it is a legal conclusion not entitled to presumption of truth, and he alleges no facts plausibly supporting that conclusion.").

Moreover, Butowsky's conclusory assertion that The Times deliberately misrepresented Judge Daniels's orders because it wanted to discredit a person "affiliated (however loosely) with President Trump" is also insufficient. Compl. ¶ 84. It is well established that even credible allegations of ill will or bias are insufficient to plead actual malice. *See, e.g.*, *Peter Scalamandre & Sons*, 113 F.3d at 561 (allegation that defendant disliked plaintiff and had profit motive did not support finding of actual malice); *see also New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff."); *Huckabee*, 19 S.W.3d at 425 ("[E]vidence of pressure to produce stories from a particular point of view, even when they are hard-hitting or sensationalistic, is no evidence of actual malice."). In addition, Butowsky does not plead any actual facts to support his conclusory allegation that The Times was motivated by a politically-based desire to discredit Butowsky because he is an "loose affiliate" of the President. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 706 (11th Cir. 2016) (conclusory allegation that newspaper was engaged in a campaign against plaintiff insufficient to satisfy actual malice pleading burden).

Finally, Butowsky attempts to rely on The Times's decision not to issue a retraction after the publication of the *NYT* Article as proof of actual malice. Compl. ¶ 80. Under Fifth Circuit precedent, however, the focus of a court's actual malice inquiry is on the defendant's state of mind at the time of publication. *Danawala v. Hous. Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir.

1993). Accordingly, post-publication developments, such as a publisher's decision not to retract a disputed report, are not relevant. *See Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("[I]naccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication."); *Cantu*, 168 S.W.3d at 858 ("'Evidence concerning events after an article has been printed and distributed, has little, if any, bearing on that issue.'" (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174 (Tex. 2003)).

In sum, Butowsky's Complaint contains only conclusory allegations that The Times acted with actual malice and fails to allege any facts that would support such a finding. As a result, his claims must be dismissed.

**E.      Butowsky's business disparagement claim fails for the same reasons as his defamation claim.**

The same grounds for dismissal of Butowsky's defamation claim apply with equal force to his claim for business disparagement. To plead a valid claim for business disparagement, a plaintiff must allege facts to support the following elements: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (citation omitted); *see also Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 683 (Tex. App.—El Paso 2001, no pet.) ("The same protections which the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same defamatory publication."). Thus, for the reasons discussed above, Butowsky's failure to plead a valid defamation claim also requires that his business disparagement claim be dismissed.

## CONCLUSION

For the reasons set forth in this motion, and subject to Defendant Alan Feuer's motion to dismiss for lack of personal jurisdiction, Defendants The New York Times Company, Inc. and

Alan Feuer respectfully request that the Court grant this motion and dismiss Plaintiff Edward Butowsky's claims. Moreover, because Butowsky's claims fail as a matter of law, any request for leave to amend should be denied.

Respectfully submitted,

/s/      *Marc A. Fuller*
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

***Attorneys for Defendants***
***The New York Times Company & Alan Feuer***

## CERTIFICATE OF SERVICE

This is to certify that this document was duly served on all counsel of record through the Court's electronic filing system on July 1, 2019.

/s/ *Marc A. Fuller*
Marc A. Fuller

US 6428817v.2