## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **Edward Butowsky, in his personal and professional capacities,**<br><br> Plaintiff,<br><br>**v.**<br><br>**Michael Gottlieb, Meryl Governski, Boies Schiller Flexner LLP, Brad Bauman, The Pastorum Group, Leonard A. Gail, Eli J. Kay-Oliphant, Suyash Agrawal, Massey & Gail LLP, Gregory Y. Porter, Michael L. Murphy, Bailey & Glasser LLP, Turner Broadcasting System, Inc., Anderson Cooper, Gary Tuchman, Oliver Darcy, Tom Kludt, The New York Times Company, Alan Feuer, Vox Media, Inc., and Jane Coaston,**<br><br> Defendants | **Case No. 4:19-cv-180** |

## FIRST AMENDED COMPLAINT

NOW COMES Edward Butowsky, the Plaintiff herein, alleging and stating as follows:

## Introduction

1.  Some of the events in this case overlap with those in *Edward Butowsky v. David Folkenflik, et al.*, which is presently pending before this Court as Case No. 4:18-cv-442-ALM. The *Folkenflik* complaint is attached as Exhibit 1 and incorporated herein

by reference.

2.  Late in the summer of 2017, the lives of Edward Butowsky, his family, and his co-workers were upended by false allegations that he conspired with White House officials to divert attention away from earlier (and equally false) allegations that President Donald Trump "colluded" with the Russian government to "steal" the 2016 Presidential election from Hillary Clinton. On August 1, 2017, New York attorney Douglas Wigdor and his partners filed a bogus lawsuit alleging that Mr. Butowsky, Fox News reporter Malia Zimmerman, and Fox News itself had fabricated a false story that a former Democratic National Committee ("DNC") employee – not the Russian government – was responsible for stealing DNC emails and giving them to Wikileaks.

3.  The bogus lawsuit portrayed Mr. Butowsky as a ruthless political operative of President Trump when, in reality, he never had (and never has) met President Trump nor spoken with him. In fact, Mr. Butowsky supported three candidates other than Mr. Trump in the primary, and in 2007 he donated $2,700 to the campaign of President Barack Obama.

4.  Mr. Wigdor, et al. nonetheless made the false allegations because they knew that most American journalists were (and are) consumed with hatred of President Trump, and they knew that most American media would publish or broadcast nearly anything – with little concern for accuracy – so long as it portrayed President Trump (or anyone tangentially connected to him) in a negative light. As detailed below, Mr. Wigdor, et al. planned to use the false allegations and the resulting negative publicity to extort money from Fox News.

5.   Mr. Butosky is by no means the only victim of the anti-Trump obsession within American media. On February 20, 2019, for example, the parents of 16-year-old Nick Sandmann sued *The Washington Post* for $250 million in damages because the newspaper smeared him with false accusations of taunting an elderly Native American veteran following a pro-life rally. The high-school student had made one unforgivable mistake: he wore a "Make America Great Again" (or "MAGA") hat that is affiliated with President Trump's political campaign. Based on that alone, the *Post* and other media comfortably assumed that he was a prejudiced white elitist. Within a day of the incident, however, video emerged that proved Sandmann had not taunted or harassed anyone, and on March 1, 2019 the *Post* belatedly admitted that its previous coverage of Sandmann was inaccurate. Similarly, left-wing media breathlessly trumpeted allegations from actor Jussie Smollett that he had been assaulted on January 29, 2019 by men wearing MAGA hats and uttering anti-gay and racial slurs. Because of their confirmation bias, most journalists ignored immediate and obvious evidence that Smollett was lying, *i.e.*, they were so eager to believe that Trump supporters would assault a gay black man that they forgot to ask why it would have happened at 2 a.m. during a blizzard in overwhelmingly Democratic Chicago. Smollet's story soon unraveled and on March 8, 2019 was indicted on 16 felony counts for lying to police and fabricating a hoax.

6.   In Mr. Butowsky's case, the disinformation campaign has taken much longer to unravel. Unscrupulous left-wing journalists and attorneys have perpetuated a myth about a myth, *i.e.*, that Mr. Butowsky pushed a fictitious story about the stolen emails in order to divert attention from the fictitious story about "collusion" with the Russian

government. In reality, the "Russia collusion" conspiracy theory is the only myth, and Mr. Butowsky's statements about the stolen emails were accurate.

7.   As a result of the lies fabricated and perpetuated by the Defendants, Mr. Butowsky and his family received death threats, he lost one third of his business clients, rocks were thrown through the windows of his home, his automobiles were burglarized, his computers were hacked, he lost friendships, and he lost the opportunity to host a planned television program. Left-wing extremists even posted a clock on the internet counting down the time until Mr. Butowsky's son would return for classes at Vanderbilt University,  implying that Mr. Butowsky's son would be harmed when he returned. As a result, Mr. Butowsky had to hire a bodyguard for his son.

8. The Defendants' smear campaign never should have begun, and it has lasted for far too long. Now it's time for the Defendants to answer for the lies that they spread and the harm that they caused.

**Jurisdiction and Venue**

9.   This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiff resides in Texas, whereas all Defendants reside in other states.

10.   Venue is proper in this district and the Court has personal jurisdiction over all Defendants because they participated in intentional torts that were designed to hurt the Plaintiff in Texas.  All of the Defendants knew that the Plaintiff was a resident of Texas when they targeted him.  Defendant CNN, for example, repeatedly described Mr. Butowsky as a "Texas businessman," and most other media routinely reference the fact that Mr. Butowsky lives near Dallas or in Texas.

**Parties**

11. Plaintiff Edward Butowksy is a financial advisor who resides in Plano, Texas. He brings claims in his personal and professional capacities.

12. Defendant Michael Gottlieb is an attorney who resides in or near Washington, D.C. He was a partner at all times relevant in the Defendant law firm Boies Schiller Flexner LLP.

13. Defendant Meryl Governski is an attorney who resides in or near Washington, D.C. She is an associate in the Defendant law firm Boies Schiller Flexner LLP.

14. Defendant Boies Schiller Flexner LLP is a law firm and professional partnership organized under the laws of New York and headquartered in New York, New York.  Hereinafter, it and Defendants Gottlieb and Schiller are collectively the "Boies Schiller Defendants."

15. Defendant Brad Bauman is a political communications consultant who lives in Washington, D.C.  He is a partner in Defendant The Pastorum Group.

16. Defendant The Pastorum Group is a political consulting firm in Washington, D.C.

17. Defendant Leonard A. Gail is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

18. Defendant Eli J. Kay-Oliphant is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

19. Defendant Suyash Agrawal is an attorney who resides in or near Chicago, Illinois. He is a partner in the Defendant law firm Massey & Gail LLP.

20.   Defendant Massey & Gail LLP is a law firm and professional partnership organized under the laws of Illinois and headquartered in Chicago, Illinois. Hereinafter, it and Defendants Gail, Kay-Oliphant, and Agrawal are collectively the "Massey & Gail Defendants."

21.   Defendant Gregory Y. Porter is an attorney who resides in or near Washington, D.C.  He is a partner in Bailey & Glasser LLP.

22.   Defendant Michael L. Murphy is an attorney who resides in or near Washington, D.C.  He is a partner in Bailey & Glasser LLP.

23.   Defendant Bailey & Glasser LLP is a law partnership headquartered in West Virginia.  Hereinafter, it and Defendants Porter and Murphy are collectively known as the "Bailey & Glasser Defendants."

24.   Defendant Turner Broadcasting System, Inc. (hereinafter "Defendant CNN") is a Georgia corporation headquartered in Atlanta, Georgia. CNN is a left-wing media brand that is wholly-owned by Turner Broadcasting System, Inc.

25.   Anderson Cooper is a left-wing media personality who hosts *Anderson Cooper 360*, an infotainment program broadcast by CNN. He lives and works in New York, New York.  The Court has general jurisdiction over Mr. Cooper because, contrary to his June 28, 2019 affidavit (Doc. No. 50-2), he does transact business in Texas. From his website http://www.ac2live.com, he is now selling tickets for an upcoming live performance in Sugarland, Texas with Andy Cohen.  According to the *Houston Chronicle*, "Anderson Cooper and Andy Cohen just can't stay away from each other. And the Houston area." Mr. Cooper has sold tickets to at least one other performance in

Texas, and he is not merely the anchor of a cable program. The program bears his name, and he has a vested financial interest in expanding its reach into Texas.

26.   Defendant Gary Tuchman is a reporter for CNN. He lives and works in Atlanta, Georgia.

27.   Defendant Oliver Darcy is a senior media reporter for CNN. He lives and works in New York, New York.

28.   Defendant Tom Kludt is a media reporter for CNN. He lives and works in New York, New York.

29.   Defendant The New York Times Company ("Defendant NYT") is a New York media corporation in New York, New York. It owns and publishes the *The New York Times*.

30.   Defendant Alan Feuer is a court reporter for *The New York Times* and a resident of New York. Personal jurisdiction is proper because Mr. Feuer knew Mr. Butowsky was a resident of Texas when he targeted Mr. Butowsky. The very lawsuit that Mr. Feuer wrote about (discussed hereinafter) mentions the fact that Mr. Butowsky is a Texas resident.

31.   Defendant Vox Media, Inc. is a media company headquartered in New York, New York. It publishes *Vox* online.

32.   Defendant Jane Coaston is a left-wing political activist who masquerades as the "senior political reporter" for *Vox*. She is a resident of Washington, D.C. Personal jurisdiction is proper because Ms. Coaston knew Mr. Butowsky was a resident of Texas when she targeted Mr. Butowsky. The lawsuits that Ms. Coaston wrote about (discussed

hereinafter) mention the fact that Mr. Butowsky is a Texas resident.

33.  Defendant The Democratic National Committee ("Defendant DNC") is a political organization headquartered in Washington, D.C.

## Facts

## Background

34.  As indicated above, this case is the consequence of a conspiracy theory, namely that President Trump "colluded" with the Russian government to swing the 2016 Presidential election in his favor. That conspiracy theory will hereinafter be referred to as the "Russia Collusion Hoax" or just the "RCH." Since the Plaintiff filed his ORIGINAL COMPLAINT in this case on March 12, 2019, the RCH has unraveled even more, and the public is just now beginning to understand the breadth and scope of the conspiracy to overthrow a duly-elected President.

35.  In 2015, the administration of President Barrack Obama began spying on prominent Republican presidential candidates, as well as Democratic candidate Bernie Sanders, in an effort to support Democratic candidate Hillary Clinton.   At that time, the Central Intelligence Agency ("CIA") was headed by Director John Brennan, and the Federal Bureau of Investigation ("FBI") was under the effective control of its deputy director, Andrew McCabe. Mr. Brennan and Mr. McCabe are ruthless and unscrupulous Democratic partisans, and they were determined to destroy any candidate who might threaten the candidacy of Mrs. Clinton. Mr. Brennan even created a "working group" within the CIA to sabotage Mrs. Clinton's political opponents, particularly Donald Trump. The "working group" included Mr. McCabe and other FBI employees, as well as

employees from the National Security Agency ("NSA).

36.   As of 2015, Mrs. Clinton's campaign was already dogged by revelations that she had avoided using State Department email systems while she was U.S. Secretary of State, and that she had instead used a private, insecure email server kept in her home. Adding to Mrs. Clinton's political troubles, classified information was found on her homemade server, and that called into question her competence to handle national security matters. It also rendered her liable to federal criminal charges. By early 2016, Mrs. Clinton was facing multiple investigations, including Congressional, administrative, and criminal investigations, related to the private email server.  Furthermore, the public learned that Mrs. Clinton's attorneys had destroyed more than 30,000 of her emails even those emails were subject to outstanding subpoenas. In other words, Mrs. Clinton's lawyers had intentionally and systematically destroyed more than 30,000 pieces of evidence. The ongoing investigations were a political albatross for Mrs. Clinton.

37.   The FBI's criminal investigation of the Clinton email fiasco was known as "Operation Mid-Year Exam" or "MYE," and it was headed by Mr. McCabe and FBI Director James Comey. Two of the most important players on the MYE team were FBI agents Peter Strzok and Lisa Page, the latter of whom was assigned to the FBI's Office of General Cousel.  Mr. Strzok and Ms. Page were avid Hillary Clinton supporters and partisan Democrats, and they were determined to protect Mrs. Clinton and undermine her opponents at any cost.

38.   As explained by retired Central Intelligence Agency analyst Larry C. Johnson, the RCH began in earnest on May 4, 2016, when Ted Cruz dropped out of the

Presidential race. *See* Larry C. Johnson, "The Campaign to Paint Trump as a Russian Stooge Started on May 4, 2016," ([https://turcopolier.typepad.com/sic_semper_tyrannis/2019/05/the-campaign-to-paint-trump-as-a-russian-stooge-started-on-may-4-2016-by-larry-c-johnson.html](https://turcopolier.typepad.com/sic_semper_tyrannis/2019/05/the-campaign-to-paint-trump-as-a-russian-stooge-started-on-may-4-2016-by-larry-c-johnson.html)). The following are texts exchanged between Mr. Strzok and Ms. Page on that date:

| 2016-05-04 00:40:51, Wed | OUTBOX | And holy shit Cruz just dropped out of the race. It's going to be a Clinton Trump race. Unbelievable. |
|---|---|---|
| 2016-05-04 00:41:24, Wed | INBOX | What?!?!?? |
| 2016-05-04 00:41:37, Wed | OUTBOX | You heard that right my friend. |
| 2016-05-04 00:41:37, Wed | INBOX | I saw trump won, figured it would be a bit |
| 2016-05-04 00:41:57, Wed | INBOX | Now the pressure really starts to finish MYE... |
| 2016-05-04 00:42:32, Wed | OUTBOX | It sure does. We need to talk about follow up call tomorrow. We still never have. |

Mr. Strzok and Ms. Page were under pressure from Mr. McCabe to finish MYE quickly – and whitewash Mrs. Clinton's crimes – in order to minimize the damage to her political candidacy. They were also directed to shift their attention to Mr. Trump. (The CIA "working group" identified above was launched in June of 2016, and the Plaintiff alleges on information and belief that Mr. Strzok and Ms. Page were assigned to it from the outset).

39.   Also in early May of 2016, Mrs. Clinton launched an initiative to divert attention from the mounting evidence that she was corrupt and incompetent. She retained the law firm Perkins Coie, LLP to create a counter-narrative that her opponent, Donald Trump, was not only corrupt, but treasonous. With Mrs. Clinton's approval, Perkins Coie

hired the left-wing "investigative" firm Fusion GPS, and Fusion GPS in turn hired former British spy Christopher Steele to fabricate "evidence" that Mr. Trump had colluded with the Russian government. Mr. Steele's fabricated report was then used by Obama Administration officials to secure wiretapping warrants against members of the Trump campaign.

40.   While the Clinton campaign tasked Perkins Coie with hiring Fusion GPS and Christopher Steele, the DNC set in motion the false narrative that the Russian government had hacked its servers. The DNC's ultimate goal was to blame Mr. Trump for colluding with the Russian government to hack its servers. According to an article in *Esquire* magazine, DNC officials found out on May 5, 2016 that the DNC's servers had been breached.  According to the article, the servers had been breached by Russian hackers, and the DNC asked an internet security company, CrowdStrike, Inc., to investigate the breach. In reality, Perkins Coie had hired CrowdStrike on behalf of the DNC, just like it hired Fusion GPS on behalf of the Clinton campaign, and it did so for the purpose of creating a diversion. Contrary to the *Esquire* story, the DNC had discovered *prior* to May 5, 2016 that one of its own employees had been leaking emails (the DNC likely did not know the identity of the employee at that time, but they knew the leak was internal). The DNC also knew that the emails would soon become public, and it knew that the emails would be very damaging to Mrs. Clinton's political campaign.

41.   Just as Mr. Strzok and Ms. Page realized on May 4, 2016 that they needed to bury the MYE investigation into Mrs. Clinton quickly, the Clinton campaign and the DNC recognized an opportunity to rewrite the narrative about the damaging emails that

would soon be released to the public. Rather than acknowledge that a DNC employee was so appalled by the corruption he had witnessed inside the DNC and the Clinton campaign that he leaked emails to Wikileaks, the DNC and Clinton campaign decided they would instead blame the leaked emails on the Russian government, then blame Mr. Trump for colluding with the Russian government.

42.   The DNC employee responsible for the leaks was Seth Rich, and he was assisted by his brother Aaron. Mr. Butowsky does not know exactly when the DNC figured out that Mr. Rich was the source of the leak. On July 10, 2016, however, Mr. Rich was fatally shot while walking home in Washington, D.C., and the murder has not been solved. Mr. Butowsky does not know whether the murder is related to Mr. Rich's role in leaking DNC emails.

43.   Shortly after the murder, the interim DNC chair at the time, Donna Brazile, reached out to Mr. McCabe and Washington, D.C. Mayor Muriel Bowser for help in dealing with the political consequences of the murder. Ms. Brazile knew suspicions would soon arise, fairly or unfairly, that the murder was connected to the email leaks. D.C. police allowed the FBI to unlock Seth Rich's electronic devices, and the FBI obtained data showing that Mr. Rich had indeed provided the DNC emails to Wikileaks. At Mr. McCabe's direction, however, that information was kept secret with orders that it not be produced in response to any Freedom of Information Act request.  For her part, Ms. Bowser directed D.C. police not to pursue any investigative avenues that might connect the murder to the email leaks.  At her direction, local police blamed the murder on a "botched robbery" even though Mr. Rich's watch, wallet, and other belongings were

not removed from his body.

44.   On July 22, 2016, Wikileaks began publishing thousands of email that had been downloaded from the DNC's servers by Seth Rich and his brother, Aaron. Those emails showed how the campaign of Democratic Presidential nominee Hillary Clinton had corruptly taken control of the DNC for the purpose of sabotaging her primary opponent, Bernie Sanders.  Per their game plan, the Clinton campaign and the DNC immediately claimed that the emails had been obtained by hackers working for the Russian government.

45.   Mr. Butowsky stumbled into the RCH crosshairs after Ellen Ratner, a news analyst for Fox News and the White House correspondent for Talk Media News, contacted him in the Fall of 2016 about a meeting she had with Mr. Assange. Ms. Ratner's brother, the late Michael Ratner, was an attorney who had represented Mr. Assange. According to Ms. Ratner, she made a stop in London during a return flight from Berlin, and she met with Mr. Assange for approximately six hours in the Ecuadorean embassy. Ms. Ratner said Mr. Assange told her that Seth Rich and his brother, Aaron, were responsible for releasing the DNC emails to Wikileaks. Ms. Ratner said Mr. Assange wanted the information relayed to Seth's parents, as it might explain the motive for Seth's murder.

46.   Upon her return to the United States, Ms. Ratner asked Mr. Butowsky to contact the Rich family and relay the information from Mr. Assange, apparently because Ms. Ratner did not want her involvement to be made public. In the two months that followed, Mr. Butowsky did not attempt to contact the Rich family, but he grew

increasingly frustrated as the DNC and #Resistance "journalists" blamed the Russian

government for the email leak. On December 16, 2016, Mr. Butowsky sent a text

message to Ms. Ratner:



Ms. Ratner subsequently told Mr. Butowsky that she had informed Bill Shine, who was

then the co-president of Fox News, about her meeting with Mr. Assange in London.  Ms.

Ratner also informed Fox News producer Malia Zimmerman about her meeting with Mr.

Assange.

47.  On December 17, 2016, at the instigation of Ms. Ratner, Mr. Butowsky finally

contacted Joel and Mary Rich, the parents of Seth, and he relayed the information about

Ms. Ratner's meeting with Mr. Assange. During that conversation, Mr. Rich told Mr.

Butowsky that he already knew that his sons were involved in the DNC email leak, but he

and his wife just wanted to know who murdered Seth. Mr. Rich said he was reluctant to

go public with Seth's and Aaron's role in leaking the emails because "we don't want

anyone to think our sons were responsible for getting Trump elected." Mr. Rich said he

did not have enough money to hire a private investigator, so Mr. Butowsky offered to pay

for one.  Mr. Rich accepted the offer and thanked Mr. Butowsky in an email.

48.  On December 29, 2016 at 1:51 p.m., Mr. Butowsky sent an email to Ms.

Ratner from his iPad: "If the person you met with truly said what he did, is their [sic] a

reason you we aren't reporting it ?" At 3:48 p.m. that afternoon, Ms. Ratner responded as follows: "because--- it was a family meeting---- I would have to get his permission-- will ask his new lawyer, my sister-in-law."

49.  Mr. Butowsky later referred the Rich family to Rod Wheeler, a Fox News contributor and former homicide detective with the Metropolitan Police Department in Washington, D.C. Mr. Butowsky only knew Mr. Wheeler through his occasional guest appearances on Fox News.  Aaron Rich's wife, Molly Rich, drafted a retainer contract for Mr. Wheeler, and he began working directly for the Rich family. Mr. Butowsky agreed to pay from Mr. Wheeler's services, but he had no control over Mr. Wheeler's work for the Rich family.

50.  On May 16, 2017, FoxNews.com published a story by Malia Zimmerman which claimed that Seth Rich had been involved in the DNC email leak. The article undermined the DNC narrative that Seth Rich had been murdered in a "botched robbery," and it likewise undermined the Russia Collusion Hoax. The story featured quotes from Mr. Wheeler regarding his investigation, as well as quotes from an unnamed federal official who claimed that federal investigators had copies of Seth Rich's communications with Wikileaks. Shortly thereafter, the Rich family terminated Mr. Wheeler, and Mr. Wheeler was subjected to withering scorn and criticism from anti-Trump media.

51.  On May 18, 2017, Mr. Wheeler told Mr. Butowsky that he needed an attorney to pursue claims against Marina Marraco, a reporter for the local Fox affiliate in Washington, D.C. According to Mr. Wheeler, Ms. Marraco duped him into granting an interview about the Seth Rich investigation so she could "scoop" Ms. Zimmerman and

publish her story one day before the Fox News network published Ms Zimmerman's story. At Mr. Wheeler's request, Mr. Butowsky introduced Mr. Wheeler to some well-known attorneys in Dallas.  Mr. Butowsky participated in the telephone conversation between Mr. Wheeler and the Dallas attorneys, and Mr. Wheeler never once indicated that he had been misquoted or mistreated by Mr. Butowsky, Ms. Zimmerman, or Fox News (as opposed to the local affiliate in D.C.). On the contrary, Mr. Wheeler sent a written statement to Ms. Zimmerman at 1 p.m. on May 19, 2017 wherein he claimed that he had shared the contents of Ms. Zimmerman's story with Joel Rich and Aaron Rich *the night before it was published*:

> In the contract I have with the family, signed by Joel, Mary and Aaron Rich, I am not allowed to speak to the media on the family's behalf, but I could speak to the media about this investigation of Seth Rich's murder or other stories I was involved in. They knew I was a Fox News contributor and regularly went on television.

> I called Joel Rich the night before the Fox News story was going to be published, which was Monday night. During that 18-minute call (phone logs provided), I reviewed the story with Joel Rich, he liked it and was encouraged by the new leads. Joel already knew about the story because Fox had contacted him earlier in the day. He also suggested I contact an investigative reporter, Michelle Sigona, from CrimeWatch Daily with the information. I also spoke with Aaron Rich, Joel's son, for 21 minutes the night before the story came out and told him about the new information that had emerged and the story would likely be coming out in the near future.

> I told them both I would be commenting on the case and asking people to come forward if they had insight on the new information. I never violated the terms of our contract as I *never* spoke on behalf of the family.

According to Mr. Wheeler, the Riches did not object to the Fox News story when he discussed it with them *in advance of its publication*.

52.   On May 23, 2017, Fox News retracted the May 16, 2017 article, claiming that the article did not meet its editorial standards. Fox News did not identify any errors in the article, and there were none.  Within the network, rumors began to circulate that the story was killed by Sarah and Kathryn Murdoch, the left-leaning Hillary Clinton supporters and daughters-in-law of Fox News founder Rupert Murdoch. One month prior to the May 23, 2017 retraction, Sarah and Kathryn Murdoch were credited with driving out conservative Fox News host Bill O'Reilly. *See* Don Kaplan, "Rupert Murdoch's sons' progressive wives helped oust Bill O'Reilly from Fox News Channel," *New York Daily News*, April 19, 2017 (https://www.nydailynews.com/news/national/murdoch-sons-progressive-wives-helped-oust-bill-o-reilly-article-1.3075872). Kathryn previously worked for the Clinton Climate Initiative, and her husband James was a donor to the Clinton Foundation.

53.   About a week after speaking with the attorneys in Dallas, Mr. Wheeler told Mr. Butowsky that he had decided to use another attorney, and that he would receive $4 million for using the other attorney. Mr. Butowsky soon learned that the other attorney was Douglas Wigdor, an employment attorney in New York who had filed numerous discrimination lawsuits against Fox News.  According to Mr. Wigdor's own public statements, he was hoping to recover $60 million in damages from the ongoing lawsuits against Fox News.  Unbeknownst to Mr. Butowsky at the time, Mr. Wigdor had enlisted Mr. Wheeler in an extortion scheme. As of 2017, Fox News's parent company, 21st Century Fox, Inc., was trying to gain approval from British regulators to purchase Sky Television, and Mr. Wigdor saw Mr. Wheeler's case as an opportunity to extort money

from Fox. Rather than pursue claims against the local affiliate in D.C. that had duped Mr.

Wheeler and deceptively edited his statements, Mr. Wigdor convinced Mr. Wheeler to

fabricate an entirely new story, *i.e.*, that Mr. Butowsky and Ms. Zimmerman had been

conspiring with President Trump to divert attention from the Russia collusion narrative.

Mr. Wigdor planned to use those explosive allegations to sabotage Fox's attempts to buy

Sky, specifically by convincing British regulators that Fox News was entirely unethical

and had acted corruptly at the behest of President Trump. In fact, Mr. Wigdor mentioned

Fox's attempt to buy Sky News in the lawsuit that he subsequently filed on behalf of Mr.

Wigdor, and he later testified before a British parliamentary committee in opposition to

the Sky Television purchase.

54.  In his bogus lawsuit, Mr. Wheeler selectively quoted texts and emails from

Mr. Butowsky to make it appear that Mr. Butowsky had pushed the May 16, 2017 Fox

News story at the behest of President Trump. In reality, Mr. Butowsky never had (and

never has) met President Trump nor spoken with him. Although Mr. Butowsky knew

people who worked in the Trump White House, he had actively supported Carly Fiorina

in the Republican primary. After she dropped out of the race, he supported Marco Rubio

and Chris Christie. Nonetheless, because Mr. Butowsky knew people who worked in the

White House, Mr. Wheeler repeatedly begged Mr. Butowsky for help in getting a job

there, and Mr. Butowsky has numerous texts and emails to prove that. (When he

recommended Mr. Wheeler to the Rich family, Mr. Butowsky did not know that Mr.

Wheeler was habitually broke, nor did he know that Mr. Wheeler was fired from the

Metropolitan Police Department for marijuana use). As a result of Mr. Wheeler's repeated

requests for help in getting a White House job, Mr. Butowsky jokingly told Mr. Wheeler that the White House was anxiously awaiting the results of his Seth Rich investigation. Mr. Wheeler knew full well that Mr. Butowsky was joking, and Mr. Wheeler knew full well that Mr. Butowsky had no personal connection to the President.

55.   When Mr. Wigdor filed suit against Mr. Butowsky, Ms. Zimmerman, and Fox News in August of 2017, he knew that Mr. Wheeler had <u>not</u> been misquoted in the Fox News story, and that's because Mr. Butowsky and his attorneys had provided Mr. Wigdor with texts, emails, and audio evidence proving that Mr. Wheeler had <u>not</u> been misquoted. Mr. Wigdor also knew that the Trump Administration played no role in the May 16, 2017 Fox News story. Mr. Wigdor filed the fraudulent lawsuit anyway.

56. Even though Fox News retracted its May 17, 2017 report by Malia Zimmerman, local affiliate WTTG (a.k.a. "Fox 5 DC") did not retract its report by Ms. Marraco. Instead, WTTG updated its May 15, 2017 on May 17, 2017 report to prove unequivocally that Mr. Wheeler was lying to other media outlets when he denied saying there was evidence connecting Seth Rich to the DNC leak. *See* Maria Marraco, Fox 5 DC (http://www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-seth-rich-contacted-wikileaks-prior-to-death). WTTG uploaded video showing the following statements by Mr. Wheeler:

> FOX 5 DC: "You have sources at the FBI saying that there is information..."
>
> WHEELER: "For sure..."
>
> FOX 5 DC: "...that could link Seth Rich to WikiLeaks?"
>
> WHEELER: "Absolutely. Yeah. That's confirmed."

Within days of the updated May 17, 2017 report by WTTG, all of the defendants in this lawsuit were actually aware that Mr. Wheeler was lying about Mr. Butowsky, Ms. Zimmerman, and Fox News.

57. The website DebunkingRodWheelersClaims.com (now at DeBunkingRodWheelersClaims.net) was launched in November of 2017, and it published texts, emails, audio, and video showing that Rod Wheeler had never been misrepresented by Mr. Butowsky, Ms. Zimmerman, or Fox News, including the email quoted above in Paragraph 51. The evidence on the website showed unequivocally that Mr. Wheeler had lied to other media about them. The website also included audio of famed journalist Seymour "Sy" Hersh stating that he had confirmed that Seth Rich was responsible for leaking the DNC emails. According to Mr. Hersh, who was by no means a Republican or a Trump supporter, he could not find a media outlet willing to publish the Seth Rich story.  In a separate phone call with Mr. Butowsky, Mr. Hersh said he obtained his information about Seth Rich from Mr. McCabe, the deputy FBI director.  Not later than December of 2017, all of the Defendants in this lawsuit were aware of the contents of DebunkingRodWheelersClaims.com.

58.  On May 15, 2018, after Mr. Wigdor got what he needed from Mr. Wheeler in terms of political and public relations impact, Mr. Wigdor and his firm sought to drop Mr. Wheeler as a client. Judge Daniels allowed Mr. Wigdor and his partners to withdraw on May 30, 2018, and Mr. Wheeler's frivolous lawsuit was dismissed on August 2, 2018. The unscrupulous Mr. Wigdor then settled all of his remaining clients' claims against Fox News for a $10 million lump sum (rather than the $60 million that he had originally

sought), and Mr. Wigdor apportioned $7 million of that among those clients.

**Defendants Bauman and The Pastorum Group**

59.  In early March of 2017, Joel Rich informed Mr. Butowsky that he had

received a call from Defendant Bauman, and that Defendant Bauman said he had been

"assigned" to the Rich family by the DNC. Defendant Bauman is an unscrupulous left-

wing political operative, and the DNC assigned him to the Rich family in order to control

them and keep the Russia Collusion Hoax alive.  Defendant Bauman knew that Seth Rich

leaked emails to Wikileaks, but Defendant Bauman's assignment was to divert attention

away from Seth Rich in order to keep the RCH alive.

60.  Under coercion from Mr. Bauman and the lawyer Defendants named in this

lawsuit, Joel Rich stopped speaking with Mr. Butowsky and the Rich family started

attacking Mr. Butowsky publicly (albeit not by name). Prior to the time of Mr. Bauman's

involvement, the Rich family acknowledged to friends and relatives that Seth and Aaron

were involved in the DNC email leak, but then they suddenly changed their story. On

information and belief, Mr. Butowksy alleges that Joel, Mary, and Aaron Rich were told

that Aaron could be charged with felony computer crimes if they did not cooperate with

their new handlers, *i.e.*, Mr. Bauman and the lawyer Defendants.  Aaron Rich's lawyers

have repeatedly alleged, for example, that Mr. Butowsky accused him (*i.e.*, Aaron) of

computer crimes and treason. In reality, Mr. Butowsky has never said such a thing. This

appears to be an example of psychological projection on the part of the lawyers

purporting to represent Aaron. To wit, they have accused their client of committing

computer crimes and treason, but they attribute the accusation to Mr. Butowsky.

61.   The Rich's lawsuits against Mr. Butowsky (discussed below) are part of a larger pattern. On April 20, 2018, the DNC filed a hare-brained, kamakaze lawsuit alleging that President Trump colluded with the Russians to steal its emails, even though the DNC already knew that neither President Trump nor the Russians had anything to do with the hacking. *See Democratic National Committee v. Russian Federation, et al.*, Case No. 1:18-cv-03501 (S.D.N.Y.). The DNC knew it could never win the case, but that was not the objective. The objective was to keep the Russian Collusion Hoax in the headlines through the 2018 Congressional elections. Similarly, Mr. Bauman orchestrated a hyper-aggressive litigation / defamation strategy designed to intimidate, discredit, and ultimately silence anyone who questioned the DNC narrative about Seth Rich's involvement in leaking emails. In particular, Mr. Bauman recruited the various lawyer Defendants herein to sue Mr. Butowsky into silence. (In fact, a left-wing publication praised the strategy. *See* Amanda Marcotte, "Can lawsuits slow the tide of right-wing conspiracy theory? Seth Rich's family wants to find out," June 1, 2018 *Salon* (https://www.salon.com/2018/06/01/can-lawsuits-slow-the-tide-of-right-wing-conspiracy-theory-seth-richs-family-wants-to-find-out)). The Boise Schiller Defendants have, for example, offered to settle their clients' claims against Mr. Butowsky's co-defendants for nominal sums if those co-defendants will agree to remain silent *in the future* about Seth Rich and the leaked emails.  In other words, the objective of Mr. Bauman's litigation/defamation strategy is not to recover damages, but to discredit people like Mr. Butowsky and bully them into silence.

62.   To be clear, Mr. Bauman and the lawyer Defendants – all of whom are Democratic partisans – knowingly joined in a larger conspiracy to promote and protect the RCH, and particularly to discredit and intimidate anyone like Mr. Butowsky who might undermine the RCH narrative. While Mr. Bauman and the lawyer Defendants were playing offense against Mr. Butowsky by suing and defaming him, their governmental co-conspirators (*e.g.*, Mr. McCabe, Mayor Bowser, and then-Police Chief Kathy Lanier) were playing defense. Mayor Bowser and Chief Lanier, for example, blocked city investigators from pursuing any information that might undermine the RCH narrative. The lead homicide detective assigned to the case, Joseph Dellacamera, was flatly prohibited from revealing the connection between Seth Rich and Wikileaks. *See, e.g.*, Patrick Howley, "Seth Rich Police Detective: Department Gave Me 'Strict, Strict Rules,' If I Talk I'll Get 'Re-Assigned'," August 2, 2017, BigLeaguePolitics.com (https://bigleaguepolitics.com/seth-rich-police-detective-department-gave-strict-strict-rules-talk-ill-get-re-assigned).  For his part, Mr. McCabe ordered FBI agents to hide all information connecting Seth Rich to Wikileaks, and to deny its existence in response to any FOIA requests.

63.   The scam continues even now. In his March 22, 2019 report on alleged Russian collusion, Special Counsel Robert Mueller stated unequivocally that Russian hackers were responsible for sending DNC emails to Wikileaks, but he was later forced to admit that his investigators had never examined the DNC's servers. Instead, Mr. Mueller had relied on exclusively on a *redacted* copy of a report that CrowdStrike had produced for the DNC. So far as the Plaintiff is aware, the U.S. Department of Justice had

never before relied exclusively on a private company's report about an alleged computer crime (as opposed to the government conducting its own investigation), and Mr. Mueller certainly did not disclose in his report that he had failed to examine the servers. Furthermore, Mr. Mueller never made any attempt to interview Mr. Assange, who would know better than anyone else how Wikileaks obtained the DNC emails. Mr. Mueller's investigation was a farce, at least so far as Seth Rich and DNC "hacking" were concerned.

64.  Mr. Mueller's deputy, Andrew Weissmann, is a Democratic partisan and a Hillary Clinton supporter with a long history of prosecutorial misconduct (in fact, all of the 17 attorneys on Mr. Mueller's staff were partisan Democrats, and his investigators initially included Democratic partisans Mr. Strzok and Ms. Page). On July 13, 2019, Congressman Devin Nunes revealed that prior to his appointment to the Mueller team, Mr. Weissmann played an undisclosed role in briefing reporters about allegations that President Trump had colluded with Russia.  The Plaintiff alleges that Mr. Weissman conspired with Mr. McCabe and DNC officials to maintain the false narrative that Russians were responsible for hacking the DNC, most recently by inserting false information into Mr. Mueller's report. The Plaintiff further alleges that Mr. Bauman and the lawyer Defendants herein knew that their governmental co-conspirators (*e.g.*, Mr. Weissmann and Mr. McCabe) were hiding and misrepresenting evidence, and that they were hiding and misrepresenting the evidence at least in part to aid the campaign against people like Mr. Butowsky. As a result of this scheme, Mr. Butowsky was severely hindered in his efforts to defend himself in the litigation discussed below.  Plaintiff's

Counsel, for example, filed a FOIA lawsuit against the FBI for information about Seth

Rich, and the Plaintiff intended to use that information for litigation purposes, but Mr.

McCabe and the other governmental defendants lied to the FOIA court and hid the

information.

## The beginning of the litigation campaign

65.   After Mr. Wigdor filed suit in New York on behalf of Mr. Wheeler,

Defendant Bauman seized on the opportunity to smear and defame anyone involved

suggesting that Seth Rich was involved in leaking DNC emails. He recruited the Masey

& Gail Defendants to file a frivolous March 13, 2018 lawsuit on behalf of Joel and Mary

Rich. Premised on the bogus Wheeler lawsuit, the Riches' lawsuit fabricated a wild tale

about Mr. Butowsky, Ms. Zimmerman, and Fox News conspiring to harm them by

manufacturing a conspiracy theory about the murder of Seth Rich.  Shortly thereafter,

Defendant Bauman recruited the Boies Schiller Defendants to file the baseless lawsuit

against Mr. Butowsky (and others) on behalf of Aaron Rich. Around the same time,

Defendant Bauman filed his own frivolous lawsuit against Mr. Butowsky (and others),

alleging that Mr. Butowsky had somehow defamed him by stating that Defendant

Bauman had been "assigned" by Defendant DNC.

66.   As detailed below, Mr. Bauman's strategy was at least partially successful,

because American journalists launched a full frontal assault on Mr. Butowsky, falsely

portraying him as a con man who fabricated a false story about Seth Rich.  Defendants

such as CNN, *Vox*, and *The New York Times* alleged that there was "no evidence" to

support the "conspiracy theory" that Seth Rich leaked emails from the DNC. In reality,

there was plenty of evidence, and they knew about the evidence.

**Evidence that DNC emails were leaked, not hacked**

67.   In an unprecedented act on August 9, 2016 on Dutch television station NOS, Wikileaks founder Julian Assange spoke specifically about Seth Rich: "*Whistleblowers go to significant efforts to get us material, often very significant risks. There's a 27-year-old that works for the DNC who was shot in the back, murdered, just two weeks ago, for unknown reasons as he was walking down the street in Washington… I am suggesting that our sources, ah, take risks and they, they become concerned to see things occurring like that…*" Mr. Assange had not before, and has not since, discussed the identify of any confidential source for Wikileaks. Wikileaks also offered a $20,000 reward for information leading to the conviction of Seth Rich's killers, yet the anti-Trump media treated this information as if it was part of a hoax.  That's a far cry from the way journalists had treated Mr. Assange and Wikileaks in preceding years, *e.g.*, when Wikileaks published documents about the Iraq War that proved harmful to the Bush Administration. Mr. Assange became a pariah as soon as anti-Trump journalists concluded that Wikileaks had done something harmful to Hillary Clinton and helpful to Donald Trump.

68.   Bill Binney, a former top official at the National Security Agency ("NSA"), was applauded by American media when he exposed widespread electronic surveillance of American citizens nearly 20 years ago.  Like Mr. Assange and Wikileaks, however, he became a pariah to American journalists when he questioned the Russia Collusion Hoax. Mr. Binney presented overwhelming scientific evidence that the DNC emails published

- 26 -

by Wikileaks were obtained from an internal leak versus an external hack.  He will testify that it was scientifically and technologically impossible for the Russians (or anyone else) to have downloaded the DNC emails remotely via hack. Instead, both the metadata and download time for the stolen emails indicate that they were downloaded onto a thumb drive or something similar.

69.  Larry Johnson is a retired officer of the Central Intelligence Agency. He and Mr. Binney both observed in a February 14, 2019 article that while some U.S. intelligence agencies reported "high" confidence that Russians hacked the DNC, the NSA reported only "moderate" confidence. *See* "Why the DNC was not hacked by the Russians," https://www.thegatewaypundit.com/2019/02/exclusive-cyber-security-experts-release-damning-report-why-the-dnc-was-not-hacked-by-the-russians. As explained in the article (incorporated herein by reference), the NSA's monitoring systems would have collected an electronic record of any internet-based hack on the DNC, which in turn would have prompted a "high" confidence conclusion by the NSA that Russians were responsible for obtaining the emails.  The absence of a "high" confidence conclusion means there is no electronic record of a Russian hack on the DNC.  Meanwhile, agencies that expressed "high" confidence, like the FBI and CIA, have been implicated in promoting the Russia Collusion Hoax, *e.g.*, via the fraudulent dossier of Christopher Steele.

70.  Even after Mr. Wheeler filed suit against Mr. Butowsky, he alleged that Ms. Brazille had improperly interfered in the Seth Rich investigation. In an August 2, 2017 interview on MSNBC, Mr. Wheeler alleged that interim DNC chairwoman Donna

Brazile had called Joel and Mary Rich and asked why Mr. Wheeler was investigating the murder. If Seth Rich died as the result of a "botched robbery," Ms. Brazile should not have cared one way or another whether the Rich family hired a private detective.

71.  In recorded interviews and written reports, Mr. Wheeler stated that Aaron Rich repeatedly told him not to investigate anything pertaining to Seth Rich's email communications or his work at the DNC, and that Aaron Rich denied him access to Seth Rich's computer and electronic devices.[1] Mr. Wheeler further said Aaron Rich claimed that he had already investigated the emails on his own, and Mr. Wheeler later acknowledged that it was highly suspicious for Aaron Rich to prohibit any review of Seth Rich's email communications and to prohibit interviews of Seth Rich's former co-workers.

72.  Aaron Rich's suspicious behavior continued after Mr. Wheeler was terminated. Mr. Rich claimed that he was only seeking the truth when he filed suit against Mr. Butowsky, but he refused to sign a waiver authorizing Wikileaks to reveal what it knows about Seth Rich's involvement in the DNC email leaks. His attorneys subsequently claimed that they would issue their own subpoena for Wikileaks. They have since reneged, however, because they realized that Wikileaks would likely construe the subpoena as a waiver, in which case it would likely release records showing that Aaron Rich and Seth Rich were both responsible for leaking the DNC emails.

---

1   To be clear, Mr. Wheeler's statements about the Seth Rich investigation were accurate up until Mr. Wigdor promised him $4 million to change his story. In other words, Mr. Wheeler did find evidence that Mr. Rich leaked DNC emails to Wikileaks.

73.   Several analysts, including Mr. Johnson, have noted a glaring problem in the DNC's timeline of the email "hack." According to the DNC and CrowdStrike, Russian hacking was detected on May 5, 2019, but CrowdStrike and DNC did not shut down the DNC servers until more than a month later.  If hackers had access to the system – as opposed to a leaker within the DNC – then CrowdStrike never would have waited so long to shut down the servers.  Furthermore, the DNC never allowed outside investigators to examine the servers that purportedly were hacked by Russian agents.  As noted above, Special Counsel Robert Mueller was forced to admit that his findings were based on a redacted report from a third party.

74.   There are other reasons to question the DNC version of events about the Seth Rich murder. After the May 16, 2017 FoxNews.com article was retracted, the Metropolitan Police Department ("MPD") claimed that the FBI had never been involved in the Seth Rich investigation, and the anti-Trump media trumpeted this claim as proof that the Fox article was a fraud.  In Aaron Rich's lawsuit against Mr. Butowsky, however, he stated that he had been cooperating with "state and federal law enforcement officials" to solve his brother's murder.  Similarly, the FBI originally claimed that it had no responsive documents about Seth Rich when records were requested in 2018.  After Plaintiff's Counsel sued the FBI pursuant to the Freedom of Information Act ("FOIA"), counsel for the FBI asked the FBI to search for records in its Washington Field Office ("WFO") and with its Computer Analysis Response Team ("CART"). The FBI agreed to search the WFO, and it responded that the WFO had offered assistance to the MPD during the murder investigation and that MPD had declined the offer, but there were no

records of those communications. On the other hand, the FBI flatly refused to search for responsive records in CART, even though CART is the most likely place to find any pertinent email evidence. The FOIA lawsuit remains pending.

75. After this lawsuit was filed, and around the time that Attorney General William Barr received authorization to declassify materials related to the RCH, the FBI asked for an extension of time in the FOIA litigation referenced above. Counsel for the FBI said the FBI had decided that it needed to produce additional documents. The additional documents are scheduled to be produced not later than July 22, 2019.

**Massey & Gail  Defendants**

76.  On March 13, 2018, Defendants Leonard Gail, Eli J. Kay-Oliphant, Suyash Agrawal filed *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No. 1:18-cv-02223, in the U.S. District Court for the Southern District of New York.  The suit alleged that Mr. Butowsky, Ms. Zimmerman, and Fox News knowingly spread a fake narrative about the death of Seth Rich, and that they did so for the purpose of causing harm to Joel and Mary Rich. The Massey & Gail Defendants knew that Mr. Bauman had recruited them as part of his larger scheme to silence Mr. Butowsky and anyone else who threatened to expose the Russia Collusion Hoax. First, they knew that Joel Rich had already admitted that his sons were responsible for leaking emails from the DNC. Second, the same Defendants knew that there was (and is) no evidence that Mr. Butowsky intended to harm the Rich family.  Third, the same Defendants attempted to file a defamation claim on behalf of a dead person (*i.e.*, Seth Rich) by recharacterizing it as a claim for intentional infliction of emotional stress. Any competent attorney would

- 30 -

have known that such a claim was frivolous.

77.  On the same day that lawsuit was filed, Defendant Bauman issued a press
release on behalf of himself, the Massey & Gail Defendants, and the law firm Susman
Godfrey that contained the following statement: "With disregard for the truth and for the
obvious harm that their actions would cause the Riches, Fox, Zimmerman and Butowsky
propagated and developed a fictitious story that their deceased son, Seth – not Russian
hackers or anyone else – provided Democratic National Committee emails to
WikiLeaks."  That sentence is false and defamatory and it is not attributed to the lawsuit,
therefore it is not privileged. Furthermore, the Defendants knew the statement was false,
and they knew their lawsuit was merely a sham that was designed to provide legal cover
for  making such false statements about Mr. Butowsky. Contrary to the press release, Mr.
Butowsky did not disregard the truth nor any "obvious harm," nor did he propagate or
develop a fictitious story.

78.  In a March 15, 2018 interview with Andrea Mitchell on MSNBC, Defendant
Gail alleged that Mr. Butowsky and the other defendants "propagated a story that was
false" and acted with "utter disregard for the fact that the Riches were mourning the life
of their son." He further said the defendants "had their own agenda and they moved
forward with something that was baseless." At the time he made those statements, Mr.
Gail knew they were false, but he made the statement in order to advance the RCH and to
discredit Mr. Butowsky and his co-defendants.

79.  On August 2, 2018, U.S. District Judge George B. Daniels dismissed  *Rich v.
Fox News Network, LLC* for failure to state a claim in an order that can be found at 322

F.Supp.3d 487.  That order is incorporated by reference.  The Defendants filed and
prosecuted the case maliciously and in bad faith.

**The Boies Schiller Defendants**

80.  On March 26, 2018, the Boies Schiller Defendants filed *Aaron Rich v.
Edward Butowsky, et al.*, Case No. 1:18-cv-00681, on behalf of Aaron Rich in the U.S.
District Court for the District of Columbia. According to the lawsuit, Mr. Butowsky and
others defamed Aaron Rich by alleging that he helped his brother leak DNC emails to
Wikileaks. Like the other lawyer Defendants, the Boies Schiller Defendants knew that
Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, and
they knowingly joined Mr. Bauman's defamation / litigation conspiracy for the purpose of
keeping the RCH alive.

81.  In a March 27, 2018 interview with Anderson Cooper on CNN regarding the
lawsuit, Mr. Gottlieb made false and defamatory allegations that:

(a) Mr. Butosky had said Aaron Rich "warned Seth Rich's girlfriend to break up with
him." In reality, Mr. Butowsky never said such a thing.

(b) Mr. Butosky "made up a meeting that purportedly occurred at the DNC" where
Aaron Rich puroportedly threw a chair. In reality, Mr. Butowksy never said such a
thing.

(c) Mr. Butowsky's statements about Aaron Rich and Seth Rich were fabricated , *i.e.*,
"all of this, all of it, is made up." Elsewhere, Mr. Gottlieb said, "It's made up –
there is no money in Aaron Rich's account" and it's a "complete fabrication."

(d) Mr. Butowsky spread a conspiracy theory "as far as possible" to "make money off
of it" from t-shirt sales, etc.  In reality, Mr. Butowsky has never spread a
conspiracy, and he never made nor sought to make a penny from Seth Rich, Aaron
Rich, or any conspiracy theory.

(e) After Aaron Rich asked for a retraction, Mr. Butowsky and the other defendants

purportedly "doubled down on the lies they were telling." In reality, Mr. Butowksy never told any lies about Seth Rich or Aaron Rich.

Before filing this lawsuit, Mr. Butowsky asked Defendant Gottlieb to retract the false allegations above, but he refused.

82.  On May 30, 2018, Plaintiff's Counsel asked Defendant Governski if her client, Aaron Rich, would authorize Wikileaks to reveal what it knew about whether he and his brother were involved in leaking emails. In an email sent at 3:14 p.m., he wrote:

> I've attached a preservation letter that I sent to eBay and PayPal, and I have also attached a proposed waiver for your client. Julian Assange / Wikileaks likely will not cooperate unless your client consents to the release of information. Please let me know if he is willing to consent. Thanks.

Ms. Governski responded at 4:27 p.m.:

> We believe the appropriate mechanism for obtaining information from third parties is to serve subpoenas to those third parties as contemplated under the Federal Rules of Civil Procedure. Those rules do not require any advance waiver from any party in order to serve or enforce such a subpoena. If any third party has a request to make of our client as a result of a subpoena, we will address those requests directly with those third parties rather than through opposing counsel.

At 8:12 p.m. Plaintiff's Counsel replied as follows:

> Yes, but as a practical matter, Julian Assange, Kim Dotcom, and Wikileaks are beyond U.S. jurisdiction. Furthermore, Assange and Wikileaks have shown that they will not be coerced into revealing the identity of their sources. It is for that reason that I am asking your client to voluntarily waive any objections to the release of such information. If you are saying your client is unwilling to do that, I think the media (and the public) will find that very interesting.

Ms. Governski did not respond, so Plaintiff's Counsel sent a letter via fax and email at 7:51 a.m. on June 1, 2018 to her, Mr. Gottlieb, and a third lawyer at the firm, Randall Jackson:

> I write concerning your client's pleadings in the case identified above. According

to Fed. R. Civ. P. 11(b), an attorney's signature on the pleadings is certification that he or she has performed "an inquiry reasonable under the circumstances" to determine the accuracy and propriety of those pleadings.

As you know, Ms. Governski and I have exchanged emails about whether your client, Aaron Rich, is willing to voluntarily authorize Wikileaks, Julian Assange, and/or Kim Dotcom to discuss any relationship that they may have had with Mr. Rich or his brother, Seth Rich. Thus far, it appears that your client is unwilling to authorize such disclosures.

This is very telling. On the one hand, Mr. Rich boldly denies that he and/or his brother leaked DNC emails to Wikileaks. On the other, he refuses to authorize disclosures from the witnesses who are in the best position to know who leaked those emails. That begs a question: if your client has nothing to hide, why is he hiding it?

Under Rule 11(b), you have a duty to answer that question. Furthermore, you should ask your client some pointed questions about what funds may have been transferred to him or his brother through eBay accounts. And you should remind him that every trip to a safe deposit box is recorded on video and preserved.

If the evidence leads where we expect it to lead, my client will aggressively seek sanctions against Mr. Rich and everyone else responsible for bringing meritless claims. Thank you for your attention to this matter.

At 3:20 p.m. that afternoon, Plaintiff's Counsel received an email notifying him that

Defendants Gottlieb and Governski were serving a subpoena seeking records from

Twitter, including private communications from the Twitter Account of Plaintiff's

Counsel. In other words, Defendants Gottlieb and Governski tried to use a subpoena to

obtain privileged communications from their opposing counsel.  After that stunt received

negative media attention, they withdrew the subpoena.

83.  In a bizarre and angry five-page letter sent on June 2, 2018 (a Saturday

morning), Defendant Gottlieb offered the following rationale for refusing to authorize

Wikileaks to disclose what it knew about the Riches involvement in email leaks:

> [P]roviding such a waiver would create precisely the impression you claim we are
> seeking to avoid. Namely, the mere act of granting a waiver to disclose
> communications to these third parties could create an impression that there exist
> communications that could or should be disclosed, and that is especially so if you
> were to follow through on your threat of disclosing such information to the media.

Defendant Gottlieb nonetheless wrote that he would be issuing subpoenas to third parties

such as Wikileaks.  On June 22, 2018, Defendant Governski wrote in an email that

subpoenas would need to be served on Wikileaks, Julian Assange and Kim Dotcom via

letters rogatory, and that she was working on that process.  The subpoenas were not

issued, however, so Plaintiff's Counsel sent a news article to Defendant Governski on

August 20, 2018 noting that a federal court had authorized service of a DNC lawsuit

against Wikileaks via Twitter.  Defendant Gottlieb responded with baseless accusations

that Plaintiff's Counsel was practicing law in D.C. without a license. (Defendant Gottlieb

subsequently filed a fraudulent grievance against Plaintiff's Counsel with the State Bar of

Texas, but that grievance was dismissed after Plaintiff's Counsel submitted proof that

Defendant Gottlieb had knowingly omitted exculpatory evidence from his grievance).

     84.   More than a year after the issue was first raised, and despite repeated inquiries

from Plaintiff's Counsel, no subpoenas have been issued to Wikileaks, Julian Assange, or

Kim Dotcom by Defendants Governski or Gottlieb. Contrast that with the fact that

Defendants Governski and Gottlieb issued a subpoena within a matter of hours for the

private communications of Plaintiff's Counsel.  The reason for this disparity is

straightforward: Defendants Governski and Gottlieb  know that if Mr. Butowsky issues a

subpoena to Wikileaks, the subpoena will be ignored pursuant to its policies for

protecting sources.  If, however, Defendants Governski and Gottlieb issue a subpoena to

Wikileaks on behalf of Aaron Rich, Wikileaks will likely construe that as a waiver of confidentiality, in which case the damning emails would finally be released. That's the last thing they want, so they have reneged on their earlier statements about issuing their own subpoenas.

85.   In an October 1, 2018 story published by *Vox*, a statement from Ms. Governski is quoted as stating that the defendants – to include Mr. Butowsky – are "conspiracy theorists who spread malicious lies for personal and political gain." Ms. Governski is further quoted as saying, "We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives." On the contrary, Mr. Butowsky is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise – nor has he done so for personal or political gain.   In fact, Ms. Governski cannot point to *any* statements that Mr. Butowksy made about Aaron Rich after his lawsuit was filed – false or otherwise – thus she knew that she was lying about Mr. Butowsky in her statement to *Vox*.

**The Bailey & Glasser Defendants**

86.   On May 21, 2018, the Bailey & Glasser Defendants filed a ludicrous defamation lawsuit against Mr. Butowsky (and others) on behalf of Defendant Bauman. Like the other lawyer Defendants in this case, the Bailey & Glasser Defendants had knowingly and intentionally joined Mr. Bauman in the DNC's overarching scheme to keep the RCH alive by defaming, discrediting, and bullying Mr. Butowsky into silence.

87.   The Bailey and Glasser Defendants alleged that Mr. Butowsky defamed Mr.

Bauman when he repeated what Joel Rich had said, *i.e.*, that the DNC had "assigned" Mr.

Bauman to speak for the Rich family. They also alleged that Mr. Butowsky defamed Mr.

Bauman when, responding to Mr. Bauman's accusation that he lied, Mr. Butowsky

countered that Mr. Bauman had lied.

88.   On March 29, 2019, U.S. District Judge Richard J. Leon dismissed Mr.

Bauman's absurd lawsuit. *See Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019).

That opinion is incorporated herein by reference.  No competent attorney would have

thought that Mr. Bauman had a legitimate claim against Mr. Butowsky, and the Bailey &

Glasser Defendants knew the lawsuit was frivolous when they filed it.

**The CNN Defendants**

89.   For more than two years, Defendant CNN and its employees have shamelessly

promoted the RCH, and they have repeatedly tried to demonize and discredit anyone who

questioned the DNC narrative about the murder of Seth Rich. During that period, CNN

has generally portrayed Mr. Butowsky as an unscrupulous political activist who

knowingly and maliciously concocted and spread false stories in conjunction with Fox

News and Malia Zimmerman.

90.   Notwithstanding the fact that Mr. McCabe was fired from the FBI on March

16, 2018 for lying to federal investigators, and not withstanding the fact that he is the

subject of at least two criminal investigations, Defendant CNN hired him as an on-air

commentator so he could continue promoting the RCH on its programs. No fair-minded

journalism company would hire Mr. McCabe, but then CNN is more of a partisan

infotainment enterprise than a journalism company. The CNN Defendants named herein

know that the Russian collusion narrative is false, and they specifically know that the Russian hacking narrative is false, but they continue to promote false stories in order to keep the RCH alive. Mr. McCabe still works for Defendant CNN as of the date of this filing.

91.  A March 14, 2018 story attributed to Defendant Darcy states that Mr. Butowsky and his co-defendants had been sued for "their roles in the publication of a baseless conspiracy theory about Rich's 2016 death." A May 21, 2018 story attributed to Defendant Darcy implicated Mr. Butowsky as someone "who pushed unfounded claims and theories about Rich's death," and an October 1, 2018 article impugned Mr. Butowsky for "peddling a conspiracy theory" without "real evidence."  Prior to the publication of the March 14, 2018 story, however, Mr. Butowsky spoke with Defendant Darcy by telephone and emailed him evidence (including the evidence found at DebunkingRodWheelersClaims.com) to show that there was reason to believe that Seth Rich was involved in the DNC email leak.  Defendant Darcy ignored all of that evidence – and falsely claimed there was no evidence – because he was more interested in promoting the Russian Collusion narrative.

92.  The top of the March 14, 2018 CNN web story is linked to a propaganda video produced by Defendant Kludt, a left-wing political activist who masquerades as a journalist. In the video, Defendant Kludt falsely states that there is no evidence that Mr. Rich leaked emails to Wikileaks: "It's never been supported by any evidence," Defendant Kludt claims. "The question is this: Will the Seth Rich lie ever disappear?" Defendant Kludt also refers to people who question the official "botched robbery" narrative as

"conspiracy theorists." The clear purpose of Defendant Kludt's propaganda video is to discredit and smear anyone who dares to question the DNC narrative, and it is tied directly to Defendant Darcy's web story about Mr. Butowsky. In other words, Defendant Kludt and Defendant Darcy jointly and intentionally misrepresented Mr. Butowsky as a liar and a crackpot conspiracy theorist.  Like Defendant Darcy, Defendant Kludt was aware of the considerable evidence that Mr. Butowsky was telling the truth.

93.  In a March 27, 2018 story on *Anderson Cooper 360* about Aaron Rich's against Mr. Butowsky, Defendant Tuchman flatly stated that there was no evidence whatsoever that Seth Rich leaked DNC emails to Wikileaks. "There wasn't any evidence at all – it was all made up," he said, further describing it as a "conspiracy theory concocted by  right-wing commentators." As the anchor of the show bearing his name, Defendant Cooper decided to broadcast Defendant Tuchman's defamatory statements. Prior to March 27, 2018, Defendant Tuchman and Defendant Cooper knew that there was considerable evidence that Mr. Rich was involved in the email leak, and they knew that Mr. Butowsky had not "made up" or "concocted" anything. Neither of them attempted to speak with Mr. Butowsky before broadcasting their false allegations against him, however, and that's because they were willing to sacrifice the truth in order to promote the RCH narrative.

94.  The March 27, 2018 story featured the interview of Defendant Gottlieb described in Paragraph 62 above, and Mr. Butowsky was mentioned by name more than once.  Unsurprisingly, Defendant Cooper never pushed back on any of Defendant Gottlieb's allegations, no matter how false or outrageous. Instead, Defendant Cooper

endorsed those statements, directly implying that Mr. Butowsky and his co-defendants were responsible for "promoting unfounded claims that Seth Rich was tied to the DNC hacking." In another statement, Defendant Cooper directly implied that Mr. Butowsky was responsible for traumatizing Joel and Mary Rich because of "[having their son] being accused of stuff that there's no evidence of." In yet another, Mr. Cooper alleged that Mr. Butowsky and his co-defendants had been involved in spreading "lies."

95.  As set forth above, the CNN Defendants knew not later than 2017 that Mr. Wheeler was lying about Mr. Butowsky, Ms. Zimmerman, and Fox News, and they knew that Mr. Butowsky had not fabricated anything. They also knew as of that date that there was at least *some* evidence that Mr. Rich was involved in leaking DNC emails (even if they found contrary evidence more convincing). After all, Mr. Assange had publicly identified Mr. Rich as the source of the leaks as far back as late 2016. Notwithstanding this, the CNN Defendants continued to impugn Mr. Butowsky with false allegations that there was "no evidence" of Seth Rich's involvement, further alleging that Mr. Butowsky had knowingly spread a false story for malign purposes. In other words, the CNN Defendants knowingly made defamatory statements about Mr. Butowsky.

96.  Defendant Governski formerly served as a spokeswoman for Defendant CNN. The Plaintiff alleges that she enlisted the CNN Defendants in the larger scheme to defame and discredit Mr. Butowsky with false allegations. As #Resistance "journalists," the CNN Defendants were all too willing to smear Mr. Butowsky in order to keep the RCH alive.

97.  On February 02, 2019, Mr. Butowsky (through counsel) requested retractions from Defendants CNN, Cooper, Tuchman, Darcy, and Kludt.  In a letter dated February

15, 2019, CNN Vice President and Asst. General Counsel Johnita P. Due wrote that no

retractions would be forthcoming. "CNN has reported that the claims Mr. Butowsky has

made about Seth Rich's connection to the Democratic National Committee (DNC) hack

are 'baseless,' 'unfounded,' and 'without real evidence," she confirmed. "Indeed, there is a

very long list of official sources who have either directly or indirectly said the claims

about Seth Rich are not true." She then parroted the predictable list of statements by

Obama Administration officials, the office of Special Counsel Robert Mueller, and MPD.

"In other words," she wrote, "the claims made by Mr. Butowsky are unfounded, baseless

and not supported by real evidence – exactly as CNN reported."

98.   As evidenced by Ms. Due's letter, leftists and American media have come full

circle with respect to trusting the government and its intelligence agencies.  In the 1970s,

they hailed the work of Senator Frank Church and his Select Committee to Study

Governmental Operations with Respect to Intelligence Activities, which exposed

widespread corruption and impropriety in the CIA, FBI, and NSA, some of which dated

back to the 1950s. Now, leftists and American media have blind faith in those same

agencies, at least as long as they are under the control of their leftist allies.

**Defendants *Vox* and Coaston**

99.   On April 19, 2018 and October 1, 2018, Defendant *Vox* published defamatory

articles written by Defendant Coaston, a left-wing extremist who masquerades as a

journalist.  Defendant Coaston openly advertises her left-wing politics in her articles and

in her Twitter feed, and until 2016 she worked for left-wing activist groups rather than

media organizations. Both of Ms. Coaston's articles conveyed the false overall impression

that Mr. Butowsky had lied repeatedly and abused the trust of the Rich family for purposes of advancing a fraudulent narrative. In her April story, Defendant Coaston alleged that "the Riches' story isn't just about conspiracy theorists — it's about a conspiracy of Fox News contributors who concocted a lie while purporting to be trying to find Seth's killer."  There was no conspiracy, however, and there was no lie. For the reasons set forth above, Ms. Coaston knew at the time she wrote the articles that there had been no conspiracy among Fox News contributors, and she knew that they had not "concocted a lie."

100.  Defendant Coaston further wrote that "[d]espite Butowsky's repeated questions about payments from WikiLeaks (which didn't exist), Joel and Mary repeatedly told both Zimmerman and Butowsky that the conspiracy theories about their son were 'baseless,' and provided Zimmerman with information about Seth's life for stories she said she was writing." In reality, neither Joel nor Mary Rich told Mr. Butowsky that claims of their sons' involvement with Wikileaks were "baseless."  Instead, Joel Rich told Mr. Butowsky that he knew his sons were involved in the leak.

101.  The April 19, 2018 story by Defendant Coaston included numerous other false and defamatory allegations, including the following excerpt:

> Wheeler stated later that he received text messages that day from Butowsky telling him what to say in media interviews:
>
> - "If you can, try to highlight this puts the Russian hacking story to rest"
> - "We need to emphasize the FBI has a report that has been suppressed that shows that Seth rich [sic] did this..."

But none of this was true. As would be revealed just a few days later, Wheeler had never said that there was any emailing between Seth Rich and WikiLeaks, and

everything he'd heard had been from Butowsky and Zimmerman. "I've never, ever seen Seth Rich's computer, nor have I talked with the federal investigator." And there was no FBI investigation, either — the FBI had never even seen Seth's laptop.

In short, Butowsky and Zimmerman had worked with Rod Wheeler, told him the FBI had information about Seth Rich's alleged connection with WikiLeaks, and then set him loose — with absolutely no proof. In fact, when Joel Rich demanded a retraction, Zimmerman told him (according to Wheeler, under direction from Fox producers) that the details about their son's (completely false) WikiLeaks ties had come from Wheeler — whom Butowsky and Zimmerman had been working with all along.

Most of the foregoing excerpt is false and defamatory, and Ms. Coaston knew it was false at the time she made the allegations. As set forth above, it was already a matter of public record in 2017 that Mr. Wheeler had lied about Mr. Butowsky, Ms. Zimmerman, and Fox News. Mr. Wheeler *did* say that emails were exchanged between Seth Rich and Wikileaks, and he said so in a televised interview. Furthermore, Mr. Butowsky did not "set loose" Mr. Wheeler with "no evidence."

102. Elsewhere in the April 18, 2019 article, Defendant Coaston wrote, "As recently as this month, far right media articles are still being shared detailing how Joel Rich told Butowsky that he was aware Seth had leaked the emails — all of which is false." It was not and is not false, and Defendant Coaston's allegations to the contrary are defamatory. Defendant Coaston ended the story with the following paragraph: "But by challenging how the story of their son's murder was manipulated by people who wormed their way into their inner circle — even gaining access to their religious community — the Riches could shine a light on the darkest underbelly of the conservative media apparatus." Contrary to the inferences in that paragraph, Mr. Butowsky did not

manipulate anything, nor did he "worm" his way into the Riches inner circle or religious

community (much less for purposes of propagating a false story).

103.   The October 1, 2018 story by Defendant Coaston was comparably malicious

and false. She wrote:

> ...Fox News ran a story, 'Slain DNC Staffer Had Contact with WikiLeaks, Say Multiple Sources." A second story, also published May 15, said that Wheeler was the source. But none of this was true — in fact, the only people who had told Wheeler about WikiLeaks contacts or an FBI investigation (also a part of the original, and false, story) were Butowsky and Fox News investigative reporter Malia Zimmerman.

The foregoing paragraph is utterly false, and Defendant Coaston knew it was false at the

time she wrote her article. As noted above, Mr. Wheeler had previously admitted in a

television interview that he confirmed Seth Rich's role in the DNC leak using his own

sources.  Furthermore, Mr. Wheeler's frivolous lawsuit had been dismissed almost two

months *before* Ms. Coaston wrote the October 1, 2018 article.  The story itself notes that

Mr. Wheeler's lawsuit had been dismissed, yet Defendant Coaston repeated the false

allegations as if they were true.  In other words, she knowingly and maliciously defamed

Mr. Butowsky.

104.   The October 1, 2018 story by Defendant Coaston also contains the following

false and malicious paragraphs:

> In the retracted *Washington Times* story, Butowsky is also mentioned: "According to Ed Butowsky, an acquaintance of the family, in his discussions with Joel and Mary Rich, they confirmed that their son transmitted the DNC emails to Wikileaks." But this was a lie.

> ...And for Aaron, it would only get worse. Butowsky and Matthew Couch, who began working together on the Seth Rich story in the summer of 2017, would go on to defame Aaron Rich's character and argue that he was partially responsible

for his only brother's murder, even after Fox News distanced itself from its own false reporting on the Rich family.

...They also claimed that Aaron had refused to talk to law enforcement and stated that Aaron had known Seth would be murdered and had done nothing to stop it, aside from warning Seth's girlfriend to break up with Seth for her own safety. (To be crystal clear, *none of this happened*.)

Contrary to the excerpt above, Mr. Butowsky never told a "lie" about Joel Rich's admission that his sons were involved in the leak, nor did Mr. Butowsky state that Aaron Rich was "partially responsible for his only brother's murder." Finally, Mr. Butowsky never "claimed that Aaron had refused to talk to law enforcement and stated that Aaron had known Seth would be murdered and had done nothing to stop it, aside from warning Seth's girlfriend to break up with Seth for her own safety." Ms. Coaston knowingly lied when she attributed these statements to Mr. Butowsky.

105.   Even though Defendant Coaston knew that the allegations against Mr. Butowsky (and particularly Rod Wheeler's allegations against Mr. Butowsky) were false, she never contacted Mr. Butowsky or tried to get his side of the story.  That's because she was more interested in advancing the RCH narrative than reporting the truth.  On February 1, 2019, Mr. Butowsky (through counsel) asked Defendants *Vox* and Coaston to retract the false statements in the April 19, 2018 and October 1, 2018 articles.  In an arrogant and condescending reply dated February 8, 2019, attorney Jeremy A. Chase of Davis Wright Tremaine LLP wrote that Defendants Vox and Coaston would not retract anything. He also went a step further, stating that the contents of the articles "are demonstrably true." He will now be forced to prove that to a jury. The April 19, 2018 and October 1, 2018 still appear on the *Vox* website, and the Defendants' refusal to retract or

correct those articles is further proof of actual malice. *See Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 283 (Tex. App.—Houston [14th Dist.] 1996, no writ)("Refusal to print a retraction is evidence of an action *after* the publication, but it can lend support to a claim that reckless disregard or knowledge existed *at* the time of publication")(emphasis in original).

## Defendants *The New York Times* and Fauer

106. In an August 2, 2018 article written by Defendant Fauer and published in Defendant NYT, Defendant Fauer cherry-picked quotes from a court order for the purpose of creating a false impression. Defendant Fauer wrote that "[i]n his dismissal of the lawsuit [filed by Joel and Mary Rich], Judge George B. Daniels said he sympathized with Mr. Rich's parents, but added that they had not been personally defamed by the story – despite the fact that it included 'false statements or misrepresentations.'"  Elsewhere, the story reports that Mr. Butowsky was intimately involved in developing this story that purportedly included "false statements or misrepresentations."  In reality, Judge Daniels never made a factual finding that the story included "false statements or misrepresentations."  Judge Daniels's order was premised on Fed. R. Civ. P. 12(b)(6), and the order plainly states that under that rule, "a court 'accept[s] all factual allegations in the complaint as true ... and draw[s] all reasonable inferences' in favor of the plaintiff." *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 498 (S.D.N.Y. 2018), citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  Throughout the order, Judge Daniels made it very clear that he was merely restating the allegations in the Rich's complaint. In one sentence, for example, Judge Daniels wrote that "the only conduct that Plaintiffs

specifically attribute to Fox News relates to its publication of articles and news reports containing *allegedly* false statements." *Id*. at 501 (emphasis added). Nowhere in the order did Judge Daniels make a factual finding that the story included "false statements or misrepresentations," and that's because the Fox story did not contain any "false statements or misrepresentations."

107.   The August 2, 2018 story also included the following quote from the order: "It is understandable that plaintiffs might feel that their grief and personal loss were taken advantage of, and that the tragic death of their son was exploited for political purposes." In context, however, it is clear that the foregoing statement is premised on the *assumption* that the Rich's complaint was true.  Elsewhere Defendant Fauer wrote, "Judge Daniels dismissed the accusations against [Mr. Butowsky and Malia Zimmerman], as well, saying that even though the story they had put together was untrue, their behavior did not meet the legal standard of 'extreme and outrageous conduct.'" Again, Judge Daniels made no such statement that "the story they had put together was untrue."  He never reached that issue, nor could he have reached it under Rule 12(b)(6).

108.   A paragraph toward the end of the August 2, 2018 article is similarly misleading about the significance of the order:

> Mr. Wheeler and his partners at Fox news had "embarked on a collective effort to support a sensational claim regarding Seth Rich's murder," Judge Daniels wrote. Mr. Wheeler, the judge concluded, "cannot now seek to avoid the consequences of his own complicity and coordinated assistance in perpetuating a politically motivated story not having any basis in fact."

The foregoing paragraph omits the fact that because Judge Daniels was ruling on a 12(b)(6) motion, he was not and could not make any factual findings. Judge Daniels was ruling

*only* on Mr. Wheeler's complaint (and Mr. Wheeler had effectively plead himself out of court). Defendant Fauer's story, however, created the false impression that Judge Daniels made factual findings adverse to Mr. Butowsky.

109.   Defendant Fauer normally covers court proceedings for Defendant NYT and he knew that Rule 12(b)(6) dismissals are not factual findings, yet he deliberately misrepresented Judge Daniels's order.  Like the *New York Times* itself, Mr. Fauer is a partisan leftist who detests President Trump, and he knowingly smeared Mr. Butowsky because of his perceived affiliation with President Trump.  Mr. Butowsky (through counsel) asked Defendants Fauer and NYT to correct or withdraw the defamatory statements in a letter dated February 6, 2019, but they refused. The Defendants' refusal to retract or correct those articles is further proof of actual malice. *See Gonzales*, 930 S.W.2d at 283.

## Claims

## Defamation

110.   All previous paragraphs are incorporated herein by reference.

111.   Mr. Butowsky brings defamation claims against all Defendants because they or their agents published or conspired with others to publish false and defamatory statements about Mr. Butowsky as described above. Mr. Butowsky does not assert defamation claims based on allegations made in *Aaron Rich v. Edward Butowsky, et al.*

112.   The defamation claims against Defendants Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, and Massey & Gail LLP arise under New York law.

**Business Disparagement**

113.  All previous paragraphs are incorporated herein by reference.

114.  Mr. Butowsky brings business disparagement claims against all Defendants because they or their agents published or conspired with others to publish false and defamatory statements that caused harm to Mr. Butowsky's business and profession. As set forth in the attached *Folkenflik* complaint, Mr. Butowsky's work is regulated by the Securities and Exchange Commission, and allegations of fraud or dishonesty can cost him his professional licenses.  Likewise, the Defendants allegations of fraud and dishonesty have cost him the trust (and business) of approximately one third of his clients.  Mr. Butowsky does not assert business disparagement claims based on allegations made in *Aaron Rich v. Edward Butowsky, et al*.

**Malicious Prosecution**

115.  All previous paragraphs are incorporated herein by reference.

116.  Mr. Butowsky brings malicious prosecution claims against Defendants Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, and Massey & Gail LLP under New York law because they or their agents conspired to prosecute and did prosecute *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No. 1:18-cv-02223 (S.D.N.Y.) with malice and without probable cause.

117.  Mr. Butowsky brings malicious prosecution claims against Defendants Bauman, The Pastorum Group, Gregory Y. Porter, Michael L. Murphy, and Bailey & Glasser LLP under District of Columbia law because they or their agents conspired to prosecute *Brad Bauman v. Edward Butowsky, et al.*, Case No. 1:18-cv-01191 (D.D.C.)

with malice and without probable cause.

## New York Judiciary Law § 487

118.  All previous paragraphs are incorporated herein by reference.

119.  Mr. Butowsky brings claims under New York Judiciary Law § 487 against Defendants Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, and Massey & Gail LLP because they or their agents engaged in deceit and collusion.

## Civil Rights Violations

120.  All previous paragraphs are incorporated by reference.

121.  Mr. Butowsky brings claims against Defendants Gottlieb, Governski, Boies Schiller Flexner LLP, Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey & Gail LLP, Gregory Y. Porter, Michael L. Murphy, and Bailey & Glasser, LLP under 42 U.S.C. §1983, 42 U.S.C. §1985(3), and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  The foregoing Defendants conspired with government actors to violate the equal protection rights of the Plaintiff and to inhibit his right of access to the courts as guaranteed by the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth and Fourteenth Amendment Due Process Clauses.

## Civil Conspiracy

122.  All previous paragraphs are incorporated by reference.

123.  Defendants Gottlieb, Governski, Boies Schiller Flexner LLP, Bauman, The Pastorum Group, Gail, Oliphant, Agrawal, Massey & Gail LLP,  Gregory Y. Porter, Michael L. Murphy, and Bailey & Glasser LLP participated in an overarching conspiracy to defame, discredit, intimidate, and silence Mr. Butowsky, and they are fully liable for

one another's torts and statutory violations.

**Request for Relief**

The Plaintiff respectfully prays that upon a final hearing of this case, judgment be entered for him against the Defendants, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate; back pay; costs of court; attorney fees; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**