**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **Edward Butowsky, in his personal and professional capacities,** | |
| **Plaintiff**, | |
| **v.** | **Case No. 4:19-cv-00180-ALM-KPJ** |
| **Michael Gottlieb,** *et al.*, | **ORAL ARGUMENT REQUESTED** |
| **Defendants**. | |

**MOTION FOR RULE 11 SANCTIONS AND SUPPORTING MEMORANDUM BY**
**DEFENDANTS GOTTLIEB, GOVERNSKI AND BOIES SCHILLER FLEXNER LLP**

**TABLE OF CONTENTS**

PROCEDURAL BACKGROUND ............................................................................................... 1

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ........................................................................................................................... 4

   I.    THE SAC VIOLATES RULE 11(b)(2) BECAUSE IT IS FRIVOLOUS ........................... 5

   II.    THE SAC IS BASED ON ALLEGATIONS THAT HAVE NO EVIDENTIARY

   SUPPORT, IN VIOLATION OF RULE 11(b)(3). ................................................................... 7

   III.    THE SAC WAS FILED FOR AN IMPROPER PURPOSE, VIOLATING RULE

   11(b)(1). .............................................................................................................................. 13

   IV.    SANCTIONS ARE REQUIRED. ................................................................................. 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Colorado River Water Conservation Dist. v. United States*,

    424 U.S. 800 (1976)............................................................................ 6

*Cooper v. City of Plano*,

    No. 4:10-CV-689, 2011 WL 4344198 (E.D. Tex. Aug. 19, 2011) .......................................... 14

*Cooter & Gell v. Hartmarx Corp.*,

    496 U.S. 384 (1990)............................................................................ 4

*Dallas Indep. Sch. Dist. v. Finlan*,

    27 S.W.3d 220 (Tex. App. 2000)............................................................... 5

*Davis v. Supreme Court of Texas*,

    No. 4:15-CV-82, 2015 WL 13064937 (E.D. Tex. Mar. 31, 2015) .......................................... 14

*Erwin v. Russ*,

    481 F. App'x 128 (5th Cir. 2012) ............................................................. 15

*Martinez v. Hellmich Law Grp., P.C.*,

    681 F. App'x 323 (5th Cir. 2017) ............................................................. 5

*Matta v. May*,

    888 F. Supp. 808 (S.D. Tex. Mar. 31, 1995) .................................................. 5

*Melgarejo v. 24 Hour Prof'l Janitorial Servs.*,

    No. 3:07-CV-1847-B, 2009 WL 27448 (N.D. Tex. Jan 5, 2009) .......................................... 5, 6

*Mercury Air Grp., Inc. v. Mansour*,

    237 F.3d 542 (5th Cir. 2001) ................................................................. 10, 13

*Montgomery v. Walton*,

    759 F. App'x 312 (5th Cir. 2019) ............................................................. 7

*Newberry v. E. Tex. State Univ.*,

    161 F.3d 276 (5th Cir. 1998) ................................................................. 7

*O'Neill v. AGWI Lines,*

    74 F.3d 93 (5th Cir.1996) ..................................................................... 7

*Priester v. Lowndes Cty.*,

    354 F.3d 414 (5th Cir. 2004) ................................................................. 7

*Sheshtawy v. Conservative Club of Houston, Inc.*,

    2016 WL 10880233 (S.D. Tex. Dec. 14, 2016).............................. 14, 15

*Simmons v. Payne*,

    170 F. App'x 906 (5th Cir. 2006) ........................................................ 13

*Skidmore Energy, Inc. v. KPMG*,

    455 F.3d 564 (5th Cir. 2006) ............................................................... 15

*Southern Construction Co. v. Pickard*,

    371 U.S. 57 (1962)................................................................................. 6

*Thabico Co. v. Kiewit Offshore Servs., Ltd.*,

    No. 2:16-CV-427, 2017 WL 3387185 (S.D. Tex. Aug. 7, 2017) ........... 7

*Thomas v. Capital Sec. Servs., Inc.*,

    836 F.2d 866 (5th Cir. 1988) ....................................................... 4, 13, 14

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*,

    751 F.2d 721 (5th Cir. 1985) ................................................................. 6

*Wilson ex rel. Johnson v. Dowd*,

    No. 5-07-CV-99 (TJW), 2008 WL 11445472 (E.D. Tex. Mar. 13, 2008)................................ 7

iii

**Statutes**

28 U.S.C. § 1927 ................................................................................................................. 15

42 U.S.C. § 1983 ................................................................................................................... 7

42 U.S.C. § 1985(3) ............................................................................................................. 7

**Rules**

FED. R. CIV. P. 11 ........................................................................................................ 3, 4, 15

**Treatises**

Restatement (Second) of Torts § 586 (1977) ...................................................................... 5

Defendants Mr. Gottlieb, Ms. Governski, and Boies Schiller Flexner LLP (collectively, "BSF Defendants") hereby move for sanctions under Federal Rule of Civil Procedure 11 against Plaintiff Edward Butowsky and his counsel, Ty Odell Clevenger (Texas Bar No. 24034380).

This lawsuit is a paradigm case of the kind of frivolity and harassment that Rule 11 is designed to deter. Sanctions are essential to send a message that federal courts may not be used to retaliate against lawyers and journalists by filing a frivolous lawsuit based on fabricated allegations. Messrs. Clevenger and Butowsky knowingly advanced (and refused to withdraw) legally and factually frivolous causes of action in each version of their complaint in this action (currently the Second Amended Complaint). They have made implausible and unsupported factual allegations that Mr. Butowsky's own public statements and personal knowledge directly contradict—which Mr. Clevenger knew or should have known were false before he filed them.

The only discernible purpose of this lawsuit, from the start, has been an effort to intimidate and silence Aaron Rich and his attorneys in retaliation for their efforts to hold Mr. Butowsky accountable for his multi-year campaign to tar Aaron Rich as a criminal. As Mr. Butowsky himself put it: "I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves and go through the same crap I had to go through."[1] It is no surprise that Mr. Clevenger agreed to serve as Mr. Butowsky's representative in this matter given his history of filing frivolous lawsuits fueled by vendetta rather than facts or law.

## PROCEDURAL BACKGROUND

On March 26, 2018, the BSF Defendants filed a lawsuit in the U.S. District Court for the District of Columbia ("D.D.C.") on behalf of their client, Mr. Rich, against Mr. Butowsky and

---

[1] *See* Jeff Benjamin, *Exonerated in Defamation Suits, Ed Butowsky Is Out For Blood,* Investment News (Aug. 6, 2018), https://www.investmentnews.com/article/20180806/FREE/180809955/exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood (attached as Ex. 1). All Exhibits are cited in and attached to the Declaration of Paul J. Skiermont in support of this motion.

other defendants, alleging that those defendants defamed Mr. Rich by accusing him of conspiring with his brother, Seth, to steal emails from the DNC; selling those emails to Wikileaks in exchange for money deposited into Aaron Rich's personal bank account; and refusing to cooperate with law enforcement's investigation into his brother's murder. *See* Mot. to Dismiss at 4-5; *see also* Mot. to Dismiss Ex. A ("D.C. Lawsuit"). On the day the Complaint was released publicly, one of Mr. Rich's attorneys (Mr. Gottlieb) appeared on a news program in which he described the allegations in the Complaint; on the day that one defendant, the Washington Times, reached a settlement in which it retracted its statements about Mr. Rich and offered an apology, another of Mr. Rich's attorneys (Ms. Governski) gave a statement to another news publication in which she described the claims that remained live in the lawsuit.

In March of 2019, Mr. Butowsky, through his attorney Ty Clevenger, filed this lawsuit against certain of Mr. Rich's counsel, claiming that they defamed Butowsky by alleging that Butowsky defamed Rich. *See* Mot. to Dismiss at 4–10. Mr. Clevenger had moved for permission to appear as counsel for Mr. Butowsky in the D.C. Lawsuit, but abandoned that effort after a nearly-identical motion was denied in the Southern District of New York citing Mr. Clevenger's "cavalcade of disciplinary issues in various courts, all of which display a lack of respect for the judicial process." Order, *Scottie Nell Hughes v. Twenty–First Century Fox, Inc., et al.*, 17-cv-07093, Dkt. 87 (June 25, 2018) (Ex. 2). Mr. Clevenger has a history of bringing claims for clients that advance "a theory that serves their common purpose with complete disregard for the fact that it is a factually and legally unsupported and untenable position." Ex. 27 (Bankruptcy Court noting Mr. Clevenger's and client's "complete disregard for the facts and law in advancing their frivolous argument generated a staggering amount of work for the court"). The D.D.C. Committee on Grievances determined Mr. Clevenger engaged in "egregious conduct that establishes a concerted

pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process." Ex. 28.[2]

The BSF Defendants informed Mr. Clevenger and Mr. Butowsky separately and repeatedly *prior* to filing this lawsuit that its claims were frivolous and would result in Rule 11 motions. Exs. 3, 4, 20. They filed suit anyway, requiring the BSF Defendants to seek dismissal on June 21, 2019. *See* Dkt. 41. On the same day, the BSF Defendants again put Mr. Butowsky and Mr. Clevenger on notice that the lawsuit was frivolous by serving notice of a Rule 11 Motion. Rather than voluntarily dismiss the Complaint, Mr. Butowsky and Mr. Clevenger filed the First Amended Complaint on July 15, 2019, re-asserting the same baseless allegations and legal arguments, and adding additional ones. Dkt. 62 ¶ 45 ("FAC"). After the Court ruled the FAC was untimely and, as discussed *infra*, the BSF Defendants insisted Plaintiff amend the Complaint to correct an allegation he admitted to be false, Plaintiff filed his SAC. Dkt. 101. The BSF Defendants filed their Motion to Dismiss the SAC, Dkt. 105, and served this updated Rule 11 Motion on Mr. Clevenger and Mr. Butowsky pursuant to Rule 11(c)(2) on September 10, 2019. (Ex. 29.) Neither Mr. Butowsky nor Mr. Clevenger subsequently withdrew the complaint. Plaintiff did move to strike the allegation in Paragraph 96 accusing Ms. Governski of conspiring with CNN, and stipulated to dismiss three causes of action in Paragraphs 120-121 (Dkt. 154)—thus ***the Rule 11 violations directed to those issues that were served on Plaintiff and his counsel have been removed from this motion as filed.***

---

[2] Trial in the related disciplinary proceedings is scheduled for September 19, 2020 in California State Bar Court. *See* https://discipline.calbar.ca.gov/portal/Home/WorkspaceMode?p=0. The relevant factual history, including interactions between Mr. Clevenger and the BSF Defendants, is extensive. While this Motion alludes to that history, it incorporates by reference the BSF Defendants' Motion to Dismiss, Dkt. 105, and the cited filings from the Rich Lawsuit and exhibits attached to this Motion to ensure that the record before this Court is complete. *See, e.g.*, Ex. 17 (Rich Lawsuit, Dkt. 24) (opposition to Mr. Clevenger's *pro hac vice* application)); Ex. 18 (Rich Lawsuit, Dkt. 27 (supplemental opposition to Mr. Clevenger's *pro hac vice* application)).

## LEGAL STANDARD

Under Rule 11, by "presenting to the court a pleading, written motion, or other paper . . .

an attorney or unrepresented party certifies that to the best of the person's knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances:

> (1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ."

FED. R. CIV. P. 11(b).

Rule 11 imposes an affirmative duty on the filing attorney to (1) conduct "a reasonable

inquiry into the facts which support" filing; (2) conduct "a reasonable inquiry into the law such

that the document embodies existing legal principles or a good faith argument 'for the extension,

modification, or reversal of existing law;'" and (3) to have filed the relevant pleading for purposes

other than "delay, harassment, or increasing costs of litigation." *Thomas v. Capital Sec. Servs.,*

*Inc.*, 836 F.2d 866, 873–74 (5th Cir. 1988). Rule 11's purpose "is to deter baseless filings in district

court" and it is "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*,

496 U.S. 384, 393, 397 (1990). Courts in this Circuit measure Rule 11 compliance "by an objective,

not subjective, standard of reasonableness under the circumstances." *Thomas*, 836 F.2d at 873.

## ARGUMENT

The SAC violates Rule 11 in multiple respects. ***First***, the supposed legal bases on which

the SAC rests are frivolous. ***Second***, it is based on allegations that have no evidentiary support.

***Third***, the SAC was filed, and is being pressed, for an improper purpose.

4

## I.   THE SAC VIOLATES RULE 11(b)(2) BECAUSE IT IS FRIVOLOUS.

The SAC asserts multiple frivolous causes of action against the BSF Defendants. The BSF Defendants' Motion to Dismiss sets forth in detail the frivolity of those claims, and the BSF Defendants incorporate those arguments by reference to the extent not set forth below.

*First*, the SAC asserts causes of action based on statements that are absolutely privileged. The BSF Defendants made those statements about the lawsuit in the course of representing Mr. Rich in his lawsuit against Mr. Butowsky. *See* Mot. to Dismiss at 15-18; *Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 3:07-CV-1847-B, 2009 WL 27448, at \*3 (N.D. Tex. Jan 5, 2009); *Martinez v. Hellmich Law Grp., P.C.*, 681 F. App'x 323, 326 (5th Cir. 2017) (absolute privilege "applies to out-of-court communications if the communication bears *some* relationship to the proceeding and is in furtherance of the attorney's representation.") (emphasis added).[3] In an attempt to escape this clear legal authority, Plaintiff's Opposition to the BSF motion to dismiss asserts that the BSF Defendants "never purported to be describing the contents of a lawsuit." Dkt. 116 at 9. But the entire Anderson Cooper segment on which Mr. Gottlieb appeared focused on the filing of the lawsuit, on the day the lawsuit was released docketed. *See* Mot. to Dismiss at 17. Likewise, Ms. Governski's statements to Vox were clearly about the lawsuit, on the day the Washington Times defendant settled. *Id.* The absolute privilege bars Mr. Butowsky from suing based on the CNN appearance and Vox article—the only publications alleged to be defamatory as to the BSF Defendants—because the *entire point* of those publications was to discuss the D.C. Lawsuit, on the same day as critical developments in that case. *Id.* at 18. Mr. Clevenger knows that

---

[3] *See also Matta v. May*, 888 F. Supp. 808, 813 (S.D. Tex. Mar. 31, 1995); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 238 (Tex. App. 2000); Restatement (Second) of Torts § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.").

these statements are protected by absolute privilege, because if they were not, the BSF Defendants

and Mr. Rich could have filed a mirror image suit against Mr. Clevenger for his *numerous* public

statements accusing them of unethical and/or unlawful conduct. *See, e.g.,* Ex. 13 (Clevenger

publication accusing the BSF Defendants of concealing evidence); Ex. 23 (Clevenger publication

accusing Aaron Rich of participating in providing DNC documents to Wikileaks).

Rule 11 sanctions, including attorneys' fees and costs, are appropriate where both Mr.

Butowsky and Mr. Clevenger filed a lawsuit based on statements they knew were protected by the

absolute litigation privilege. *See Melgarejo*, 2009 WL 27448, at *3 (awarding Rule 11 sanctions

against defamation counterclaimant's counsel, after opposing counsel had provided legal authority

to him about absolute privilege and in the face of his "subjective belief that the litigation privilege

should not apply"); Ex. 20 (informing Mr. Clevenger statements covered by absolute privilege).

***Second***, Mr. Butowsky and Mr. Clevenger pressed this lawsuit despite knowing that the

law prohibits responding to the allegations and issues in the D.C. Lawsuit by filing a separate

action on the same allegations and issues in this Court.[4] *See* Mot. to Dismiss at 10-15; *see also*

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (first to file); *W.*

*Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d

721, 728–29 (5th Cir. 1985) (same); *Southern Construction Co. v. Pickard*, 371 U.S. 57 (1962)

(same). The reason for the rule is obvious, as illustrated here, where Mr. Butowsky is trying to

litigate the parties' dispute in this forum, even after the D.D.C. denied his motion to transfer that

---

[4] *See, e.g.,* SAC ¶ 6 (alleging that Defendant Butowsky's "statements about the stolen emails were accurate); ¶ 72 ("Aaron and Seth Rich were both responsible for leaking the DNC emails"); *id.* ¶ 80 ("the Boies Schiller Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks"); *id.* ¶ 81 ("never told any lies about Seth Rich or Aaron Rich"), ¶85 ("is not a conspiracy theorist, and he has not spread any lies—unconscionable or otherwise— nor has he done so for personal or political gain").

attempted to move the parties' dispute here. Rule 11 sanctions are warranted because there is no nonfrivolous basis on which Mr. Butowsky can maintain his suit in this Court given the pending D.C. Lawsuit in D.D.C. *See Thabico Co. v. Kiewit Offshore Servs., Ltd.*, No. 2:16-CV-427, 2017 WL 3387185, at *1 (S.D. Tex. Aug. 7, 2017) (Rule 11 in part where plaintiff could point to no factual basis to "controvert the appearance of forum shopping" or explain why federal court in Texas was proper form); *cf. O'Neill v. AGWI Lines,* 74 F.3d 93, 95 (5th Cir.1996) (affirming sanctions under Rule 37(b)(2) including for "blatant forum shopping"). Plaintiff refused to dismiss the BSF Defendants from this case even after Judge Leon in D.D.C. advised that he should. *See* Mot. to Dismiss at 12-13.

*Finally*, sanctions are warranted because neither the SAC, nor Plaintiff's opposition to the BSF Defendants Motion to Dismiss for lack of personal jurisdiction (Dkt. 115) sets forth a prima facie case for personal jurisdiction, and the precise argument Plaintiff relies on—the *Calder* effects test—has been specifically rejected in this Circuit under similar facts. *See* Dkt. 104 at 5-10.

## II.  THE SAC IS BASED ON ALLEGATIONS THAT HAVE NO EVIDENTIARY SUPPORT, IN VIOLATION OF RULE 11(b)(3).

Mr. Butowsky and Mr. Clevenger have asserted at least five specific factual allegations that are either demonstrably false or to which Mr. Clevenger signed his name without having investigated to determine whether they have any evidentiary support: (1) that Ellen Ratner, a Fox News analyst, informed Mr. Butowsky that Julian Assange told her that Seth and Aaron Rich leaked the emails to Wikileaks, s*ee* FAC ¶ 45; (2) that Mr. Rich's father admitted that he "knew his sons were involved" in the leak during a December 2016 conversation with Mr. Butowsky, SAC ¶¶ 47, 100; (3) that the BSF Defendants have "reneged" on serving subpoenas on Julian Assange and WikiLeaks in the D.C. Lawsuit and would not "authorize" the same entities to "reveal" what they know, SAC ¶¶ 72, 80–85; (4) because the BSF Defendants "knew that Aaron

7

Rich actually had assisted his brother in leaking DNC emails to Wikileaks" and fear "the damning emails would finally be released," *id* and (5) that the BSF Defendants filed the Rich Lawsuit at the request of Mr. Bauman, SAC ¶ 61.

*First*, the July 15, 2019 FAC added a claim that Ms. Ratner informed Mr. Butowsky that "Mr. Assange told her that Seth Rich **and his brother, Aaron,** were responsible for releasing the DNC emails to Wikileaks." FAC ¶ 45 (emphasis added).[5] Both Mr. Butowsky and Mr. Clevenger have admitted that statement as to Mr. Rich is false. On July 28, 2019, Mr. Butowsky appeared on CN Live to discuss his conversation with Ms. Ratner and, with respect to Aaron Rich, completely changed his story:

> Interviewer: **Was uh Seth's brother Aaron in any way mentioned by Ellen?**
> Butowsky: **With Ellen no,** with the father yes. . .

Consortium News, Ed Butowsky on the ongoing Seth Rich controversy (July 28, 2019), https://www.youtube.com/watch?v=KrtSGGklGmM. The next day—without informing counsel for Mr. Rich or correcting the defamatory allegation that remained in the FAC on the Court's docket—Mr. Clevenger publicly admitted that the allegation was false:

> Ellen Ratner only relayed information from Julian Assange about Seth Rich, but **she said nothing about his brother, Aaron**, according to Mr. Butowsky. Paragraph 45 of the First Amended Complaint in *Edward Butowsky v. Michael Gottlieb, et al.* mistakenly says she relayed information about both.

---

[5] Messrs. Butowsky and Clevenger used this allegation to participate in and encourage a public relations blitz. *See, e.g.,* Exs. 23-26 (articles, blog posts, and tweets by Clevenger and Butowsky publicizing these false allegations); Ex. 23 (Clevenger blog citing Mr. Butowsky stating Ms. Ratner told him that Julian Assange said that Seth Rich "and his brother" Aaron were responsible for leaking the DNC documents to Wikileaks); Ex. 24 (Clevenger post to The DC Patriot quoting lawsuit including the allegations about Mr. Rich); Ex. 25 (Clevenger Tweet linking to Mr. Clevenger's post on The DC Patriot); Ex. 26 (Butowsky Tweet linking to article quoting Mr. Clevenger's blog stating Aaron Rich was involved in leaking documents to Wikileaks).

Ex. 15 (emphasis added). In fact, Ms. Ratner has denied saying anything to Mr. Butowsky about *either* Aaron or Seth Rich.[6]

Mr. Clevenger has attempted to portray the inclusion of this highly specific allegation as some kind of innocent mistake, but the public relations blitz accompanying the release of the amended complaint belies that portrayal. Mr. Butowsky authorized Mr. Clevenger to file the FAC despite knowing that it included this false allegation about Mr. Rich, and Mr. Clevenger either knowingly included that false allegation or, at bare minimum, failed to perform the factual investigation demanded of officers of the court under Rule 11. Ex. 22. Clevenger failed in both his duty to make a reasonable inquiry of his client prior to filing the FAC, and in his duty to inform the Court of his participation in fraud on the Court—it was not until undersigned counsel insisted he do so that Mr. Clevenger informed the Court of the blatantly false allegation in the FAC. *Id.*

**Second**, the SAC falsely asserts that Mr. Rich's father said he "knew that his sons were involved" during his first phone call with Mr. Butowsky. SAC ¶ 47. Mr. Clevenger knew or should have known that allegation is false, and has been discredited and contradicted, including *by his own client*. On May 23 and August 1, 2017—long before Mr. Butowsky inserted Mr. Rich into the conspiracy theory that had until then involved only his brother, Seth—Mr. Butowsky admitted that when he first spoke to the Rich family about WikiLeaks in December 2016, "***They said to me, 'you know what? We don't believe you.'***"[7] A reasonable factual investigation would have revealed

---

[6] *See* Michael Isikoff, Fox News fiction: How the Seth Rich conspiracy murder theory made its way to Trump's favorite cable news network, Yahoo (July 23, 2019), https://news.yahoo.com/fox-news-fiction-how-the-seth-rich-conspiracy-murder-theory-made-its-way-to-the-cable-news-network-100000772.html, at 20:09-21:00.

[7] Ex. 5 (Alicia Powe, *'That's patently false!' Seth Rich family spokesman denies DNC is paying him*, WND.COM, May 23, 2017 https://www.wnd.com/2017/05/thats-patently-false-seth-rich-family-spokesman-denies-dnc-is-paying-him/); Ex. 6 (Transcript, CNN Tonight, CNN, Aug. 1, 2018, http://transcripts.cnn.com/TRANSCRIPTS/1708/01/cnnt.01.html).

those statements—made before Mr. Butowsky was defending himself in litigation, and far closer in time to the phone call in question—and should have stopped any reasonable attorney from signing onto Mr. Butowsky's libelous misattribution. *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) ("attorney must have made a reasonable inquiry into the facts"). Mr. Butowsky and Mr. Clevenger know that Mr. Rich's parents vehemently deny Mr. Butowsky's version of the conversation, as reflected in their retraction demand of an article cited in the SAC. Ex.  8 (Gateway Pundit retraction that removed reference to Mr. Butowsky's recollection of the phone call because "we were contacted by the Chicago law firm representing Joel and Mary Rich. They deny the claims by Butowsky"); Ex. 7 (original Gateway Pundit article); Ex. 19 (open letter in the Washington Post). Common sense also belies Mr. Butowsky's re-formulated version of that call: one must believe that Mr. Rich's parents would confess to a total stranger with whom they had never before spoken not only that their recently murdered son had been engaged in political espionage and the sale of stolen property to a hostile foreign intelligence service, *but also* that their *still living* son (about whom Mr. Butowsky had not asked and had heard no similar rumors) had also committed the same crimes.

**Third,** the SAC asserts the BSF Defendants have "reneged" on serving subpoenas on Mr. Assange because "Wikileaks would likely construe the subpoena as a waiver, in which case it would likely release records showing that Aaron Rich and Seth Rich were both responsible for leaking the DNC emails." SAC ¶¶ 72; 84.[8] Mr. Butowsky and Mr. Clevenger know that allegation is false. Butowsky and Clevenger know that Mr. Rich has attempted to serve a subpoena through

---

[8] Mr. Clevenger began making similar false accusations before this complaint. *See, e.g.,* Exs. 13-16 (Clevenger blog posts, tweets, and interview making same false claim).

multiple channels, and further know that Mr. Rich has waived the non-existent "source privilege" claim that Mr. Clevenger has knowingly fabricated.

The BSF Defendants informed Mr. Clevenger on June 22, 2018, when he was representing Mr. Butowsky in the D.C. Lawsuit, that they were preparing papers and attempting to ascertain whether Mr. Assange could be served a subpoena pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol (IACAP). *See* Ex. 9. After the Department of Justice informed the BSF Defendants that IACAP was "not the proper mechanism for serving a Rule 45 subpoena on a foreign citizen living abroad in another country's embassy" and declined to assist, the BSF Defendants informed Mr. Butowsky, through his then-noticed counsel, Kenneth Martin, of that development on July 22, 2018. *See* Ex. 10.[9] The BSF Defendants stated that they would "inform this group in the event that developments enable us to use an alternative mechanism to serve an enforceable Rule 45 subpoena on Mr. Assange and WikiLeaks." *Id.* On April 19, 2019— shortly after Mr. Assange was arrested in London—Mr. Gottlieb emailed Mr. Butowsky (who at that point was proceeding *pro se* in the D.C. Lawsuit) about the BSF Defendants' latest attempt to serve Mr. Assange. Ex.11. Mr. Gottlieb attached a letter and draft Rule 45 subpoena that the BSF Defendants had emailed to Mr. Assange's U.S.-based attorney to request "permission for Mr. Rich to serve the attached proposed Rule 45 subpoena." *Id.* As Mr. Butowsky could have and should have seen, the letter to Mr. Assange's attorney explained:

> Mr. Rich always has believed that anyone with information regarding his brother's murder should come forward to assist law enforcement's investigation into the matter. Mr. Rich attempted in 2018 to enlist the assistance of the Justice Department to serve Mr. Assange with a subpoena through diplomatic channels, but the Department declined assistance. To avoid any ambiguity on the issue, please understand that the position of Mr. Rich, as the Executor of the Estate of Seth Rich, is that because neither he nor Seth Rich were sources of information to WikiLeaks,

---

[9] As of that date, Mr. Clevenger had withdrawn his application to represent Mr. Butowksy *pro hac* in the D.C. Lawsuit.

> neither Mr. Assange nor WikiLeaks are entitled to withhold information from production on the basis of a purported "source privilege." In any event, the subpoena Mr. Rich is requesting to serve here disables any claim that might be advanced regarding purported "source privilege" or "source confidentiality" concerns regarding Seth or Aaron Rich.

*Id.* (emphasis added).[10] Despite having unequivocal evidence of the BSF Defendants' ongoing, repeated, and consistent attempts to serve a subpoena on Mr. Assange, and Aaron Rich's express position that Seth Rich would not and could not make any claim to a "source privilege" vis-à-vis Wikileaks, Mr. Butowsky's SAC continues to advance its blatantly false allegation.

*Fourth*, the SAC alleges that the BSF Defendants "knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks," SAC ¶ 80. Mr. Butowsky and Mr. Clevenger provide no basis for this accusation, and know or should know it is false. Bear in mind that Mr. Butowsky and Mr. Clevenger are not just alleging that Mr. Rich engaged in the conduct described above—they are alleging that the BSF Defendants have evidence of that conduct that they are not just concealing, but doing so in the face of directly contrary allegations to which they have signed their names under Rule 11 in federal court in D.C. To make such an allegation, Messrs. Butowsky and Clevenger would need something, anything, concrete on which to base it. Apart from Mr. Clevenger's fantastical Wikileaks conspiracy theory, *see supra*, they have nothing. As Mr. Rich and the BSF Defendants repeatedly told Mr. Butowsky and Mr. Clevenger before this lawsuit: "Every statement [they] have advanced regarding Aaron's alleged involvement in the WikiLeaks leak and the cover-up of his own brother's murder is false." *See, e.g.*, Ex. 4; Ex. 20; Mot. to Dismiss at Ex. A ¶ 10. Mr. Clevenger's and Mr. Butowsky's "fanciful, irrational,

---

[10] The BSF Defendants have continued to communicate with Mr. Assange's attorney to no avail. Ex. 12. They are currently determining the manner in which to serve Mr. Assange in prison pursuant to the Hague Convention, and separately exploring how to serve WikiLeaks, a foreign entity without a permanent address or agent of service.

incredible, and delusional" allegations of a "vast conspiracy" cannot serve as the basis of a lawsuit, and are sanctionable by Rule 11. *See Simmons v. Payne*, 170 F. App'x 906, 907 (5th Cir. 2006); *Mercury Air Grp.*, 237 F.3d at 548–49 (5th Cir. 2001); *Thomas*, 836 F.2d at 873.[11]

**Finally**, the SAC does not provide any factual support for the allegations that the BSF Defendants filed the Rich Lawsuit at the request of Mr. Bauman. SAC ¶ 61. Mr. Clevenger and Mr. Butowsky know that the factual allegations on which this lawsuit rests are baseless and should not be permitted to ignore that truth in order to use litigation as a weapon to advance their own agenda.

## III.   THE SAC WAS FILED FOR AN IMPROPER PURPOSE, VIOLATING RULE 11(b)(1).

The SAC has one discernible purpose: to harass and retaliate against the individuals and organizations, including attorneys and law firms, who have helped the Rich family defend itself against a devastating, politically-motivated conspiracy theory that has enveloped a private family tragedy. *See, e.g.*, *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 4344198 (E.D. Tex. Aug. 19, 2011) (finding "improper purpose" where plaintiff continued pursuit of defendant despite immunity, because it was "calculated to, and did, harass" defendant and "needlessly resulted" in defense attorney's fees and costs); *Sheshtawy v. Conservative Club of Houston, Inc.*, 2016 WL 10880233, at *4 (S.D. Tex. Dec. 14, 2016) (finding "improper purpose" where plaintiff was dissatisfied with rulings of another court and had a "desire to harass those involved in [those] underlying proceedings"). Mr. Butowsky has said so himself, stating: "I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves and go through the same crap

---

[11] Individuals and entities—including the *Washington Times*, Infowars, and Jerome Corsi—have now issued retractions essentially making the same allegations that Mr. Butowsky claims the BSF Defendants have made in bad faith. *See* Jerome Corsi, *Retraction of Dr. Jerome Corsi Regarding The Murder of Seth Rich,* Infowars, Mar. 4, 2019, https://www.infowars.com/retraction-of-dr-jerome-corsi-regarding-the-murder-of-seth-rich/ (Ex. 21).

I had to go through." Ex. 1. This lawsuit also is consistent with Mr. Clevenger's campaign of unethical harassment directed at Mr. Rich and his counsel. *See* Exs. 2, 7; *Sheshtawy*, 2016 WL 10880233, at *4 (finding claim brought for improper purpose where filing attorney should have known it lacked basis because "there is a litigation privilege in Texas for opposing attorneys"); *see also Davis v. Supreme Court of Texas*, No. 4:15-CV-82, 2015 WL 13064937, at *2 (E.D. Tex. Mar. 31, 2015) (Mazzant, J.) (Rule 11 sanctions for claims "based on the same set of underlying facts" because "continued attempt to litigate these claims is vexatious and designed solely to harass and embarrass Defendants").

## IV.    SANCTIONS ARE REQUIRED.

"Once a violation of Rule 11 has been found, sanctions are ***mandatory***" and courts have "considerable discretion in determining the 'appropriate' sanction to impose," including the moving party's attorney fees. *Thomas*, 836 F.2d at 877 (noting monetary damages especially appropriate to deter attorneys and parties from bringing or maintain frivolous or vexatious litigation) (emphasis added); *see also* Fed. R. Civ. P. 11(c)(1). Rule 11 sanctions are appropriate "against a client as well as his attorney, because both have a duty 'to conduct a reasonable inquiry into the facts or law before filing the lawsuit.'" *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006). Here, the Court can and should impose Rule 11 sanctions on Mr. Clevenger for filing a legally and factually frivolous lawsuit for an improper purpose, and on Mr. Butowsky for his share of "responsibility" for filing what he knew to be "*factually* groundless allegations." *Id.* (emphasis in original). *See also Sheshtawy*, 2016 WL 10880233, at *2 (finding it appropriate for Rule 11 to consider whether improper conduct "was a pattern of activity or an isolated incident," and "whether the person has engaged in similar conduct in other litigation," and awarding sanctions where plaintiff "has a long history of filing lawsuits in state and federal court"). Separately, the Court also should sanction Mr. Clevenger pursuant to § 1927 for multiplying "the

proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see also Erwin v. Russ*, 481 F. App'x 128, 130, 132, (5th Cir. 2012) (§ 1927 sanctions issued against Mr. Clevenger based on filing a "broad and conclusory initial complaint" in which his "central theme" was a "grand conspiracy" between counsel and a Texas state judge).

<u>CONCLUSION</u>

For the forgoing reasons, the BSF Defendants respectfully request the Court grant this Motion for Rule 11 Sanctions against Defendant Butowsky and his attorney, Mr. Clevenger, and order supplemental briefing on the appropriate sanctions, including attorney's fees and expenses.

Dated: October 4, 2019

*/s/ Paul J. Skiermont*

SKIERMONT DERBY LLP
Paul J. Skiermont (TX Bar No. 24033073)
Christopher M. Hodge (TX Bar No. 24074423)
1601 Elm Street, Suite 4400
Dallas, TX 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
chodge@skiermontderby.com

***Attorneys for Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 4, 2019, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF filing system.

*/s/ Paul J. Skiermont*