### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

**Edward Butowsky,**

  Plaintiff,

**v.**
               **Case No. 4:19-cv-180**

**Michael Gottlieb, et al.,**

  Defendants

---

### RESPONSE IN OPPOSITION TO MOTION FOR RULE 11 SANCTIONS AND SUPPORTING MEMORANDUM BY DEFENDANTS GOTTLIEB, GOVERNSKI AND BOIES SCHILLER FLEXNER LLP

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to the MOTION FOR RULE 11 SANCTIONS AND SUPPORTING MEMORANDUM BY DEFENDANTS GOTTLIEB, GOVERNSKI AND BOIES SCHILLER FLEXNER LLP (hereinafter "MOTION")(Doc. No. 156):

#### Introduction

The MOTION filed by Paul Skiermont on behalf of Defendants Gottlieb, Governski, and Boies Schiller Flexner LLP (collectively "BSF Defendants") is but the latest installment in Mr. Skiermont's scorched-earth campaign of smears, threats, and harassment. Unlike all of the other parties, who are attempting to litigate this case according to the law and the facts, Mr. Skiermont insists on making this case very personal and very ugly. So be it. Plaintiff's Counsel warned Mr. Skiermont that he would face a motion for sanctions himself if he continued down this path, and that motion will

be filed separately. Most of the arguments in the latest MOTION are found in DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER THE FIRST-TO-FILE RULE AND RULES 12(b)(6), 12(b)(7), AND 19 (hereinafter "MOTION TO DISMISS")(Doc. No. 105), so Mr. Skiermont apparently thought he could shortcut the pending motions to dismiss by intimidating the Plaintiff into withdrawing his claims altogether. Obviously that has not worked. Since much of the MOTION is a replay of the motion to dismiss, the Plaintiff incorporates the PLAINTIFF'S AMENDED RESPONSE IN OPPOSITION TO BOIES SCHILLER DEFENDANTS' MOTION TO DISMISS (hereinafter "PLAINTIFF'S RESPONSE")(Doc. No. 116) by reference as if fully set forth herein.  The BSF Defendants have not suggested that the arguments in the PLAINTIFF'S RESPONSE are frivolous, and indeed they are not. That alone defeats most of the BSF Defendants' arguments in favor of sanctions.

## Legal Standard

Not surprisingly, the MOTION omits any substantive discussion of the standards for imposing Rule 11 sanctions, and that's because courts have consistently rejected its use as a tactical weapon.

> We will take this opportunity... to warn appellees' counsel that we look with disfavor on a party's use of Rule 11 or the ethical rules as combative tools. The rules governing the ethical conduct of lawyers are far too important to be trivialized and used in baseless mud-slinging such as this. We will not tolerate attempts to use the ethical rules in a way contrary to the spirit of those very rules.

*Autrey v. United States*, 889 F.2d 973, 986 (11th Cir. 1989); *see also Park v. Seoul Broad. Sys. Co.*, 05 CV 8956 BSJ DFE, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary

circumstances"), citing *Morristown Daily Record, Inc. v. Graphic Commc'ns*, 832 F.2d 31, 32 n. 1 (3d Cir.1987). "The standard for imposing Rule 11 sanctions... is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), aff'd, 753 Fed. Appx. 3 (2d Cir. 2018); *see also Brown v. Nationwide Mut. Ins. Co*., 634 F. Supp. 72, 73 (S.D. Miss. 1986)(same), aff'd as modified, 805 F.2d 1242 (5th Cir. 1986).  "A sanction under Rule 11 is 'an extraordinary remedy, one to be exercised with extreme caution.'" *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498 (N.D. Tex. 2016), objections overruled sub nom. *Orchestratehr, Inc. v. Trombetta*, 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016), citing *Laughlin v. Perot*, No. 3:95–cv–2577–R, 1997 WL 135676, at *8 (N.D.Tex. Mar. 12, 1997); *see also Stanley v. Univ. of Tex. Med. Branch*, 296 F. Supp. 2d 736, 740 (S.D. Tex. 2003)("The Court does not take the imposition of sanctions lightly, and very rarely assesses them").

## Argument

The BSF Defendants assert three general categories of arguments in favor of sanctions. The Plaintiff will discuss each of them in the order they are found in the MOTION.

### A.  The Plaintiff's complaint alleges viable legal claims.

The MOTION alleges that the Plaintiff's causes of action are frivolous, yet it ignores all of the arguments and authorities in the PLAINTIFF'S RESPONSE.  That's because the BSF Defendants know that their own MOTION is frivolous.

1. **The BSF Defendants have not shown that the statements of Defendants Gottlieb and Governski are privileged, much less that no reasonable attorney could disagree with them.**

In the PLAINTIFF'S RESPONSE, the Plaintiff asserted a choice of law argument that the BSF Defendants have never been able to refute. Even where Texas law applies to a claim, foreign law may nonetheless govern the privileges asserted as a defense to that claim. PLAINTIFF'S RESPONSE at 7, citing *Doctor v. Pardue*, 186 S.W.3d 4 (Tex. App.— Houston [1st Dist.] 2006, pet. denied).  If *Pardue* is applied to the present case, then D.C. law would govern attorney immunity, and attorney immunity is far narrower in D.C. than it is in Texas. PLAINTIFF'S RESPONSE at 8, citing *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140 (D.D.C. 2009). In other words, if D.C. law governs immunity, then the BSF Defendants are not immune. *Id*.

Even if the Court concludes that the foregoing argument in the PLAINTIFF'S RESPONSE is wrong, that does not mean it is "frivolous" or sanctionable, as the BSF Defendants suggest. The same is true for all of the other arguments in the PLAINTIFF'S RESPONSE. The Fifth Circuit has consistently held that sanctions are not warranted where litigants make "creative" arguments or deal with unsettled law:

> ...[M]isapplication of Rule 11 can chill counsel's "enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories," contrary to the intent of its framers. For this reason, a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where, as here, the law is arguably unclear.

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993); *see also F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008). In this case, the law is unclear, because no court has yet decided whether foreign immunities would apply to a

Texas claim for defamation. As a matter of law, the claim cannot be a basis for sanctions because a "party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions." *Mugworld, Inc. v. G.G. Marck & Associates, Inc.*, 563 F. Supp. 2d 659, 671 (E.D. Tex. 2007), aff'd sub nom. *Mugworld Inc. v. G.G. Marck And Associates Inc.*, 351 Fed. Appx. 885 (5th Cir. 2009), quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561-562 (5th Cir. 2001).

## 2. The BSF Defendants have not shown that the "first-to-file" rule applies to the Plaintiff's claims, much less that no reasonable attorney could disagree with them.

In a single paragraph, the BSF Defendants make a conclusory declaration that "Mr. Buowsky and Mr. Clevenger pressed this lawsuit despite knowing that the law prohibits responding to the allegations and issues in the D.C. Lawsuit by filing a separate action on the same allegations and issues in this Court." MOTION 6. In other words, the BSF Defendants are recycling their "first-to-file" argument but going one step further, *i.e.*, by arguing that no reasonable attorney could possibly disagree with them. That is typical of the arrogance and condescension that the Plaintiff has come to expect from Mr. Skiermont, and it is entirely unwarranted. The Plaintiff has explained repeatedly and in detail why the first-to-file rule does not apply to this case, *see, e.g.*, PLAINTIFF'S RESPONSE 2-6, and he incorporates those arguments herein. Once again, the issue here is not whether the Plaintiff is wrong, but whether a reasonable attorney could believe that his arguments are plausible. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)("a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where ... the law is arguably unclear"), quoting *CJC*

*Holdings*, 989 F.2d at 793.

The BSF Defendants' argument is foreclosed by the fact that the D.C. court refused to grant their motion to enjoin this case, a motion that was premised on their first-to-file argument. *See* MOTION TO DISMISS 12-13, citing D.C. Lawsuit July 31, 2019 Status Conference Tr. at 16, 20-21 (Ex. I). If they had established their first-to-file argument as a matter of law, such that no one could reasonably dispute it, then the D.C. court would have granted their request for an injunction or otherwise stayed this case, because that duty falls to the D.C. court, not this Court. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). Furthermore, the Plaintiff attempted to accommodate the BSF Defendants by offering to stay his claims against them pending the outcome of related matters in New York. *See* September 24, 2019 Email Correspondence (Exhibit 1). In the RESPONSE TO CORRECTED MOTION TO STRIKE BY DEFENDANTS GOTTLIEB, GOVERNSKI AND BOIES SCHILLER FLEXNER, LLP (Doc. No. 155), the BSF Defendants argued that the Plaintiff had not offered to stay his case pending the outcome in D.C., but that was misleading. The D.C. case is scheduled to go to trial on June 8, 2020, *see* D.C. SCHEDULING ORDER (Exhibit 2), and at the time the Plaintiff suggested the stay pending matters in New York, there was no way the New York case could have been resolved prior to June 8, 2020, because the Second Circuit had just reversed an order of dismissal (and no discovery had begun in New York).  In other words, the Plaintiff offered a reasonable solution to the first-to-file issue, namely by staying the claims against them until after the D.C. case was resolved, but the BSF Defendants were not interested. Instead, they were more interested in slinging mud and impugning their opponent, hence

their bad-faith motion for sanctions.

3. **The BSF Defendants have not established that this Court lacks personal jurisdiction, much less that no reasonable attorney could disagree with them.**

In a *single sentence*, and with their trademark arrogance, the BSF Defendants suggest that no reasonable attorney could possibly disagree with their arguments regarding personal jurisdiction. In other words, rather than allow the Court to rule on the motions to dismiss, the BSF Defendants once again wanted to bully the Plaintiff into withdrawing his claims altogether.  The Plaintiff addressed personal jurisdiction at length in the PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS GOTTLIEB, GOVERNSKI AND BOIES SCHILLER FLEXNER LLP MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (hereinafter "PLAINTIFF'S RESPONSE RE: JURISDICTION")(Doc. No. 115), and he incorporates those arguments herein by reference. "For purposes of Rule 11, a claim is frivolous only when, objectively speaking, the pleader or movant has no hope of success." *Scott v. Vorha*, 414 F. Supp. 2d 631, 635 (S.D. Miss. 2005)(citations). In their one-sentence argument, the BSF Defendants made no attempt to meet that standard, therefore they have waived the issue.

B. **All of the allegations in the Second Amended Complaint have sufficient evidentiary support.**

Not surprisingly, the BSF Defendants failed to discuss the level of evidentiary support required by Rule 11, and that's because the evidentiary standards obliterate their arguments:

> ...Rule 11 provides that the signature of an attorney to the pleading is a certificate that 'to the best of his knowledge, information, and belief' there appears to be good ground to support the pleading; so the concept of 'information, and belief' is

recognized under the Rules, and there appears to be no good reason why such pleading is not permissible, as in the instant case, where the matters are peculiarly within the knowledge of the defendants.

*Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. 1945); *see also Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004), citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (2d ed. 1990) ("'information and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant").  Even fraud pleadings may be based on "information and belief" where the facts "are peculiarly within the opposing party's knowledge." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  In this case, the Plaintiff has both met and exceeded the "information and belief" standard, therefore sanctions are unwarranted.

## 1. **The Plaintiff previously withdrew his statement regarding Ellen Ratner and Aaron Rich, and the BSF Defendants have raised the issue in bad faith.**

The BSF Defendants rant and rave about the following sentence: "Mr. Assange told [Ellen Ratner] that Seth Rich **and his brother, Aaron,** were responsible for releasing the DNC emails to Wikileaks." MOTION 8, citing FIRST AMENDED COMPLAINT (hereinafter "FAC") ¶45 (emphasis in MOTION). The undersigned was entirely responsible for that mistake, and not the Plaintiff.[1]  The Plaintiff learned of Ms. Ratner's involvement only a few days before he filed the FAC, and he mistakenly referenced Aaron Rich because he misunderstood what the Plaintiff had told him. In reality, Mr. Butowsky learned about Aaron Rich's involvement directly from the founder of Wikileaks himself,

---

1   As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that his factual representations in this paragraph and in this document are true and correct. I further declare that the exhibits attached to this response are true and correct copies of the documents that I represent them to be.

*i.e.*, from Julian Assange, not from Ellen Ratner. See Declaration of Ed Butowsky (Exhibit 3) 1. On the same day that the FAC was made public, a third party brought the mistake to the attention of Plaintiff's Counsel. Within minutes, Plaintiff's Counsel noted the mistake on his blog. To be clear, Mr. Skiermont had nothing to do with that correction, because the blog post was corrected before Mr. Skiermont ever contacted Plaintiff's Counsel.[2]

Now, on to the real issue. The MOTION's reference to Paragraph 45 is perhaps the best illustration of Mr. Skiermont's penchant for deception and dirty tricks. Mr. Skiermont hopes the Court will not notice that he was quoting from the FIRST AMENDED COMPLAINT rather than the SECOND AMENDED COMPLAINT (hereinafter "SAC"), because that distinction is critical.  The latter replaced the former, and it says *absolutely nothing* about Aaron Rich vis-a-vis Ellen Ratner. *See* SAC ¶45. In other words, the problem was corrected long before Mr. Skiermont ever filed the motion for sanctions.

Mr. Skiermont is fully familiar with the "safe harbor" provision of Rule 11, which gives respondents 21 days to correct or withdraw an offending pleading without being subject to sanctions. We know that because he attached to the MOTION a copy of the safe harbor letter that he sent to the undersigned. Mr. Skiermont did not need to reference Paragraph 45 in that correspondence, however, because as noted above, the Plaintiff *had already withdrawn and replaced the offending sentence prior to the time that Mr. Skiermont sent the safe harbor letter and the draft motion*.  In other words, the issue was moot *before* Mr. Skiermont sent the letter and *before* Mr. Skiermont filed the MOTION.

---

2  As indicated in Footnote 1, Plaintiff's Counsel is attesting to these facts under penalty of perjury.

Mr. Skiermont was therefore fully aware of the fact that he had no legal reason for seeking sanctions based on something in a moot document, but he did so anyway.

Ironically, Mr. Skiermont accused the undersigned of participating in a fraud on the court, MOTION 9, and that is quite typical of the way he casually slanders and smears his opponent. Mr. Skiermont's accusation also appears to be an example of psychological projection. Very early in this litigation, Mr. Skiermont casually (and absurdly) accused Plaintiff's Counsel of lying about the reason for an extension, *see* MOTION TO STRIKE (Doc. No. 87) 1, and now he has casually (and absurdly) accused the undersigned of participating in a fraud on the court. People who casually and recklessly make such accusations often do so because they are liars and cheaters themselves. Given Mr. Skiermont's attempt to deceive the Court with respect to Paragraph 45, that certainly appears to be the case here.

One final note with respect to Ms. Ratner. In a footnote, Mr. Skiermont cites a *podcast* as purported proof that the Plaintiff lied about his conversation with Ms. Ratner. *See* Motion 9, n.6. True enough, Ms. Ratner denied in an interview with Michael Isikoff that she had talked with Julian Assange about the DNC leaks, but Ms. Ratner was lying and Mr. Isikoff was perpetrating a fraud. Prior to the podcast, the Plaintiff sent Mr. Isikoff a link to a Youtube video of a November 5, 2016 forum wherein Ms. Ratner *publicly* declared that she had spoken with Mr. Assange about the leaks, and that Mr. Assange told her the emails came from an inside source rather than the Russians.  An excerpt of that video can be viewed at [https://www.youtube.com/watch?v=0M3Z4eE6cJA](https://www.youtube.com/watch?v=0M3Z4eE6cJA). Mr. Isikoff deliberately omitted from his podcast any reference to the

video, thus making it appear that the Plaintiff was lying rather than Ms. Ratner. In the coming weeks, the Plaintiff expects to file defamation claims in this Court against Mr. Isikoff and Yahoo! News, and possibly against Ms. Ratner.

**2. Joel Rich acknowledged this both of his sons were involved in the transfer of Democratic National Committee emails to Wikileaks.**

It would be absurd enough to try to resolve conflicting evidence at the motion-to-dismiss stage, but the BSF Defendants go a step further. They ask the Court to resolve disputed facts at the pleadings stage, then conclude that the Plaintiff and Plaintiff's evidence had *no factual basis whatsoever* for their pleadings.  Mr. Butowsky has testified under oath that Joel Rich admitted his sons' involvement in the email transfer:

> 2.  [Around December of 2016], I made contact with Joel Rich by telephone and I told him what reportedly had been said by Mr. Assange. Mr. Rich acted unsurprised and told me that he knew his "sons" were involved in leaking emails from the DNC to Wikileaks.

> 3.  In their lawsuit against me in the Southern District of New York, Joel and Mary Rich alleged the following:

>> In December 2016, Joel and Mary spoke by phone with Butowsky. Butowsky told Joel and Mary that he had heard second-hand that Julian Assange said WikiLeaks received the DNC emails from Seth. Joel and Mary assured Butowsky there was no way that was true.

> ORIGINAL COMPLAINT (Doc. No. 1)(hereinafter "RICH COMPLAINT"), *Joel and Mary Rich v. Fox News Network, LLC, et al.*, Case No. 1:18-cv-02223-GBD (S.D.N.Y.) (attached as an exhibit to DEFENDANT SUSMAN GODFREY'S MOTION TO DISMISS). The foregoing paragraph is false. Only Joel Rich was on the phone, and neither he nor his wife disputed what I relayed from Mr. Assange. On the contrary, Mr. Rich corroborated it.

> 4.  During subsequent media interviews, I initially stated that Joel and Mary Rich denied that their sons were involved in leaking emails to Wikileaks. My statements to the media at that time were false, and I made the false statements because Joel Rich asked me not to let the public know that Seth Rich was involved

> in the leaks. Specifically, he told me that he did not want the public to know that his son was responsible for getting Donald Trump elected President. I honored his request until he and his wife betrayed me by publicly attacking me and filing suit against me. Likewise, I initially protected the identity of Ellen Ratner after she relayed the information from Julian Assange. She subsequently made false statements about me in unrelated litigation, so I no longer felt any obligation to protect her, either.

Declaration of Ed Butowsky (Exhibit 3), 1-2.  Joel Rich may certainly choose to provide contrary testimony at trial, but Mr. Butowsky's testimony is already sufficient to move this issue past summary judgment, and it is ludicrous for the BSF Defendants to argue that the claim is unsupported by any evidence.

### 3. The BSF Defendants have indeed reneged on serving subpoenas on Julian Assange and Wikileaks.

Like Mr. Skiermont, the BSF Defendants are highly skilled in the dark art of deception. For seventeen months, the BSF Defendants have tried to maintain the *appearance* of seeking information from Julian Assange and Wikileaks when, in reality, that's the last thing that they want. As a starting point, the Plaintiff would direct the Court's attention to his declaration testimony:

> 10.  In Exhibits 11 and 12 to their motion for sanctions against me, Defendants Gottlieb, Governski, and Boies Schiller Flexner, LLP attached purported correspondence with attorneys representing Julian Assange. I had never seen this correspondence until after my Second Amended Complaint was filed, and I find it wholly unpersuasive. For nearly 17 months, the Boies Schiller Defendants have been offering excuses for why they cannot serve a subpoena on Julian Assange or Wikileaks. They have indeed tried to make it appear that they are trying to serve Mr. Assange and Wikileaks with subpoenas, but their efforts are a sham. More than a year ago, my attorney notified the Boies Schiller Defendants that the U.S. District Court for the District of Columbia (where their client's case against me is pending) had authorized service of a lawsuit on Wikileaks via Twitter. Rather than attempt to serve Mr. Assange or Wikileaks via Twitter, however, Defendant Gottlieb filed a bar grievance accusing my attorney of unauthorized practice of law in D.C. To this day, the Boies Schiller Defendants have never sought

permission to serve Mr. Assange or Wikileaks via Twitter, ergo they are not serious about serving subpoenas on Mr. Assange or Twitter.

Declaration of Ed Butowsky (Exhibit 3), 3. The undersigned can testify (and herein does testify) to some of the foregoing facts. On August 20, 2018, Plaintiff's Counsel notified the BSF Defendants that the U.S. District Court for the District of Columbia had authorized service of a lawsuit against Wikileaks via Twitter. *See* August 20, 2018 Email Correspondence (Exhibit 4). Rather than discuss the issue substantively, Defendant Gottlieb accused Plaintiff's Counsel of engaging in the unauthorized practice of law in the District of Columbia. *Id*. Four days later, Defendant Gottlieb filed a bar grievance against Plaintiff's Counsel in Texas, absurdly alleging that the undersigned had (among other things) practiced law in D.C. when he suggested that the BSF Defendants use Twitter to serve their purported subpoenas. *See* August 24, 2018 Bar Grievance (Exhibit 5). True to form, Defendant Gottlieb referenced certain documents in his grievance, but he omitted them because they would have proved that he was lying. *See* October 12, 2018 Response to Bar Grievance (Exhibit 6). Based on Defendant Gottlieb's misrepresentations, the Office of Chief Disciplinary Counsel ("OCDC") ordered Plaintiff's Counsel to respond to the bogus grievance. *See* September 24, 2018 Response to Grievance (Exhibit 7). In his response, the undersigned exposed Defendant Gottlieb's lies, primarily by attaching the very documents that Defendant Gottlieb had cited but withheld. *See* October 12, 2018 Response to Bar Grievance (Exhibit 6). Predictably, the OCDC then dismissed the bad-faith grievance.

Now, back to the issue at hand. As the Plaintiff testified in his declaration, the BSF

Defendants have never, to this day, even *attempted* to serve Wikileaks or Julian Assange via Twitter, despite the fact that the D.C. court has already permitted such service against Wikileaks. That alone provides overwhelming evidentiary support for the Plaintiff's claim that the BSF Defendants have reneged on their promise to serve subpoenas on Mr. Assange and Wikileaks. Furthermore, the undersigned (like the Plaintiff) had never seen Exhibits 11 and 12 to the MOTION until after the SAC had been filed, ergo those exhibits cannot be a basis for sanctions. For purposes of Rule 11, "[r]easonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016), quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). At the time he signed the SAC, the undersigned neither knew nor had any reason to know about Exhibits 11 and 12.  Even so, Exhibits 11 and 12 do nothing to support the MOTION. On the contrary, they illustrate the slight-of-hand that the BSF Defendants have employed for more than a year: they send a letter asking an attorney to accept service for Mr. Assange, and then when the attorney does not respond, they act as if they have done all that they can do.  The BSF Defendants ask us to believe that in the past 17 months, they have not been able to serve a subpoena via the Hague Convention (or by any other method) in the United Kingdom, which just happens to be the closest ally in the world to the United States. It's laughable. Meanwhile, Aaron Rich has never signed any document purporting to waive confidentiality or otherwise authorize Wikileaks to reveal what it knows. Instead, his lawyers purport to send letters on his behalf (but without his signature), *claiming* that he has no objection to disclosure. It's all

a hoax, and Mr. Skiermont has exacerbated the fraud by citing the hoax as a basis for sanctions.

### 4. The Plaintiff plausibly alleged that the BSF Defendants knew that Aaron Rich was involved in transferring DNC emails.

As noted above, the Plaintiff is permitted to assert facts in his pleadings based on information and belief. In *Our Lady of the Lake*, the court refused to sanction attorneys who relied on plausible inferences to conclude that their client was the victim of a racketeering conspiracy. 960 F.2d at 445–46.  The Plaintiff has set forth evidence herein that the BSF Defendants are perpetrating a hoax, *i.e.*, acting as if they want Julian Assange and Wikileaks to reveal what they know when, in reality, they are trying to keep Mr. Assange and Wikileaks silent. If the BSF Defendants truly believed that their client had no role in the leaks, then they would not be resorting to such deceptive tactics. They suggest that the Plaintiff is supposed to accept what they say as gospel because "they have signed their names under Rule 11 in federal court in D.C.," MOTION 12, but that is downright laughable. Defendant Gottlieb certainly wasn't afraid to file a fraudulent bar grievance against Plaintiff's Counsel or perpetrate a hoax about serving subpoenas, so forgive the Plaintiff and the undersigned if they regard the BSF Defendants as charlatans and liars.

Why would attorneys from major law firms go to such absurd lengths to prosecute a relatively minor defamation case at no charge?  Because, as the SAC alleges, they joined Defendant Bauman, the Democratic National Committee, et al., in trying to keep the "Russia Collusion Hoax" alive. In other words, the BSF Defendants – like most of the

other Defendants – knew that the DNC emails were transferred by Seth and Aaron Rich, not Russian hackers, but they wanted to preserve the hoax for political reasons.  That is a reasonable inference from the known facts, and the BSF Defendants don't have to like it or agree with it. They are free to dispute those allegations during discovery and at trial.

## 5. The Plaintiff plausibly alleged that the BSF Defendants acted at the instigation of Defendant Bauman.

In a short, conclusory paragraph, the MOTION alleges that "the SAC does not provide any factual support for the allegations that the BSF Defendants filed the Rich Lawsuit at the request of Mr. Bauman." MOTION 13.  On the contrary, the Plaintiff relied on reasonable inferences to conclude that the BSF Defendants colluded with Defendant Bauman:

> 6. In a press release dated March 14, 2018, two law firms and a political consulting firm announced that the RICH COMPLAINT had been filed against me. A true and correct copy of that press release is attached as an exhibit to this declaration. The opening sentence reads as follows: "Massey & Gail LLP, Susman Godfrey LLP and The Pastorum Group announced today that on behalf of Joel and Mary Rich, the grieving parents of a murdered child, <u>they</u> have brought a suit against Fox News, reporter Malia Zimmerman and contributor Ed Butowsky, seeking justice for the Riches for having become collateral damage in a political war to which they are innocent bystanders" (emphasis added). I found it highly unusual for a political consulting firm, *i.e.*, The Pastorum Group, to announce that it was filing a lawsuit on behalf of the Riches.  Brad Bauman is a partner in The Pastorum Group, and he was listed as the media contact on the press release.

> 7.  Shortly after my original phone conversation with Joel Rich, he informed me that Mr. Bauman was "assigned" to the Rich family by the DNC. Mr. Bauman frequently appeared as a spokesman for the Rich family, to include Aaron Rich. According to his firm's website, https://www.thepastorumgroup.com/, he and his partners provide communications and consulting services to left-wing candidates and causes.

> 8.  About two months after helping organize Joel and Mary Rich's lawsuit against me, Mr. Bauman filed his own lawsuit against me.  His lawsuit was nothing short

of ridiculous, and it was dismissed on March 29, 2019 for failure to state a claim. *See Bauman v. Butowsky*, CV 18-01191 (RJL), 377 F.Supp.3d 1, 2019 WL 1433595 (D.D.C. Mar. 29, 2019).

9. Based on the foregoing facts, it appears that Mr. Bauman has been coordinating a defamation and bad-faith litigation campaign against me in order to discredit and silence me or anyone else who questions the circumstances surrounding Seth Rich's murder. Since he filed suit against me himself, and since he admitted that he had a role in organizing Joel and Mary Rich's lawsuit against me, I concluded that he was also responsible for organizing the lawsuit filed by the only other member of the Rich family, *i.e.*, Aaron Rich. In other words, I believe Mr. Bauman was responsible for recruiting Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner, LLP to file suit against me on behalf of Aaron Rich.

Declaration of Ed Butowsky (Exhibit 1) 2-3. Most of the foregoing facts are recited in the SAC, and the Plaintiff reasonably inferred that the BSF Defendants were acting pursuant to the larger conspiracy, thus the claim is neither frivolous nor unfounded.

## III.  **The SAC was not filed for an improper purpose.**

The BSF Defendants make much of the fact that the Plaintiff said he wanted to "sue the hell out of a lot of firms," suggesting that his is proof of an improper purpose. What a ridiculous argument. In virtually every lawsuit, a plaintiff files suit because he is unhappy about something that the defendants did. That does not prove an "improper purpose" as that term is used in Rule 11.  As demonstrated above and in the SAC, the Plaintiff sued the BSF Defendants because they publicly smeared him and turned his life upside down. The Plaintiff did not act with an "improper purpose" merely because he sought justice.  And frankly, given all the fraud and deceit outlined herein, Mr. Skiermont and the BSF Defendants are not in a position to be impugning anyone else's motives.

## IV.  **Sanctions are indeed required, but not against the Plaintiff or Plaintiff's Counsel.**

Mr. Skiermont and the BSF Defendants have not identified a single violation of Rule 11. Instead, the MOTION was just another sleazy attempt by Mr. Skiermont to "poison the well." From the outset of this litigation, he has been absolutely desperate to interject the undersigned's disciplinary history into this case, never mind the fact that it has absolutely nothing to do with the issues before this Court. This is not the first time that Plaintiff's Counsel has encountered such a stunt, and for what it's worth, he has attached a declaration that he recently filed in the Western District of Texas. Plaintiff's Counsel will gladly discuss his disciplinary history in great detail if the Court deems it relevant, but he truly hopes this case can move beyond the "gotcha" game and the personal attacks. To that end, he will separately ask the Court to sanction Mr. Skiermont pursuant to 28 U.S.C. § 1927.

## Conclusion

The Motion is frivolous and it was filed in subjective and objective bad faith. It should be denied summarily.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## **CERTIFICATE OF SERVICE**

I certify that a copy of this document was filed electronically with the Court's ECF system on October 25, 2019, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**
Ty Clevenger