**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **Edward Butowsky,** | |
| Plaintiff, | |
| **v.** | **Case No. 4:19-cv-00180-ALM-kpj** |
| **Michael Gottlieb, et al.,** | |
| Defendants | |

## CORRECTED MOTION TO COMPEL FEDERAL BUREAU OF INVESTIGATION TO COMPLY WITH SUBPOENA DUCES TECUM

NOW COMES Edward Butowsky, the Plaintiff, moving the Court to compel the

Federal Bureau of Investigation to comply with a subpoena duces tecum[1]:

### Factual Background

On July 3, 2019, the Plaintiff served a subpoena duces tecum on the FBI that

commanded production of information related to Seth Rich and Aaron Rich:

1. Produce all data downloaded from all electronic devices that belonged to Seth Conrad Rich (born on or about January 3, 1989) as well as all data, documents, records or communications indicating how the devices were obtained and who was responsible for downloading the information.

2. Produce all data, documents, communications, records or other evidence indicating whether Seth Conrad Rich (hereinafter "Seth Rich"), his brother Aaron Rich, or any other person or persons were involved in transferring data from the Democratic National Committee to Wikileaks, either directly or through intermediaries.

3. Produce all documents, communications, records or other evidence reflecting

---

1 This motion was originally filed on October 10, 2019 as Docket No. 160, but a deficiency notice was issued on November 20, 2019.  The FBI responded in opposition to this motion (Doc. No. 168) on October 24, 2019, and the Plaintiff replied (Doc. No. 171) on October 28, 2019.

723fe78b85e6e5e7

orders or directions (whether formal or informal) for the handling of any evidence pertaining to Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

4. Produce all documents, records, or communications exchanged with any other government agencies (or representatives of such agencies) since July 10, 2016 regarding (1) Seth Rich's murder or (2) Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

5. Produce all recordings, transcripts, or notes (*e.g.*, FD-302 forms) reflecting any interviews of Aaron Rich or any other witness regarding (1) the death of Seth Rich or (2) the transfer of data from the Democratic National Committee to Wikileaks.

6. In an August 13, 2018 letter from Assistant U.S. Attorney Kathleen Mahoney (EDNY) to Ty Clevenger pertaining to *Ty Clevenger v. U.S. Department of Justice, et al.*, Case No. 18-CV-01568 (EDNY), Ms. Mahoney wrote that she had conferred with the FBI (her client) regarding whether it assisted the Seth Rich investigation:

   *I subsequently ascertained from the FBI that as part of the search that it conducted in response to your FOIA request, the Washington, D.C. Field Office was contacted. They responded that they did not open a case or assist in the investigation and have no records.*

   In an August 22, 2018 letter from Assistant U.S. Attorney Kathleen Mahoney (EDNY) to Magistrate Judge Lois Bloom in the same case, Ms. Mahoney wrote as follows:

   *Plaintiff then inquired by email on August 16, whether the FBI had searched for records with the Computer Analysis and Response Team ("CART"). On August 20, the undersigned responded by email that the FBI had advised that it did not reach out to CART because the FBI had not assisted in the investigation (the D.C. police declined the FBI's assistance) but that the searches that the FBI did conduct would have located any CART records.*

   Produce all records, documents, data, or communications (*e.g.*, text messages or telephone records) identifying the person or persons who offered FBI assistance and the person or persons who declined it on behalf of the D.C. police. Also produce the full contents of any such communications wherein the offer of assistance was made or rejected.

7. Produce all data, documents, records or communications obtained by the FBI's Computer Analysis and Response Team ("CART") regarding Seth Rich and/or Aaron Rich.

8. Produce all data, documents or records (including texts or emails) that reflect any

meetings or communications from July 10, 2016 until July 10, 2017 between former FBI Deputy Director Andrew McCabe and any and all of the following: (1) Seymour Myron "Sy" Hersh (born on or about April 8, 1937); (2) Washington, D.C. Mayor Muriel Bowser; and/or (3) former Democratic National Committee Interim Chairwoman Donna Brazile.

*See* SUBPOENA DUCES TECUM (Exhibit 1).[2] The Plaintiff simultaneously sent a letter to the U.S. Attorney for the Eastern District of Texas, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951) and 28 C.F.R. §16.22(d), requesting production of the information. *See* July 3, 2019 Letter from Ty Clevenger to U.S. Attorney Joseph D. Brown (Exhibit 2). On July 23, 2019, Asst. U.S. Attorney Joshua M. Russ indicated that the Plaintiff's *Touhy* letter was inadequate, *see* July 23, 2019 Letter from Joshua M. Russ to Ty Clevenger (Exhibit 3), so the Plaintiff sent another *Touhy* letter on July 26, 2019. *See* July 26, 2019 Letter from Ty Clevenger to Joshua M. Russ (Exhibit 4). In a letter dated August 8, 2019, Mr. Russ responded that the FBI would not comply with the subpoena duces tecum. *See* August 8, 2019 Letter from Joshua M. Russ to Ty Clevenger (Exhibit 5).

## **Argument**

### **1. The FBI clearly has records pertaining to Seth Rich, and it has withheld those records in bad faith.**

In first attempting to justify non-compliance with the subpoena duces tecum, Mr. Russ cited the existence of a Freedom of Information Act ("FOIA") case pending in Brooklyn, New York, namely *Ty Clevenger v. U.S. Dept. of Justice, et al.*, Case No. 1:18-

---

2   As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States (1) that the exhibits attached to this motion are true and correct copies of the documents that he represents them to be, and (2) his factual statements (including the transcript excerpt below) are true and correct.

cv-1568-LB (E.D.N.Y.). In particular, Mr. Russ directed the Plaintiff's attention to the declaration of David M. Hardy, an official who oversees FOIA compliance for the FBI, and Mr. Russ suggested Mr. Hardy's testimony proved that the FBI had no records regarding Mr. Rich. As it turns out, Mr. Russ made a serious tactical mistake by relying on Mr. Hardy's testimony.

After Mr. Russ sent his August 8, 2019 letter, the undersigned obtained clear evidence that Mr. Hardy and the FBI acted in bad faith in the FOIA litigation, namely by refusing to search for information about Seth Rich in the two places where such information most likely would be found: the Washington Field Office ("WFO") and CART. According to Mr. Hardy, it was unnecessary to search for records in CART because any responsive records would have been identified using the FBI's Central Records System ("CRS"). *See* October 3, 2018 Declaration of David M. Hardy (hereinafter "Hardy Declaration") 9, n.6 (attached to as an internal exhibit to Exhibit 5). Ten months later, a former federal prosecutor blew a hole in Mr. Hardy's story.

In August of 2019, Michael Isikoff of *Yahoo!News* published the fifth episode of "Conspiracyland," a podcast series about the murder of Seth Rich, and in that episode he interviewed former Asst. U.S. Attorney Deborah Sines. The U.S. Attorney's Office for the District of Columbia had assigned Ms. Hines to investigate the murder of Mr. Rich, and a full copy of the interview can be found at https://tunein.com/podcasts/News--Politics-Podcasts/Conspiracyland-p1231856/?topicId=132591823. In Episode 5, Mr. Isikoff discussed a *Fox News* report that the FBI had copies of communications between Seth Rich and Wikileaks:

Isikoff: "As soon as she heard the [*Fox News*] story, Sines reached out to the FBI."

Sines: "Of course I did. Of course I did."

Isikoff: "And what did they tell you?"

Sines: "No."

Isikoff: "No."

Sines: "No. No connection between Seth and Wikileaks. And there was no evidence on his work computer of him downloading and disseminating things from the DNC."

Isikoff: "As it turned out, there was one sliver of truth in the Fox story. **The FBI had been examining Seth's computer**, not for any ties to the DNC emails or Wikileaks, but because they saw unusual activity by a foreign hacker after his death."

Sines: "There were allegations that someone, maybe more than one person, was trying to invade Seth's Gmail account and set up a separate account after Seth was murdered, and **the FBI was looking into that**. I presumed they were trying to create a fake Gmail account or get into Seth's Gmail account so they could dump false information in there."

Isikoff: "So just to be clear, **the FBI** had only **investigated** an attempt to hack into Seth Rich's email when they saw activity after he died. When we contacted the Bureau's Washington Field Office, a spokesperson said it had never opened an investigation into the DNC staffer's death, pointing out that the FBI had no jurisdiction over local crimes. **Andrew McCabe**, the Bureau's acting director at the time, told us something else. He **had personally reached out to his agents** when he heard the Seth Rich conspiracy stories and was informed there was nothing to them. There was no 'there' there, McCabe said he was told." (emphasis added).

Transcript of Excerpt, *Conspiracyland*, Episode 5 (emphasis added).[3] In other words, Mr.

Hardy's claim that the FBI had no records about Seth Rich was false. And the fact that the

FBI refused to search in CART, the place where responsive records most likely would be

---

3   The undersigned personally transcribed the foregoing excerpt, which begins at approximately the 13:24 mark and ends at approximately the 15:54 mark.

found, is strong evidence of bad faith. Similarly, the FBI's refusal to search the WFO was evidence of bad faith, particularly in light of discussions among Mr. McCabe, local police, and the WFO regarding Mr. Rich's murder. Even after admitting that such discussions took place, *see, e.g.*, Hardy Declaration 9, ¶¶22-23 and Transcript Excerpt (above), the FBI refused to search the WFO for records.

In his motion before the Brooklyn court, the undersigned noted that the FBI has a history of hiding records in order to protect powerful people – and itself – from embarrassment. *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO ENJOIN COMPLIANCE OR PERMIT DISCOVERY (hereinafter "PLAINTIFF'S RESPONSE")(Doc. No. 32), Case No. 1:18-cv-1568-LB (E.D.N.Y.) (Exhibit 6).  Mr. Hardy in particular has a history of hiding the ball, *see Jett v. Federal Bureau of Investigation*, 139 F. Supp. 3d 352, 367–68 (D.D.C. 2015), and that certainly seems to be the case here.

## 2.  The records sought by the Plaintiff are directly relevant to his claims.

After first pretending that no records exist, Mr. Russ next pretended that he did not understand how such records would be relevant to the Plaintiff's claims. Frankly, Mr. Russ's letter is disingenuous in that regard. The most fundamental fact dispute in this case is whether Seth Rich transferred emails from the Democratic National Committee to Wikileaks. *See, e.g.,* SECOND AMENDED COMPLAINT ("SAC") 12, ¶42.

> Shortly after the murder, the interim DNC chair at the time, Donna Brazile, reached out to [FBI Deputy Director Andrew] McCabe and Washington, D.C. Mayor Muriel Bowser for help in dealing with the political consequences of the murder. Ms. Brazile knew suspicions would soon arise, fairly or unfairly, that the murder was connected to the email leaks. D.C. police allowed the FBI to unlock Seth Rich's electronic devices, and the FBI obtained data showing that Mr. Rich

had indeed provided the DNC emails to Wikileaks. At Mr. McCabe's direction, however, that information was kept secret with orders that it not be produced in response to any Freedom of Information Act request. For her part, Ms. Bowser directed D.C. police not to pursue any investigative avenues that might connect the murder to the email leaks. At her direction, local police blamed the murder on a "botched robbery" even though Mr. Rich's watch, wallet, and other belongings were not removed from his body.

*Id*. at ¶43.[4] As the Court well knows, each side has accused the other of lying about whether Mr. Rich was involved in the email leaks. If the FBI has records proving that he did or did not transfer the emails, that revelation alone could resolve this litigation faster than any other development. In fact, it could resolve several other cases almost immediately.

### 3.  The Privacy Act is not applicable.

In his last point, Mr. Russ argues that the information sought by the subpoena duces tecum would be protected by the Privacy Act.  Seth Rich is dead, however, and the Privacy Act does not apply to the dead. *See Crumpton v. United States*, 843 F. Supp. 751, 756 (D.D.C. 1994), aff'd sub nom. *Crumpton v. Stone*, 59 F.3d 1400 (D.C. Cir. 1995). If any records covered by the subpoena duces tecum pertain to the living, the Court would, of course, be able to review those records *in camera* to determine whether release is warranted.

---

4  This excerpt also explains why the subpeoana duces tecum demands information about meetings among Mr. McCabe, Ms. Brazile, and Mayor Bowser. Likewise, Paragraph 57 of the SAC explains why the Plaintiff seeks information about meetings bewteen Mr. McCabe and Seymour Hersh.

## Conclusion

The FBI clearly has responsive records, and its objections to the subpoena duces

tecum are without merit. The Court should, therefore, order the FBI to comply with the

subpoena duces tecum.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for all of the Defendants via email and/or
telephone regarding the foregoing motion as required by Local Rule CV-7(h), and they
indicated that none of the Defendants are opposed to the motion.  Asst. U.S. Attorney
Robert Wells subsequently told me via telephone call on or about October 23, 2019 that
the Federal Bureau of Investigation would oppose the motion because it believed it was
not subject to a subpoena under Fed. R. Civ. P. 45.  Mr. Wells and the undersigned could
not reach agreement on that issue.

**/s/ Ty Clevenger**
Ty Clevenger

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on November 21, 2019, which should result in automatic notification to all counsel of record.

/s/ Ty Clevenger
Ty Clevenger