**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **Edward Butowsky,** | |
| Plaintiff, | |
| v. | Case No. 4:19-cv-00180-ALM-kpj |
| **Michael Gottlieb, et al.,** | |
| Defendants | |

**SUPPLEMENTAL MOTION TO COMPEL FEDERAL BUREAU OF
INVESTIGATION TO COMPLY WITH SUBPOENA DUCES TECUM**

NOW COMES Edward Butowsky, the Plaintiff, providing supplemental evidence and argument in support of his CORRECTED MOTION TO COMPEL THE FEDERAL BUREAU OF INVESTIGATION TO COMPLY WITH SUBPOENA DUCES TECUM (Doc. No. 179):

**Factual Background**

On January 27, 2020 the Plaintiff filed a copy of a letter with a URL link to emails that were provided by the FBI to a non-profit, Judicial Watch. *See* January 27, 2020 Letter (Doc. No. 188). The Plaintiff's letter was addressed to federal prosecutors and the inspector general of the U.S. Department of Justice, and it alleged that an affidavit submitted to the U.S. District Court in Brooklyn by FBI Section Chief David Mr. Hardy was inaccurate and misleading. *Id*. The Plaintiff argued that the emails produced to Judicial Watch proved that the FBI had withheld records that were responsive to the Plaintiff's September 1, 2017 Freedom of Information Act ("FOIA") request. *Id*. On January 29, 2020, Asst. U.S. Attorney Kathleen Mahoney, counsel for the Defendants in

- 1 -

Brooklyn, filed a letter with that court wherein she argued that, notwithstanding those clearly responsive emails, and notwithstanding the fact that the FBI had failed to produce them, the FBI had conducted a reasonable search and had done nothing wrong. *See* January 29, 2020 Letter from Kathleen Mahoney to Judge Lois Bloom ("Mahoney Letter")(Exhibit 1). [1] She attached copies of the emails to her letter. *Id.* (Exhibit 1, internal exhibit "B"). Shortly before midnight on February 3, 2020, Plaintiff's Counsel filed a motion to compel the FBI to produce unredacted copies of those emails for *in camera* review, and to order Mr. Hardy to testify at an evidentiary hearing. *See* MOTION FOR EVIDENTIARY HEARING AND MOTION FOR *IN CAMERA* REVIEW, Case No. 1:18-cv-01568-LB (E.D.N.Y.) (Exhibit 2). Less than 24 hours later, the Brooklyn court shortened the briefing schedule on its own initiative and scheduled a hearing for February 12, 2020. *See* February 4, 2020 Docket Order, Case No. 1:18-cv-01568-LB (E.D.N.Y.) (Exhibit 3).

## **Argument**

Ms. Mahoney's letter proves one thing very clearly: the FBI has been playing word games in an attempt to conceal responsive records. Consider the following excerpt:

> [T]he FBI met its burden of showing that its search was adequate and, therefore, is entitled to summary judgment. *See* Defs. Mem. at 17-22; Defs. Reply at 3-9. Specifically, the FBI searched its Central Records System ("CRS") recordkeeping system but did not locate any <u>main file</u> (file about Rich) or <u>reference file</u> (file with a cross-reference to Rich). Defs. 56.1 ¶¶ 23-32; *see also* Declaration of David M. Hardy dated October 3, 2018 (Dkt. #16-1) ("Hardy Decl.") ¶¶ 19-21. The searches of the CRS would have located any <u>emails of investigative significance</u>. Hardy Decl. ¶ 24. The CRS searches also would have identified any Computer Analysis and Response Team ("CART") records. Defs. 56.1 ¶ 32; *see* Hardy Decl. n.6. In

---

[1] As witnessed by his electronic signature on this document, Ty Clevenger declares under penalty of perjury under the laws of the United States (1) that his factual representations in this motion are true and correct and (2) that the exhibits filed with this motion are true and correct copies of the documents that he represents them to be.

>addition to the CRS searches, the FBI Washington, D.C. field office was contacted to ascertain whether it had any records; it did not. Defs. 56.1 ¶¶ 33, 36; *see also* Hardy Decl. ¶¶ 22-23; Second Declaration of David M. Hardy dated July 29, 2019 (Dkt. #37) ("Second Hardy Decl.") ¶ 32 n.9.

Mahoney Letter, p. 2 (emphasis added). The Plaintiff, however, did not limit his FOIA request to "main files," "reference files," or "emails of investigative significance." Instead, his FOIA request reads as follows:

>I request the opportunity to view <u>all records and correspondence pertaining to Seth Conrad Rich</u> (DOB: January 3, 1989), who was murdered in the District of Columbia on or about July 10, 2016. This request includes, <u>but is not limited to</u>, any records or correspondence resulting from any investigation of his murder.

*See* September 1, 2017 FOIA Request Letter (Exhibit 4). The emails attached to Ms. Mahoney's letter clearly are "correspondence pertaining to Seth Conrad Rich." *See* August 10, 2016 Email String (Exhibit 1, internal exhibit "B"). The name "Seth Rich" even appears in the email header. *Id*.

Under the circumstances, it is amazing that the FBI can argue with a straight face that it conducted a reasonable search for records:

>[A]n agency must search all locations likely to contain responsive records; not simply where the records are "most likely" to be found. *See Schwartz*, 2017 WL 78482, at *7, 2017 U.S. Dist. LEXIS 2316, at *19-20; *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 98 (S.D.N.Y. 2012) ("[T]he government is not required to search only the files ... 'most likely' to have responsive records; it must also search other locations that are reasonably likely to contain records.")(citations omitted) *DiBacco v. United States Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (" '[M]ost likely' is not the relevant metric")(citations omitted); *Mobley v. C.I.A.*, 806 F.3d 568, 582, 420 U.S. App. D.C. 108 (D.C. Cir. 2015) ("Had the [agency] only searched the record systems 'most likely' to contain responsive records, its search would be inadequate.").

*Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 311, 324 (S.D.N.Y. 2019).[2] The Plaintiff previously informed the Defendants that responsive emails would likely be found in the Washington Field Office ("WFO"). *See* October 23, 2018 Declaration of David M. Hardy (Exhibit 5). Mr. Hardy's office acknowledged this, reached out to the WFO, and was informed that the WFO had responded to queries about Seth Rich, yet Mr. Hardy and his staff arbitrarily refused to search for emails in that office. *Id*. As we now know from the face of the emails attached to Ms. Mahoney's letter, they originated *exactly* where the Plaintiff said they would be found, *i.e.*, in the WFO. *See* August 10, 2016 Email String (Exhibit 1, internal exhibit "B"). Having been caught with its pants down, one might expect the FBI to acknowledge that it made a mistake and offer to search the email system in the WFO. Instead, the FBI stubbornly insisted that it conducted a reasonable search, evidence notwithstanding.

The Mahoney Letter places great emphasis on the fact that the unredacted portions of the FBI emails do not undermine the FBI's official narrative, *i.e.*, that the FBI did not investigate the Rich murder and therefore does not have any "substantive investigative emails," but it bears repeating that the Plaintiff did not limit his request to "investigative" emails, "substantive" or otherwise. Furthermore, the redactions themselves greatly undermine the arguments in Ms. Mahoney's letter. Consider Exhibit A to her letter, which explains the purported basis for each redaction, and note how often the code "b7E" appears in Exhibit B to that letter. According to Exhibit A, the code "b7E" means the redacted information "would disclose techniques and procedures for law enforcement

---

[2] While this is not a FOIA case, the FBI has nonetheless shown its willingness to flout the law in related matters.

investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably expected to risk circumvention of the law." If there is and never has been an investigation pertaining to Seth Rich, then why would the FBI be citing an exemption pertaining to investigations and prosecutions? Equally troubling are exemptions "b6" and "b7C," which pertain to "an unwarranted invasion of personal privacy." If, as the emails themselves indicate, they were written by government employees on government time using government computers, it's hard to imagine how disclosure could constitute "an unwarranted invasion of personal privacy."

Even if the FBI is asserting privacy rights on behalf of the deceased, *i.e.*, Mr. Rich, that argument is very weak.

> The U.S. Court of Appeals for the D.C. Circuit, which writes frequently on FOIA issues, has long held that with respect to FOIA, "the death of the subject of personal information does diminish to some extent the privacy interest in that information, though it by no means extinguishes that interest." *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001). The Department of Justice has specifically recognized that "[a]n individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA." U.S. Dep't of Justice, Guide to the Freedom of Information Act: Exemption 6, at 37 (2014). "Death clearly matters," and "[a] court balancing public interests in disclosure against privacy interests must therefore make a reasonable effort to account for the death of a person on whose behalf the government invokes exemption 7(C)." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

*Wessler v. United States Dep't of Justice*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019). And this is not the first time that Mr. Hardy has made a bogus assertion of a privacy exemption. He refused to produce documents about Hillary Clinton's secret email servers on the grounds that it was not a matter of public interest and might violate her privacy,

- 5 -

*see* August 28, 2017 Letter from David M. Hardy to Ty Clevenger (Exhibit 6), never mind the fact that those servers were used to conduct government business. Mr. Hardy's laughable assertion made national news, *see, e.g.*, Stephan Dinan, "FBI says lack of public interest in Hillary emails justifies withholding documents," August 29, 2017, *The Washington Times* (https://www.washingtontimes.com/news/2017/aug/29/fbi-lack-public-interest-emails-justifies-withhold/), and it was later overturned. *See* October 2, 2017 Letter from Sean R. O'Neill to Ty Clevenger (Exhibit 7).

The Court will note some famous (or, more accurately, *infamous*) names in the emails attached to Ms. Mahoney's letter, specifically Peter Strzok and Lisa Page. Their names are practically synonymous with corruption at the top levels of the FBI, and particularly concerning the "Russian collusion" investigation of the Trump Administration. The Plaintiff requests that the Court take judicial notice of three reports from the Office of the Inspector General for the Department of Justice: "A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election," June 2018 (https://www.justice.gov/file/1071991/download); "Report of Investigation: Recovery of Text Messages From Certain FBI Mobile Devices," December 2018 (https://oig.justice.gov/reports/2018/i-2018-003523.pdf); and Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation, December 2019 (https://oig.justice.gov/reports/2019/o20012.pdf).[3] The foregoing reports

---

[3] The Plaintiff submits that these reports are party admissions pursuant to F.R.E. 801(d)(2) insofar as the Department of Justice is a party to this case, and the FBI is a subsidiary of that department.

outline rampant misconduct by Mr. Strzok and Ms. Page, and their involvement alone should raise questions about why the FBI is trying so hard to hide responsive documents in this case. As outlined in the December 2019 report, Mr. Strzok and Ms. Page were involved in perpetrating an enormous and systematic fraud on a federal court related to the "Russian collusion" investigation. Meanwhile, litigation in multiple courts contests whether Seth Rich, rather than Russian hackers, was the source of Democratic National Committee emails published by Wikileaks in 2016. *See Aaron Rich v. Edward Butowsky, et al.*, Case No. 1:18-cv-00681 (D.D.C.); *Joel and Mary Rich v. Fox News Network, LLC*, Case No. 1:18-cv-02223 (S.D.N.Y.); *Edward Butowsky v. David Folkenflik, et al.*, Case No. 4:18-cv-00442 (E.D. Tex.); and *Edward Butowsky v. Michael Gottlieb, et al.*, Case No. 4:19-cv-00180 (E.D. Tex.). In other words, the Seth Rich emails are directly related to the fraudulent "Russian collusion" investigation, and Mr. Strzok, Ms. Page, and the FBI itself have already shown great willingness to lie and cheat in order to conceal their misconduct during that investigation, even to the point of perpetrating frauds on the court. Insofar as they have perpetrated frauds on the court in other matters related to "Russian collusion," it's no stretch to think they would hide documents in this case.

And there's more. Before filing his motion in Brooklyn, Plaintiff's Counsel inquired about whether the Defendants would oppose it. The January 27, 2020 email string between Plaintiff's Counsel and Ms. Mahoney is revealing:

> [Clevenger]: I plan to file a supplemental motion to enjoin compliance, and I intend to request an evidentiary hearing or deposition of David Hardy. I also intend to ask the court to review the FBI's email redactions in camera. Please let me know whether your clients intend to oppose. Thank you.

> [Mahoney]: Yes, we will oppose such a motion.
>
> [Clevenger]: For purposes of clarity, I understand your letter as acknowledging that the emails in your exhibits are indeed FBI emails (albeit redacted). Is that correct? I ask because I'm wondering if I still need to get a declaration from Judicial Watch.
>
> [Mahoney]: The only reasonable interpretation of my letter is that it was enclosing a print-out of the document at the link that you cited.
>
> [Clevenger]: I respectfully disagree. Here is an excerpt from Page 2 of your letter: *The "new evidence" to which Plaintiff alludes (Dkt. #51-1 at 1) fails to show that the FBI did not conduct an adequate search or to justify discovery. The email -- conspicuously absent from Plaintiff's filing -- was released by the FBI in response to another requester's FOIA request.*
> Was that an accurate representation to the court or was it not?
>
> [Mahoney]: Are you saying that the FBI did not send those documents to Judicial Watch?
>
> [Clevenger]: No, exactly the opposite. I believe the FBI did produce those documents to Judicial Watch, just as your letter states. I'm simply asking whether it is safe to tell the court that your client is stipulating that it did produce the emails to Judicial Watch. I ask because thus far Judicial Watch has been unwilling to produce a declaration.
>
> [Mahoney]: The FBI is not "stipulating" to anything.

January 30, 2020 Email exchange between Ty Clevenger and Kathleen Mahoney (Exhibit 8). On the same day, Plaintiff's Counsel had a similar exchange with Robert Wells, the Asst. U.S. Attorney representing the FBI in this case:

> [Clevenger]: I've attached a letter that was filed yesterday in Brooklyn on behalf of the FBI, along with its exhibits. I believe this is effectively a stipulation that the emails published by Judicial Watch are accurate. To avoid any uncertainty, I want to ask if you are willing to stipulate to their authenticity in the Butowsky case. Thanks for your consideration.
>
> [Wells]: In what way is that EDNY letter a stipulation about anything? Please explain your rationale.

[Clevenger]: She faults me for not attaching the actual emails (I had instead included a URL in my letter), then she attaches what she says are the actual emails. That seems to be a stipulation as to the authenticity of the emails that she attached, i.e., that they are genuine FBI emails (albeit redacted).

[Wells]: She simply posted what was on Judicial Watch's link, right? That's not a stipulation.

[Clevenger]: Are your clients willing to stipulate that they are FBI emails?

[Wells]: Why are you asking me and not Judicial Watch?

[Clevenger]: Your clients should be able to stipulate to the authenticity of their own emails. That's a whole lot simpler than trying to get a declaration from Judicial Watch.

[Wells]: Have you even asked Judicial Watch? Isn't that the entity who received them? And why do you need a stipulation in the first place? Isn't this one of those situations where things speak for themselves? Your efforts to get me or any other AUSA to comment on "accuracy" or "authenticity" seems equivalent to setting a trap.

[Clevenger]: Yes, I asked Judicial Watch on Monday and I was told they don't provide such declarations. I asked again this morning. I'm not sure how stipulating to the authenticity of a record could be a trap. I'm not asking anyone to stipulate to the accuracy of its contents, only that it was indeed an FBI email string that was produced in response to a FOIA request. In my experience, stipulating to records in civil litigation is fairly common.

[Wells]: Your very first email to me today asked me to stipulate to the accuracy of documents that AUSA Mahoney printed out from a Judicial Watch link that you yourself cited in a letter to the Court. I didn't write that letter or print documents from your link myself.

[Clevenger]: I'm not trying to be argumentative. They are either emails produced by the FBI or they are not. If your clients are not willing to stipulate, then the court can decide for itself whether Ms. Mahoney acknowledged that they are FBI emails.

January 30, 2020 Email exchange between Ty Clevenger and Robert Wells (Exhibit 9).

The Plaintiff contends that Ms. Mahoney conceded, whether she intended to or not, that

the email string that she presented to the Brooklyn court "was released by the FBI in response to another requester's FOIA request." *See* Mahoney Letter p.2 (Exhibit 1). She was writing to that court in her capacity as counsel for the FBI, therefore her representation to that court was an evidentiary admission on behalf of the FBI. *See United States v. Chavez-Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012).

## Conclusion

The evidence above strongly indicates that the FBI has, in all things pertaining to Seth Rich, acted in bad faith. The FBI's opposition to the CORRECTED MOTION TO COMPEL THE FEDERAL BUREAU OF INVESTIGATION TO COMPLY WITH SUBPOENA DUCES TECUM should be discounted or disregarded accordingly, and the FBI should be ordered to comply with the Plaintiff's subpoena duces tecum.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

*Counsel for Plaintiff Edward Butowsky*

**CERTIFICATE OF CONFERENCE**

    I certify that I conferred with counsel for all Defendants via email, and they indicated that none of the Defendants intend to take a position on this supplemental motion. I also conferred with Asst. U.S. Attorney Robert Wells via email and telephone on January 1, 2020, and he indicated that his clients would oppose this supplemental motino. Steve Udick, counsel for Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP asked that I include this statement on their behalf:

> *The BSF Defendants take no position on the merits but maintain that this Court lacks jurisdiction to grant any such motion pursuant to the First-To-File rule and that this motion is contradictory to representations Plaintiff has made in the first-to-file court regarding his inability to litigate due to his health condition.*

Mr. Udick's statement regarding the Plaintiff's health condition is entirely false. As witnessed by my signature below, I declare under penalty of perjury under the laws of the United States that I have visited the Plaintiff repeatedly in the hospital and at his home, and that his ability to participate in discovery is indeed limited by his medical condition. Furthermore, I did not need the Plaintiff's assistance or permission to file this motion, as he has authorized me to pursue third-party discovery on my own initiative. The Court will note from the motion itself that I was already litigating a related issue in Brooklyn on my own behalf.

                                              **/s/ Ty Clevenger**
                                              Ty Clevenger

### CERTIFICATE OF SERVICE

    I certify that on February 4, 2020, I filed this document with the Court's ECF system, which should result in automatic notification to counsel for all interested parties.

                                              **/s/ Ty Clevenger**
                                              Ty Clevenger