**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **EDWARD BUTOWSKY, in his personal and professional capacities,**<br><br>               **Plaintiff**,<br><br>**v.**<br><br>**MICHAEL GOTTLIEB, *et al.*,**<br><br>               **Defendants**. | **Case No. 4:19-cv-00180-ALM-KPJ**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP
MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER
THE FIRST-TO-FILE RULE AND RULES 12(b)(6), 12(b)(7), and 19**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1) ........................ 3

FACTUAL BACKGROUND ................................................................................. 3

    A.  The First-Filed Lawsuit: Aaron Rich Sued Mr. Butowsky For Defamation In D.D.C. ..... 3

    B.  On March 27, 2018, CNN Interviewed Mr. Gottlieb About The D.C. Lawsuit. ................ 4

    C.  In September 2018, Ms. Governski Was Quoted In *Vox* About The D.C. Lawsuit. .......... 5

    D.  In August 2019, An Interview With Ms. Governski Was Published In The Podcast *ConspiracyLand* About The D.C. Lawsuit. ........................................................... 5

    E.  Mr. Butowsky Filed This Lawsuit Nearly A Year *After* The D.C. Lawsuit Was Filed...... 6

    F.  After Mr. Butowsky Filed This Lawsuit, The First-Filed Court Denied His Attempts To Dismiss And Transfer The D.C. Lawsuit To This Court. ................................................. 11

LEGAL ARGUMENT ................................................................................. 12

    I.  THE FIRST-TO-FILE RULE REQUIRES THAT THIS COURT DEFER TO THE FIRST-FILED COURT. ................................................................................. 12

    II.  ALL CLAIMS AGAINST MR. RICH'S COUNSEL AND MR. RICH AS UNNAMED CO-CONSPIRATOR MUST BE DISMISSED PURUSANT TO RULE 12(B)(6)......... 17

        A. The Defamation Count as to Mr. Rich's Counsel Fails to State a Claim. ...................... 17

            1.  The Statements Of Mr. Rich's Counsel Are Protected By Absolute Privilege. ...... 17

            2.  The TAC Fails To Plead Any Facts Supporting Actual Malice. ............................ 20

        B. The TAC Fails To Sufficiently Plead Business Disparagement As A Matter Of Law... 24

        C.  The TAC Fails To Sufficiently Plead Conspiracy As A Matter of Law........................... 25

    III. RULE 19 REQUIRES DISMISSAL BECAUSE MR. RICH IS A NECESSARY PARTY. ................................................................................. 28

CONCLUSION ................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*,
   No. SA-95-CA-159, 1997 WL 790739 (W.D. Tex. May 20, 1997)................................... 18, 19

*Allstate Ins. Co. v. Plambeck*,
   No. 3-08-CV-0388-M-BD, 2012 WL 2130912 (N.D. Tex. June 12, 2012) ........................... 19

*Allstate Ins. Co. v. Plambeck*,
   No. 3-08-CV-0388-M-BD, 2012 WL 2130982 (N.D. Tex. Jan. 4, 2012) .............................. 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................ 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................ 17

*Biro v. Conde Nast*,
   622 F. App'x 67 (2d Cir. 2015) ...................................................................................... 21

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ............................................................................ 21

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015) ........................................................................................... 21

*Butowsky v. Susman Godfrey, LLP*,
   No. 416-01222-2019 (426th Dist. Ct., Collin Cty., Tex. May 22, 2019) .................................. 2

*Butowsky v. Wigdor, et al.*,
   No. 4:19-cv-00577 (E.D. Tex. July 31, 2019) ......................................................................... 22

*Cadle Co. v. Whataburger, Inc.*,
   97-CA-1502, 1998 U.S. Dist. LEXIS 22017 (W.D. Tex. Mar. 16, 1998).............................. 12

*Cooper v. City of Plano*,
   No. 4:10-CV-689, 2011 WL 29128084 (E.D. Tex. June 21, 2011) .................................... 4, 17

*Cooper v. City of Plano*,
   No. 4:10-CV-689, 2011 WL 2882074 (E.D. Tex. July 18, 2011) ........................................... 4

*Dallas Indep. Sch. Dist. v. Finlan*,
   27 S.W.3d 220 (Tex. App.--Dallas 2000, pet. denied) ........................................................ 19

*Elliott v. Tilton*,
   89 F.3d 260 (5th Cir. 1996) ................................................................................................ 26

*For the Gusto Motorsports, Inc. v. Lane*,
  No. 3:16-CV-1074-L, 2017 WL 896898 (N.D. Tex. Mar. 7, 2017) ........................................ 14

*Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*,
  No. A-18-CV-369-LY, 2018 WL 6728486 (W.D. Tex. Dec. 21, 2018) ............... 18, 19, 20, 24

*Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*,
  694 F. App'x 225, 227 (5th Cir. 2017) ....................................................... 12, 13, 14

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ................................................................................. 21

*Hamaker v. Chase Manhattan Mortg. Corp.*,
  No. 4:12-CV-773, 2013 WL 1196570 (E.D. Tex. Mar. 22, 2013) ........................................ 21

*Hamaker v. Chase Manhattan Mortg. Corp.*,
  No. 4:12-CV-773, 2013 WL 1195886 (E.D. Tex. Jan. 30, 2013) ........................................ 21

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*,
  570 F.3d 625 (5th Cir. 2009) ...................................................................... 30

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
  No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242 (E.D. Tex. Apr. 22, 2008) ..................... 12, 16

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
  749 S.W.2d 762 (Tex. 1987) ....................................................................... 25

*Jaffer v. Standard Chartered Bank*,
  301 F.R.D. 256 (N.D. Tex. 2014) .................................................................. 29

*KCCR, Inc. v. Brunner*,
  2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) ...................................................... 12, 16

*Levine v. CMP Publ'ns, Inc.*,
  738 F.2d 660 (5th Cir. 1984) ...................................................................... 20

*Loyola v. Am. Homes for Rent Prop. II, LLC*,
  2014 WL 12464926 (W.D. Tex. Sept. 3, 2014) ....................................................... 29

*Loyola v. Am. Homes for Rent Prop. II, LLC*,
  2014 WL 12461968 (W.D. Tex. Sept. 26, 2014) ...................................................... 29

*Mann Mfg. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ...................................................................... 13

*Martinez v. Hellmich Law Grp., P.C.*,
  681 F. App'x 323 (5th Cir. 2017) ........................................................... 17, 18, 24

*Matta v. May*,
    888 F. Supp. 808 (S.D. Tex. 1995) ........................................................................ 18

*Melgarejo v. 24 Hour Prof'l Janitorial Servs.*,
    No. 3:07-CV-1847-B, 2009 WL 27448 ................................................................... 17

*Nat'l Health Fed'n v. Weinberger*,
    518 F.2d 711 (7th Cir. 1975) ................................................................................. 16

*Olympus Capital KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV*,
    2007 WL 9712192 (N.D. Tex. Sept. 24, 2007) ...................................................... 29

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ............................................................................................... 16

*Priester v. Long Beach Mortg. Co.*,
    No. 4:10CV641, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011) (Mazzant, J.), *aff'd sub nom* .. 17

*Priester v. Long Beach Mortg. Co.*,
    No. 4:10-CV-641, 2011 WL 6116491 (E.D. Tex. Oct. 13, 2011) ........................... 17

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ................................................................... 28, 29, 30

*Reddy v. Superior Glob. Sols., Inc.*,
    No. 4:11-CV-845, 2012 WL 6569800 (E.D. Tex. Oct. 2, 2012) ........................... 25

*Reddy v. Superior Glob. Sols., Inc.*,
    No. 4:11-CV-845, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012) ......................... 25

*Rich v. Butowsky et al*,
    1:18-cv-00681-RJL (D.D.C. Mar. 26, 2018) ........................................................... 1

*Rich v. Fox News et al*,
    18-cv-02223 (S.D.N.Y. Mar. 13, 2018) ................................................................... 2

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ................................................................... 24

*Rosanova v. Playboy Enterprises, Inc.*,
    580 F.2d 859 (5th Cir. 1978) ................................................................................. 23

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ........................................................................... 13, 16

*Schutten v. Shell Oil Co.*,
    421 F.2d 869 (5th Cir. 1970) ................................................................................. 30

*Teel v. Deloitte & Touche LLP*,
No. 3:15-CV-2593, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015) .......................................... 25

*Texas Beef Grp. v. Winfrey*,
201 F.3d 680 (5th Cir. 2000) ...................................................................................... 25

*Trotter v. Jack Anderson Enterprises, Inc.*,
818 F.2d 431 (5th Cir. 1987) ...................................................................................... 21

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*,
751 F.2d 721 (5th Cir. 1985) ............................................................................... passim

*Waldbaum v. Fairchild Pub., Inc.*,
627 F.2d 1287 (D.C. Cir. 1980) .................................................................................. 21

*West v. Dollar Gen. Corp.*,
No. 4:09CV255, 2010 WL 816992 (E.D. Tex. Mar. 4, 2010) ........................................... 17, 23

*WFAA-TV, Inc. v. McLemore*,
978 S.W.2d 568 (Tex. 1998) .......................................................................... 17, 21, 23, 24

*Ziglar v. Abbasi*,
137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017) ................................................................... 26

**Statutes**

Tex.Civ.Prac. & Rem.Code § 73.001 ........................................................................... 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 25

Fed. R. Civ. P. 12(b)(7) ......................................................................................... 1, 28

Fed. R. Civ. P. 19 ............................................................................................... 1, 28

**Treatises**

Restatement (Second) of Torts § 586 (1977) .................................................................. 18

Restatement (Second) of Torts § 623A (1977) ................................................................ 25

Subject to and without waiving their concurrently-filed Motion to Dismiss for Lack of Personal Jurisdiction, Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP ("BSF Defendants" or "Mr. Rich's Counsel") move to dismiss this action pursuant to the First-to-File Rule and Rules 12(b)(6), 12(b)(7), and 19 of the Federal Rules.

## PRELIMINARY STATEMENT

Plaintiff Edward Butowsky filed this action against the BSF Defendants in retaliation for their representation of Aaron Rich in a related, and ongoing, federal lawsuit against Mr. Butowsky in Washington, D.C. Nearly a year before Mr. Butowsky filed this case, Mr. Rich sued Mr. Butowsky in the U.S. District Court for the District of Columbia ("First-Filed Court" or "D.D.C."). That lawsuit alleges, *inter alia*, that Mr. Butowsky defamed Mr. Rich by accusing him of conspiring with his brother Seth to hack Democratic National Committee (DNC) computers, and selling DNC documents to WikiLeaks. *See* Complaint, *Rich v. Butowsky et al*, 1:18-cv-00681-RJL (D.D.C. Mar. 26, 2018) ("D.C. Lawsuit") (attached as Ex. A).[1] Rather than wait for the First-Filed Court to rule on his motions to dismiss and transfer the case to this Court—both of which the Court has now considered and denied—Mr. Butowsky filed this action against the law firm and attorneys who represent Mr. Rich in D.D.C. All of Mr. Butowsky's claims against the BSF Defendants in this lawsuit rely upon a single allegation—namely, that Mr. Rich's Counsel defamed Mr. Butowsky by accusing him of defaming Mr. Rich.

Mr. Butowsky has admitted that he is using this lawsuit as a weapon to retaliate against Mr. Rich's lawyers. As he said publicly in August 2018: "I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves and go through the same crap I had to go

---

[1] All Exhibit citations refer to the Exhibits attached to the Declaration of Paul J. Skiermont in Support of Motion to Dismiss Defendants Gottlieb, Governski and Boies Schiller Flexner LLP.

through."[2] Mr. Butowsky has made good on his threat. This lawsuit, when originally filed, brought claims against nearly two dozen defendants who either represented the Rich family in their efforts to hold Mr. Butowsky and others accountable, or who have exercised their First Amendment rights to report on those efforts.[3] This lawsuit alleges that the "BSF Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks" and that the BSF Defendants have conspired amongst themselves to advance a campaign launched by Brad Bauman—a third-party who volunteered to serve as a spokesman for the Rich family in the wake of the conspiracy theories that circulated about Seth Rich's murder—for the purpose of keeping the [Russian Collusion Hoax] alive." *See* Dkt. 207 (hereinafter "Third Amended Complaint" or "TAC") ¶¶ 48, 102.[4] Whether the BSF Defendants' client, Aaron Rich, actually participated in leaking DNC

---

[2] *See* Jeff Benjamin, *Exonerated in Defamation Suits, Ed Butowsky Is Out For Blood,* Investment News (Aug. 6, 2018), https://www.investmentnews.com/article/20180806/FREE/180809955/exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood.

[3] Butowsky has since voluntarily dismissed half of the claims and nearly half of the defendants, leaving solely three claims against the media defendants and the BSF Defendants. *Compare* Dkt. 101 ("Second Amended Complaint or "SAC"), *with* TAC. Mr. Butowsky also filed a separate Texas state court action against certain lawyers who represent Mr. Rich's parents in their own lawsuit against Mr. Butowsky in New York (*see Rich v. Fox News et al*, 18-cv-02223 (S.D.N.Y. Mar. 13, 2018). On May 22, 2019, the state court dismissed Mr. Butowsky's lawsuit for failing to plead a prima facie defamation case and because the accused attorney statements are immune from liability, and awarded fees to defendants. *See* Order, *Butowsky v. Susman Godfrey, LLP*, No. 416-01222-2019 (426th Dist. Ct., Collin Cty., Tex. May 22, 2019) (Ex. B). Mr. Butowsky has suggested the lawsuit was dismissed only because his opposition brief was stricken as untimely. But as the Order plainly states, based on the "pleadings on file" and "the arguments of counsel," Mr. Butowsky failed to establish a prima facie case as to his claims and the attorney statements are immune from liability. *See id.*, at 1.

[4] Mr. Butowsky has mutated his theory of conspiracy as he has dropped defendants to now being solely related to filing the lawsuit in D.D.C. *Compare* SAC ¶ 80 ("…Boies Schiller Flexner Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, ergo they know that they were filing suit without probable cause."), *with* TAC ¶ 64 ("BSF Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, and they knowingly joined Mr. Bauman's defamation / litigation conspiracy for the purpose of keeping the RCH alive.").

documents to Wikileaks is precisely the same false and defamatory claim at the core of Mr. Rich's D.C. Lawsuit against Mr. Butowsky.  *See id.* ¶ 64 ("According to the lawsuit, Mr. Butowsky and others defamed Aaron Rich by alleging that he helped his brother leak DNC emails to Wikileaks.").

This lawsuit should be dismissed as to the BSF Defendants based on any of three independent issues below (as well as the BSF Defendants' concurrently-filed Motion to Dismiss for Lack of Personal Jurisdiction):

## STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)

1. Have the BSF Defendants shown a "likelihood of significant overlap" between this lawsuit and the D.C. Lawsuit, such that the first-to-file rule controls and requires that this Court defer to the First-Filed Court? YES.

2. Does Rule 12(b)(6) require dismissal because the TAC fails to state a cause of action as to defamation, business disparagement, conspiracy, and civil rights claims? YES.

3. Does Rule 19 require dismissal pursuant to Rule 12(b)(7) for failure to name Aaron Rich as a necessary defendant whose joinder is not feasible and in whose absence the lawsuit cannot in "good conscience" continue? YES.

## FACTUAL BACKGROUND

### A.  The First-Filed Lawsuit: Aaron Rich Sued Mr. Butowsky For Defamation In D.D.C.

Mr. Rich's only brother, Seth, was murdered on July 10, 2016, in what D.C. law enforcement described as a botched armed robbery. Ex. A ¶¶ 25-26. Because Seth Rich had worked for the DNC, and because his murder occurred just months before the 2016 presidential election, false claims began to circulate that Seth Rich was assassinated because he had stolen emails from the DNC and provided them to Wikileaks. *Id*. ¶ 2. One purpose spreading those false claims was to advance a counter-narrative to the intelligence community's conclusion that the Russian

Government interfered in the 2016 election; if Seth Rich stole the DNC's emails, the theory goes, Russia was not involved. *Id.* ¶¶ 6; 50. Mr. Butowsky has played a central role in furthering one subcontroversy within this broader conspiracy theory—namely, Mr. Butowsky has been one of the leading voices who has falsely accused Aaron Rich of conspiring with his brother to steal the DNC documents and sell them to WikiLeaks. *Id.* ¶¶ 6–7. On March 26, 2018, Mr. Rich filed the D.C. Lawsuit against Mr. Butowsky (along with other co-conspirator defendants), alleging Mr. Butowsky's statements to be defamatory. As a direct result of that lawsuit, several entities and individuals, including the *Washington Times*, *Infowars* and Dr. Jerome Corsi, have retracted the precise statements Mr. Butowsky has sued in this Court to defend.[5]

### B.  On March 27, 2018, CNN Interviewed Mr. Gottlieb About The D.C. Lawsuit.

On March 27, 2018—the date the D.C. Lawsuit became public on the Court's docket—Mr. Gottlieb appeared on CNN for a live interview with Anderson Cooper. *See* Ex. C ("CNN Interview").[6] Mr. Cooper led the interview with Mr. Gottlieb by stating, "joining me now is Michael Gottlieb, the attorney for Aaron Rich. Thanks for being with us. The defendants named in today's lawsuit, can you explain how they were dragging your client, Seth's brother into this." *Id.* at 13. The bottom of the screen read, "Seth Rich's Brother, Parents Sue Over Conspiracy Theories." During the interview, Mr. Gottlieb described the allegations in the D.C. Lawsuit, including that the defendants "named in the lawsuit today decided to make Aaron Rich, Seth's

---

[5] *See* Ex. D ("Washington Times Retraction"); *Statement on Coverage of Seth Rich Murder Investigation*, Fox News, (May 23, 2017); Dr. Jerome Corsi, *Retraction of Dr. Jerome Corsi Regarding The Murder of Seth Rich,* Infowars (Mar. 4, 2019), https://www.infowars.com/retraction-of-dr-jerome-corsi-regarding-the-murder-of-seth-rich/.

[6] The Court "may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 2912808, at *1–2 (E.D. Tex. June 21, 2011), *report and recommendation adopted,* No. 4:10-CV-689, 2011 WL 2882074 (E.D. Tex. July 18, 2011) (Mazzant, J.); *see also* TAC ¶ 65 (basing allegations on CNN Interview).

brother the target of the conspiracy theory" by accusing him of being "the technical mastermind behind the leak and also somebody who took money from WikiLeaks," which are "made up" and "complete fabrication[s]." *Id.*

### C. In September 2018, Ms. Governski Was Quoted In *Vox* About The D.C. Lawsuit.

In September 2018, Mr. Rich settled with the *Washington Times* regarding a column that cited Mr. Butowsky as the only named source for statements accusing Mr. Rich of being involved in stealing DNC emails and selling them to Wikileaks. *See* Ex. A ¶¶ 70-74. On September 30, 2018, the *Washington Times* published a retraction and apology (Ex. D), and the next day, *Vox* published an article (Ex. E) about the *Washington Times* Retraction, quoting Ms. Governski:

> Legal action against Butowsky, Couch, and America First Media is still continuing. In a statement by the attorney representing Aaron Rich, Meryl Governski, part of the team at Boies Schiller Flexner, Governski said, "*The Washington Times'* decision to take responsibility and apologize for its role in propagating lies about our client is a milestone in our case, as well as in the broader effort to shine a light on conspiracy theorists who spread malicious lies for personal and political gain."
> She added: "We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives.'"

### D. In August 2019, An Interview With Ms. Governski Was Published In The Podcast *ConspiracyLand* About The D.C. Lawsuit.

On July 9, 2019, which marked the eve of third-year anniversary of Seth Rich's murder, Yahoo! Chief Investigative Correspondent Michael Isikoff released the first of a six-episode Podcast, which "explored how one young man's unsolved murder on the streets of Washington, DC, has been twisted into a web of conspiracy and paranoia." (Ex. M at 9:3-8).[7]  Ms. Governski

---

[7]  *See* Yahoo News, *Yahoo News presents 'Conspiracyland': Season 1* (July 9, 2019), https://news.yahoo.com/conspiracyland-podcast-all-episodes-160000883.html.

was featured in the sixth installment, which aired in August 2019 and was titled "Collateral Damage," to discuss the "defamation lawsuit against Couch and Butowsky on behalf of Aaron." (*Id.* at 20:23-21:2). The Podcast included the following exchange:

> MICHAEL ISIKOFF: Just why Couch and Butowsky chose to focus on Aaron Rich was never clear. It is true that Aaron had custody of his brother's property, including Seth's laptop which he turned over to DC police twice for examination. The cops found nothing on that computer or anything else tying Seth's murder to his job at the DNC. As for the supposed money flow into Aaron's bank account from WikiLeaks? The basis for that was completely mysterious. The bomb is the claim that Aaron Rich was getting money from WikiLeaks. Where is that coming from?
>
> **MERYL GOVERNSKI: There is no factual place where that is coming from. This is a contrived story about Aaron.**
>
> MICHAEL ISIKOFF: Washington lawyer Meryl Governski has filed a defamation lawsuit against Couch and Butowsky on behalf of Aaron.
>
> **MERYL GOVERNSKI: So the key lies that they're making about Aaron is that he worked with Seth to download these materials from the DNC, that Aaron personally received money from WikiLeaks in exchange for this data from the DNC, that Aaron is covering up both his role in downloading this DNC data and in the murder of his brother. And those are all false. No truth to any of those statements.**

(*Id.* at 19:24-21:15; TAC ¶¶ 70-71) (TAC cites or quotes no additional portion of this Podcast).

### E. Mr. Butowsky Filed This Lawsuit Nearly A Year *After* The D.C. Lawsuit Was Filed.

Mr. Butowsky filed this lawsuit on March 12, 2019, alleging, *inter alia*, that Mr. Rich's Counsel defamed Mr. Butowsky in the CNN Interview and the *Vox* Article by accusing Mr. Butowsky of making defamatory statements about Mr. Rich. Mr. Butowsky filed the TAC on March 11, 2020, which *inter alia* added the allegations related to the *ConspiracyLand* podcast. TAC ¶¶ 70-74. As Mr. Butowsky admits, the statements at issue in this lawsuit are statements that Mr. Rich's Counsel made about the D.C. Lawsuit. *See* TAC ¶ 65 ("In a March 27, 2018 interview

6

with Anderson Cooper on CNN ***regarding the lawsuit***…"); *id.* ¶ 69 ("…a statement from Ms. Governski is quoted as saying that the ***defendants – to include Mr. Butowsky***…").  *id.* ¶ 70 (On or about August 8, 2019, Yahoo! News released Episode 6 of Michael Isikoff's Conspiracyland series, wherein Isikoff ***discussed statements by the Plaintiff and Matt Couch suggesting that Aaron Rich played a role in leaking Democratic National Committee emails***.") (all emphases added); *see also id.* ¶ 64 ("***According to the [D.C. Complaint], Mr. Butowsky and others defamed Aaron Rich by alleging that he helped his brother leak DNC emails to Wikileaks***.").

As the table below shows, Mr. Butowsky is suing Mr. Rich's Counsel for repeating verbatim or nearly verbatim statements from Mr. Rich's D.C. Complaint. The table shows the context of the complained-of statements from their sources, and the green and blue text matches comments Mr. Butowsky alleges are defamatory here with corresponding allegations in the first-filed D.C. Lawsuit.

| Statements Alleged To Be Defamatory By Mr. Butowsky In This Lawsuit | Statements Alleged to be Defamatory by Mr. Rich in the First-Filed D.C. Lawsuit |
|---|---|
| "It began on a Periscope actually, that the defendant Matt Couch in America First Media hosts, they have about 200,000 Twitter followers and they get tens of thousands of viewers on their Periscopes and Ed Butowsky actually one of the defendants appeared as a guest on their Periscope on August 15th, 2017 and said there is money in Aaron Rich's account, he needs to come out and admit what he did. **It's made up. There is no money in Aaron Rich's account, there's no basis in fact, whatsoever for and it's a complete fabrication.**" Ex. C; *see also* TAC ¶ 65(c) ("Mr. Butowsky's statements about Aaron Rich and Seth Rich were fabricated, *i.e.*, '**all of this, all of it, is made up**.' Elsewhere, Mr. Gottlieb said, '**It's made up – there is no money in Aaron Rich's account' and it's a 'complete fabrication**.'"). | "Nearly 40 minutes into the August 15, 2017 Periscope, **Defendant Butowsky wrote that 'Aaron Rich needs to come out and admit money is in his account.' That accusation was and is false— Aaron has no money in his account from WikiLeaks or any other organization relating to the alleged leaking of DNC documents,** and no one in the Rich family ever said or suggested otherwise to Defendants." Ex. A ¶ 40 (first emphasis in original); *see also id.* ¶¶ 1, 7, 9–10, 41–52, 67, 83, 85, 100, 118, 131, 140. |

| Statements Alleged To Be Defamatory By Mr. Butowsky In <u>This Lawsuit</u> | Statements Alleged to be Defamatory by Mr. Rich in <u>the First-Filed D.C. Lawsuit</u> |
|---|---|
| "From around January until May. After that, these defendants [that are] name[d] in the lawsuit today decided to make Aaron Rich, Seth's brother the target of the conspiracy theory and sort of names [him] as the technical mastermind behind the leak and also somebody who took money from WikiLeaks into his personal bank account. That started around the summer of 2017, and the allegations grew more grotesque from there. **They started to allege[] that Aaron Rich warn[ed] Seth's girlfriend to break up with him** and leave D.C., because he knew in advance that the murder was coming, **they made up a meeting that reportedly occurred at the DNC where Aaron through a chair at Donna Brazile, all of this** - all of it is made up." Ex. C; *see also* TAC ¶ 64(a) ("Mr. Butosky [*sic*] had said Aaron Rich '**warned Seth Rich's girlfriend to break up with him**.' In reality, Mr. Butowsky never said such a thing."); *id.* ¶ 65(b) ("Mr. Butosky [*sic*] '**made up a meeting that purportedly occurred at the DNC' where Aaron Rich purportedly threw a chair**. In reality, Mr. Butowsky never said such a thing.") | "Defendants have repeatedly and falsely stated that the Plaintiff received information in advance that Seth would be murdered, and that his prior knowledge caused him to obstruct justice by refusing to provide law enforcement investigators with access to his brother's cell phones and laptop after his murder. **These same allegations also falsely allege that Aaron participated in meetings with Seth and Donna Brazile at the DNC at which Aaron threw a chair,** and that **Aaron warned Seth's girlfriend in advance to break up with Seth.** Each and every aspect of these allegations are fabricated: Aaron did not know that his brother was going to be murdered; he never attended any meeting at the DNC with Seth and Donna Brazile; and he never warned Seth's girlfriend to break up with Seth or leave D.C." Ex. A ¶ 53; *see also id.* ¶¶ 7, 83, 100, 118, 131. |
| Statements Alleged To Be Defamatory By Mr. Butowsky In <u>This Lawsuit</u> | Statements Alleged to be Defamatory by Mr. Rich in <u>the First-Filed D.C. Lawsuit</u> |
| "I think, the parents have received certain apologies, I mean Fox News obviously retracted the story as mentioned in the piece from before. Aaron Rich hasn't received apologies from anyone, even though he has reached out separately to each of these defendants privately, he reach out to Ed Butowsky privately. He reached out to Matt Couch in America First Media privately, he told them how much pain this was causing him. He asked them to stop spreading lies about him. **He told them this was false, and they -- not only doubled down on lies they were telling, they spread them far and wide** and then worked to place them in an op-ed in the 'Washington Times'." Ex. C; *see also* TAC ¶ 65(e) ("**After Aaron Rich asked for a retraction, Mr. Butowsky and the other defendants purportedly 'doubled down on the lies they were telling.'** In reality, Mr. Butowsky [*sic*] never told any lies about Seth Rich or Aaron Rich."). | "**After receiving those letters, Defendants doubled and then tripled down on their behavior—they continued to disseminate false statements about Aaron,** and then upped the ante by conspiring to have their lies about Aaron published in a prominent national newspaper." Ex. A ¶ 8; *see also id.* ¶¶ 64-82; 140. |

| Statements Alleged To Be Defamatory By Mr. Butowsky In **This Lawsuit** | Statements Alleged to be Defamatory by Mr. Rich in **the First-Filed D.C. Lawsuit** |
|---|---|
| "There was **definitely coordination between Ed Butowsky, America First Media and Matt Couch to take this notion or this theory about Aaron Rich's involvement and to spread it as far wide -- as far and wide as they could and to profit of of it**. <u>And they have raised money off of it,</u> they have sold merchandise off it and they now have a team of investigators roaming around in D.C. using that funding in order to go around and talk to people to try approve this theory to be true." Ex. C; *see also* TAC ¶ 65(d) ("Mr. Butowsky spread a conspiracy theory 'as far as possible' to 'make money off of it' from t-shirt sales, etc. In reality, Mr. Butowsky has never spread a conspiracy, and he never made nor sought to make a penny from Seth Rich, Aaron Rich, or any conspiracy theory.") | "**Defendants published the statements, without privilege, as widely as practicable to multiple third parties**, using the most effective means of distribution available to them including but not limited to, the Internet, newspaper publications, television broadcasts, radio broadcasts, and events open to the public. Ex. A ¶ 101.<br><br>"<u>Defendants representations have allowed them to attract more viewers, raise more funds</u>, and tout themselves as 'leading the way' on the Seth Rich 'investigation.'" Ex. A ¶ 86.<br><br>"But Defendants are not interested in the truth. Instead, <u>Defendants are motivated by personal notoriety, financial gain, and naked partisan aims</u>…" Ex. A ¶ 1; *see also id*. ¶¶ 10, 56–63, 70 119, 140. |

| Statements Alleged To Be Defamatory By Mr. Butowsky In **This Lawsuit** | Statements Alleged to be Defamatory by Mr. Rich in **the First-Filed D.C. Lawsuit** |
|---|---|
| "In an October 1, 2018 story published by Vox, a statement from Ms. Governski is quoted as stating that the defendants – to include Mr. Butowsky – are **'conspiracy theorists who spread malicious lies for personal and political gain,'** Ms. Governski is further quoted as saying, "**We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives."** On the contrary, Mr. Butowsky is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise– nor has he done so for personal or political gain." TAC ¶ 69; *see also* Ex. E. | "But **Defendants are not interested in the truth. Instead, Defendants are motivated by personal notoriety, financial gain, and naked partisan aims**…" Ex. A ¶ 1.<br><br>**Defendants have admitted that their motive for saying these things about Aaron is their desire to advance political arguments**. Ex. A ¶ 10.<br><br>Defendant Butowsky encouraged the publication of defamatory content about the Plaintiff in The Washington Times, a D.C.-based publication, and he has held meetings in D.C. **for the purpose of advancing the same D.C.-centric** |

| Statements Alleged To Be Defamatory By Mr. Butowsky In This Lawsuit | Statements Alleged to be Defamatory by Mr. Rich in the First-Filed D.C. Lawsuit |
|---|---|
| "MICHAEL ISIKOFF: The bomb is the claim that Aaron Rich was getting money from WikiLeaks. Where is that coming from? <br> MERYL GOVERNSKI: There is no factual place where that is coming from. This is a contrived story about Aaron. <br> MICHAEL ISIKOFF: Washington lawyer Meryl Governski has filed a defamation lawsuit against Couch and Butowsky on behalf of Aaron. <br> MERYL GOVERNSKI: So the key lies that they're making about Aaron is that he worked with Seth to download these materials from the DNC, that Aaron personally received money from WikiLeaks in exchange for this data from the DNC, that Aaron is covering up both his role in downloading this DNC data and in the murder of his brother. And those are all false. No truth to any of those statements." Ex. M at 19:24-21:15; TAC ¶¶ 70-71). | For close to a year, Defendants Edward "Ed" Butowsky, Matthew "Matt" Couch, and Couch's organization known as America First Media ("AFM"), have falsely and repeatedly alleged in public statements that Plaintiff Aaron Rich ("Aaron") is a criminal. Specifically, Defendants have claimed to have "proof" that Aaron (i) worked with his deceased brother Seth Rich to steal data from the Democratic National Committee ("DNC"), (ii) provided that stolen data to the hostile intelligence service WikiLeaks in exchange for payment into Aaron's bank account, and (iii) engaged in deceit and obstruction of justice to cover his tracks after Seth was murdered. There is no proof that Aaron engaged in any of the alleged conduct—nor could there be, because none of it happened. But Defendants are not |

Mr. Butowsky alleges that the statements made by Mr. Rich's Counsel are defamatory because he "never spread a conspiracy theory," "never told any lies about Seth Rich or Aaron Rich," and "never accused Aaron Rich of haing any role in the murder of his brother." TAC ¶¶ 65; 72. These affirmative claims are identical to Mr. Butowsky's defenses in the D.C. Lawsuit—*i.e.*, whether Mr. Butowsky is liable for making or encouraging the publication of false statements about Mr. Rich, including by and through his co-conspirators. Mr. Butowsky's TAC alleges his statements about Mr. Rich—***the same ones for which Mr. Rich sued Mr. Butowsky***—are true: "In reality, the 'Russia collusion' conspiracy theory is the only myth, and Mr. Butowsky's statements about the stolen emails were accurate," *id*. ¶ 5; "Aaron Rich and Seth Rich were both responsible for leaking the DNC emails," *id.* ¶ 61; he "never told any lies about Seth Rich or Aaron Rich" *id.* ¶ 65; he "is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise

– nor has he done so for personal or political gain, *id*. ¶ 69.[8] The TAC alleges that when Mr. Rich's

Counsel filed the D.C. Lawsuit, they "knew that Aaron Rich actually had assisted his brother in

leaking DNC emails to Wikileaks." *Id*. ¶ 64. But Mr. Rich's first-filed D.C. Lawsuit contends

that neither Aaron, nor his brother Seth, leaked DNC emails to Wikileaks—and it alleges Mr.

Butowsky and others defamed Aaron for falsely stating he did. The TAC also claims that "Aaron

Rich's lawyers (*i.e.*, the BSF Defendants) have repeatedly alleged, for example, that Mr. Butowsky

accused him (*i.e.*, Aaron) of computer crimes and treason," and that such purported accusations

are "psychological projection on the part of the BSF Defendants," because according to the STC

it is actually Mr. Rich's Counsel who have "accused their client of committing computer crimes

and treason." TAC ¶ 49.

### F. After Mr. Butowsky Filed This Lawsuit, The First-Filed Court Denied His Attempts To Dismiss And Transfer The D.C. Lawsuit To This Court.

On March 29, 2019—17 days after Mr. Butowsky filed his original complaint in this

lawsuit—the D.D.C. denied Mr. Butowsky's motion to dismiss the D.C. Lawsuit on personal

jurisdiction grounds or to transfer the D.C. Lawsuit to this Court. *See* Mar. 29, 2019 D.C. Lawsuit

Minute Order (Ex. F at 7). Mr. Rich filed a motion for an anti-suit injunction that would prohibit

Mr. Butowsky from proceeding with his claims against Mr. Rich's Counsel in this Court, which

awaits resolution. *See* D.C. Lawsuit Dkt. 52 (motion); Dkt. 58 (opposition); Dkt. 59 (reply). On

May 28, 2019, Mr. Butowsky filed a belated answer to Mr. Rich's complaint, in which he admits

to having made the statements at issue in the D.C. Lawsuit. *See* Butowsky D.C. Answer (Ex. G).

---

[8] In addition to defamation, this lawsuit accuses Mr. Rich's Counsel of business disparagement, TAC ¶¶ 100-101, and of civil conspiracy, *id.* ¶¶ 102-103. Each of these additional claims relates to and arises out of the same allegedly defamatory statements. *See id.* ¶ 100 (alleging business disparagement because "they or their agents published or conspired with others to publish false and defamatory statements…"); *id.* ¶ 103 ("an overarching conspiracy to defame, discredit, intimidate, and silence Mr. Butowsky").

## **LEGAL ARGUMENT**

The Court should dismiss this action as to Mr. Rich's Counsel. *First*, the federal law requires this Court defer to the First-Filed Court because there is a likelihood of substantial overlap between the claims against Mr. Rich's Counsel and the D.C. Lawsuit. *Infra* § I. *Second*, Mr. Butowsky has failed to state a claim pursuant to Rule 12(b)(6) for any of his causes of action against Mr. Rich's Counsel or Mr. Rich, including because the statements at issue are protected by absolute privilege. *Infra* § II. *Third*, the lawsuit fails to name Mr. Rich as a defendant, even though he is a necessary party under Rule 19 who cannot be joined and in whose absence it would not be equitable to proceed. *Infra* § III.

## I.     **THE FIRST-TO-FILE RULE REQUIRES THAT THIS COURT DEFER TO THE FIRST-FILED COURT.**

Federal courts, including the Fifth Circuit, "long have recognized that the principle of comity ***requires*** federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728–29 (5th Cir. 1985) ("*West Gulf*") (emphasis added). Where, as here, two parallel federal actions have a likelihood of "substantial overlap," the second-filed court must dismiss or transfer the case to the first-filed court. *West Gulf* at 729; *Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017); *KCCR, Inc. v. Brunner*, 2010 WL 4236868, at *5 (S.D. Tex. Oct. 21, 2010). "Substantial overlap" does *not* require identity of issues or parties but rather requires only that the two lawsuits involve closely related questions. *See*, *e.g.*, *Cadle Co. v. Whataburger, Inc.*, 97-CA-1502, 1998 U.S. Dist. LEXIS 22017, at *3 (W.D. Tex. Mar. 16, 1998), *aff'd* 174 F.3d 599 (5th Cir. 1999); *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242, at *11-12 (E.D. Tex. Apr. 22, 2008).

The "ultimate determination of whether there *actually* was a substantial overlap" is not for this Court to decide; rather, the First-Filed Court is to make that determination, and this Court need only find a "likelihood" of substantial overlap. *West Gulf*, 751 F.2d at 730 (original emphasis). "Once the district court found that the issues *might* substantially overlap, the proper course of action" is for the second-filed court to defer to the First-Filed Court. *Cadle*, 174 F.3d at 605-06 (emphasis added). Accordingly, because Mr. Butowsky filed this lawsuit one year after Mr. Rich filed the D.C. Lawsuit, the role of this Court is "properly limited" to determining only whether the BSF Defendants have demonstrated a "likelihood of substantial overlap" between these two federal actions. *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997).

There is no question that substantial overlap exists between this case and the First-Filed Lawsuit—indeed, Mr. Butowsky has already *conceded* the point. In his opposition to Mr. Rich's motion for an anti-suit injunction in the First-Filed Lawsuit, Mr. Butowsky admits that many of the statements at issue in this lawsuit "overlap factually with the allegations" in Mr. Rich's complaint. *See* D.C. Lawsuit, Dkt. 58 (emphasis removed). That admission is binding on Mr. Butowsky here, and it is dispositive of the sole question before this Court. Indeed, there is not simply a *likelihood* of substantial overlap between the two cases, there *is* actual and substantial including because they involve "closely related questions or common subject matter," share overlapping "core issues," and "much of the proof adduced would be identical." *Gateway*, 694 F. App'x at 227; *Save Power*, 121 F.3d at 950; *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

It is also plain from the face of the TAC that Mr. Butowsky's claims here are the mirror image of Mr. Rich's claims against Mr. Butowsky in the First-Filed Lawsuit. In his D.C. Lawsuit Answer, Mr. Butowsky does not dispute saying that Mr. Rich worked with his brother to leak the

DNC emails in exchange for money from WikiLeaks; he asserts the statements were true. *See* Ex. G at ¶ 1–2, 51, 65. As a result, the evidence in the two cases (as to the BSF Defendants) will be identical, and incapable of independent development. *See supra*, Side-by-Side Tables at 8-10. In other words, to succeed on his claims here, Mr. Butowsky must prove the same "fact" that is central to his primary defense in the First-Filed Court: that the allegedly defamatory statements Mr. Butowsky made about Mr. Rich were substantially true. Courts must refuse to hear a second-filed case in these circumstances. *See, e.g.*, *Gateway*, 694 F. App'x at 226–27 (dismissal where the first-filed "proceeding presents the affirmative case" and the second merely "asserts defenses"); *For the Gusto Motorsports, Inc. v. Lane*, No. 3:16-CV-1074-L, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017) (dismissal where the cases are "essentially mirror images of each other").

In fact, the First-Filed Court held a status conference in the D.C. Lawsuit on July 31, 2019, during which Judge Leon asked with respect to this lawsuit, "Why wouldn't they just dismiss that case down there and let the issues play out here?" And noted:

> The simplest solution to this problem is for the judge in Texas to grant the motion to dismiss as to Boies Schiller. Then you don't have a court in this jurisdiction issuing an injunction that affects a live lawsuit in another jurisdiction, which could create some, let's say, novel appellate issues that might not be in anyone's interests. I think the practical reality is, if the judge in Texas were to grant the motion to dismiss down there, it would be a much cleaner resolution of the problem.

D.C. Lawsuit July 31, 2019 Status Conference Tr. at 16, 20-21 (Ex. I).[9] Judge Leon then advised Mr. Butowsky's then-D.C. attorney, "in the meantime, Mr. Harvey, I would strongly recommend

---

[9] While appropriate for Mr. Rich to file an anti-suit injunction in the D.C. Lawsuit, which remains pending, this Court need not and should not wait for an injunction to issue in the First-Filed Court—as Judge Leon suggested. *See also West Gulf*, 751 F.2d at 732 ("[I]t seems clearly better for parties to rely on the discretion of the court in the second-filed action to prevent duplicative litigation, rather than to require them to seek an injunction in another court to prevent such duplicative litigation").

that you talk to your client, while proceeding on this track here, the wisdom of agreeing to the motion to dismiss the suit against the lawyers for Boies Schiller down there." *Id.* at 21.   During a March 3, 2020 Status Conference, Judge Leon reiterated that he was "inclined" to grant Mr. Rich's anti-suit injunction because he is "increasingly convinced that this other lawsuit is having an unfair and unnecessarily complicating impact on this case".   (Dkt. 208-1 (Exhibit A to Second Notice of Supplemental Authority) at 17-18).

Judge Leon's concerns—that a second-filed case interferes with a first-filed one—is precisely what the first-to-file rule exists to prevent. Mr. Butowsky filed this action to defend his very statements already at issue in the First-Filed Court. Thus, because of the overlapping core issues and evidence, there is considerable risk of duplicative and inconsistent adjudications, including the risk that two courts could reach divergent legal conclusions as to precisely the same underlying statements. The purpose of the first-filed rule is to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle*, 174 F.3d at 604.

Importantly, Mr. Butowsky's motion to transfer the First-Filed Lawsuit to this Court has already been denied (Ex. F at 7), thus Mr. Butowsky is now asking this Court to authorize an end-run around D.D.C.'s authority to adjudicate the veracity of Mr. Butowsky's statements about Mr. Rich. In *West Gulf*, the Fifth Circuit prohibited such a move in similar circumstances. 751 F.2d at 724. In vacating the trial court's decision not to dismiss the second-filed case, the Fifth Circuit found it "especially problematic" that the first-filed court had denied a motion to transfer the case to Texas and held it "plain that in this case the district court should have stayed, dismissed, or

15

transferred" the second-filed case because the first-filed judge "was in a better position" to adjudicate the case. *Id.* at 730–731.

The fact that the parties in the cases are not identical "does not undermine the appropriateness" of applying the first-to-file rule. *Save Power*, 121 F.3d at 951. "[I]t is well-settled law that cases need not be identical or encompass a complete identity of parties to be duplicative and fall within the purview of the first-to-file rule." *Id.*; *KCCR, Inc.*, 2010 WL 4236868, at *8. The rule applies any time there is a likelihood of substantial overlap between two cases, regardless of whether there is complete overlap of the parties. *Huntsman Corp.*, 2008 U.S. Dist. LEXIS 33242, at *11-12 (holding two cases need not "involve identical parties for a substantial overlap to exist"). Moreover, Mr. Rich and his counsel are in privity, rendering Mr. Butowsky's decision to sue only Mr. Rich's Counsel, and not Mr. Rich, a distinction without a difference. *See, e.g.*, *West Gulf* 751 F.2d at 731 n.5 (additional defendants in the second-filed case "is not a reason to deny the simultaneous pendency of two essentially identical actions" because "defendants are in privity" with the plaintiff in the first-filed case); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (discussing history of Supreme Court case law holding that clients stand in the shoes of their attorneys for acts and omissions committed pursuant to a lawsuit). Mr. Butowsky could have attempted to file this lawsuit in the First-Filed-Court, but instead chose to circumvent D.D.C. by filing suit here. This Court should abstain from adjudicating a second-filed suit that "smacks of gamesmanship" to ensure that Mr. Butowsky is not permitted to "impose on a second federal forum the burden of considering anew the same issues." *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 713-14 (7th Cir. 1975).

## II.   ALL CLAIMS AGAINST MR. RICH'S COUNSEL AND MR. RICH AS UNNAMED CO-CONSPIRATOR MUST BE DISMISSED PURUSANT TO RULE 12(B)(6).

### A.   The Defamation Count as to Mr. Rich's Counsel Fails to State a Claim.

Even accepting as true the "facts" in Mr. Butowsky's TAC, the Court must dismiss the defamation claims for failing "to state a claim to relief that is plausible on its face" because the bases of its claims are protected by absolute privilege, and there is no factual allegation supporting actual malice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *West v. Dollar Gen. Corp.*, No. 4:09CV255, 2010 WL 816992, at *3 (E.D. Tex. Mar. 4, 2010) (Mazzant, J.); Tex.Civ.Prac. & Rem.Code § 73.001.

### 1.   The Statements Of Mr. Rich's Counsel Are Protected By Absolute Privilege.

Mr. Butowsky's defamation claims as to Mr. Rich's Counsel are baseless as a matter of law because Texas has recognized since the nineteenth century "an absolute safeguard from libel suits for allegations made in a judicial proceeding no matter whether the statements are irrelevant to the case at hand, false, or even maliciously stated." *Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 3:07-CV-1847-B, 2009 WL 27448, at *3.[10] "This privilege 'applies to out-of-court communications if the communication bears some relationship to the proceeding and is in furtherance of the attorney's representation.'" *Martinez v. Hellmich Law Grp., P.C.*, 681 F. App'x

---

[10] Dismissal is warranted in cases involving absolute privilege. *Priester v. Long Beach Mortg. Co.*, No. 4:10-CV-641, 2011 WL 6116491, at *6 (E.D. Tex. Oct. 13, 2011), *report and recommendation adopted,* No. 4:10CV641, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011) (Mazzant, J.), *aff'd sub nom. Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) (dismissal where any derivative claims that are "predicated" on a dismissed claim that is legally barred); *Cooper*, 2011 WL 2912808, at *4–5 (communication "related to litigation is absolutely privileged and these claims are barred and should be dismissed" because "no civil remedy" exists).

323, 326 (5th Cir. 2017) (citing Texas state cases); *Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*, No. A-18-CV-369-LY, 2018 WL 6728486, at *3 (W.D. Tex. Dec. 21, 2018) (same, and finding "[w]hether an out-of-court statement is related to a proposed or existing judicial proceeding is a question of law"); *50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *8 (W.D. Tex. May 20, 1997) ("Statements made to a reporter are covered by the privilege."); *see* Restatement (Second) of Torts § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."). "All doubt should be resolved in favor of the communication's relation to the proceeding." *Martinez*, 681 F. App'x at 326.

The statements of Mr. Rich's Counsel are absolutely privileged because they bear more than "some relationship" to the D.C. Lawsuit: their statements are either verbatim or virtually verbatim allegations in Mr. Rich's D.C. Complaint. *See Fringe Benefit Grp.*, 2018 WL 6728486, at *4 (absolute privilege applied where statement "largely mirrors the complaint and adds no allegations or factual information not already contained in the complaint"); *Matta v. May*, 888 F. Supp. 808, 813 (S.D. Tex. 1995) (statements "asserting sexual misconduct" by plaintiff absolutely privileged because they "clearly "relate to" complaint claiming "sexual harassment, discrimination, and assault"). Even where the statements are not "verbatim" recitations of allegations in the D.C. Lawsuit, they are in every respect indistinguishable from those allegations—not a single word from either Mr. Gottlieb's or Ms. Governski's statements departs in any substantive respect from the substantive allegations in the complaint in the D.C. Lawsuit. *See supra,* Factual Background at 4-11.

Further, regardless of whether the statements were "verbatim," they are protected by absolute privilege because they were made in furtherance of—and by the TAC's own admission— were "regarding" the D.C. Lawsuit. *See supra*, Factual Background at 3-8; *Fringe Benefit Grp. Inc.*, 2018 WL 6728486, at *3 (press release "regarding" the litigation because it "specifically discusses the allegations in the case"); *50-Off Stores, Inc.*, 1997 WL 790739, at *8 (plaintiff's lawyer's statements to a reporter about defendants conspiring to "'break the law'" were absolutely privileged because they were "made in furtherance of the lawyer's representation of his client"); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239–40 (Tex. App.—Dallas 2000, pet. denied) (public statements about defendants' conduct to media and "basic description of the allegations" absolutely privileged because it has "no practical effect different from providing the pleadings to the media").

The challenged statements here directly discussed Mr. Rich's lawsuit. Mr. Gottlieb's CNN Appearance took place on the day the D.C. Lawsuit publicly appeared on the court's docket and the introduction to the segment made clear that it was designed to discuss the complaint in that suit. Similarly, the *Vox* Article in which Ms. Governski was quoted was published the day after the Washington Times (a former D.C. Lawsuit defendant) retracted its article and apologized to Mr. Rich, and the article explicitly discussed that development in the case. *See supra* Factual Background; *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M-BD, 2012 WL 2130982, at *6 (N.D. Tex. Jan. 4, 2012), *report and recommendation adopted,* No. 3-08-CV-0388-M-BD, 2012 WL 2130912 (N.D. Tex. June 12, 2012) (statements absolutely privileged when summarizing allegations that "appear in the context of articles reporting the filing of this lawsuit and allegations made by plaintiffs in their complaint"). Finally, the sixth episode of the *ConspiracyLand* podcast specifically identified Ms. Governski in connection with the First-Filed Lawsuit and specifically

addressed the allegations in that complaint.  *See Fringe Benefit Grp. Inc.*, 2018 WL 6728486, at *3.

Mr. Butowsky's position before the First-Filed Court is that "Texas law applies to Mr. Butowsky's claim" in this case. Butowsky's Resp. in Opp. to Pl.'s Mot. for Anti-Suit Inj., D.C. Lawsuit [Dkt. 58], at 3 (attached as Ex. L). He is estopped from arguing here that some other state's law applies. Nor could he. As Mr. Butowsky argued in D.C., defamation claims are generally governed by the law of the plaintiff's domicile—here, Texas. *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). Even the letter that Mr. Butowsky sent the BSF Defendants cited Texas defamation law.  *See* TAC ¶ 73.  Further, Mr. Butowsky has pled no facts that support application of D.C. law on the privilege defense. To the contrary, the only facts the TAC alleges that may be pertinent to this issue are allegations asserting (without plausible facts in support) that the defendants directed an intentional tort toward Mr. Butowsky in Texas, in an attempt to hurt him in Texas. TAC ¶¶ 65, 74. While the BSF Defendants contend this allegation is insufficient to establish specific jurisdiction over them, if the Court finds personal jurisdiction exists for those reasons, then such a finding would be irreconcilable with the application of substantive D.C. law, and Texas law would govern based on its interest in the dispute. In particular, the TAC does not (and could not) allege how Mr. Gottlieb's supposedly defamatory statement—made in New York, and published by a New York media company—could be governed by D.C. law in a Texas lawsuit brought by a Texas resident.

## 2.    The TAC Fails To Plead Any Facts Supporting Actual Malice.

This claim can also be dismissed against the BSF Defendants solely based on Mr. Butowsky's failure to plead any facts from which this Court could plausibly conclude that Mr. Rich's Counsel made their statements with actual malice—as he is required to do as a limited purpose public figure. *See Hamaker v. Chase Manhattan Mortg. Corp.*, No. 4:12-CV-773, 2013

WL 1195886, at *2–3 (E.D. Tex. Jan. 30, 2013), *report and recommendation adopted,* No. 4:12-CV-773, 2013 WL 1196570 (E.D. Tex. Mar. 22, 2013) (Mazzant, J.) ("A statement is made with actual malice if it was made with knowledge that it was false or with reckless disregard of whether it was false or not."). The determination of whether Plaintiff is a public figure is a legal issue for the Court. *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433 (5th Cir. 1987). And it is appropriate to resolve on a motion to dismiss where, as here, the public figure status may be determined from the pleadings. *See, e.g.*, *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

A plaintiff is a limited purpose public figure the purposes of a particular controversy if he has "thrust" himself into that controversy in order to shape or influence the outcome. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351 (1974). *See also Trotter*, 818 F.2d at 433 ("Limited-purpose public figures achieve their status by thrusting themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved, or because they voluntarily inject themselves or are drawn into a particular public controversy." (internal quotes and alterations omitted)); *WFAA-TV*, 978 S.W.2d at 571 (holding plaintiff is limited purpose public figure if there is a "public" controversy in which the plaintiff plays "more than a trivial or tangential role" to which the alleged defamation is "germane") (citing *Trotter,* 818 F.2d at 433 and *Waldbaum v. Fairchild Pub., Inc.,* 627 F.2d 1287, 1296–98 (D.C. Cir. 1980)).

In *Waldbaum*, which the Texas Supreme Court in *WFAA-TV* quoted for the definition of limited purpose public figure, the D.C. Circuit explained that "a narrow controversy may be a phase of another, broader one, and a person playing a major role in the 'subcontroversy' may have little influence on the larger questions or on other subcontroversies. In such an instance, the

21

plaintiff would be a public figure if the defamation pertains to the subcontroversy in which he is involved." 627 F.2d at 1297 n.27.

At minimum, Mr. Butowsky is a limited purpose public figure with respect to the controversy over Aaron Rich's involvement—or lack thereof—in the hacking of the DNC's emails and their release to Wikileaks. There is no question that Mr. Butowsky "thrust" himself into that controversy well before the alleged defamatory statements by Mr. Rich's Counsel.

As pled in the D.C. Lawsuit, Mr. Butowsky unilaterally inserted himself into the Rich family's private tragedy in 2017 while concurrently pushing Fox News to publish a story falsely accusing Aaron Rich of being involved with providing the stolen DNC documents to WikiLeaks, and subsequently then serving as a named source to multiple publications about Seth and Aaron Rich. Ex. A ¶¶ 5; 27–32; 34–48; 65; 70–82 (citing news reports showing Butowsky's public involvement in Aaron Rich controversy); *see also* Complaint, *Butowsky v. Wigdor, et al.*, No. 4:19-cv-00577 (E.D. Tex. July 31, 2019) (attached as Ex. J) ("*Wigdor* Compl.") at ¶¶ 32-33 (Butowsky admitting initiating his involvement in the Rich investigation), ¶ 48 (admitting he was "working on a story about Seth Rich"). He has since consistently thrust himself to the forefront of this controversy by appearing on television, radio, internet, and social media publications to discuss his allegations. Publicly-filed documents in the D.C. Lawsuit bear this out. *See* Ex. A (D.C. Complaint) ¶¶ 40-41; Ex. G ¶¶ 40-41 (Butowsky D.C. Answer, stating "I admit the statements attributed to me in" paragraphs 40 and 41); Ex. 4 to Mot. to Compel [Dkt. 71], D.C. Lawsuit, at 3 (attached as Ex. K) (publicly-filed interrogatory response by Couch, co-defendant in First-Filed Litigation, admitting that *"all information reported on Aaron Rich, Money, and Emails came from Defendant Butowsky."*). Thus, Mr. Butowsky is a limited-purpose public figure because he has injected himself into the purported Aaron Rich public controversy over his alleged role in

providing stolen DNC documents to Wikileaks, which is the precise topic of this litigation. *WFAA-TV*, 978 S.W.2d at 571 (limited-purpose public figure where there is a "public" controversy in which plaintiff plays "more than a trivial or tangential role" to which the alleged defamation is "germane").

Mr. Butowsky's status as a limited purpose public figure is further bolstered by his own admissions on his LinkedIn profile that he is "frequently honored to be interviewed by the national media, including Fox News Channel, Bloomberg TV, FOX Business Channel, The Blaze TV, ABC, NBC, Sports Illustrated, and many of SIRIUS radio channels, including The David Webb Show,"—which include some of the very media outlets whereby Mr. Butowsky thrust himself into the Aaron Rich controversy. *See* Ex. H (Butowsky LinkedIn Profile); *see also* Ex. J, *Wigdor* Compl. at ¶¶ 7-8 (Butowsky admitting he was "prominently featured" in movie and article and a "frequent guest" on national television and radio shows); *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978) (affirming that plaintiff was public figure because she "has been the subject of published newspaper and other media reports of his activities").

Because Mr. Butowsky is a limited purpose public figure for purposes of the Aaron Rich controversy, he must plead the BSF Defendants made their statements with actual malice. But the TAC does not plead a single fact that would support a finding of actual malice as to Mr. Rich's Counsel. The TAC does nothing more than offer the conclusory allegation that Mr. Rich's Counsel knew that their statements were false. TAC ¶ 64. Such conclusory allegations are entitled to no weight. *Rosanova*, 580 F.2d at 862 (no actual malice where no "subjective awareness of probable falsity"); *West*, 2010 WL 816992, at *2 ("the Court identifies conclusory allegations and proceeds to disregard them). Mr. Butowsky is legally obliged to allege not just the conclusion that Mr. Rich's counsel "knew" that their statements were false, but some plausible fact that would

demonstrate *how* or *why* Mr. Rich's counsel supposedly knew their statements to be false. Mr. Butowsky has not done so.[11]

**Finally**, even if Mr. Butowsky is not a public figure, he must still plead that Mr. Rich's Counsel were negligent in publishing the allegedly defamatory statements. *WFAA-TV*, 978 S.W.2d at 571. But the TAC contains no factual allegations that plead the accused statements were negligently made. For any of these reasons, the Court should dismiss the defamation claim.

### B. The TAC Fails To Sufficiently Plead Business Disparagement As A Matter Of Law.

Because "business disparagement requires publication by the defendant of statements that are false, maliciously stated, not privileged, and result in special damages," Mr. Butowsky's business disparagement cause of action fails for virtually the same reasons as his defamation claim, because it is based on the exact same statements. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 670–71 (S.D. Tex. 2010).

**First**, the statements are absolutely privileged, and that doctrine applies to business disparagement claims. *See Martinez*, 681 F. App'x at 327 ("The Supreme Court of Texas has said that the judicial proceedings privilege can bar claims other than defamation where a plaintiff's damages 'are basically defamation damages.'"); *Fringe Benefit Grp.*, 2018 WL 6728486, at *3 ("[c]learly, the policy behind the [absolute] privilege" applies to business disparagement claims).

**Second**, the failure to plead actual malice is dispositive because "a claim for business disparagement *always* requires a plaintiff to prove actual malice." *Rimkus Consulting Grp.*, 688 F.

---

[11] Likewise, the TAC's allegation that Mr. Rich's Counsel "engaged in psychological projection" by accusing Mr. Butowsky of lying because they supposedly "accused their client of committing computer crimes and treason," TAC ¶ 49, also does not allege actual malice. If this paragraph can even be understood at all, it is plain that the TAC does not plead any plausible allegations in support of these conclusory and nonsensical assertions—nor does it plead when such statements were made, by or to whom they were made, nor where such statements were published.

Supp. 2d at 671 (emphasis added). As discussed *supra*, Section II.A.2, the TAC fails to set forth any factual allegations showing actual malice on the part of Mr. Rich's counsel.

**Finally**, business disparagement requires the accused statement to "be 'of and concerning' a Plaintiff's specific business property," which means that "the disparaging words must refer to an ascertained or ascertainable business, and it must be the Plaintiff's." *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 685–86 (5th Cir. 2000). Rather than address attacks on a person's reputation, business disparagement addresses "cases of the disparagement of property in land, chattels, or intangible things or of their quality." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762,766 (Tex. 1987) (quoting Restatement § 623A); *see also Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593, 2015 WL 9478187, at *3 (N.D. Tex. Dec. 29, 2015) (dismissing business disparagement claim and quoting Restatement § 623A as being an essential element of business disparagement under Texas law). The statements of Mr. Rich's Counsel in no way refer to Mr. Butowsky's business dealings. According to Mr. Butowsky, he is a "financial advisor." TAC ¶ 10. Nothing in the accused statements mentions, much less disparages, the quality of Mr. Butowsky's services in that capacity.

### C. The TAC Fails To Sufficiently Plead Conspiracy As A Matter of Law.

Mr. Butowsky alleges that Mr. Rich's Counsel "participated in an overarching conspiracy to defame, discredit, intimidate, and silence Mr. Butowsky" at the "[behest] of Mr. Bauman and the DNC." TAC ¶ 103. But he has asserted no facts that would make these claims plausible. The TAC does not even make clear who the BSF Defendants conspired with or attempt to allege whether Mr. Rich's Counsel ever communicated with the supposed co-conspirators, let alone the basis for when, how or why they shared "knowledge of, agreed to, or intended a common objective." *Reddy v. Superior Glob. Sols., Inc.*, No. 4:11-CV-845, 2012 WL 6569800, at *8 (E.D. Tex. Oct. 2, 2012), *adopted,* No. 4:11-CV-845, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012).

The Civil Conspiracy claim itself reads as if it accuses the BSF Defendants of conspiring amongst themselves.  *See* TAC ¶ 103.  But the Supreme Court has rejected that argument, holding that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017); *see also Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996) (reversing trial court judgment in favor of plaintiff's conspiracy claim against two employees of a corporation and the corporation's attorney based on the intra-corporate conspiracy doctrine and holding that the defendants were agents of the corporation because as "a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained of action.").

To the extent the TAC alleges that the BSF Defendants conspired with Mr. Bauman, it still does not state a conspiracy claim against the BSF Defendants.[12] The thrust of the conspiracy accusation appears to be the unfounded and unsupported claim that "the Boies Schiller Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks, and they knowingly joined Mr. Bauman's defamation / litigation conspiracy for the purpose of keeping the [Russia Conspiracy Hoax] alive." TAC ¶ 64. But nowhere does the TAC plead any ***factual allegations*** to plausibly support those conclusory assertions. Indeed, the TAC does not plead *any* facts that the BSF Defendants joined any conspiracy, much less one to "to keep the RCH alive." Like his defamation claim, Mr. Butowsky's conspiracy allegations take issue with the fact that Mr. Rich's Counsel sued him in the D.C. Lawsuit. *See* TAC ¶ 50 ("Mr. Bauman recruited the BSF

---

[12] There is a question of fact and law as to whether Mr. Bauman, for purposes relevant to this lawsuit, was acting as an agent for the Rich family through his volunteer work and, therefore, is protected by the intra-corporate conspiracy doctrine as well.  The BSF Defendants reserve the right to make such an argument should the case proceed.

Defendants herein to sue Mr. Butowsky into silence."); ¶ 54 ("Shortly thereafter, Defendant Bauman recruited the Boies Schiller Defendants to file the baseless lawsuit against Mr. Butowsky (and others) on behalf of Aaron Rich."); ¶ 64 (citing the filing of the D.C. Lawsuit and claiming it was part of "Mr. Bauman's defamation / litigation conspiracy"). But Mr. Butowsky has alleged no *facts* that the BSF Defendants filed the D.C. Lawsuit for an improper purpose, i.e., as part of a conspiracy to defame or discredit Mr. Butowsky, other than his simple assertion that it is so.[13]

Likewise, to the extent Mr. Butowsky seeks to claim that the BSF Defendants' refusal to recommend that Mr. Rich sign a waiver for Wikileaks to release information, or their inability to serve a subpoena on Wikileaks, constitute evidence of conspiracy, he is wrong. *See* TAC, ¶¶ 61, 66-68. Nothing in those allegations plausibly pleads an agreement, or a common objective, with anyone—it is no more than attorneys representing their client.

The TAC's generalized and implausible allegations that may be directed toward the conspiracy claim. For example, the TAC claims that the Rich family "were told" that Aaron could be charged criminally "if they did not cooperate with their new handlers, *i.e.* Mr. Bauman and the lawyers that he recruited" likewise fails to show conspiracy. TAC ¶ 49. None of this pleads a conspiratorial agreement—indeed, the TAC does not even allege that the BSF Defendants ever communicated with Mr. Bauman or the DNC. It lacks any of the required specific allegations as to who made these alleged statements, and it fails to plead any agreement by the BSF Defendants to participate in any course of action.

---

[13] The TAC's accusation that Mr. Rich's Counsel offered to settle for nominal sums against other defendants in the D.C. Lawsuit in exchange for silence "about Seth Rich and the leaked emails" does not state a conspiracy claim. TAC ¶ 50. There is nothing conspiratorial about seeking to settle a defamation suit where the released defendants agree to stop defaming the plaintiff, and cannot plausibly constitute a conspiracy to "bully [him] into silence. *Id.*

III.   **RULE 19 REQUIRES DISMISSAL BECAUSE MR. RICH IS A NECESSARY PARTY.**

The "federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308–09 (5th Cir. 1986). Therefore, dismissal is appropriate where a necessary party is absent and cannot be joined. FED. R. CIV. P. 19(b); FED. RULE. CIV. P. 12(b)(7); *Pulitzer-Polster*, 784 F.2d at 1308–09. Rule 19 is "a highly practical, fact-based" and pragmatic analysis whereby a court should "freely consider various harms that the parties and absentees might suffer." *Pulitzer-Polster*, 784 F.2d at 1309. The factors here overwhelmingly require dismissing the case pursuant to Rule 19 because Mr. Rich is a necessary party who cannot feasibly be joined because he not subject to this Court's jurisdiction, and in whose absence the case should not continue in "equity and good conscience." FED. R. CIV P. 19(b).

Mr. Rich is a necessary party to this litigation because he "claims an interest relating to the subject" of this lawsuit and "is so situated that the disposition of the action" in his absence may "as a practical matter impair or impede" his "ability to protect that interest." FED. R. CIV P. 19(a)(1)(B); *Pulitzer-Polster*, 784 F.2d at 1310. That Mr. Rich claims an "interest relating to the subject" of the lawsuit is evident from the fact that he filed the D.C. Lawsuit in order to disprove what Mr. Butowsky seeks to prove here: that Mr. Rich conspired with his brother to commit theft, treason, and other illegal acts. *Pulitzer-Polster*, 784 F.2d at 1310; TAC ¶¶ 5; 31; 61; 65; 69.  Mr. Rich's interest in proving that he did not, in fact, commit any of the crimes Mr. Butowsky has accused him of committing and in holding Mr. Butowsky accountable for his role in spreading lies will be harmed if this Court adjudicates this lawsuit, which centers on that same core issue. *Pulitzer-Polster*, 784 F.2d at 1310 ("The case law under Rule 19 has recognized that the establishment of a negative precedent can provide the requisite prejudice to the absentee.").

In *Pulitzer-Polster*, the Court held that the absent parties "may be harmed by the federal court's resolution" the "very similar *issues* in the two suits" and the "possibility of a precedent-setting effect" of findings relating to the "very same acts" and the credibility of "the same witnesses will come to the witness stand and say much of the same things in the two lawsuits." *Id.* Other courts have reached similar results. *See Loyola v. Am. Homes for Rent Prop. II, LLC*, 2014 WL 12464926, at *6 (W.D. Tex. Sept. 3, 2014), *report and recommendation adopted,* 2014 WL 12461968 (W.D. Tex. Sept. 26, 2014) (necessary party where resolution of the "core issue" of the litigation involves the "conduct" of the absent third party); *Olympus Capital KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV*, 2007 WL 9712192, at *5 (N.D. Tex. Sept. 24, 2007) ("Because Plaintiffs' claims against Defendants are inextricably intertwined with allegations of misconduct" by a third party in concern with the defendant, allowing the Plaintiff to pursue its claims" against the defendant would be "highly inequitable" to the absent third party). This Court should follow suit.

It is not feasible to join Mr. Rich to this litigation because this Court lacks personal jurisdiction over him. *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260 (N.D. Tex. 2014) (joinder not feasible under Rule 19(b) if "the court cannot gain jurisdiction over the necessary party"). Mr. Rich is a resident of Colorado, *see* Ex. A ¶ 10, has no presence of any kind in Texas, and has not engaged in any conduct in Texas or directed to Texas. As a result, the Court cannot in good conscience allow this lawsuit to proceed against Mr. Rich's Counsel pursuant to the factors enumerated in Rule 19(b). *Pulitzer-Polster*, 784 F.2d at 1312 (Rule 19(b) factors looks to "interests that affect four categories of persons: the plaintiff, the defendant, the absentees and the public").

***First***, Mr. Butowsky's interest in filing this lawsuit in this Court is weak—there is no reason why the Court should permit Mr. Butowsky to pursue a "needless" duplicative lawsuit here in light of the First-Filed case pending in D.C., where Mr. Butowsky is subject to jurisdiction and

would adduce the same proof in his defense as in his affirmative case here. *Pulitzer-Polster*, 784 F.2d at 1312 (listing Rule 19(b) factors, including that one of its "purposes" is "the avoidance of multiple litigation" that seek "the same objectives" and share witnesses); *Jaffer*, 301 F.R.D. at 265 (dismissal where "a proper alternative forum for this litigation does exist").[14] ***Second***, Mr. Rich's Counsel possess an interest in avoiding "multiple and repetitive" litigation since defending themselves here will necessarily include the exact same evidence and witnesses as would litigating Mr. Rich's case in the First-Filed Lawsuit. *See Pulitzer-Polster*, 784 F.2d at 1313 (defendant interested in "avoiding multiple and repetitive litigation"). ***Third***, for the reasons discussed above, Mr. Rich would be prejudiced by the possibility of a "negative precedent." *Supra* Section IV.B; *see also Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 633, (5th Cir. 2009) (the "specter of a determination" of the rights of a non-party without "its participation in the suit is itself sufficiently prejudicial to render" it indispensable); *Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) (prejudice where "though not technically bound a judgment would most assuredly create a cloud" on the missing party). ***Finally***, the public interest in "efficient dispute resolution" favors dismissal here, where permitting a "needless" second lawsuit would add unnecessary "burdens on the parties and the court system." *Pulitzer-Polster*, 784 F.2d at 1313.

## CONCLUSION

For the forgoing reasons, the BSF Defendants respectfully request that the Court dismiss this lawsuit as to them and to Mr. Rich as a non-party co-conspirator. Alternatively, they request the Court transfer the lawsuit to the First-Filed Court.

---

[14] Mr. Butowsky could have, and should have, filed any claims he had against Mr. Rich or his counsel as a counterclaim in the D.C. Lawsuit. Mr. Rich and his counsel reserve any and all rights as to whether Mr. Butowsky has waived his right to do so.

Dated: March 13, 2020

/s/ Paul J. Skiermont

SKIERMONT DERBY LLP
Paul J. Skiermont (TX Bar No. 24033073)
Steven J. Udick (TX Bar No. 24079884)
1601 Elm Street, Suite 4400
Dallas, TX 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
sudick@skiermontderby.com

*Attorneys for Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020, a true and correct copy of the foregoing

document was served on all parties of record via the Court's ECF filing system.

/s/ Paul J. Skiermont