## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

Edward Butowsky,

    Plaintiff,

v.

Michael Gottlieb, et al.,

    Defendants

Case No. 4:19-cv-00180-ALM-kpj

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### BOIES SCHILLER DEFENDANTS' MOTION TO DISMISS

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to the DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER THE FIRST-TO-FILE RULE AND RULES 12(B)(6), 12(B)(7) AND 19 ("MOTION")(Doc. No. 209):

### Preliminary Statement

In their MOTION, Defendants Michael Gottlieb, Meryl Governski, and Boies Schiller Flexner LLP (collectively "BSF Defendants") once again rely on half-truths and outright misrepresentations. They write, for example, that "Mr. Butowsky has suggested that [a related state lawsuit] was dismissed only because his opposition brief was stricken as untimely." MOTION 2, n.3. In reality, Mr. Butowsky wrote as follows:

> In the "preliminary statement" to their motion, the Defendants misrepresent what happened in *Butowsky v. Susman Godfrey, LLP*, No. 416-01222-2019 (426th District Court of Collin County, Texas). As reflected in the very order that they attached as Exhibit B to their motion, the lawsuit was not dismissed as "baseless." Instead, the undersigned failed to file his client's evidence and authorities

sufficiently in advance of the hearing, and the evidence and authorities were stricken. Under the stringent rules of the Texas Citizens Participation Act, the trial court was *required* to dismiss the case and award attorney fees.  The undersigned made an enormous mistake (perhaps the biggest of his career), and the Plaintiff has been kind enough to forgive it.  As set forth herein, however, the events in state court do not support the Boies Schiller Defendants' arguments in any way.

PLAINTIFF'S AMENDED RESPONSE IN OPPOSITION TO BOIES SCHILLER DEFENDANTS' MOTION TO DISMISS (Doc. No. 71) 1-2. To be clear, the state court struck *the evidence* (all of the evidence, in fact), and not merely an opposition brief.[1]

## **Factual Background**

The Defendants' "fact" section is bizarre. The Defendants attached the complaint that they filed in another case, and then act as if those pleadings trump the Plaintiff's complaint filed in this case. The Defendants' counter-allegations must be disregarded. *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016)(In considering a 12(b)(6) motion, "we consider only the pleadings and accept them as true") and *Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 765 (5th Cir. 1989)(pleadings accepted as true in 12(b)(1) challenge to jurisdiction). The Plaintiff would simply direct the Court to his THIRD AMENDED COMPLAINT (Doc. No. 207), which replaces the ORIGINAL COMPLAINT and speaks for itself.

---

1  The undersigned was personally present at that hearing, and he declares under penalty of perjury under the laws of the United States that the foregoing statements are true and correct, as witnessed by his electronic signature on this document.

## Legal Argument

### 1.  This case does not interfere with the D.C. proceedings.

The Plaintiff has attached the response that he filed in the D.C. court in opposition to Aaron Rich's request for an anti-suit injunction as Exhibit 1, and he incorporates it herein by reference.[2]  There is only one overlapping fact that is relevant to both lawsuits, and that is whether the Rich brothers played a role in transferring emails from the Democratic National Committee to Wikileaks. That event (or non-event) is not the basis for any cause of action in either case. It is only relevant to whether the defendants in either case were lying about the respective plaintiffs, and it is a relatively small overlap when one considers the breadth of the TAC. The BSF Defendants' quote *West Gulf* for the premise that this case involves "the simultaneous pendency of two essentially identical actions" because the "defendants are in privity" with Mr. Rich, MOTION 22, but that is absurd. In the TAC, Mr. Butowsky has alleged an overarching conspiracy involving multiple parties and multiple events. *See, e.g.,* TAC 20-23, 25, and 50.  Most of the defendants and co-conspirators are <u>not</u> in privity with Mr. Rich, and most of the events do <u>not</u> overlap with the D.C. case. *Id.*

The BSF Defendants argue that their statements about Mr. Butowsky track the D.C. complaint "verbatim," but that is demonstrably false. Consider the following excerpt from the live complaint:

In an October 1, 2018 story published by *Vox*, a statement from Ms. Governski is

---

2   As witnessed by his electronic signature below, the undersigned Ty Clevenger declares under penalty of perjury under the laws of the United States that each attachment to this motion / response is a true and correct copy of the document that he represents it to be.

> quoted as stating that the defendants – to include Mr. Butowsky – are "conspiracy theorists who spread malicious lies for personal and political gain." Ms. Governski is further quoted as saying, "We will continue our efforts against the remaining defendants, who to this day continue to spread unconscionable lies about Aaron in order to advance their false political narratives." On the contrary, Mr. Butowsky is not a conspiracy theorist, and he has not spread any lies – unconscionable or otherwise – nor has he done so for personal or political gain. In fact, Ms. Governski cannot point to any statements that Mr. Butowksy made about Aaron Rich after his lawsuit was filed – false or otherwise – thus she knew that she was lying about Mr. Butowsky in her statement to *Vox*.

SAC 35, ¶69. Ms. Governski made that defamatory statement more than six months *after* the D.C. complaint was filed, and note the substance of the defamatory allegation, *i.e.*, that Mr. Butowsky and the other defendants were *continuing* to "spread unconscionable lies  about Aaron in order to advance their false political narratives."  In other words, Ms. Governski made defamatory statements about Mr. Butowsky *after* the D.C. complaint was filed regarding purported events that occurred *after* the D.C. complaint was filed. How can that possibly track the D.C. complaint "verbatim"?  Obviously, the October statement does not overlap with the D.C. complaint at all, thus the first-filed rule cannot apply. Even if Mr. Rich somehow prevailed in the D.C. case, that would not foreclose Mr. Butowsky's claim against Ms. Governski, because Mr. Butowsky can establish that he made <u>no</u> statements about Mr. Rich after the D.C. complaint was filed.[3]

 The BSF Defendants seem to think they have *carte blanche* to say anything they

---

3  Furthermore, the BSF Defendants did not merely accuse Mr. Butowsky of making false statements about the emails; instead, they accused him of *knowingly* making false statements and doing it for nefarious purposes. Accordingly, they could still face liability insofar as they accused Mr. Butowsky of being deceptive. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018), reh'g denied (Sept. 28, 2018), cert. denied, 139 S. Ct. 1216, 203 L. Ed. 2d 208 (2019). In other words, if Mr. Butowsky *unintentionally* made false statements about Mr. Rich, then it is possible both for Mr. Rich to prevail in D.C., and for Mr. Butowsky to subsequently prevail in Texas. As such, the claims do not overlap.

want about their opposing parties, as long as they can point to some tangential connection to an ongoing case.  According to them, Mr. Butowsky's only remedy is to file a counter-claim against them in the D.C. case, but that argument is absurd.  If they think this case interferes with the D.C. proceeding now, imagine how much greater the interference would be if Mr. Butowsky filed a counter-claim in D.C., automatically forcing their disqualification from the D.C. case.

As an attachment to their July 11, 2019 OPPOSITION TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE BRIEF (Doc. No. 60), the Defendants submitted three subpoenas issued by the Plaintiff, suggesting that they were somehow being prejudiced by third-party discovery in this case. In reality, those subpoenas prove the exact opposite. The Plaintiff would note that he has another case pending in this Court, namely *Butowsky v. Folkenflik, et al.*, Case No. 4:18-cv-00442-ALM, and he requests that the Court take judicial notice of his complaint in that case (which is found at Doc. No. 101-1). *Folkenflik* also involves the same underlying question, *i.e.*, whether the Rich brothers played a role in transferring emails from the Democratic National Committee to Wikileaks. The Plaintiff has attached three subpoenas that he issued from the *Folkenflik* case as Exhibits 2, 3, and 4. The Court will note that they are identical to the subpoenas issued from this case, with the exception of two questions directed to the Democratic National Committee regarding Defendant Bauman. The BSF Defendants have not sought to enjoin that case, but according to their own reasoning they should seek an anti-suit injunction, because *Folkenflik* involves the same underlying question of fact, namely whether the Rich brothers leaked emails to Wikileaks.

- 5 -

Within the last few weeks, the Plaintiff has served identical subpoenas for the testimony of Deborah Sines (the former prosecutor who was assigned to the Seth Rich murder case), one from this case and one from *Folkenflik*. Those identical subpoenas are attached as Exhibits 5 and 6. The attorneys for the Defendants in this case did not participate in the deposition because of the Court's March 4, 2020 Order (Doc. No. 204) staying discovery, *see* March 18, 2020 email exchange between Ty Clevenger and Steve Udick (Exhibit 7), but the Plaintiff proceeded with the deposition earlier today for purposes of the *Folkenflik* case. Ms. Sines provided testimony that is relevant to the question of whether Seth Rich was involved in leaking DNC emails to Wikileaks, thus she provided testimony that is relevant to the *Folkenflik* case, this case, and Mr. Rich's case in D.C.[4] Note, however, that the BSF Defendants did not ask the magistrate presiding over the *Folkenflik* case, the magistrate presiding over this case, nor the judge presiding over the D.C. case to stay or enjoin the Sines deposition on the grounds that it would interfere with the D.C. litigation. Why not? Because the BSF Defendants are not worried about this case interfering with the D.C. case any more than they're worried about the *Folkenflik* case interfering with the D.C. case.  Instead, their first-to-file argument is nothing more than a pretext for getting the Plaintiff's claims transferred to a judge and a jury pool that they believe (for good reason)[5] is more favorable to them.

---

[4] As witnessed by his electronic signature on this document, the Plaintiff declares under penalty of perjury under the laws of the United States that he personally participated in the March 20, 2020 deposition of Deborah Sines, and that his description of that deposition is true and correct.
[5] The Plaintiff strenuously objects to Judge Richard Leon's ongoing attempts to interfere in this case, and he will separately file a formal objection outlining Judge Leon's judicial misconduct (*e.g.*, ex parte communications) and documented bias in favor of the BSF Defendants and their

Even if the Court determines that the first-to-file rule applies, the BSF Defendants requested a remedy (*i.e.*, dismissal) that is grossly disproportionate to the circumstances. If the Court determines that there is "substantial overlap" between the claims in D.C. and the claims against the BSF Defendants, the Court has the option of staying the claims against the BSF Defendants until the D.C. case is resolved.  *See RLI Ins. Co. v. Wainoco Oil & Gas Co.*, 131 Fed. Appx. 970 (5th Cir. 2005)(federal proceedings stayed pending outcome of overlapping state-court case). That makes far more sense where, as here, most of the plaintiff's claims would be barred by limitations if they were dismissed. *See* TAC 31 and 35, ¶¶65 and 69 (defamatory statements occurred more than one year ago).[6]

**2.  The Plaintiff properly stated claims against the BSF Defendants.**

**(A) The Plaintiff stated a claim for defamation.**

The BSF Defendants ignore the choice-of-law issues previously flagged by the Plaintiff, and that's because they are fatal to the BSF Defendants' argument. Texas follows the doctrine of "decepage," which is "a process of applying the laws of different states to discrete issues within the same case." *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 534–35 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)(citing cases). In other words, one claim may be governed by the law of one state, and another may be governed by the law of another state. *Id.* Furthermore, a claim may be governed by the law of Texas, but immunity defenses may be governed by the law of another state. In *Doctor v. Pardue*, 186 S.W.3d 4 (Tex. App.—Houston [1st Dist.] 2006, pet. denied),

---

client.
6  If the BSF Defendants are willing to waive their limitations defenses, the undersigned will gladly discuss with his client the possibility of dismissing them from this case.

for example, the plaintiffs and one of the defendants were residents of Texas, but another defendant was a Wisconsin nonprofit organization. *Id*. The plaintiff sued the defendants "under the laws of the State of Texas" for injuries incurred during an airplane collision in Wisconsin. *Id*. at 7.  On that basis, the nonprofit defendant countered that any damages award against it would be capped or barred by the Texas doctrine of charitable immunity. *Id*. at 8.   The First Court of Appeals disagreed.   Applying the standards of the RESTATEMENT (SECOND) CONFLICT OF LAWS, the court wrote:

> [W]e recognize that Texas is the forum state and that the parties acquiesced to the trial court's application of Texas law to the liability issues. *See Torrington Co.* [*v. Stutzman*, 46 S.W.3d 829, 850 (Tex.2000)]. We also note that the Doctors and Pardue are residents of Texas. However, after considering the choice of law principles in section 6 [of the Restatement] and the factors in section 145 [of the Restatement], we hold that Wisconsin is the State with the most significant relationship to the issue of charitable immunity and that Texas does not have an overriding interest in seeing the [Texas Charitable Immunity and Liability Act] applied to this case.

*Doctor*, 186 S.W.3d at 12–13.  In other words, Texas law may have governed the plaintiff's claims generally, but the subject of immunity was governed by Wisconsin law. That only makes sense, because as the First Court recognized, the Wisconsin nonprofit should not expect greater immunity in a Texas court than it would receive in a Wisconsin court for torts that occurred in Wisconsin. In this case, if one accepts the BSF Defendants' own arguments about attorney immunity, they are being sued because of statements they made in D.C., purportedly about D.C. litigation. Applying the rationale of *Doctor*, the BSF Defendants should not expect to receive greater immunity in a Texas court than they would receive in a D.C. court for statements related to D.C. litigation.

Attorney immunity in D.C. is quite narrow, and it would not cover the statements

made by the BSF Defendants:

> In this case, the Court cannot find that the judicial proceedings privilege applies to the three Press Releases because the parties dispute whether and to what extent the press releases were published. Compare Pls.' Mot. at 10 (arguing that Defendants fail to allege that the Press Releases were published to anyone) with Defs.' Opp'n at 6 (arguing that the Press Releases were published to the press and the Armenian News Network). As set forth above, the judicial proceedings privilege does not apply to statements "published to persons not having an interest in or connection to the litigation." *Finkelstein*, 774 A.2d at 338. Here, Defendants allege that the Press Releases were broadcast to the press and were not conveyed to persons who necessarily had an interest in or connection to the litigation. Taking Defendants' allegations as true for purposes of Plaintiffs' MOTION to Dismiss, the Court cannot find, as a matter of law, that the judicial proceedings privilege applies to the three Press Releases. *Cf. Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 560 (1st Cir.1997) (although "allegations made in pleadings are absolutely privileged," the same privilege does not apply to "defamatory statements made to the media").

*Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140 (D.D.C. 2009). Under D.C. law, the Defendants statements to national media were not protected by any type of immunity, regardless of how much they were related to the D.C. litigation.

Even under Texas law, the BSF Defendants overstate the breadth of attorney immunity. Texas courts have held, for example, that a press release describing a lawsuit is privileged:

> Just as the mere delivery of pleadings in pending litigation to the news media does not amount to publication outside of the judicial proceedings that would result in waiver of the absolute privilege, a press release advising the media that a lawsuit has been filed, including a basic description of the allegations, does not amount to publication outside of the judicial proceedings resulting in a waiver of the absolute privilege. *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 238–40 (Tex.App.-Dallas 2000).

*Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). That's a far cry from the facts of this case, where the attorney

defendants never purported to be describing the contents of a lawsuit.  Instead, the BSF Defendants made false and defamatory statements about Mr. Butowsky *in their own voices and on their own behalf* rather than purporting to describe a lawsuit.  As noted above, Ms. Governski's October 1, 2019 statement pertained to alleged events that occurred more than six months *after* the D.C. complaint was filed.  Nothing in Texas law – and nothing in the cases cited by the BSF Defendants – gives an attorney *carte blanche* to say anything he wants about an opposing party, *e.g.*, that Mr. Butowsky "continue[d] to spread unconscionable lies" after the D.C. complaint was filed. TAC 35, ¶69.  The Plaintiff defies Defendant Governski to explain how the judicial proceedings privilege could apply to her statements about matters that were not part of any judicial proceedings.

The BSF Defendants' next argue that the defamation claim must be dismissed because Mr. Butowsky failed to plead malice.  Apparently, the BSF Defendants did not read the TAC very carefully, because it explains in detail how the BSF Defendants "participated in an overarching conspiracy to defame, discredit, intimidate, and silence Mr. Butowsky," SAC 49-50, ¶103, all for the purpose of  perpetuating the "Russia Collusion Hoax." *Id*. at 20-23, 25.

**(B)  The Plaintiff stated a claim for business disparagement.**

As explained above, Mr. Butowsky pleaded actual malice, and the BSF Defendants are not protected by attorney immunity.  Furthermore, the Court has already considered the same argument advanced by the BSF Defendants regarding Mr. Butowsky's business disparagement claim, and the Court rejected it. *Folkenflik*, 2019 WL

3712026, at *18.  Mr. Butowsky is a financial advisor who is regulated by the Securities and Exchange Commission. TAC 49, ¶101. Obviously, his *professional* reputation was severely damaged by allegations that he knowingly lied in order to advance his own political and business interests, as witnessed by the fact that he lost one third of his clients. *Id*. at 3 and 49, ¶¶6 and 101.

**(C) The Plaintiff properly alleged a civil conspiracy.**

Rather than respond to the BSF Defendants' conclusory allegations that the conspiracy allegations are conclusory, Mr. Butowsky will simply direct the Court to the who, what, where, when, and how detailed in his complaint. *See, e.g.,* TAC 20-23, 25, and 50.

**(3)  Aaron Rich is not a necessary party.**

The BSF Defendants' Rule 19 arguments are downright frivolous. Aaron Rich is not accused of making any defamatory statements about Mr. Butowsky, thus there are only two possible ways that Aaron Rich could be liable for the events described in the SAC.  First, he could be held liable for the defamatory statements of the BSF Defendants' insofar as they were acting as his agents. *See, generally, Cotten v. Briley*, 517 S.W.3d 177, 183–84 (Tex. App.—Texarkana 2017, no pet.)(attorney acts as agent of client and the "acts of one must necessarily bind the other as a general rule")(citing cases). Second, he could be held liable as a co-conspirator.

Contrary to the arguments in the MOTION, 28-29, Mr. Butowsky *could* name Mr. Rich as a defendant in this case, and the Court *could* assert personal jurisdiction over Mr. Rich, because Mr. Rich's co-conspirators / agents deliberately targeted Mr. Butowsky

with intentional torts. *See, generally*, PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. No. 211). That is a far cry, however, from asserting that Mr. Butowsky *must* name Mr. Rich as a defendant in this case (or any other).  The BSF Defendants cite no authority suggesting that a plaintiff must name all co-conspirators as defendants, nor do they cite any authority that he must do it in the same case.  Likewise, they cite no authority suggesting that a plaintiff who sues an agent must also sue the principal, nor do they cite any authority that he must do it in the same case.  There's a reason why they cite no authority, and that's because there is none.

## Conclusion

When the law is applied to the TAC (rather than the BSF Defendants' counter-pleadings), it is evident that Mr. Butowsky has properly stated claims against the Defendants. The MOTION should therefore be denied.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on March 20, 2020, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**