## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**Edward Butowsky,**

    Plaintiff,

**v.**

**Michael Gottlieb, et al.,**

    Defendants

**Case No. 4:19-cv-00180-ALM-kpj**

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
## BOIES SCHILLER DEFENDANTS' MOTION TO DISMISS

NOW COMES Edward Butowsky, the Plaintiff, submitting a sur-reply to the DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER THE FIRST-TO-FILE RULE AND RULES 12(B)(6), 12(B)(7) AND 19 ("REPLY")(Doc. No. 214):

### Introduction

True to form, the BSF Defendants' REPLY is highly misleading.  According to the BSF Defendants, for example, "Plaintiff asserts that this Court must 'disregard' the First-Filed D.C. Complaint when it analyzes the First-to-File Rule as a basis for dismissal." REPLY 1. That is a willful misrepresentation of what the Plaintiff wrote. If one actually reads PLAINTIFF'S RESPONSE IN OPPOSITION TO BOIES SCHILLER DEFENDANTS' MOTION TO DISMISS ("PLAINTIFF'S OPPOSITION")(Doc. No. 212), it is clear that the sentence has nothing to do with the first-to-file rule. *See* PLAINTIFF'S OPPOSITION 2. Instead, the

sentence makes the unremarkable observation that defendants cannot counter-plead against the complaint for purposes of Fed. R. Civ. P. 12(b)(1) or 12(b)(6). *Id.* It is unfortunate that the BSF Defendants (or their counsel) make such misrepresentations so frequently and so casually, and at least one legal news service has taken notice. *See* "Fox Commentator Rips Boies Schiller As 'Dishonest'," March 23, 2020, *Law360*, https://www.law360.com/articles/1256098.

## Legal Argument

**1. The first-to-file rule is discretionary, and dismissal is not the only remedy.**

The BSF Defendants seek to create the false impression that dismissal is mandatory so long as they can establish the "likelihood of substantial overlap" between this case and the D.C. proceedings. REPLY 1. In reality, the first-to-file rule is always discretionary:

> "The first-to-file rule is a discretionary doctrine, ... the application of which we normally review for abuse of that discretion." "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011)(emphasis added, internal citations omitted). "Even when two cases substantially overlap, however, courts may exercise their discretion and decline to apply the rule based on 'compelling circumstances.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018)(discussing role of a *second-filed* court), quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

> [W]hile a district court *may* dismiss an injunction suit if duplicative litigation is pending in another jurisdiction, it is not *required* to do so. Indeed, we made clear in *West Gulf Maritime Association,* as the Supreme Court did in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 155, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that such dismissal is committed to the district court's discretion.

*Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999)(emphasis in original).  The BSF Defendants suggest that the Court's only option, if it decides the first-to-file rule should apply, is to dismiss the Plaintiff's claims outright. That argument cannot, however, be reconciled with *Int'l Fid. Ins. Co.,* where the Fifth Circuit took it as a given that a second-filed court could stay or abate a plaintiff's claims pending the outcome of the first-filed case. 665 F.3d at 678 ("Based on the above considerations, the district court did not abuse its discretion in refusing to dismiss or abate IFIC's action until the proceedings in the CIT have concluded").

If the Court chooses to dismiss or stay any claims, then it should only dismiss or stay the claims against the BSF Defendants, because no other Defendants have sought to apply the first-to-file rule to this case.  In fact, the Court should, at most, dismiss or stay only *some* of the claims against the BSF Defendants. As the Plaintiff has noted time and again, the defamatory statements made by Defendant Governski in Paragraph 69 of the THIRD AMENDED COMPLAINT (TAC) accused the Plaintiff of *continuing* to "spread unconscionable lies" <u>after</u> the D.C. case was filed.  Accordingly, there is zero overlap between that defamatory statement and the matters alleged in the D.C. complaint. Defendant Governski's allegation that Mr. Butowsky continued to spread "unconscionable lies" is patently defamatory since Plaintiff made *no statements*

*whatsoever* about Aaron Rich during that period. TAC ¶69. In other words, regardless of

whatever Aaron Rich proves in the D.C. Case, Ms. Governski (and the BSF firm) will

still face liability before this Court because Mr. Butowsky never said anything about

Aaron Rich after the D.C. complaint was filed.

## 2.   There is insufficient overlap between this case and the D.C. litigation.

The only factual overlap between this case and the D.C. case is whether Seth and

Aaron Rich were involved in leaking DNC emails, so the question is whether that alone

meets the "likelihood of substantial overlap" test.

> In deciding if a substantial overlap exists, this court has looked at factors such as
> whether "the core issue ... was the same" or if "much of the proof adduced ...
> would likely be identical." *In Save Power Ltd. v. Syntek Finance Corp.*, this court
> considered if the cases " 'overlap[ped] on the substantive issues'" and cited a First
> Circuit decision stating, " 'Where the overlap between two suits is less than
> complete, the judgment is made case by case, based on such factors as the extent
> of overlap, the likelihood of conflict, the comparative advantage and the interest of
> each forum in resolving the dispute.' "

*Int'l Fid. Ins. Co.*, 665 F.3d at 678. There is no legal overlap in this case, as the claims are

not asserted against the same parties: Aaron Rich sued Mr. Butowsky for statements that

Mr. Butowsky made about Mr. Rich, and Mr. Butowsky has sued the BSF Defendants for

statements they made about him. Accordingly, this case is somewhat like *Hart*, where the

same legal claims (FLSA violations) were asserted against different parties.  The *Hart*

court refused to apply the first-filed rule, also citing the fact that the outcome of one case

would not determine the outcome of the other. 290 F. Supp. at 631, citing *Int'l Fid. Ins.

Co.*, 665 F.3d at 678.  In PLAINTIFF'S OPPOSITION, Plaintiff noted that a verdict in Mr.

Rich's favor in D.C. would not preclude a verdict in the Plaintiff's favor in Texas. See

PLAINTIFF'S OPPOSITION 4, n.3. In the REPLY, the BSF Defendants argued that if Mr.

Rich prevailed in D.C., Mr. Butowsky's claims in this case would be foreclosed. REPLY

3, n.1. Obviously, that would not be true with respect to the defamatory statement in

Paragraph 69 of the TAC (for the reasons discussed above).  For this reason alone, the

TAC cannot be dismissed on first-filed rule grounds.  But, more broadly, the claims in the

D.C. Litigation and the claims in the Texas litigation do not overlap.  Although Mr.

Butowsky believes that Aaron Rich is a public figure and the New York Times reckless

disregard standard would apply, Mr. Rich is likely to argue that a lower negligence

standard should apply.  *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 87 (D.C.

1980)(private figure need only prove negligence).  If Mr. Rich prevails on a negligence

standard against Mr. Butowsky, it could easily constitute "reckless disregard" in this

jurisdiction to claim Mr. Butowsky was intentionally spreading "unconscionable lies."

For example, calling Mr. Butowsky a "liar" if was he only negligent could easily satisfy

the "actual malice" test because the BSF Defendants ignored clear evidence of good faith.

*See, e.g.*, TAC 20, ¶46.  In other words, a finding that Mr. Butowsky was negligent

would not conflict with a subsequent finding that the BSF Defendants defamed him by

alleging that he *knowingly* lied about Mr. Rich and *knowingly* tried to harm Mr. Rich.

The BSF Defendants misleading rhetoric continues on page 2 of their REPLY,

where they make it appear that the Plaintiff has "conceded that he already admitted" that

"many of the statements at issue in this lawsuit 'overlap factually with the allegations' in

Mr. Rich's complaint."  The BSF Defendants or, more accurately, their attorney Paul

Skiermont, create the false impression that they are quoting something that the Plaintiff

wrote. REPLY 2. In reality, however, they are quoting something that Mr. Skiermont wrote, then trying to make it look as if the Plaintiff made the concession. *Id*. The Plaintiff has never disputed that the issue of leaked DNC emails overlaps, but he very much disputes the notion that the factual overlap is widespread.

Where the overlap between cases is "less than complete," as here, then the court must consider "such factors as the extent of overlap, the likelihood of conflict, [and] the comparative advantage and the interest of each forum in resolving the dispute." *Int'l Fid. Ins. Co.*, 665 F.3d at 678.  First, while there is some limited overlap between the facts, the issues are substantially broader in the Texas litigation, which involves claims against unrelated Defendants arising from unrelated events. Second, there is no likelihood of conflict because discovery terminated in D.C. on March 27, 2020, *see* March 20, 2020 ORDER in D.C. Case (attached as Exhibit 1), whereas discovery is stayed in this case and no scheduling order has been entered.  Third, two other cases involving *the same overlapping facts* are also pending in this Court, *see Butowsky v. Folkenflik, et al.*, Case No. 4:18-cv-00442, and *Butowsky v. Wigdor*, Case No. 4:19-cv-00577, therefore this forum has a significant interest in resolving this case.

Even though *Folkenflik* and *Wigdor* involve the same question of fact (as well as overlapping discovery in *Folkenflik*), the BSF Defendants never asked the D.C. Court to enjoin those cases. Why not? The BSF Defendants entire "answer" is found in a conclusory footnote: "there are not two co-pending cases with a substantial likelihood of overlap where both NPR and Butowsky (or their privies) are involved." REPLY 4, n.3. Whether they realize it or not, the BSF Defendants made an important admission in that

sentence, *i.e.*, that a "substantial likelihood of overlap" is not really the issue here.  If they were truly concerned that this lawsuit was having a "complicating and unnecessarily unfair impact" on the D.C. litigation, REPLY 3, quoting Judge Leon, then they would have asked Judge Leon to enjoin *Folkenflik*, too (after all, the Deborah Sines deposition took place notwithstanding the stay in this case). Instead, it seems that Judge Leon and the BSF Defendants have another concern in mind, namely protecting the BSF Defendants from *liability*. [1]  As noted in the PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION 1-2 (Doc. 215), Judge Leon has tried to bully the Plaintiff into dismissing his claims outright, and now he is sending word via counsel that this Court needs to rule the way he wants lest he issue an injunction. *See* DEFENDANTS GOTTLIEB, GOVERNSKI, AND BOIES SCHILLER FLEXNER LLP REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION 1 (Doc. No. 213).

**3.  The Plaintiff properly stated defamation claims against the BSF Defendants.**

The BSF Defendants' attempts to distinguish *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 534–35 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) and *Doctor v. Pardue*, 186 S.W.3d 4, 8-9 (Tex. App.—Houston [1st Dist.] 2006), are

---

[1] For as long as the BSF Defendants have been making their first-to-file arguments, the Plaintiff has asked them to explain exactly <u>how</u> this case was interfering with or complicating the D.C. litigation. Not once have they answered that question, and neither has Judge Leon. The BSF Defendants have never explained how third-party discovery (or anything else that occurred prior to this Court's stay order) created problems in the D.C. litigation. To do so, they would have to acknowledge that the discovery in *Folkenflik* was having the same effect.

characteristically misleading, and their attempt to feign ignorance of the doctrine of *depecage* (and its consequences) is embarrassing.  The Court is quite capable of understanding the relevance of *Pardue*, namely that litigation immunity would be determined by the forum of the litigation (in this case, D.C.), therefore the Plaintiff will not waste any time discussing it further.

Likewise, it does not matter whether the Plaintiff is a limited-purpose public figure, because the TAC explains at length how the BSF Defendants knew their statements were false. TAC at 20-23, 25 ¶¶48-51 and 54 (If the BSF Defendants joined a conspiracy to "defame and discredit" the Plaintiff, that by definition is intentional). The BSF Defendents arguments to the contrary are, as usual, unpersuasive.

**4.  The Plaintiff properly stated a business disparagement claim.**

The BSF Defendants' penchant for misrepresentation is displayed again in their flawed arguments about business disparagement. They cite *Texas Beef Grp. v. Winfrey, 201 F.3d 680, 685-86 (5th Cir. 2000)* for the proposition that a plaintiff must prove that the false statements were "of and concerning" his "specific business property." REPLY 8. Once again, they hope that the Plaintiff and the Court will not bother checking their citations. The portion of *Winfrey* that they quote is itself a quote from a challenged jury instruction. The Fifth Circuit simply held that because the plaintiffs failed to object to the jury instruction, they waived the error. *Id*. at 689.  In other words, the Fifth Circuit never purported – in any way whatsoever – to hold that a business disparagement claim must involve a false statement "of and concerning" the plaintiff's "specific business property." Furthermore, *Winfrey* is readily distinguished because it was actually a case about

"business property," *i.e.*, cattle, 201 F.3d at 689, whereas the Plaintiff herein sells a

*service* (and one in which reputation is critical).  Even if the *Winfrey* had construed Texas

law the way that the BSF Defendants suggest, that interpretation was eliminated three

years later by the Texas Supreme Court:

> To prevail on a business disparagement claim, a plaintiff must establish that (1)
> the defendant published false and disparaging information about it, (2) with
> malice, (3) without privilege, (4) that resulted in special damages to the
> plaintiff. *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987). A
> business disparagement claim is similar in many respects to a defamation
> action. *Id.* The two torts differ in that defamation actions chiefly serve to protect
> the personal reputation of an injured party, while a business disparagement claim
> protects economic interests. *Id.* In *Hurlbut,* a suit brought by an insurance agent
> against his former employer, we noted that a business disparagement defendant
> may be held liable "only if he knew of the falsity or acted with reckless disregard
> concerning it, or *if he acted with ill will or intended to interfere in the economic
> interest of the plaintiff in an unprivileged fashion.*" *Id.* (emphasis added)
> (quoting Restatement (Second) of Torts § 623A, cmt. g (1977)).

*Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

> "Business disparagement and defamation are similar in that both involve harm
> from the publication of false information." *In re Lipsky*, 460 S.W.3d at 591
> (citing *Waste Mgmt. of Tex.*, 434 S.W.3d at 155). However, these two torts are
> different in that they "serve different interests": business disparagement "applies
> to derogatory publications about the plaintiff's economic or commercial interests,"
> while defamation protects "the personal reputation of an injured party." *Id.* "A
> corporation or other business entity that asserts a claim for defamation may assert
> an additional or alternative claim for business disparagement if it seeks to recover
> economic damages for injury to the business." *Id.* ("Impugning one's reputation is
> possible without disparaging its commercial interests and vice versa. Depending
> on the circumstances, then, a plaintiff may have a claim for defamation, or for
> business disparagement, or both.") (citing *Burbage v. Burbage*, 447 S.W.3d 249,
> 261 n.6 (Tex. 2014)).

*McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 749–50

(Tex. App.—Houston [1st Dist.] 2019, no pet.)(emphasis added).  Insofar as the BSF

Defendants' defamatory statements contributed to the Plaintiff's loss of business, TAC 3

and 49, ¶¶6 and 101, they are liable for business disparagement. *See, e.g., Hurlbut,* 749

S.W.2d at 766 (two insurance agents bringing business disparagement claims in their

personal capacities).

**5.  Mr. Rich is not a necessary party to this case.**

The BSF Defendants still cannot point to a single case (1) that is remotely similar

to this one where (2) the court held that joinder was necessary.  Even if Mr. Rich is a co-

conspirator or otherwise jointly liable, that does not make him a necessary party. *See*

*Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) ("joint tortfeasors or

coconspirators are not persons whose absence from a case will result in dismissal for non-

joinder").

> Courts have consistently concluded that "Rule 19 does not require joinder of
> principal and agent." *See, e.g., Depriest v. BASF Wyandotte Corp.,* 119 F.R.D.
> 639, 640 (M.D.La.1988). "It is also well settled that joint tort feasors are not
> indispensable parties." *Id.* "Finally, Rule 19 does not require joinder of persons
> against whom [parties] have a claim of contribution." *Nottingham v. Gen. Am.*
> *Comm. Corp.,* 811 F.2d 873, 880 (5th Cir.1987).

*Dennis v. Wachovia Sec.*, LLC, 429 F. Supp. 2d 281, 290 (D. Mass. 2006). If the Plaintiff

prevailed against the BSF Defendants, it is theoretically possible that they could turn

around and sue their own client (*i.e.*, Aaron Rich) for contribution insofar as they were

purportedly acting as his agent when they defamed Mr. Butowsky.  That does not,

however, make Mr. Rich a necessary party. *Nottingham,* 811 F.2d at 880 (5th Cir.1987).

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on March 29, 2020, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**
Ty Clevenger