**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **EDWARD BUTOWSKY,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **4:19-CV-0180-ALM-KPJ** |
| | § | |
| **MICHAEL GOTTLIEB, et al.,** | § | |
| | § | |
| *Defendants* | § | |

## CNN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Turner Broadcasting System, Inc. ("CNN")[1] and Defendants Anderson Cooper,

Gary Tuchman, Kayvon Oliver Darcy, and Tom Kludt (collectively, the "CNN Individual

Defendants"),[2] move to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6)

and in support would show:

---

[1] Cable News Network, Inc., a subsidiary of Turner Broadcasting System, Inc., is the entity that published the statements of which Plaintiff complains. For ease of reference, we will refer to the corporate defendant herein as CNN and the individual Defendants as the "CNN Individual Defendants"—collectively, the "CNN Defendants."

[2] As detailed in their Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Personal Jurisdiction, the CNN Individual Defendants contend that the Court lacks personal jurisdiction over them and, on that basis, should dismiss all claims against them. But if the Court determines that it does have personal jurisdiction, then Butowsky's claims still fail and should be dismissed for the reasons below.

## **TABLE OF CONTENTS**

I.   Introduction ..................................................................................................................1

II.   Background ...................................................................................................................3

   A.   Butowsky pays for Rod Wheeler to serve as a private investigator for the Rich family after Seth Rich's murder. ......................................................................................3

   B.   Butowsky and Wheeler approach the White House about a story on Seth Rich, and Wheeler appears in the media. .....................................................................................4

   C.   Fox News retracts its article within a week; Wheeler and the Riches sue Butowsky. ....5

   D.   Butowsky appears on CNN, the Challenged Statements occur and, one year later, Butowsky sues. ..........................................................................................................6

III.   Statement of Issues Under Local Rule CV-7 ...............................................................8

IV.   Butowsky fails to state a plausible claim for relief........................................................9

   A.   Butowsky fails to state a plausible defamation claim. ................................................10

      1.   The Challenged Statements are privileged and protected by the First Amendment and Texas law. ...................................................................................................10

         (a)   The fair comment privilege bars Butowsky's claims. ...........................................11

         (b)   The fair report privilege bars Butowsky's claims...................................................13

      2.   The Challenged Statements accurately report on public documents and information and third-party allegations about a matter of public concern. ..................................15

      3.   Butowsky's defamation claim is facially implausible and fails as a matter of law. ..17

         (a)   The Challenged Statements are either protected expressions of opinion or are true. ..............................................................................................................18

         (b)   The Challenged Statements are not capable of defamatory meaning or "of and concerning" Butowsky, and none constitute defamation per se. ..........................20

         (c)   Butowsky cannot show that the CNN Defendants acted with actual malice.........24

            (1)   Butowsky had to adequately plead actual malice both because he is a limited purpose public figure and because the Challenged Statements are privileged. .24

            (2)   Butowsky failed to adequately plead actual malice (or even negligence)..........26

   B.   Butowsky fails to state a plausible business disparagement claim. ...............................30

V.   Conclusion ..................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
  876 F.3d 413 (2d Cir. 2017)............................................................................11

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)............................................................27

*Alzheimer's Found. of Am., Inc. v. Alzheimers Disease & Related Disorders
  Ass'n, Inc.*,
  796 F. Supp. 2d 458 (S.D.N.Y. 2011)............................................................18

*Arant v. Jaffe*,
  436 S.W.2d 169 (Tex. Civ. App.—Dallas 1968, no writ) .............................23

*Arpaio v. Cottle*,
  No. 18-cv-2387 (APM), 2019 WL 3767104 (D.D.C. Aug. 9, 2019)..............29

*Avila v. Larrea*,
  394 S.W.3d 646 (Tex. App.—Dallas 2012, no pet.).....................................17

*Bauman v. Butowsky*,
  377 F. Supp. 3d 1 (D.D.C. 2019) .......................................................6, 19, 23, 26

*Bauman v. Butowsky*,
  No. 1:18-cv-1191-RJL (D.D.C. 2018) ...........................................................2, 5

*Bedford v. Spassof*,
  520 S.W.3d 901 (Tex. 2017)........................................................................22, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................27

*Bentley v. Bunton*,
  94 S.W.3d 561 (Tex. 2002)............................................................................11

*Billington v. Hous. Fire & Cas. Ins. Co.*,
  226 S.W.2d 494 (Tex. Civ. App.—Fort Worth 1950, no writ)......................23

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ............10

*Blanchard & Co. v. Barrick Gold Corp.*,
  No. Civ. A. 02-3721, 2003 WL 22071173 (E.D. La. Sept. 3, 2003) .............18

*Brewer v. Capital Cities/ABC, Inc.*,
    986 S.W.2d 636 (Tex. App.—Forth Worth 1998, no pet.) ..........................................11, 12, 13

*Brueggemeyer v. Am. Broad. Co.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ...............................................................................26

*Busch v. Viacom Int'l, Inc.*,
    477 F. Supp. 2d 764 (N.D. Tex. 2007) ..........................................................................10

*Butowsky v. Folkenflik*,
    No. 4:18-cv-0442 (E.D. Tex. 2018) .................................................................................2

*Butowsky v. Folkenflik*,
    No. 4:18-cv-0442-ALM, Doc. 54 ...............................................................................4, 25

*Butowsky v. Susman Godfrey, LLP*,
    No. 416-01222-2019 (Collin Cty. 416th Dist. Court 2019)..............................................2

*Cain v. Hearst Corp.*,
    878 S.W.2d 577 (Tex. 1994)...........................................................................................17

*Carr v. Brasher*,
    776 S.W.2d 567 (Tex. 1989)...........................................................................................18

*Chevalier v. Animal Rehab. Ctr., Inc.*,
    839 F. Supp. 1224 (N.D. Tex. 1993) ..............................................................................25

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005).......................................................................................8, 10

*Cox Broad. v. Cohn*,
    420 U.S. 469 (1975).................................................................................................. *passim*

*Cox Tex. Newspapers, LP v. Penick*,
    219 S.W.3d 425 (Tex. App.—Austin 2007, pet. denied)............................................27, 28

*Cox v. Richards*,
    761 F. App'x 244 (5th Cir. 2019) .....................................................................................4

*Dall. Morning News v. Tatum*,
    554 S.W.3d 614 (Tex. 2018)......................................................................................17, 18

*Dallas Morning News, Inc. v. Hall*,
    579 S.W.3d 370 (Tex. May 10, 2019) ..........................................................13, 16, 17, 18

*Democratic Nat'l Committee v. Russian Federation*,
    392 F. Supp. 410 (S.D.N.Y. July 30, 2019)....................................................................28

- iii -

*Dilworth v. Dudley*,
    75 F.3d 307 (7th Cir. 1996) ..................................................................................19, 21, 26

*Dolcefino v. Turner*,
    987 S.W.2d 100 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom.*,
    *Turner v. KTRK Telev., Inc.*, 38 S.W.3d 103 (Tex. 2000) ......................................29

*Duffy v. Leading Edge Prods., Inc.*,
    44 F.3d 308 (5th Cir. 1995) ......................................................................................27

*E. Coast Test Prep, LLC v. Allnurses.com, Inc.*,
    307 F. Supp. 3d 952 (D. Minn. 2018) ......................................................................18

*Ezrailson v. Rohrich*,
    65 S.W.3d 373 (Tex. App.—Beaumont 2001, no pet.) .............................................21

*Fairbanks v. Roller*,
    314 F. Supp. 3d 85 (D.D.C. 2018) ............................................................................10

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989) ..................................................................................................15

*Freedom Commc'ns, Inc. v. Sotelo*,
    No. 11-05-00336-CV, 2006 WL 1644602 (Tex. App.—Eastland June 15,
    2006, no pet.) ............................................................................................................12

*Gateway Log. Grp., Inc. v. Dangers Goods Mgmt. Aus. P'ship, Ltd.*,
    No. H-05-2742, 2008 WL 1883914 (S.D. Tex. Apr. 25, 2008)................................23

*Goss v. Hous. Cmty. Newspapers*,
    252 S.W.3d 652 (Tex. App.—Houston [14th Dist.] 2008, no pet.)...........................13

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995).......................................................................................19

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013)..............................................................................21, 22, 23

*HBO v. Harrison*,
    983 S.W.2d 31 (Tex. App.—Houston [14th Dist.] 1998, no pet.)............................28

*Hearst Corp. v. Skeen*,
    159 S.W.3d 633 (Tex. 2005)......................................................................................28

*Hensley v. Wal-Mart Stores, Inc.*,
    290 F. App'x 742 (5th Cir. 2008) ............................................................................24

*Hope v. Pelzer,*
  536 U.S. 730 (2002)..................................................................................4

*Huckabee v. Time Warner Entm't Co.,*
  19 S.W.3d 413 (Tex. 2000).............................................................20, 28

*Hughes v. Twenty-First Century Fox, Inc.,*
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)......................................................26

*Johnson v. Houston's Rest., Inc.,*
  167 F. App'x 393 (5th Cir. 2006) ...........................................................4

*Johnson v. Phillips,*
  526 S.W.3d 529 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)............ *passim*

*Joliff v. N.L.R.B.,*
  513 F.3d 600 (6th Cir. 2007) .................................................................20

*Kahl v. Bureau of Nat'l Affairs, Inc.,*
  856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.).......................................10

*Kaufman v. Islamic Soc. of Arlington,*
  291 S.W.3d 130 (Tex. App.—Fort Worth 2009, pet. denied) ..................20

*Klentzman v. Brady,*
  312 S.W.3d 886 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ...........26

*KMBT Op. Co., LLC v. Toledo,*
  492 S.W.3d 710 (Tex. 2016).................................................................11

*United States ex rel. Lam v. Tenet Healthcare Corp.,*
  481 F. Supp. 2d 673 (W.D. Tex. 2006)...............................................2, 25

*Langston v. Eagle Printing Co.,*
  797 S.W.2d 66 (Tex. App.—Waco 1990, no writ) ................................13

*Lauderback v. Am. Broad. Co.,*
  741 F.2d 193 (8th Cir. 1984) ...............................................................19

*Lee v. TMZ Prods., Inc.,*
  710 F. App'x 551 (3d Cir. 2017) ..........................................................11

*Levine v. CMP Publ., Inc.,*
  738 F.2d 660 (5th Cir. 1984) .................................................................9

*Live Face on Web, LLC v. Five Boro Mold Spec. Inc.,*
  No. 15 CV 4779-LTS-SN, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016) ............18

*Maxwell v. Henry*,
815 F. Supp. 213 (S.D. Tex. 1993) ........................................................................11

*McDonald v. Raycom TV Broad., Inc.*,
665 F. Supp. 2d 688 (S.D. Miss. 2009) ..................................................................13

*McIlvain v. Jacobs*,
794 S.W.2d 14 (Tex. 1990) ....................................................................................16

*Menendez v. Wal-Mart Stores, Inc.*,
364 F. App'x 62 (5th Cir. 2010) ............................................................................16

*Merco J.V. v. Kaufman*,
923 F. Supp. 924 (W.D. Tex. 1996) ..................................................................17, 20

*Meyers v. Textron, Inc.*,
540 F. App'x 408 (5th Cir. 2013). ........................................................................4, 9

*Miami Herald Publ. Co. v. Tornillo*,
418 U.S. 241 (1974) ...............................................................................................28

*Michel v. NYP Holds., Inc.*,
816 F.3d 686 (11th Cir. 2016) ...............................................................................29

*Miles v. Raycom Media, Inc.*,
No. 1:09-cv-713-LG, 2010 WL 3419438 (S.D. Miss. Aug. 26, 2010) ..................10

*MKC Energy Inv., Inc. v. Sheldon*,
182 S.W.3d 372 (Tex. App.—Beaumont 2005, no pet.) .......................................30

*MMAR Grp., Inc. v. Dow Jones & Co.*,
987 F. Supp. 535 (S.D. Tex. 1997) ........................................................................28

*Mohamed v. Ctr. for Sec. Policy*,
554 S.W.3d 767 (Tex. App.—Dallas 2018, pet. denied) ...........................24, 25, 26

*Montoya v. San Angelo Comm. Med. Ctr.*,
No. 03-16-00510-CV, 2018 WL 2437508 (Tex. App.—Austin May 31, 2018,
pet. denied) ............................................................................................................30

*Moore v. Waldrop*,
166 S.W.3d 380 (Tex. App.—Waco 2005, no pet.) ...............................................22

*Musser v. Smith Protective Servs., Inc.*,
723 S.W.2d 653 (Tex. 1987) ..................................................................................21

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2016) .....................................................................26

*New Times, Inc. v. Isaacks*,
   146 S.W.3d 144 (Tex. 2004)...........................................................................29

*New Times, Inc. v. Wamstad*,
   106 S.W.3d 916 (Tex. App.—Dallas 2003, pet. denied) ...........................................28

*Newspapers, Inc. v. Matthews*,
   339 S.W.2d 890 (Tex. 1960)...........................................................................20

*Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*,
   156 F.3d 940 (9th Cir. 1998) .........................................................................15

*Press-Ent. Co. v. Superior Court of Cal. for Riverside Cty.*,
   478 U.S. 1 (1986).................................................................................12, 25

*Provencio v. Paradigm Media, Inc.*,
   44 S.W.3d 677 (Tex. App.—El Paso 2001, no pet.)..............................................30

*Rich v. Butowsky*,
   No. 1:18-cv-0681-RJL (D.D.C. 2018) ...........................................................2, 5

*Rich v. Fox News Network, LLC*,
   322 F. Supp. 3d 487 (S.D.N.Y. 2018)..............................................................28

*Rich v. Fox News Network, LLC*,
   939 F.3d 112 (2d Cir. 2019)..................................................................6, 14, 28

*Rich v. Fox News Network, LLC*,
   No. 1:18-cv-2223-GBD (S.D.N.Y. 2018) .......................................................2, 5

*Riley v. Harr*,
   292 F.3d 282 (1st Cir. 2002)..........................................................................16

*Robinson v. Radio One, Inc.*,
   695 F. Supp. 2d 425 (N.D. Tex. 2010) ...............................................................9

*Ruder v. Jordan*,
   No. 05-14-1265-CV, 2015 WL 4397636 (Tex. App.—Dallas July 20, 2015, no
   pet.) ....................................................................................................19

*Sandmann v. WP Co. LLC*,
   No. 2:19-cv-0019-WOB-CJS, 2019 WL 3409881 (E.D. Ky. July 26, 2019)..................20

*Shaunfield v. Experian Inf. Sols., Inc.*,
   991 F. Supp. 2d 786 (N.D. Tex. 2014) ...........................................................26, 29

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)........................................................................................27

*Taylor v. Hous. Chronicle Pub. Co.*,
   473 S.W.2d 550 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.)............................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................4

*Texas Monthly, Inc. v . Transam. Nat. Gas. Corp.*,
   7 S.W.3d 801 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ..........................................14, 15

*Trotter v. Jack Anderson Ent., Inc.*,
   818 F.2d 431 (5th Cir. 1996) ............................................................................26

*Tyson v. Austin Eating Disorders Ptrs., LLC*,
   No. A-13-CA-180-SS, 2013 WL 3197641 (W.D. Tex. June 21, 2013) ..................................9

*Vilma v. Goodell*,
   917 F. Supp. 2d 591 (E.D. La. 2013) ....................................................................29

*Wabakken v. Cal. Dep't Corr. & Rehab.*,
   No. CV-12-1503-GW, 2016 WL 8943297 (C.D. Cal. June 20, 2016) ............................12, 25

*Walker v. Beaumont Indep. Sch. Dist.*,
   No. 1:15-cv-0379, 2016 WL 6666828 (E.D. Tex. Mar. 11, 2016) ....................11, 12, 13, 24

*Wheeler v. Twenty-First Cent. Fox*,
   1:17-cv-5807-GBD (S.D.N.Y. 2018)......................................................................2

*Wheeler v. Twenty-First Century Fox*,
   322 F. Supp. 3d 445 (S.D.N.Y. 2018)...................................................................23

*Wheeler v. Twenty-First Century Fox*,
   No. 1:17-cv-5807-GBD, Doc. 1...........................................................................5

*Wooten v. Roach*,
   377 F. Supp. 3d 652 (E.D. Tex. Mar. 27, 2019) ....................................................9

*WorldPak Int'l, LLC v. Diablo Valley Packing, Inc.*,
   No. 4:08-cv-0469, 2010 WL 3657335 (E.D. Tex. Aug. 26, 2010).................................30

*Young v. Martin*,
   801 F.3d 172 (3d Cir. 2015)................................................................................4

**Statutes**

Tex. Civ. Prac. & Rem. Code § 72.002(b)(2) ...................................................................11

Tex. Civ. Prac. & Rem. Code § 73.004(a) ......................................................................17

Tex. Civ. Prac. & Rem. Code § 73.005(b)...............................................................7, 16, 17

**Other Authorities**

2 Rodney Smolla, Law of Defamation § 8:67 (2d ed. 2019) ...........................................1

## I.  <u>Introduction</u>

Plaintiff Edward Butowsky's defamation claims against the CNN Defendants in his Third Amended Complaint are irreconcilable with fundamental First Amendment protections afforded to media reports on government investigations, public documents, and legal proceedings. Indeed—after *three* attempts to amend and cure fundamental deficiencies in his pleadings—Butowsky's suit still turns entirely on rejecting the core First Amendment value underlying the fair report and fair comment privileges: the principle that the public is entitled to know about the workings of its government and that the press serves as a critical conduit for that information. *See* 2 Rodney Smolla, Law of Defamation § 8:67 (2d ed. 2019) ("The fair report privilege . . . partakes of values at the very core of first amendment jurisprudence, the political enlightenment function of the first amendment."). Accurate reporting on public records is equally protected by the First Amendment, and for similar reasons. "Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media." *Cox Broad. v. Cohn*, 420 U.S. 469, 495 (1975). Upholding these free-speech privileges afforded the press, at the heart of the First Amendment, is arguably most important when the reporting at issue involves matters of national importance and the most serious of violent crimes. This is such a case.

In 2018, CNN and most every other major media outlet covered events surrounding the hacking of Hillary Clinton campaign emails during the 2016 presidential election and the murder of former Democratic National Committee ("DNC") staffer Seth Rich. (3d Am. Compl. ¶¶ 39, 63, 78–83). In Butowsky's view, these events are integrally linked. Various governmental agencies investigating these events reached the opposite conclusion, as Butowsky concedes. (*Id.* ¶¶ 32, 39, 58, 63, 78–83, 85). As to the hacking of the Clinton emails, investigating U.S. intelligence and law enforcement agencies, such as the FBI, CIA, and the Special Counsel's Office, have concluded

that the Russian government is responsible for these actions designed to interfere with the 2016 election. (*Id.*). As to Mr. Rich, law enforcement determined that he was murdered in an unrelated, botched robbery. (*Id.*).

Butowsky espouses an alternative theory: the Clinton emails were not hacked by Russia, they were stolen by Rich, who then leaked them to WikiLeaks, and was murdered as the result of doing so. (*Id.* ¶¶ 1, 23, 29–39). The theory is unsupported, and the CNN Defendants reported on the lack of foundation for Butowsky's contentions—*i.e.*, that the DNC hack and Rich murder were related. The only major news agency to indulge Butowsky's theory later retracted an article discussing the theory for failing to meet the news organization's "editorial standards." (*Id.* ¶ 41). So too have several other entities and individuals who previously advocated Butowsky's theory.[3] Following Butowsky's efforts to publicly advance this theory, he became embroiled in litigation with, among others, the Rich family.[4] The CNN Defendants reported on such litigation, including allegations made by parties concerning Mr. Butowsky's theories. As his Third Amended Complaint demonstrates, Butowsky is deeply frustrated with the press coverage of his theory and the various related litigation matters he has been involved in. In a transparent effort to punish and silence reporting with which he disagrees, Butowsky has sued the CNN Defendants, alleging defamation and business disparagement claims.

Butowsky's claims against the CNN Defendants fail on their face, and as a matter of law,

---

[3] *E.g.*, *Retraction: Aaron Rich and the murder of Seth Rich*, Washington Times (Sept. 30, 2018), https://www.washingtontimes.com/news/2018/sep/30/retraction-aaron-rich-and-murder-of-seth-rich/; *Retraction of Dr. Jerome Corsi Regarding the Murder of Seth Rich*, InfoWars (Mar. 4, 2019), https://www.infowars.com/retraction-of-dr-jerome-corsi-regarding-the-murder-of-seth-rich/. "Pursuant to Rule 201(b), Courts have the power to take judicial notice of the coverage and existence of newspaper and magazine articles." *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (taking judicial notice of news articles for analysis of motion to dismiss).

[4] *See Butowsky v. Susman Godfrey, LLP*, No. 416-01222-2019 (Collin Cty. 416th Dist. Court 2019); *Butowsky v. Folkenflik*, No. 4:18-cv-0442 (E.D. Tex. 2018); *Rich v. Fox News Network, LLC*, No. 1:18-cv-2223-GBD (S.D.N.Y. 2018); *Wheeler v. Twenty-First Cent. Fox*, 1:17-cv-5807-GBD (S.D.N.Y. 2018); *Bauman v. Butowsky*, No. 1:18-cv-1191-RJL (D.D.C. 2018); *Rich v. Butowsky*, No. 1:18-cv-0681-RJL (D.D.C. 2018).

for multiple independent reasons, among them: (1) the CNN Defendants' reports are protected by the fair comment and fair report privileges under Texas law and under the First Amendment; (2) accurate reporting of the contents of public documents and accurate reporting of third-party allegations on a matter of public concern are non-actionable; (3) the complained of statements constitute non-actionable opinion; (4) the complained of statements are not of and concerning Butowsky; (5) the complained of statements are not capable of defamatory meaning; and (6) Butowsky—who is at least a limited purpose public figure and complains of statements protected by well-established privileges—has not pleaded and cannot show that the CNN Defendants acted with actual malice. Butowsky's meritless defamation and business disparagement claims should be dismissed under Rule 12(b)(6).

## II.   <u>Background</u>

### A.   Butowsky pays for Rod Wheeler to serve as a private investigator for the Rich family after Seth Rich's murder.

The DNC's emails were hacked leading up to the 2016 presidential election. (3d Am. Compl. ¶¶ 1, 23, 33). Around the same time, DNC staffer Seth Rich was murdered. (*Id.* ¶ 31). That murder remains unsolved. But as Butowsky concedes in his Third Amended Complaint (and references as the "official narrative"), U.S. intelligence and law enforcement agencies concluded that these two events were unrelated. (*Id.* ¶¶ 32, 39, 58, 63, 78–83, 85). Intelligence agencies such as the FBI and CIA maintain with "high confidence" that "Russians were responsible for obtaining the emails." (*Id.* ¶¶ 58, 85). So does the Special Counsel's Office (*id.* ¶ 85), which recently concluded that "the General Staff of the Russian Army . . . hack[ed] the email accounts of Clinton Campaign volunteers and employees, including campaign chair John Podesta," then gave that material to, among others, "the organization WikiLeaks," which in turn "implied falsely that [Rich]

had been the source of the stolen DNC emails."[5] And the Metropolitan Police Department maintains that Rich's murder resulted from a "botched robbery." (3d Am. Compl. ¶¶ 32, 39, 81).

Yet some people—including Butowsky—maintain that Seth Rich, not the Russians, hacked the DNC's emails. (*E.g.*, *id.* ¶¶ 2, 5, 23, 31–39, 45–46, 56–63). And on that basis, they suggest his death might relate to the hack. (*Id.*). In late 2016, Butowsky approached the Rich family and "offered to pay" for a private investigator to look into Seth Rich's murder. (*Id.* ¶ 36). Butowsky then "referred the Riches to Rod Wheeler, a former homicide detective with the Metropolitan Police Department in Washington, D.C.," and began paying for his services. (*Id.* ¶ 38).

**B.     Butowsky and Wheeler approach the White House about a story on Seth Rich, and Wheeler appears in the media.**

In April 2018, Butowsky and Wheeler met with then-White House Press Secretary Sean Spicer in Washington, D.C., and told him that "they were working on a story about Seth Rich and wanted Spicer to be aware of it." *Butowsky v. Folkenflik*, No. 4:18-cv-0442-ALM, Doc. 54, Am. Compl. ¶¶ 89–91 (E.D. Tex. Mar. 5, 2019).[6] Soon after, Wheeler began to publicize his involvement and was interviewed by reporters from both FoxNews.com and Washington D.C.'s local Fox affiliate station. (3d Am. Compl. ¶¶ 39–40). "On May 16, 2017, FoxNews.com published a story by Malia Zimmerman which claims that Seth Rich had been involved in the DNC email

---

[5] U.S. Dep't of Justice Special Counsel's Office, *Report on the Investigation into Russian Interference in the 2016 Presidential Election* 4, 48–49 (2019), https://www.justice.gov/storage/report.pdf. Courts may consider materials outside the pleadings in considering a motion to dismiss under Rule 12(b)(6), including "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). Publications such as the Mueller Report from the Department of Justice are subject to judicial notice. *Hope v. Pelzer*, 536 U.S. 730, 737 n.7 (2002) (citing with approval judicial notice taken by Eleventh Circuit of DOJ report); *Young v. Martin*, 801 F.3d 172, 183 n.10 (3d Cir. 2015) ("Consistent with the Supreme Court's observation, . . . we take judicial notice of the DOJ's final investigate report here."); *see also* Fed. R. Evid. 803(8). The Court thus "may take judicial notice" of the Special Counsel's Report, which is a public record, "without converting" this Motion to Dismiss "into a motion for summary judgment." *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019).
[6] The Fifth Circuit's "precedent makes clear that factual assertions in pleadings are judicial admissions conclusively binding on the party that made them." *Johnson v. Houston's Rest., Inc.*, 167 F. App'x 393, 395 (5th Cir. 2006).

leak." (*Id.* ¶ 39). The article supposedly "undermined the DNC narrative that Seth Rich had been murdered in a 'botched robbery,'" as well as the "Russia Collusion Hoax." (*Id.*).

**C.     Fox News retracts its article within a week; Wheeler and the Riches sue Butowsky.**

"On May 23, 2017, Fox News retracted the May 16, 2017 article, claiming that the article did not meet its editorial standards." (*Id.* ¶ 41). A little more than two months later, Wheeler sued Butowsky in the Southern District of New York, alleging that "Mr. Butowsky had pushed the May 16, 2017 Fox News story at the behest of President Trump." (*Id.* ¶ 43). In particular, Wheeler alleged that Fox News, Zimmerman, and Butowsky misattributed certain quotes to him in the May 16 article. *See Wheeler v. Twenty-First Century Fox*, No. 1:17-cv-5807-GBD, Doc. 1, Compl. ¶ 115 (S.D.N.Y. Aug. 1, 2017) ("Wheeler Compl."). Wheeler further alleged that after the retraction, Butowsky published defamatory tweets about Wheeler questioning his credibility and chastising him for undermining the May 16 article. *Id.* ¶ 118–19.

In March 2018, Joel and Mary Rich sued Butowsky in the Southern District of New York for intentional infliction of emotional distress, alleging that Butowsky "knowingly spread a fake narrative about the death of Seth Rich." (Doc. 207, 2d Am. Compl. ¶ 45); *Rich v. Fox News Network, LLC*, No. 1:18-cv-2223-GBD, Doc. 2, Compl. (S.D.N.Y. Mar. 13, 2018) ("Joel & Mary Rich Compl."). That same month, Aaron Rich sued Butowsky in the District Court for the District of Columbia, asserting that "Butowsky and others defamed [him] by alleging that he helped his brother leak DNC emails to WikiLeaks." (3d Am. Compl. ¶ 64); *Rich v. Butowsky*, No. 1:18-cv-0681-RJL, Doc. 3, Compl. (D.D.C. Mar. 26, 2018). And in May 2018, a Rich family spokesperson, Brad Bauman, also sued Butowsky in the District Court for the District of Columbia, alleging Butowsky and others "ginned up a public campaign to slander and defame [him] by creating a false narrative" about Seth Rich's murder and the DNC hack. *Bauman v. Butowsky et al.*, No. 1:18-

cv-1191-RJL, Doc. 1 Compl. (D.D.C. May 21, 2018).

Aaron Rich's case remains ongoing. So does the suit brought by Joel and Mary Rich. *See generally Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) (reversing district court's dismissal of Rich's claims against Fox News Network, LLC, Malia Zimmerman, and Butowsky). Wheeler and Bauman's cases, however, were dismissed. 3d Am. Compl. 47; *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 16 (D.D.C. 2019). In an interview just days after the Wheeler case was dismissed, Butowsky foreshadowed his claims here: "Anybody who did anything negative to me as a result of the lawsuit will pay . . . I'm going to sue the hell out of a lot of firms. I want those people to choke on their nerves and go through the same crap I had to go through."[7]

**D.     Butowsky appears on CNN, the Challenged Statements occur and, one year later, Butowsky sues.**

In August 2017, Butowsky appeared on CNN for a 22-minute interview in which he gave his side of the story.[8] The following reports, referenced in Butowsky's Third Amended Complaint, were published by CNN over the next year between March 14, 2018—the day after Joel and Mary Rich sued Butowsky—and October 1, 2018:

| Date | Report | Defendant | Challenged Statement |
|------|--------|-----------|----------------------|
| 03/14/18 | *Family of slain Democratic staffer Seth Rich sues Fox News*[9]<br><br>CNN Business[10]<br><br>(**Challenged Statement #1**, 3d Am. Compl. ¶ 80) | Kayvon Oliver Darcy | "The family of slain Democratic National Committee staffer Seth Rich filed a lawsuit on Tuesday against Fox News, one of the network's reporters, and a wealthy Texas businessman over their roles in the publication of a baseless conspiracy theory about Rich's 2016 death." |

---

[7] *Exonerated in defamation suits, Ed Butowsky is out for blood*, InvestmentNews (Aug. 6, 2018, 3:56 p.m.), https://www.investmentnews.com/article/20180806/FREE/180809955/exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood

[8]         https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn.

[9] (Ex. A-1, March 14 Article).

[10] CNN Business was formerly known as CNN Money. (Ex. A, Riner Decl. ¶ 3 n.1).

| 03/14/18 | *This is why the Seth Rich conspiracy won't disappear*[11] <br><br> CNN Business <br><br> (**Challenged Statement #2**, 3d Am. Compl. ¶ 81) | Tom Kludt | "For almost a year now, various conservatives have been latching onto a conspiracy theory surrounding the murder of a young DNC staffer. For them, Seth Rich's murder disproves the entire narrative surrounding Trump and Russia. The problem? It's never been supported by any evidence." |
| | | | "The question is this: will the Seth Rich lie ever disappear?" |
| | | | "So for conspiracy theorists like Sean Hannity and other allies of the president, the death of Seth Rich is a magic wand to make this existential threat to Trump's presidency just disappear." |
| 03/27/18 | *Seth Rich's Brother, Parents Sue Over Conspiracy Theories*[12] <br><br> Anderson Cooper 360° <br><br> (**Challenged Statement #3**, 3d Am. Compl. ¶¶ 82–83)[13] | Gary Tuchman | "The conspiracy theory concocted by right-wing commentators was this. The 26 year old Rich, who worked for the Democratic National Committee, had lad leaked DNC emails to WikiLeaks. It wasn't the Russians who did it. And the murder was committed by someone with ties to the DNC as a retaliatory action. Never mind that there was and is no evidence of that." |
| | | | "But there wasn't any evidence at all, it was all made up. Seth Rich was murdered, but evidence has always pointed towards a botched robbery according to D.C. police." |
| | | Anderson Cooper | "It's an unsolved murder, one that police say was probably a robbery gone wrong. But that didn't stop some on the right from promoting unfounded claims trying to tie Seth Rich to the DNC hacking." |
| | | | "For the parents, this is, you know, not only to lose a son but then have their other son being accused of this stuff there's no evidence of" |
| | | | "Has the Rich family received an apology from anyone involved in spreading these lies?" |
| 05/21/18 | *Former Seth Rich family spokesman files lawsuit* | Kayvon Oliver | "The consultant, Brad Bauman, filed the lawsuit in the US District Court for the District of Columbia. It is the latest in a string of legal action |

---

[11] (Ex. A-2, March 14 Video).

[12] (Ex. A-3, March 27 Video).

[13] Butowsky also complains about statements made by Defendant Michael Gottlieb during this show. (3d Am. Compl. ¶ 65). As discussed below, however, those statements are non-actionable. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 73.005(b).

| | | | |
|---|---|---|---|
| | *against individuals, media outlet he says defamed him*[14] | Darcy | taken against publications and individuals who pushed unfounded claims and theories about Rich's death." |
| | CNN Business **(Challenged Statement #4**, 3d Am. Compl. ¶ 80) | | |
| 2018-10-01 | *The Washington Times settles lawsuit with Seth Rich's brother, issues retraction and apology for its coverage*[15] <br><br> CNN Business **(Challenged Statement #5**, 3d Am. Compl. ¶ 80) | Kayvon Oliver Darcy | "Seth Rich was fatally shot in Washington, DC, in July 2016. Police have said evidence indicates he was the victim of a botched robbery, but in the wake of his death, far-right activists and media organizations suggested something far more sinister. Without real evidence, they peddled a conspiracy theory that said Seth Rich leaked a trove of DNC emails to WikiLeaks and was killed in retribution for the supposed leak." |

Butowsky disagreed with this coverage and, in line with his earlier threats and based on contorted interpretations of the CNN Defendants' reporting (3d Am. Compl. ¶¶ 78–86), retaliated by suing for defamation and business disparagement. (*Id.* ¶¶ 98–103).[16]

### III.   Statement of Issues Under Local Rule CV-7

In ruling on the CNN Defendants' Motion to Dismiss, the Court is presented with the following issues:

(1) Reporting on matters of public concern and public proceedings is protected by the fair comment and fair report privilege under the Texas law and by the First Amendment. Do these privileges apply to the CNN Defendants' reporting on attempts to link the hacking of DNC emails during the 2016 election with the murder of Seth Rich, and litigation related to public reaction to those events

---

[14] (Ex. A-4, May 21 Article).

[15] (Ex. A-5, October 1 Article).

[16] The above is the actual language used in the CNN reports. In his Third Amended Complaint, Butowsky tries to paraphrase or extrapolate from the language used by the CNN Defendants, but the attached exhibits provide the Court with both the actual language and the context. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005) ("[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself.").

in which Butowsky was a party?

(2) Accurate reporting of third-party allegations on a matter of public concern is non-actionable, as are reports concerning documents, records, and information within the public domain. Are Butowsky's claims barred because the Challenged Statements report on information within the public domain and allegations made by third-parties in lawsuits concerning attempts to link Russian hacking of DNC emails during the 2016 election with the murder of Seth Rich?

(3) Under Texas law, defamation requires the publication of a false statement of fact to a third party that was defamatory concerning the plaintiff and made with the requisite degree of fault. Is Butowsky's claim plausible when (1) the Challenged Statements are either expressions of opinion, true, or incapable of defamatory meaning; (2) the Challenged Statements scrutinize ideas and concepts, not Butowsky himself; and (3) Butowsky fails to allege facts supporting actual malice?

### IV.    Butowsky fails to state a plausible claim for relief.[17]

"To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must 'plead enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 426 (N.D. Tex. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten v. Roach*, 377 F. Supp. 3d 652, 659 (E.D. Tex. Mar. 27, 2019) (citations omitted). If the plaintiff's allegations "do not permit the Court to infer more than the mere possibility of misconduct," then he fails to meet his burden and the complaint should be dismissed. *Id.* In making this assessment, the courts may consider the complaint, "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). Here, that includes copies of the articles and telecasts in which

---

[17] Texas law applies to Butowsky's claims because (1) he alleges he was harmed by nationwide, aggregate reporting, and (2) he was domiciled in Texas when that reporting was published. *Levine v. CMP Publ., Inc.*, 738 F.2d 660, 667 (5th Cir. 1984); *Tyson v. Austin Eating Disorders Ptrs., LLC*, No. A-13-CA-180-SS, 2013 WL 3197641, at *5–6 (W.D. Tex. June 21, 2013).

the Challenged Statements appeared. *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 775 n.6 (N.D. Tex. 2007) (considering publications attached as exhibits to defendant's 12(b)(6) motion because they served as the basis for plaintiff's defamation claim); *Wilson*, 168 S.W.3d at 811 (clarifying that allegedly defamatory statements "must be viewed as a whole").[18]

This case involves critical First Amendment protections.

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.). To that end, "[e]arly resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) (citations omitted). "Indeed, *Iqbal* has a particular value in this context, as forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279–80 (S.D.N.Y. 2013) (collecting cases), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

**A.      Butowsky fails to state a plausible defamation claim.**

**1.      *The Challenged Statements are privileged and protected by the First Amendment and Texas law.***

Both the United States and Texas Supreme Courts have long recognized the "special

---

[18] *See also Miles v. Raycom Media, Inc.*, No. 1:09-cv-713-LG, 2010 WL 3419438, at *1 (S.D. Miss. Aug. 26, 2010) ("[D]efendants attached a copy of the newspaper article at issue in this case as an exhibit to their Motion. Because the article is mentioned in the Complaint and is central to [plaintiff's] claims, the article is part of the pleadings, and thus, it is not necessary to convert the Motion to a Motion for Summary Judgment.").

protected nature" of news organizations reporting and opining on public information and matters of public concern. *Cox Broad.*, 420 U.S. at 492; *see KMBT Op. Co., LLC v. Toledo*, 492 S.W.3d 710, 713–715 (Tex. 2016) (collecting authority). All the privileges and protections below—any one of which is sufficient to bar Butowsky's claim—apply to the Challenged Statements. Butowsky's claim thus fails as a matter of law and should be dismissed. *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-cv-0379, 2016 WL 6666828, at *5 (E.D. Tex. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 1156852, at *2–4 (E.D. Tex. Mar. 24, 2016) (granting 12(b)(6) motion and dismissing defamation claims with prejudice because statements at issue were protected by fair comment and fair report privileges); *Maxwell v. Henry*, 815 F. Supp. 213, 215–16 (S.D. Tex. 1993) (dismissed because "broadcast in question [was] privileged as a matter of law" under fair comment and fair report privileges"); *see also Adelson v. Harris*, 876 F.3d 413, 415 (2d Cir. 2017) ("The fair report privilege applies and the district court's dismissal of Appellant's defamation claim [on defendant's 12(b)(6) motion] was correct."); *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 558 (3d Cir. 2017) (affirming dismissal of defamation claims because allegedly defamatory articles were protected under fair report privilege).

(a)      *The fair comment privilege bars Butowsky's claims.*

The common law fair comment privilege "afford[s] legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Texas codified that privilege in Texas Civil Practices and Remedies Code § 72.002(b)(2)—which protects both opinion and fact—and under which "reasonable and fair comment on or criticism of a . . . matter of public concern published for general information" is "privileged and cannot form the basis of a libel action." *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 644–45 (Tex. App.—Forth

Worth 1998, no pet.). Both the common law and statutory fair comment privilege apply here.

The Challenged Statements concern attempts to try to link Russian interference in the 2016 election with the murder of Seth Rich, and reactions thereto—including litigation involving Butowsky. These are no doubt matters of public concern. *Press-Ent. Co. v. Superior Court of Cal. for Riverside Cty.*, 478 U.S. 1, 13 (1986) ("Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility."); *Wabakken v. Cal. Dep't Corr. & Rehab.*, No. CV-12-1503-GW (DTBx), 2016 WL 8943297, at *12 (C.D. Cal. June 20, 2016) ("One can hardly think of a comment of a more 'public concern' than a comment about a presidential election (or candidate or president).").

Moreover, the CNN Defendants' reporting was reasonable and fair. In assessing whether reporting meets that standard, "the proper comparison should be between a news report or broadcast and an otherwise unprivileged record of the state or federal government." *Freedom Commc'ns, Inc. v. Sotelo*, No. 11-05-00336-CV, 2006 WL 1644602, at *5 (Tex. App.—Eastland June 15, 2006, no pet.); *see also Walker*, 2016 WL 1156852, at *2. Put differently, "[t]he question is whether the report was factually consistent with the underlying [governmental and other] reports." *Brewer*, 986 S.W.2d at 645. That said, "the First Amendment protects [the CNN Defendants'] analysis, insight, and gloss on such events, because a reasonable reader is able to make his own judgments about the evidence and would expect [others] to have particular viewpoints." *Johnson v. Phillips*, 526 S.W.3d 529, 537 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also Freedom Commc'ns*, 2006 WL 1644602, at *5 (applying fair report precedent to fair comment analysis). Thus, even "greatly exaggerated accounts" are protected. *Walker*, 2016 WL 1156852, at *2.

All of the Challenged Statements are entirely consistent with the reports that Butowsky

admits are the "official narrative of events" from the FBI, CIA, and Metropolitan Police Department—*i.e.*, Russians hacked the DNC's emails, Seth Rich was murdered in a "botched" robbery, and the two are unrelated. (3d Am. Compl. ¶¶ 32, 39, 58, 63, 78–83, 85); *McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 690–91 (S.D. Miss. 2009) (collecting authority for proposition that coverage of "information released by" law enforcement, "including reports and records," is privileged). Any commentary on competing theories was merely the CNN Defendants' "analysis, insight, and gloss" on those events and the ensuing related litigation. *Johnson*, 526 S.W.3d at 537. The Challenged Statements are thus protected under the fair comment privilege and cannot sustain Butowsky's defamation claim. *Brewer*, 986 S.W.2d at 644–45.

(b)     *The fair report privilege bars Butowsky's claims.*

All of the Challenged Statements are also protected under the First Amendment and Texas statutory and common law by the fair report privilege, which "protects publications describing official proceedings of public concern." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. May 10, 2019) (citing Tex. Civ. Prac. & Rem. Code § 73.002(a)); *Goss v. Hous. Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (common law); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 70 (Tex. App.—Waco 1990, no writ). This privilege extends to information that news agencies "receive from a press release issued by law enforcement or a governmental agency." *Walker*, 2016 WL 6666828, at *5.

"The special protected nature of accurate reports of judicial proceedings has repeatedly been recognized." *Cox Broad.*, 420 U.S. at 492–93. The Texas Supreme Court recently, and emphatically, reaffirmed this principle in *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 381–82 (Tex. 2019). "The media enjoy a privilege to report on judicial and official proceedings without regard for whether the information from such proceeding is actually true." *Id.* at 381. In

this case, the information from such proceedings has the added benefit of being confirmed over and over again by multiple sources. As the Second Circuit framed it just six months ago:

> Three years ago, Seth Rich was murdered during a botched robbery. He was a 27-year old staffer for the Democratic National Committee. Soon after Seth's murder, uncorroborated theories—*contradicted by official U.S. intelligence reports*—surfaced on the web. Seth had leaked thousands of DNC emails to WikiLeaks, the theories asserted, and that is why he had been assassinated.

*Rich*, 939 F.3d at 117 (emphasis added).

The Challenged Statements fairly, truly, and impartially report on the "official narrative" of the DNC hack and Seth Rich's murder, and on the lawsuits to which Butowsky is a party as a result of his promulgation of theories that try to tie those two events together. Challenged Statement #1 states that "the family of slain Democratic National Committee staffer Seth Rich filed a lawsuit against Fox News, one of the network's reporters, and a wealth Texas businessman over their roles in the publication of a baseless conspiracy theory about Rich's 2016 death." (Ex. A-1; 3d Am. Compl. ¶ 80). In that lawsuit, to which Challenged Statement #1 expressly refers, the Riches repeatedly allege Butowsky's position is baseless. (*E.g.*, Joel & Mary Rich Compl. ¶ 122 ("[C]onspiracy theories that Seth was killed after having provided WikiLeaks with emails from the DNC . . . are baseless."). Challenged Statements #2–5 likewise expressly refer to Butowsky's litigation with the Riches and Bauman, and source their statements for the "official narrative" of events and evidentiary interpretations to law enforcement, before commenting on alternative theories like that espoused by Butowsky. (Exs. A-2 to A-5; 3d Am. Compl. ¶¶ 80–83).

The CNN Defendants need not "prove the truth of the allegations" repeated to their audience to claim the fair report privilege. *Texas Monthly, Inc. v . Transam. Nat. Gas. Corp.*, 7 S.W.3d 801, 806 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Instead, they need only show that the "statements in the [publications] are a fair, true, and impartial account of the . . . record."

*Id.* (citations removed).

All of the Challenged Statements are just that. The CNN Defendants are "not required to provide dry, colorless description of facts, bereft of analysis or insight, to avoid a claim of defamation." *Johnson*, 526 S.W.3d at 537. Indeed, the First Amendment protects their rights to share their perspective and gloss "on the trial and related events." *Id.* At bottom, the CNN Defendants fairly and accurately reported on the lawsuits, the allegations therein, the context thereto, and what Butowsky concedes is the "official narrative" of the events. Thus, Butowsky's claims are barred by the fair report privilege.

**2.      *The Challenged Statements accurately report on public documents and information and third-party allegations about a matter of public concern.***

The First Amendment insulates the press from liability for accurately reporting on documents, records, and information within the public domain. *Florida Star v. B.J.F.*, 491 U.S. 524, 535–38 (1989); *Cox Broad.*, 420 U.S. 492–96. Once information or "a document becomes part of the public record, the public has access to it, and the press may report its contents." *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*, 156 F.3d 940, 949 (9th Cir. 1998).

As detailed above, that is exactly what the CNN Defendants did here. In particular, the CNN Defendants relied on the "official narrative" of events, as found in public documents and reports, which gave no hint of the theory that Butowsky is urging. U.S. intelligence and law enforcement agencies including the FBI, CIA, and Metropolitan Police Department "publicly revealed" their assessments of the DNC hack and Seth Rich murder. *Florida Star*, 491 U.S. at 535. Butowsky admits that the CNN Defendants reported on that "official narrative." (3d Am. Compl. ¶¶ 32, 39, 58, 63, 78–83, 85).

That official narrative gave no traction at all to the theory that Butowsky is aggressively promoting. While Butowsky may disagree with the official narrative, once the government releases

such documents and information "to public inspection, the press cannot be sanctioned for publishing it." *Cox Broad.*, 420 U.S. at 495. And it need not do so blandly. *Johnson*, 526 S.W.3d at 537; *see also Riley v. Harr*, 292 F.3d 282, 290–91 (1st Cir. 2002) (affirming dismissal of defamation claim because holding otherwise would cause authors to "hesitate to venture beyond colorless descriptions of facts . . . and the threat of defamation lawsuits would discourage expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest"). Thus, Butowsky's claims are barred by the First Amendment.

In addition to being protected by *Cox Broad.* and its progeny, the Challenged Statements are non-actionable because—as described above—they accurately report third-party allegations about a matter of public concern. Tex. Civ. Prac. & Rem. Code § 73.005(b); *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990). Because the Challenged Statements accurately describe Wheeler's and the Riches' allegations, they are substantially true under the third-party allegation rule and cannot support liability as a matter of law. *Hall*, 579 S.W.3d 380.

Likewise, any statements by Defendant Michael Gottlieb while on *Anderson Cooper 360°* cannot support liability. (3d Am. Compl. ¶¶ 81, 94; *see supra* note 12).[19] Indeed, Butowsky disclaims any effort to assert claims against the CNN Defendants on that basis. (Doc. 84, Pl.'s Resp. to CNN Defs.' Mot. Dismiss 6 n.1 ("To clear things up, Mr. Butowsky is not asserting a defamation claim against the CNN Defendants based on what Defendant Gottlieb said while he was appearing as a guest on a CNN program.")); *see also Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 n.6 (5th Cir. 2010) ("We treat the plaintiffs' statements in their briefing . . . as a

---

[19] Because Butowsky has disclaimed Gottlieb's comments while being interviewed on CNN, we have not included those statements in our list of Challenged Statements. Gottlieb's comments were the only statement on CNN cited by Butowsky in which he was named.

binding judicial admission.").

But even if Butowsky had not so disclaimed, Gottlieb's statements still could not support liability against the CNN Defendants. "Broadcasters generally are not liable in defamation for broadcasts made by third parties." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994). In fact, a "broadcaster is not liable in damages for a defamatory statement published or uttered in or as part of a radio or television broadcast by one other than the broadcaster unless the complaining party proves that the broadcaster failed to exercise due care to prevent the publication or utterance of the statement in the broadcast." Tex. Civ. Prac. & Rem. Code § 73.004(a). Moreover, Butowsky cannot sustain his burden to show that Gottlieb's statements are defamatory for the reasons set forth on pp. 18–29 *See, e.g.*, *Hall*, 579 S.W.3d at 377. And even if he could, Butowsky has not alleged and cannot show that Anderson Cooper or any other CNN Defendant acted with the requisite degree of fault. *Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App.—Dallas 2012, no pet.); *Merco J.V. v. Kaufman*, 923 F. Supp. 924, 926–27 (W.D. Tex. 1996). Thus, the CNN Defendants' accurate reporting of third-party allegations falls squarely within the third-party allegation rule and broadcaster privilege. Tex. Civ. Prac. & Rem. Code § 73.005(b); *Hall*, 579 S.W.3d at 380.

**3.   *Butowsky's defamation claim is facially implausible and fails as a matter of law.***

Even if Butowsky's Third Amended Complaint did not collide with multiple Texas statutory and common law privileges and with First Amendment jurisprudence, his claim should still be dismissed because he cannot state a claim that meets the elements of a defamation action. Butowsky asserts a claim for defamation per se—what the Texas Supreme Court recently termed "textual defamation." *Dall. Morning News v. Tatum*, 554 S.W.3d 614, 626–27 (Tex. 2018). Thus, he must show "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) was made with the requisite degree of fault." *Hall*,

579 S.W.3d at 377. He cannot meet that burden.

(a)     *The Challenged Statements are either protected expressions of opinion or are true.*

To be defamatory, a statement must be of fact. *Hall*, 579 S.W.3d at 377. That is, it must be "verifiable as false." *Tatum*, 554 S.W.3d at 624. Opinions "are not defamatory." *Johnson*, 526 S.W.3d at 535. Rather, "[a]ll assertions of opinion are protected by the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution." *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). "Whether a statement is a statement of fact or opinion is a question of law to be decided by the court." *Johnson*, 526 S.W.3d at 535.

The Challenged Statements' characterization of the theory that Seth Rich leaked emails to WikiLeaks and may have been murdered as a result as baseless, unfounded, or unsupported by evidence is mere opinion on the theory's merit. (3d Am. Compl. ¶¶ 55, 65, 80–83). Courts across the country consistently find that statements questioning the legitimacy of such claims "are non-actionable statements of opinion." *Live Face on Web, LLC v. Five Boro Mold Spec. Inc.*, No. 15 CV 4779-LTS-SN, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016); *Blanchard & Co. v. Barrick Gold Corp.*, No. Civ. A. 02-3721, 2003 WL 22071173, at *13–14 (E.D. La. Sept. 3, 2003) (holding characterizations of claims in media as "baseless," "hav[ing] no basis in fact," "myths," "misinformation being spread," "lies," "completely without merit," and "absolutely ridiculous" were non-actionable "statements of opinion, and not statements of fact"); *see also E. Coast Test Prep, LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 968–69 (D. Minn. 2018) (the same holds true for "meritless"); *Alzheimer's Found. of Am., Inc. v. Alzheimers Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) ("absurd," "baseless," "ridiculous," and "meritless" are non-actionable opinion).

Second, the Challenged Statements' reference to "conspiracy theorists" constitutes opinion

regarding the embrace by those aligned with Butowsky of theories that he himself concedes are not "the official narrative of events." (3d Am. Compl. ¶¶ 55, 65, 80–83); *Ruder v. Jordan*, No. 05-14-1265-CV, 2015 WL 4397636, at *5 (Tex. App.—Dallas July 20, 2015, no pet.) (holding that statements referring to individual as "incompetent, mentally unstable, or raging from rejection" were opinion); *see Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) ("To call a person a crank is basically just a colorful and insulting way of expressing disagreement with his master idea, and it therefore belongs to the language of controversy rather than to the language of defamation."); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) (characterizing conspiracy theorists as "misleading the American public" is "obviously a statement of opinion that could not be reasonable seen as stating or implying provable facts"). Indeed, a federal court has characterized Butowsky's beliefs and conduct in support thereof in much the same way as the CNN Defendants. *Bauman*, 377 F. Supp. 3d at 14 ("Butowsky's statement thus was not a random affront on a private individual; it was the latest reprisal in a charged, back-and-forth public exchange between Bauman and Butowsky over Butowsky's role in spreading a conspiracy theory about Seth Rich's murder.").

Third and finally, the Challenged Statements' reference to those who embrace the alternative theory of Seth Rich's murder as "spreading lies" and supposed implication that he is a liar—although the Challenged Statements never say that—are pure opinion. (3d Am. Compl. ¶¶ 55, 65, 80–83); *Lauderback v. Am. Broad. Co.*, 741 F.2d 193, 196 (8th Cir. 1984) (holding ABC broadcast's reference to insurance agents as "crooks" and "liars," and to their practices as "rotten," "unethical," and "sometimes illegal" merely "indicated ABC's opinion" and thus was non-actionable).

Simply put, the Challenged Statements "are all examples of loose, figurative, rhetorical hyperbole that is protected by the First Amendment because it is not susceptible of being proved

true or false." *Sandmann v. WP Co. LLC*, No. 2:19-cv-0019-WOB-CJS, 2019 WL 3409881, at *7

(E.D. Ky. July 26, 2019) (citations omitted). The Supreme Court has long held that "'a statement

of opinion relating to matters of public concern which does not contain a provably false

connotation will receive full constitutional protection' and that 'statements that cannot reasonably

be interpreted as stating actual facts' are not actionable." *Joliff v. N.L.R.B.*, 513 F.3d 600, 610 (6th

Cir. 2007) (quoting *Milkovich v. Loraine Journal Co.*, 497 U.S. 1, 17, 21 (1990)).[20] The

Challenged Statements fall squarely into both categories. Accordingly, they are not actionable.

(b)     *The Challenged Statements are not capable of defamatory meaning or "of and concerning" Butowsky, and none constitute defamation per se.*

To maintain a defamation claim, Butowsky must identify specific defamatory statements

that are "of and concerning" him. *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 429 (Tex.

2000); *Kaufman v. Islamic Soc. of Arlington*, 291 S.W.3d 130, 144 (Tex. App.—Fort Worth 2009,

pet. denied). For a statement to "concern" Butowsky, "it must appear that he is the person with

reference to whom the statement is made." *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893

(Tex. 1960). The Challenged Statements are not directed towards Butowsky, and instead concern

the theory that Seth Rich hacked the DNC and may have been murdered as a result. (3d Am.

Compl. ¶¶ 55, 81–82). Butowsky's need to clarify in his reference to Michael Gottlieb's allegations

on CNN that he "was mentioned by name" (*Id.* ¶ 83) drives home that the statements he actually

challenges are not "of and concerning" him. *Kaufman*, 291 S.W.3d at 144–48.[21] Vague statements

that are not of and concerning Butowsky cannot support a defamation claim under Texas law.

---

[20] A review of Butowsky's allegations regarding the Challenged Statements reveals that it is the expressed opinions with which he takes issue. (3d Am. Compl. ¶¶ 80–83). To the extent that a statement referring to a theory as "unfounded" could be a statement of fact, then such a statement is true, as Butowsky himself admits that the official investigations all rejected such a theory.

[21] As noted earlier, the Challenged Statement in which Butowsky was identified was a live interview on *Anderson Cooper 360°* in which Michael Gottlieb identified Butowsky. CNN cannot be liable for that statement for the reasons set forth on pp. 16–17. And Butowsky has conceded that he does not seek to hold CNN so liable.

Even if Butowsky could identify a statement that is "of and concerning him," he still must show that the statement is defamatory. "Whether the words used are reasonably capable of defamatory meaning is a question of law." *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 n.1 (Tex. 1987). That a statement is false or inaccurate is not enough to clear this bar. Indeed, "[a] statement may be false, abusive, unpleasant, or objectionable without injuring a person's reputation such that it is defamatory." *Johnson*, 526 S.W.3d at 535. To be defamatory, a statement must tend "to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity or virtue." *Id.* at 534. The Court must consider "a reasonable person's perception of the entire publication." *Id.* "If the statement is not reasonably capable of a defamatory meaning, then it is not defamatory as a matter of law and the claim fails." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013).

Here, the opinions expressed in the Challenged Statements' that the allegation that Seth Rich leaked emails from the DNC and may have been murdered as a result is unfounded, without evidence, and baseless are not reasonably capable of a defamatory meaning because they criticize an idea or theory, not Butowsky. (3d Am. Compl. ¶¶ 55, 65, 80–83); *see, e.g.*, *Ezrailson v. Rohrich*, 65 S.W.3d 373, 381–83 (Tex. App.—Beaumont 2001, no pet.) (holding criticism of ideas and theories is not reasonably capable of defamatory meaning); *Dilworth*, 75 F.3d at 310 ("expressing disagreement with . . . idea . . . belongs to the language of controversy rather than to the language of defamation"). The CNN Defendants' reporting on what Butowsky concedes is the "official narrative" of government investigations and conclusions on the DNC email hack and Seth Rich's murder, and its discounting of unfounded other theories, is no more defamatory of Butowsky than an article recounting the findings of the Warren Commission is of the countless commentators advocating that President Kennedy's assassination resulted from a conspiracy. If the law were

otherwise, the Court would be inundated with lawsuits like this one.

Nor is it defamatory to refer to those who embrace those claims as "conspiracy theorists." (3d Am. Compl. ¶¶ 55, 65, 80–83). Butowsky concedes that his view contradicts the "official narrative of events." (*Id.* ¶¶ 32, 39, 58, 63, 78–83, 85). Yet he stands by that view, and maintains that his "statements about the stolen emails were accurate." (*Id.* ¶ 5). Referring to someone who rejects the "official narrative" of events, and questions whether there were more nefarious elements at play in Seth Rich's murder (*e.g.*, *id.* ¶ 59) as a conspiracy theorist is neither injurious nor inaccurate. *Conspiracy Theory*, Dictionary.com, https://www.dictionary.com/browse/conspiracy-theory (last visited July 1, 2019) ("A theory that rejects the standard explanation for an event and instead credits a covert group or organization with carrying out a secret plot."). A reasonable person would not say that a statement referring to Butowsky's conviction in his own beliefs is capable of a defamatory meaning. *See, e.g.*, *Taylor v. Hous. Chronicle Pub. Co.*, 473 S.W.2d 550, 554 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) ("Such a statement rather portrays a man with convictions and the courage to back them up."). That is especially so given the conspiracy theory that Butowsky asserts in this very case. (3d Am. Compl. ¶¶ 102–03).

Even if referring to Butowsky as a "conspiracy theorist" were defamatory, such a statement would not constitute defamation per se. To be defamation per se, the statement must "injure a person in his office, profession, or occupation." *Hancock*, 400 S.W.3d at 66 (citations omitted). "Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Bedford v. Spassof*, 520 S.W.3d 901, 905 (Tex. 2017) (citations omitted).

On its face, the phrase "conspiracy theorist" does not rise to this level. *Id.*; *cf. Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.) (holding that "crook" is not

slanderous per se); *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex. Civ. App.—Dallas 1968, no writ) (same for "phony," "cheat," and "crook"). Neither does "spreading lies" or "liar." (3d Am. Compl. ¶¶ 55, 65, 78, 81, 83); *see Gateway Log. Grp., Inc. v. Dangers Goods Mgmt. Aus. P'ship, Ltd.*, No. H-05-2742, 2008 WL 1883914, at *12–13 (S.D. Tex. Apr. 25, 2008) (holding "liar" and "lying, cheating con-man from Texas" were not defamatory per se); *Billington v. Hous. Fire & Cas. Ins. Co.*, 226 S.W.2d 494, 497 (Tex. Civ. App.—Fort Worth 1950, no writ) (same for "liar"). As the Texas Supreme Court recently held, such accusations of "untruthfulness" are not defamation per se for "trades, businesses, and professions that," like Butowsky's, "rely on human interaction." *Hancock*, 400 S.W.3d at 68; *Bedford*, 520 S.W.3d at 905–06.

The very First Amendment and common law principles that protect the CNN Defendants from liability in this case have inured to Butowsky's benefit in defending allegations against him related to the same subject matter. Indeed, Butowsky made similar statements in the context of the conspiracy theory at issue, was sued for defamation as a result, and then obtained dismissal of those claims under Rule 12(b)(6). *Bauman*, 377 F. Supp. 3d at 5, 13–14 (holding that Butowsky's statement that Bauman "should apologize to the country for crafting a lie" was not defamatory in the context of "back-and-forth" public controversy over the truth of the "conspiracy theory about Seth Rich's murder"); *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 452, 457 (S.D.N.Y. 2018) (holding that Butowsky's tweet that Wheeler had "a major battle with the truth" was not capable of defamatory meaning).

Ultimately, even if the Challenged Statements are not construed as privileged, non-actionable opinion, each of them still fails to constitute actionable defamation under Texas law. Accordingly, the Court should dismiss Butowsky's claims against the CNN Defendants.

(c)    *Butowsky cannot show that the CNN Defendants acted with actual malice.*

Finally, Butowsky's defamation claim fails on its face because he provides nothing but conclusory statements to allege that the CNN Defendants acted with the requisite degree of fault—actual malice. Indeed, even if a negligence standard applied, Butowsky likewise failed to adequately plead any acts or omissions by the CNN Defendants constituting negligence.

(1)    Butowsky had to adequately plead actual malice both because he is a limited purpose public figure and because the Challenged Statements are privileged.

Butowsky must show that the CNN Defendants acted with actual malice because he is a limited purpose public figure[22] and because the Challenged Statements are privileged. *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 775 (Tex. App.—Dallas 2018, pet. denied); *Walker*, 2016 WL 6666828, at *5. To start, Butowsky has conceded that he is a public figure by failing to contest that status through two rounds of briefing. *See, e.g.*, *Hensley v. Wal-Mart Stores, Inc.*, 290 F. App'x 742, 743–44 (5th Cir. 2008) (holding that "arguments not raised in response to" dispositive motions are waived). Thus, the Court could conclude as a matter of law that Butowsky is a public figure without even reaching the three-part test courts have invoked to consider the issue. If there is any question on this issue, however, each element required to establish Butowsky as a limited purpose public figure is met here: (1) the controversy at issue is public; (2) Butowsky had "more than a trivial or tangential role in the controversy"; and (3) the alleged defamation was germane to Butowsky's participation in the controversy. *Mohamed*, 554 S.W.3d at 774.

---

[22] In his own words, Butowsky "is an internationally recognized expert in the investment wealth management industry" and "a frequent guest speaker about financial world wide current events on CNN, ABC, CBS, NBC, CNBC, Fox Business News, FOX News Channel, Bloomberg TV, and China TV, and has made hundreds of appearances on national television. *Home*, Ed Butowsky (last visited March 17, 2020), http://www.edbutowsky.com/. Butowsky also claims that he is "frequently honored to be interviewed by the national media, including Fox News Channel, Bloomberg TV, Fox Business Channel, The Blaze TV, ABC, NBC, Sports Illustrated, and many of the SIRIUS radio channels, including the David Webb Show," and "was also featured in the move from ESPN "BROKE" in their 30 for 30 series about athletes and their financial lives." *Ed Butowsky*, LinkedIn (last visited March 17, 2020), https://www.linkedin.com/in/edbutowsky/.

First, the controversies at issue—*i.e.*, the attempt to link the hacking of DNC emails during the 2016 election with the murder of Seth Rich, and the advocacy of such a link in the face of the "official narrative" of those events—are public since their "ramifications will be felt by people who are not direct participants." *Mohamed*, 554 S.W.3d at 774; *see also Press-Ent.*, 478 U.S. at 13; *Matherne*, 851 F.2d at 761; *Wabakken*, 2016 WL 8943297, at *12.

Second, Butowsky's involvement was more than trivial or tangential because he chose "to engage in activities that involved increased public exposure and media scrutiny." *Mohamed*, 554 S.W.3d at 775. It was Butowsky who voluntarily contracted the Riches in pursuit of his theory. (*E.g.*, 3d Am. Compl. ¶ 36). It was Butowsky who contacted and paid for Wheeler to conduct an investigation. (*Id.* ¶ 38). It was Butowsky who sought out and met with then-White House Press Secretary Sean Spicer. *Butowsky v. Folkenflik*, No. 4:18-cv-0442-ALM, Doc. 54, Am. Compl. ¶¶ 89–91 (E.D. Tex. Mar. 5, 2019). And it was Butowsky who sought out and engaged with the media, including a 22-minute appearance on CNN.[23] *Mohamed*, 554 S.W.3d at 775 (holding plaintiff was limited purpose public figure when he "made national media appearances, received an invitation to visit the White House, and inspired a Halloween costume"); *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993) (same when plaintiff "actively participated in the controversy by appearing on television and giving interviews to magazines").

Third and finally, the Challenged Statements are all germane to Butowsky's involvement because they all relate to the controversies at issue themselves or theories that Butowsky was promoting. *Mohamed*, 554 S.W.3d at 775.

---

[23]  *Ed Butowsky on retracted story (full interview)*, CNN Tonight (Aug. 2, 2017), https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn; *see also* Newsmax TV, *Ed Butowsky Discusses the Murder of Seth Rich*, YouTube (June 26, 2018), https://www.youtube.com/watch?v=c_g59wv42xA; The Gateway Pundit, *TGP Exclusive: Insider Ed Butowsky Talks About the Seth Rich Case*, YouTube (Mar. 17, 2018), https://www.youtube.com/watch?v=7qtkKX5HflM. "Pursuant to Rule 201(b), Courts have the power to take judicial notice of the coverage and existence of newspaper and magazine articles." *Tenet Healthcare*, 481 F. Supp. 2d at 680.

In short, Butowsky "'voluntarily engaged in a course that was bound to invite attention and comment.'" *Brueggemeyer v. Am. Broad. Co.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (quoting *Rosanova v. Playboy Ent., Inc.*, 580 F.3d 859, 861 (5th Cir. 1978)). At least one other court has held as much. *Bauman*, 377 F. Supp. 3d at 13 ("Given the controversy surrounding the murder (much of it created by Butowsky himself) . . . . Bauman was serving as a spokesman at the center of a heated public controversy over the Seth Rich murder, and he and Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray.").[24]

Butowsky is the classic limited purpose public figure who has "'thrust [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)); *see also Dilworth*, 75 F.3d at 309 ("By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition of the marketplace."). Accordingly, and for the additional reason that each Challenged Statement is privileged, he must adequately plead actual malice.

(2)    Butowsky failed to adequately plead actual malice (or even negligence).

To adequately plead actual malice, Butowsky was "required to allege specific facts that plausibly evidence actual malice in a clear and convincing manner." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (citations omitted); *Shaunfield v. Experian Inf. Sols., Inc.*, 991 F. Supp. 2d 786, 807 n.22 (N.D. Tex. 2014). In other words,

---

[24] *See Trotter v. Jack Anderson Ent., Inc.*, 818 F.2d 431, 435–36 (5th Cir. 1996) ("[A]n individual can achieve public-figure status by aggressively seeking public attention or by exercising his access to the media."); *Mohamed*, 554 S.W.3d at 775 (noting plaintiff's "access to the media" before concluding he was limited purpose public figure); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 501 (E.D. Pa. 2016) (citations omitted) ("Under traditional defamation analysis, the parties' considerable access to the media and their voluntary entry into a controversy are strong indicia that they are limited purpose public figures.").

Butowsky had to plead facts showing that the CNN Defendants published the Challenged Statements with "knowledge of falsity or reckless disregard for the truth." *Cox Tex. Newspapers, LP v. Penick*, 219 S.W.3d 425, 437 (Tex. App.—Austin 2007, pet. denied). "Reckless disregard for the truth" means the media defendant actually entertained "serious doubt about the truth of the article at the time it was published." *Id.* "Negligence, lack of investigation, or failure to act as a reasonably prudent person" are insufficient. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995). This is a high bar that Butowsky does not even attempt to meet.

Butowsky does not plausibly allege that the CNN Defendants knew the Challenged Statements were false. *Adelson v. Harris*, 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013) ("[T]he pleading standards under *Iqbal* and *Twombly* require courts to dismiss defamation actions where the allegations in the complaint do not plausibly suggest actual malice and are merely conclusory."). Nor does he plausibly allege that the CNN Defendants seriously doubted the truth of their reporting. *Id.* Instead, Butowsky simply challenges the CNN Defendants' decision to report the "official narrative" about the DNC hack and murder of Seth Rich, and their discounting of theories that those two events were somehow related. (3d Am. Compl. ¶¶ 78–86).

It is facially implausible to suggest that actual malice or even negligence exists when a news organization reports on the "official narrative" of government investigations. If law enforcement personnel, government investigators, and intelligence analysts had "high confidence" in their findings, there is no basis for the CNN Defendants to have had a "high degree of awareness of . . . probable falsity" of such a narrative of events or even been negligent in their accurate reporting of those official narratives of events. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted).[25] Butowsky's concession that the CNN Defendants reported the "official

---

[25] It is also implausible to suggest that the CNN Defendants may have had a "high degree of awareness of . . . probable falsity (*id.*) when at least one federal court has already determined that the conspiracy theory Butowsky promulgates

narrative" is fatal to any claim of fault under either an actual malice or a negligence standard. *See, e.g.*, *Rich*, 939 F.3d at 117 (noting Butowsky's theory is "contradicted by official U.S. intelligence reports")[26] That is all the more so because CNN gave Butowsky 22-minutes on air to discuss his countervailing theory of events. *Huckabee*, 19 S.W.3d at 428 (affirming dismissal for lack of actual malice when defendant interviewed people on "both sides of the story," including the plaintiff).

Even if the "official narrative" of multiple government investigations were not so definite, case after case has held that choices about "content . . . and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment" protected under the "First Amendment guarantees of a free press." *Miami Herald Publ. Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Editorial choices to accept one version of events over a "contrary version" or to "exclude certain information" and "contrary view[s]" are "not evidence of actual malice." *HBO v. Harrison*, 983 S.W.2d 31, 42 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *New Times, Inc. v. Wamstad*, 106 S.W.3d 916, 928 (Tex. App.—Dallas 2003, pet. denied) ("[A] reporter may rely on statements by a single source, even though they reflect only one side of the story, without manifesting a reckless disregard for the truth.").

That includes instances when, as here, the plaintiff himself subscribes to a different belief or denies the truth of a defendant's reporting. *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 639 (Tex. 2005); *see also Penick*, 219 S.W.3d at 444 (citations omitted) ("Evidence of a media defendant's knowledge that a public figure has denied harmful allegations or offered an alternative explanation

---

is false. *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 500 (S.D.N.Y. 2018) ("Zimmerman's statements in the Zimmerman/Fox article and to Plaintiffs about the FBI report *were false* . . ."). And another federal court, in very recently dismissing a suit by the DNC against the Donald Trump Campaign and others, categorically stated: "The primary wrongdoer in this alleged criminal enterprise is undoubtedly the Russian Federation, . . . the entity that surreptitiously and illegally hacked the DNC's computers and thereafter disseminated the results of its theft." *Democratic Nat'l Committee v. Russian Federation*, 392 F. Supp. 410, 418 (S.D.N.Y. July 30, 2019)

[26] To the extent that Butowsky purports to rely on CNN's refusal to retract this point, that too is insufficient to show actual malice because Butowsky failed to show at the time of the request that the Challenged Statements were both false and defamatory. *See MMAR Grp., Inc. v. Dow Jones & Co.*, 987 F. Supp. 535, 547–49 (S.D. Tex. 1997).

of events is not evidence that the defendant doubted the allegations for purposes of establishing actual malice, because . . . such denials are so commonplace that they hardly alert the conscientious reporter to the likelihood of error."). Simply put, "a publication can portray a person in a negative manner without liability because there is no legal obligation to present a 'balanced view.'" *Dolcefino v. Turner*, 987 S.W.2d 100, 119–21 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom.*, *Turner v. KTRK Telev., Inc.*, 38 S.W.3d 103 (Tex. 2000). The CNN Defendants' editorial choices thus cannot demonstrate actual malice.

Neither can Butowsky's conclusory allegations that "CNN maliciously concocted and spread false stories" or "knowingly made defamatory statements" meet the standard required to plead actual malice. (3d Am. Compl. ¶ 78–86); *see New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff."). Butowsky's bare claim that "Defendants Cooper and Tuchman conspired with Defendant Gottlieb to smear [him]—a theory that he has already expressly disclaimed (*see supra* pp. 16–17)—would not in any way satisfy his burden to plead actual malice. These assertions are legal conclusions that are "not entitled to any deference." *Shaunfield*, 991 F. Supp. 2d at 807 n.22; *see Michel v. NYP Holds., Inc.*, 816 F.3d 686, 706 (11th Cir. 2016) (holding conclusory allegation that newspaper engaged in campaign against plaintiff could not satisfy actual malice pleading burden); *Vilma v. Goodell*, 917 F. Supp. 2d 591, 596 (E.D. La. 2013) (holding plaintiff failed to plead plausible defamation claim because his allegation that the defendant's statements "were made with reckless disregard of their truth or falsity and/or with malice" was conclusory). Butowsky fails to "allege specific facts that plausibly evidence actual malice in a clear and convincing manner." *Shaunfield*, 991 F. Supp. 2d at 807 n.22; *Arpaio v. Cottle*, No. 18-cv-2387 (APM), 2019 WL 3767104, at *3–5 (D.D.C. Aug. 9, 2019). Thus, his claims should be dismissed.

**B.** **Butowsky fails to state a plausible business disparagement claim.**

To prevail on a claim for business disparagement, a plaintiff must show "(1) the defendant published false and disparaging information about [the] plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Montoya v. San Angelo Comm. Med. Ctr.*, No. 03-16-00510-CV, 2018 WL 2437508, at *4 (Tex. App.—Austin May 31, 2018, pet. denied). Texas courts afford defendants the same privileges and defenses to a business disparagement claim as they do to a defamation claim because "[t]he same protections which the First Amendment affords defendants from libel claims also protect them non-libel claims that are based on the same defamatory publication." *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 682–83 (Tex. App.—El Paso 2001, no pet.); *see also MKC Energy Inv., Inc. v. Sheldon*, 182 S.W.3d 372, 377 (Tex. App.—Beaumont 2005, no pet.).

Thus, Butowsky's business disparagement claim fails for the same reasons as his defamation claim. *WorldPak Int'l, LLC v. Diablo Valley Packing, Inc.*, No. 4:08-cv-0469, 2010 WL 3657335, at *11 (E.D. Tex. Aug. 26, 2010) (dismissing business disparagement claim on same grounds as defamation claim); *see also Montoya*, 2018 WL 2437508, at *5 (holding business disparagement claim that relied on same facts as defamation claim "fail[ed] for the same reason").

## V.    <u>Conclusion</u>

For each of these reasons, and subject to the CNN Individual Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Personal Jurisdiction, the Court should dismiss Butowsky's claims against the CNN Defendants. Moreover, because those claims fail as a matter of law—and because Defendant has already amended his pleadings three times, with his counsel representing to the Court that he has no further amendments to offer—any further request for leave to amend should be denied.

Respectfully submitted,

/s/ Robert P. Latham
**Robert P. Latham**
State Bar No. 11975500
blatham@jw.com
**Jamison M. Joiner**
State Bar. No. 24093775
jjoiner@jw.com
**JACKSON WALKER L.L.P.**
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile

**ATTORNEYS FOR CNN DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that this document—except Exhibits A-2 and A-3, which were served by first class mail—was duly served on all counsel of record through the Court's electronic filing system on April 1, 2020.

/s/ Jamison M. Joiner
Jamison M. Joiner