# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EDWARD BUTOWSKY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-0180-ALM-KPJ |
| | § | |
| MICHAEL GOTTLIEB, *et al.* | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS THE NEW YORK TIMES COMPANY AND ALAN FEUER'S MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6)

---

**VINSON & ELKINS L.L.P.**
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

*Attorneys for Defendants*
*The New York Times Company & Alan Feuer*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

STATEMENT OF ISSUES ..................................................................................... 3

FACTUAL BACKGROUND.................................................................................... 3

APPLICABLE LEGAL STANDARDS ................................................................... 5

ARGUMENT ........................................................................................................... 7

    A.    The challenged statements are not "of and concerning" Butowsky. ...................... 8

    B.    The challenged statements are not capable of defamatory meaning.................... 10

    C.    The challenged statements are protected by the "fair report" privilege................ 13

    D.    Butowsky fails to satisfy his burden as a public figure to plead actual malice. ................................................................................................................ 18

        a.    Butowsky is a limited-purpose public figure. ........................................... 19

        b.    Butowsky fails to plausibly allege actual malice. ..................................... 24

    E.    Butowsky's business disparagement claim fails for the same reasons as his defamation claim. ...................................................................................... 29

CONCLUSION...................................................................................................... 30

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ................................................................. 7

*Alf v. Buffalo News, Inc.*,
    995 N.E.2d 168 (N.Y. 2013)................................................................................ 17

*AOL, Inc. v. Malouf*,
    No. 05-13-01637-CV, 2015 WL 1535669 (Tex. App.—Dallas Apr. 2, 2015, no pet.)............ 17

*Arpaio v. Cottle*,
    404 F. Supp. 3d 80 (D.D.C. 2019) ............................................................. 25, 27, 28

*Arpaio v. Zucker*,
    414 F. Supp. 3d 84 (D.D.C. 2019) ...................................................................... 27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 5, 11, 25

*Baraliu v. Vinya Capital, L.P.*,
    No. 07 Civ. 4626 (MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) .............................. 15

*Barber v. Nationwide Commc'ns, Inc.*,
    No. 3:95-CV-0656-H, 1995 WL 940517 (N.D. Tex. May 30, 1995)..................................... 8

*Basic Capital Mgmt., Inc. v. Dow Jones & Co.*,
    96 S.W.3d 475 (Tex. App.—Austin 2002, no pet.) ...................................................... 17

*Bauman v. Butowsky*,
    377 F. Supp. 3d 1 (D.D.C. 2019)....................................................... 12, 20, 21, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................ 5, 6, 11

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ....................... 6, 24

*Boggs v. Krum Indep. Sch. Dist.*,
    376 F. Supp. 3d 714 (E.D. Tex. 2019)................................................................... 12

*Brueggemeyer v. Am. Broadcasting Co.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ..................................................................... 21

*Butowsky v. Folkenflik*,
    No. 18-CV-442, 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) ................................ 19, 21, 23

*Chapwood Capital Investment Mgmt., LLC v. Charles Schwab*,
    No. 4:18-cv-00287-RAS (E.D. Tex. Apr. 23, 2018) ..................................................... 23

*Chapwood Capital Investment Mgmt., LLC v. Charles Schwab*,
    No. 4:18-cv-00548-ALM-KPJ (E.D. Tex. Aug. 3, 2018)................................................ 23

*Chevalier v. Animal Rehab. Ctr., Inc.*,
    839 F. Supp. 1224 (N.D. Tex. 1993) .................................................. 23

*Cholowsky v. Civiletti*,
    887 N.Y.S.2d 592 (N.Y. App. Div. 2009) .................................... 14, 17

*Dallas Morning News, Inc. v. Hall*,
    579 S.W.3d 370 (Tex. 2019), *reh'g denied* (Aug. 30, 2019) ............................... 13, 14

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018) ...................................................... 10, 13

*Danawala v. Hous. Lighting & Power Co.*,
    14 F.3d 251 (5th Cir. 1993) .......................................................... 29

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017) .............................................. 18

*Double Diamond, Inc. v. Van Tyne*,
    109 S.W.3d 848 (Tex. App—Dallas 2003, no pet.) ............................. 13

*Duncan v. Cessna Aircraft Co.*,
    665 S.W.2d 414 (Tex. 1984) .......................................................... 7

*Ferguson v. Bank of N.Y. Mellon Corp.*,
    802 F.3d 777 (5th Cir. 2015) ......................................................... 7

*Forbes Inc. v. Granada Biosciences, Inc.*,
    124 S.W.3d 167 (Tex. 2003) ......................................................... 29

*Freedom Newspapers of Tex. v. Cantu*,
    168 S.W.3d 847 (Tex. 2005) ...................................................... 26, 29

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................... 19, 22

*Golub v. Enquirer/Star Grp., Inc.*,
    681 N.E.2d 1282 (1997) .............................................................. 10

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013) ........................................................ 10, 11

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir. 1986) ......................................................... 29

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
    399 N.E.2d 1185 (N.Y. 1979) ...................................................... 14

*Huckabee v. Time Warner Entm't Co.*,
    19 S.W.3d 413 (Tex. 2000) ....................................................... 8, 28

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015) ......................................................... 29

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019) ......................................................... 7

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016) ......................................................................... 24

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) ........................................................................... 6

*KBMT Operating Co. v. Toledo*,
    492 S.W.3d 710 (Tex. 2016) ............................................................................ 13

*Lan Sang v. Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013) .............................................................. 18

*Langston v. Eagle Printing Co.*,
    797 S.W.2d 66 (Tex. App.—Waco 1990, no writ) ............................................ 17

*Levine v. CMP Publ'ns, Inc.*,
    738 F.2d 660 (5th Cir. 1984) ............................................................................. 7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................. 7

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ............................................................................. 7

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ......................................................................... 24

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ............................................................... 6, 24, 28

*Mohamed v Center for Security Policy*,
    554 S.W.3d 767 (Tex. App.—Dallas, 2018, pet. denied) ............................ 22, 23

*Moser v. Omnitrition Int'l Inc.*,
     No. 3:16-CV-2558-L, 2018 WL 1368789 (N.D. Tex. Mar. 16, 2018) ................ 11

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5th Cir. 2007) ............................................................................. 5

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
    No. 18-3254, 2020 WL 1056854 (8th Cir. Mar. 5, 2020) ......................... 18, 21, 26

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004) ............................................................................ 28

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................... 26, 29

*Nix v. ESPN, Inc.*,
    772 F. App'x 807 (11th Cir. 2019) ..................................................................... 7

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ............................................................................. 7

*O'Gara v. Binkley*,
    No. 3:18-CV-2603-B, 2019 WL 1864099 (N.D. Tex. Apr. 19, 2019) .................. 7

*Obey v. Frisco Med. Ctr., L.L.P.*,
    No. 4:13-CV-656, 2015 WL 417509 (E.D. Tex. Jan. 30, 2015) ....................................... 10, 12

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
    113 F.3d 556 (5th Cir. 1997) .................................................................................... 24, 28

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ............................................................................................ 29

*Provencio v. Paradigm Media, Inc.*,
    44 S.W.3d 677 (Tex. App.—El Paso 2001, no pet.) ........................................................ 29

*Reed v. City of Arlington*,
    650 F.3d 571 (5th Cir. 2011) ............................................................................................ 12

*Rich v. Fox News Network, LLC*,
    322 F. Supp. 3d 487 (S.D.N.Y. 2018) ........................................................................ passim

*Rich v. Fox News Network, LLC*,
    939 F.3d 112 (2d Cir. 2019) .................................................................................... 2, 5, 16

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    366 N.E.2d 1299 (N.Y. 1977) .......................................................................................... 10

*Rizzo v. Edison Inc.*,
    419 F. Supp. 2d 338 (S.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006) ...................... 8

*Rosanova v. Playboy Enters., Inc.*,
    580 F.2d 859 (5th Cir. 1978) ............................................................................................ 21

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ........................................................................................ 24, 27

*Smith v. Clinton*,
    253 F. Supp. 3d 222 (D.D.C. 2017), *aff'd* 886 F.3d 122 (D.C. Cir. 2018),
    *cert. denied* 139 S. Ct. 459 (2018) .................................................................................. 11

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) .............................................................................................. 7

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ......................................................................................................... 24

*Tacopina v. O'Keeffe*,
    645 F. App'x 7 (2d Cir. 2016) ......................................................................................... 13

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ......................................................................................... 19

*Tex. Monthly, Inc. v. Transamerican Nat. Gas Corp.*,
    7 S.W.3d 801 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ............................................. 13

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
    65 N.E.3d 35 (N.Y. 2016) .................................................................................................. 8

*Time, Inc. v. Pape*,
    401 U.S. 279 (1971) .................................................................................................... 25, 26

*Trotter v. Jack Anderson Enters., Inc.*,
  818 F.2d 431 (5th Cir. 1987) ........................................................ 19, 23

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) .................................................................. 22

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ..................................................... 14, 18, 27

*Wheeler v. Twenty-First Century Fox*,
  322 F. Supp. 3d 445 (S.D.N.Y. 2018) ............................................ passim

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990) ................................................................ 13

**Statutes**

N.Y. Civ. Rights Law § 74 ............................................................................ 13

Tex. Civ. Prac. & Rem. Code § 73.002(a) ..................................... 13, 14, 18

Tex. Civ. Prac. & Rem. Code § 73.002(b)(1)(A) ......................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................... passim

Fed. R. Evid. 201 ......................................................................................... 22

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145 (1971) ...................................... 7

Restatement (Second) of Conflict of Laws § 150 (1971) ...................................... 7

Restatement (Second) of Conflict of Laws § 6 (1971) ......................................... 7

William L. Prosser, *Interstate Publications*, 51 Mich. L. Rev. 959 (1953) ................................. 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants The New York Times Company and Alan Feuer[1] (collectively, "The Times") move to dismiss Plaintiff's claims against them, and state as follows:

## INTRODUCTION

Plaintiff Edward Butowsky touts himself as an internationally-known financial advisor and political commentator, who has appeared on all the major television networks and cable news channels.  Since 2017, however, Butowsky has been known primarily for his controversial role in promoting a widely-discredited conspiracy theory about the murder of Seth Rich, a young staffer with the Democratic National Committee ("DNC").  Seth was killed in a late-night shooting in his Washington, D.C., neighborhood in July 2016.  Law enforcement believes Seth's murder was a botched robbery, but his killer has not been apprehended.

From the beginning, Butowsky has exploited this tragedy for his own political and self-promotional ends.  After Seth was killed, Butowsky contacted Joel and Mary Rich, Seth's parents, arranging for them to hire Rod Wheeler, a former homicide detective.  Like Butowsky, Wheeler was also a Fox News contributor, and the two men worked with a Fox News producer, Malia Zimmerman, to prepare a report alleging that Seth was assassinated for leaking internal DNC emails during the 2016 presidential campaign.  Reaction to the story was swift and critical.  Less than a week after publication, Fox News retracted it ("Retracted Fox News Story").  Fox News did not publicly catalogue all of the story's inaccuracies, but the network acknowledged that the story did not meet its editorial standards.

Approximately one year later, Seth's parents, Joel and Mary Rich, sued Fox, Zimmerman, and Butowsky for their involvement in the Retracted Fox News Story (the "Parents' Lawsuit").

---

[1] Defendant Feuer makes this motion subject to and without waiving his motion to dismiss for lack of personal jurisdiction.

Detective Wheeler, apparently embarrassed by his role in the episode, also filed suit against the same defendants, claiming he had been manipulated and defamed (the "Wheeler Lawsuit"). Neither case initially survived the Rule 12(b)(6) stage.  On August 2, 2018, both cases were dismissed.[2]  The Times covered these court rulings in an article published the same day ("*NYT Article*").

Having lost all credibility in the mainstream media, Butowsky has turned to litigation in his efforts to promote the Seth Rich conspiracy theory.  This is one of several cases he has filed in this Court since June 2018, all of them over his role in the controversy.  In this latest case, Butowsky asserts claims against 12 defendants, including the lawyers who represented Aaron Rich.  Butowsky also alleges defamation and business disparagement claims against various news outlets and their reporters—including The Times, CNN, and Vox Media—all of whom covered the public controversy and litigation surrounding the Seth Rich conspiracy theory.

Butowsky's attempt to hold The Times liable for its article accurately reporting on the court orders dismissing the Parents' Lawsuit and the Wheeler Lawsuit is fatally flawed.  Butowsky cannot identify any actionable statement in the *NYT* Article that is "of and concerning" him.  The article is primarily about the district court's dismissal of the plaintiffs' claims against Fox News, not Butowsky.  Butowsky is mentioned in only a few statements, all of which are either unchallenged or not capable of defamatory meaning.  Even if those statements were actionable, it is well established under Texas law and New York law that the news media's fair and true reporting on court proceedings is privileged.  Butowsky cannot overcome this privilege, and, as a limited-purpose public figure, his failure to plead facts that could plausibly support a finding of actual

---

[2] In September 2019, the Second Circuit vacated the district court's dismissal, holding that Seth's parents stated viable claims against Butowsky, Zimmerman, and Fox News for intentional infliction of emotional distress and tortious interference with contract in the Parents' Lawsuit.  *Rich v. Fox News Network, LLC* (*Rich II*), 939 F.3d 112, 119 (2d Cir. 2019).

malice also requires dismissal under the First Amendment.  Despite three different attempts to plead his claims, Butowsky has failed to cure these deficiencies.

## STATEMENT OF ISSUES

1.      Should the Court dismiss Butowsky's defamation and business disparagement claims against The Times on the grounds that he fails to identify any allegedly defamatory statement in the *NYT* Article that is "of and concerning" him?

2.      Should the Court dismiss Butowsky's claims on the grounds that statements he challenges are not defamatory?

3.      Should the Court dismiss Butowsky's claims against The Times on the grounds that the *NYT* Article is privileged as a fair and true report of judicial proceedings and, as a matter of law, Butowsky cannot overcome this privilege?

4.      Should the Court dismiss Butowsky's claims against The Times on the grounds that he is a limited-purpose public figure and cannot satisfy his burden to plausibly allege actual malice?

5.      Should the Court dismiss Butowsky's business disparagement claim for the same reasons, and for the additional reason that he fails to plead special damages?

## FACTUAL BACKGROUND

On August 2, 2018, *The New York Times* published an article headlined, "Judge Dismisses Two Lawsuits Against Fox News Over Retracted Seth Rich Story."[3]  The article reported on two lawsuits arising out of a May 16, 2017, Fox News story about a conspiracy theory blaming Seth for the leak of 44,000 internal DNC emails to Wikileaks.  Fuller Decl. Ex. A at 1.  As the *NYT*

---

[3] A copy of the *NYT* Article is attached as Exhibit A to the Declaration of Marc Fuller.  In the paper's New York edition, the article appeared under the headline, "Judge Tosses 2 Lawsuits Against Fox News Over Retracted Story on Murdered Aide."  Fuller Decl. Ex. A at 2.

Article explained, the Fox News story had "implied that Mr. Rich's death on the streets of Washington in July 2016 had occurred in retaliation for the leaks, even though no evidence supported that conclusion."  A week after publication, Fox News retracted the report, stating:

> On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich. The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed.
>
> We will continue to investigate this story and will provide updates as warranted.

Fuller Decl. Ex. B.

In March 2018, Seth's parents filed the Parents' Lawsuit against Fox News, Fox producer Malia Zimmerman, and Butowsky in the United States District Court for the Southern District of New York, where it was assigned to the Honorable George B. Daniels.  *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 493 (S.D.N.Y. 2018); Fuller Decl. Ex. C.  The Riches claimed that the defendants had conspired to produce and publish the Retracted Fox News Story, which caused them mental anguish.  *Id.* at 493-96.  Because they had no defamation claim—the Retracted Fox News Story was about Seth, not his parents—the Riches asserted claims for intentional infliction of emotional distress and other torts.  *Id.* at 493-94.

In addition to the Parents' Lawsuit, Wheeler also filed his lawsuit against Fox, Zimmerman, and Butowsky in the Southern District of New York.  *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445 (S.D.N.Y. 2018); Fuller Decl. Ex. D.  That case, too, was assigned to Judge Daniels.  Like the Parents' Lawsuit, the Wheeler Lawsuit arose principally from the Retracted Fox News Story.  Wheeler claimed that Fox News and Zimmerman had attributed to him false quotes and misinformation regarding the law enforcement investigation into Seth's

murder and that, after the network retracted its reporting, Butowsky continued to defame him on Twitter.  *Id.* at 449-52.

On August 2, 2018, Judge Daniels dismissed both cases under Rule 12(b)(6).  Judge Daniels dismissed Wheeler's defamation claims, holding that the challenged statements were either true based on Wheeler's own admissions or not defamatory.  *Wheeler*, 322 F. Supp. 3d at 454-58.  In the Parents' Lawsuit, Judge Daniels ruled that the defendants' alleged actions did not rise to the level of "extreme and outrageous conduct" sufficient to support an intentional infliction of emotional distress claim and were not otherwise tortious.  *Rich*, 322 F. Supp. 3d at 502-05.  The Second Circuit disagreed, overturning Judge Daniels and finding it sufficient to allege that Butowsky and Zimmerman "recruited a Fox News contributor, Rod Wheeler, to help them infiltrate the Rich family," convinced Seth's parents to hire Wheeler, and then "exploited Wheeler's connection to the Riches to give credence to what Zimmerman and Butowsky knew were false accusations against Seth—which Zimmerman and Butowsky widely disseminated through Fox News."  *Rich II*, 939 F.3d at 117.  The Second Circuit therefore vacated the dismissal of the Parents' Lawsuit and remanded the case for further proceedings.  *Id.* at 117, 130.

The *NYT* Article reported on the dismissals in both cases.  Fuller Decl. Ex. A at 1-2.  The article briefly described the Retracted Fox News Story, the plaintiffs' allegations against Fox News and the others, and specific observations Judge Daniels made in his memorandum orders.  *Id.*  The *NYT* Article also reported that lawyers for Butowsky and Zimmerman had said they were pleased with the court's decisions.  *Id.* at 2.

## APPLICABLE LEGAL STANDARDS

Although a complaint need not contain "detailed factual allegations," it must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547).  A complaint that does no more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

Rigorous application of these standards is critical where, as here, the plaintiff challenges newsworthy reporting on a political controversy:

> The First Amendment guarantees freedom of speech and freedom of the press.  Costly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).  Because the burdens of litigation, including discovery, chill press freedom even when the publisher ultimately prevails, resolution of meritless defamation cases under Rule 12(b)(6) is essential.  *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ("[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."), *aff'd*, 807 F.3d 541 (2d Cir. 2015); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[A]pplication of the plausibility pleading standard makes particular sense when examining public figure defamation suits. In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.").

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the facts stated in the complaint, documents incorporated by reference or attached to the complaint, and facts that are subject to judicial notice.  *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").  Documents are incorporated by reference when "'they are central to the claim and referenced by the complaint.'"  *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

## ARGUMENT

Butowsky asserts two claims against The Times—for defamation and for business disparagement—based on statements in the *NYT* Article.  The fact that Butowsky, a Texas resident, has sued a New York publisher and a New York reporter based on an article covering legal proceedings in New York raises potential choice-of-law issues.[4]  Such issues are notoriously fraught in multistate defamation cases.  *Adelson*, 973 F. Supp. 2d at 476-78 ("Choice of law analysis in defamation cases remains, as it was in Dean Prosser's time, 'a dismal swamp, filled

---

[4] As a federal court sitting in diversity, the Court must apply Texas choice-of-law rules.  *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004).  Texas uses the "most significant relationship" test, as set forth in the Restatement (Second) of Conflict of Laws.  *O'Gara v. Binkley*, 384 F.Supp.3d 674, 681 (N.D. Tex. Apr. 19, 2019) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984)); Restatement (Second) of Conflict of Laws §§ 6, 145, 150 (1971)). The Fifth Circuit and other jurisdictions have held that defamation claims are generally governed by the law of the plaintiff's domicile—here, Texas.  *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984); *Adelson v. Harris*, 973 F. Supp. 2d 467, 476-78 (S.D.N.Y. 2013).  But some courts have held that a privilege, such as the fair report privilege, may be subject to a different analysis.  For example, the Eleventh Circuit recently held that New York law governed the fair report defense where the challenged story was first published in New York and covered a lawsuit filed in New York.  *Nix v. ESPN, Inc.*, 772 F. App'x 807, 810 (11th Cir. 2019); *cf. O'Gara*, 384 F. Supp. 3d at 682-83 (court noted parties' agreement that law of California, the plaintiff's domicile, governed multistate defamation claim, but held that law of Texas governed anti-SLAPP issue).

with quaking quagmires[.]'" (quoting William L. Prosser, *Interstate Publications*, 51 MICH. L. REV. 959, 971 (1953))). On this motion, however, a definitive decision on choice-of-law issues is unnecessary. Regardless of whether Texas or New York defamation law applies, Butowsky's claims must be dismissed, and for the same reasons.

## A.       The challenged statements are not "of and concerning" Butowsky.

A libel plaintiff bears the burden of identifying each specific statement upon which his claim is based. *See Barber v. Nationwide Commc'ns, Inc.*, No. 3:95-CV-0656-H, 1995 WL 940517, at *3 (N.D. Tex. May 30, 1995); *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 350 (S.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006). To be actionable, a challenged statement must be "of and concerning" the plaintiff. *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 429 (Tex. 2000); *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.3d 35, 37 (N.Y. 2016). Butowsky fails to satisfy this requirement, as he does not identify any actionable statement that is about him.

As its headline—"Judge Dismisses Two Lawsuits Against Fox News Over Retracted Seth Rich Story"—suggests, the *NYT* Article is not primarily about Butowsky. Fuller Decl. Ex. A at 1. Rather, the article focuses on Fox News as the main defendant in the Parents' Lawsuit and in the Wheeler Lawsuit. *Id.* at 1-2. In its discussion of the Parents' Lawsuit, the article repeatedly refers to the suit as being "against Fox News":

- "A federal judge in Manhattan dismissed a lawsuit Thursday that was brought ***against Fox News*** by the parents of Seth Rich . . . ."

- "Mr. Rich's parents, Joel and Mary, filed the suit in Federal District Court in Manhattan in March, ***arguing that Fox News had caused them emotional distress and engaged in 'extreme and outrageous conduct'*** by publishing a fabricated article . . . ."

- "The story, ***published on the Fox News website*** on May 16, 2017 . . . ."

8

- "Within a week, ***Fox News retracted the story*** . . . ."

- "But [Judge Daniels] added that he had no choice but to dismiss the suit, ***because Fox's conduct did not amount to the intentional infliction of emotional distress***."

*Id.* at 1 (emphasis added).  Butowsky is not mentioned until more than halfway through the *NYT* Article, and then only to note that he and Zimmerman had been named as co-defendants and were being dismissed.  *Id.* at 2.  Butowsky does not challenge the accuracy of this statement.

Turning to Judge Daniels's dismissal of the Wheeler Lawsuit, the *NYT* Article refers several times to Butowsky, but he does not challenge any of those statements.  Specifically, the article reports that:

- "In a related decision, Judge Daniels also dismissed a separate lawsuit brought against Fox News, Ms. Zimmerman and ***Mr. Butowsky*** by a private detective who had played a central role in the retracted story."

- "The detective, Rod Wheeler, was hired by the Rich family on ***Mr. Butowsky's*** recommendation to help them investigate their son's death."

- "Mr. Wheeler also claimed that ***Mr. Butowsky***, a wealthy Trump supporter, had defamed him after the story was retracted by posting comments on Twitter including "Rod Wheeler has a major battle with the truth.""

- "The judge also characterized ***Mr. Butowsky's*** social media attacks as largely rhetorical."

- "Lawyers for both ***Mr. Butowsky*** and Ms. Zimmerman said they were pleased by the decisions."

*Id.* (emphasis added).  Again, Butowsky does not dispute the accuracy of any of these statements, nor could he.  Four of the statements accurately report that Butowsky was dismissed from the Wheeler Lawsuit, and the fifth—reporting that the Riches had hired Wheeler based on Butowsky's recommendation—is admittedly true according to his own allegations.  Third Amended Complaint ("TAC") ¶ 38.

9

Thus, unable to identify any challenged statements in the *NYT* Article that are "of and concerning him," Butowsky fails to plead a viable defamation or disparagement claim against The Times.

**B.     The challenged statements are not capable of defamatory meaning.**

Even if the statements Butowsky challenges were "of and concerning" him, they are not defamatory of him.  To be defamatory, a challenged statement must expose the plaintiff to public hatred, contempt, or ridicule.  *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637 (Tex. 2018); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1305 (N.Y. 1977).  Texas and New York recognize two types of defamatory speech:  defamation *per se* and defamation *per quod*. The former includes statements that inherently injure a person in his office, profession, or occupation, whereas the latter requires an additional showing and proof of actual damages. *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013); *Golub v. Enquirer/Star Grp., Inc.*, 681 N.E.2d 1282, 1283 (1997).  The court decides this issue as a matter of law.  *Obey v. Frisco Med. Ctr., L.L.P.*, No. 4:13-CV-656, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015) (Mazzant, J.).

Butowsky alleges that the *NYT* Article created a false impression that he was "intimately involved" in the development of the Retracted Fox News Story, which he claims was inaccurately described by The Times as a "false and misleading" news report.  TAC ¶ 94.  As demonstrated above, however, the article does not state that Butowsky was "intimately involved" in the development of the Retracted Fox News Story.  Rather, the *NYT* Article states Butowsky "assisted Ms. Zimmerman," whom the article identifies as the "author" of the Retracted Fox News Story. Fuller Decl. Ex. A at 2.  It then describes Judge Daniels as "saying that even though the story they had put together was untrue, their behavior did not meet the legal standard of 'extreme and outrageous conduct.'"  *Id.*

These statements do not rise to the level of defamatory speech.  They do not accuse Butowsky of lying or of any contemptible conduct in connection with his role in the Retracted Fox News Story.  *See, e.g.*, *Smith v. Clinton*, 253 F. Supp. 3d 222, 241 (D.D.C. 2017) (distinguishing between statement referring to factual assertion as untrue, and statement calling the speaker a "liar"), *aff'd,* 886 F.3d 122 (D.C. Cir. 2018), *cert. denied,* 139 S. Ct. 459 (2018).  An accusation of merely having been involved with the production of an inaccurate news story is not defamatory.  And it is certainly not defamatory *per se* as to Butowsky, because it does not inherently injure him in his profession.  Butowsky makes his living as a financial advisor.  TAC ¶ 10.  The ability to produce error-free journalism is not a quality uniquely necessary for dispensing financial advice or formulating investment strategies.  *Cf. Hancock*, 400 S.W.3d at 67-68 (holding that reputation of honesty is not "a peculiar or unique skill that is necessary" for a medical doctor (citation omitted)).  Butowsky's Third Amended Complaint alleges that his work as a financial advisor is regulated by the Securities and Exchange Commission ("SEC") and that allegations of "fraud or dishonesty can cost him his professional license," TAC ¶ 101, but he fails to plausibly explain how reporting that he assisted in the preparation of a flawed Fox News story would jeopardize his professional licenses.  Moreover, Butowsky makes no effort to plead any actual damages directly resulting from publication of the *NYT* Article.[5]

Even if the *NYT* Article could reasonably be construed as accusing Butowsky of crafting a lie, it is not actionable in this particular context.  Indeed, Butowsky has prevailed on this issue in

---

[5] Butowsky's only allegation of economic damages tied to his defamation or business disparagement claims is his general averment that he lost "one third of his clients" as a result of the actions and statements of all 12 defendants.  TAC ¶ 101.  Such a vague and conclusory allegation falls far short of satisfying his burden under *Iqbal/Twombly*.  *Moser v. Omnitrition Int'l Inc.,* No. 3:16-CV-2558-L, 2018 WL 1368789, at *3 (N.D. Tex. Mar. 16, 2018) (holding that plaintiffs failed to state a claim for business disparagement because plaintiffs "failed to set forth specific disparaging statements allegedly made by [defendant] or that such statements resulted in special damages").

two defamation cases against him.  Most recently, he obtained the Rule 12(b)(6) dismissal of claims by the Rich family's former spokesperson, Brad Bauman.  *Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019).[6]  One of the challenged statements in that case was Butowsky's assertion on CNN that Bauman had been involved in "crafting a lie."  *Id.* at 13-14.  Butowsky successfully argued that such a statement was not defamatory in the context of the broader, back-and-forth public controversy over the truth of the Seth Rich conspiracy theory.  *Id.*  Similarly, in the Wheeler Lawsuit, Judge Daniels held that Butowsky's tweet that Wheeler has a "major battle with the truth" was not capable of defamatory meaning.  *Wheeler*, 322 F. Supp. 3d at 452, 457.  Having prevailed on these issues, Butowsky is judicially estopped from resting his own defamation case on an identical statement.  *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (court may apply judicial estoppel if "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently"); *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 721-22 (E.D. Tex. 2019) ("Judicial estoppel is therefore proper when a party attempts to pull a bait and switch on the courts—irrespective of whether that party's first or second inconsistent position is correct.").

In sum, Butowsky's claims against The Times are not based on any defamatory statement about him, but on the *NYT* Article's references to the Retracted Fox News Story as being "false and misleading" and "untrue."  Neither Texas nor New York law permits such a claim to go forward.  Butowsky may view such statements as false, unpleasant, or objectionable, but he cannot show that they subject him to hatred, contempt, or ridicule.  *Obey*, 2015 WL 417509, at *3 ("'A statement may be false, abusive, unpleasant or objectionable to the plaintiff and still not be

---

[6] Butowsky incorporates by reference the *Bauman* decision in his Third Amended Complaint.  TAC ¶ 77.

defamatory in light of the surrounding circumstances.'" (quoting *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App—Dallas 2003, no pet.)).  Neither does the *NYT* Article create any actionable "gist" or implication about Butowsky.  *See Tatum*, 554 S.W.3d at 635 (holding that the plaintiff "must point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990))).  In the absence of any defamatory statements about him, Butowsky cannot use a defamation claim against The Times to litigate the accuracy of the Retracted Fox News Story or the truth of the Seth Rich conspiracy theory.

## C.     The challenged statements are protected by the "fair report" privilege.

Even if Butowsky could show that the statements he challenges in the *NYT* Article are defamatory of him, those statements are protected under the "fair report" privilege.  Texas and New York both recognize this privilege and its broad contours.  *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. 2019), *reh'g denied* (Aug. 30 2019) ("[M]edia outlets enjoy a privilege that protects publications describing official proceedings of public concern." (citing Tex. Civ. Prac. & Rem. Code § 73.002(a)); *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) (privilege "prohibits civil actions '. . . for the publication of a fair and true report of any judicial proceeding'" (quoting N.Y. CIV. RIGHTS LAW § 74)).  "If the report of the proceeding is substantially true—'a fair, true, and impartial account'—the publication is privileged and not actionable."  *Hall*, 579 S.W.3d at 380 (citing *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714-15 (Tex. 2016)); *Tacopina*, 645 F. App'x at 8.  In determining whether the reporting accurately conveys the proceeding, courts in both states hold that the media must be given wide latitude.  *See Tex. Monthly, Inc. v. Transamerican Nat. Gas Corp.*, 7 S.W.3d 801, 806 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("The Texas Supreme Court's application of the substantial truth test to

a report of a judicial proceeding demonstrates that considerable latitude has been given in this context."); *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979) ("[N]ewspaper accounts of legislative or other official proceedings must be accorded some degree of liberality.").  Courts overlook minor inaccuracies, focusing on whether the report's description of the proceeding is substantially true.  *Hall*, 579 S.W.3d at 380-81; *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 749 (5th Cir. 2019) ("Although someone trained in the law, carefully parsing through the various articles, and government/official documents to which they were compared, might take issue with the literal truth of certain of the statements, . . . literal truth is *not* the applicable standard."); *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 595-96 (N.Y. App. Div. 2009).

The challenged statements in the *NYT* Article are well within the broad scope of the fair report privilege.  TEX. CIV. PRAC. & REM. CODE §§ 73.002(a), (b)(1)(A).  In reporting on the dismissal of the Parents' Lawsuit, the *NYT* Article accurately describes the Riches' factual allegations and the district court's holding that those alleged facts do not rise to the level of "extreme and outrageous conduct" sufficient to support a claim for intentional infliction of emotional distress.  Fuller Decl. Ex. A at 1.  As to the Wheeler Lawsuit, the article accurately reports that the court held that Wheeler had not shown that he had been misquoted in the Fox story and that Butowsky's Twitter statements were not actionable.  *Id.* at 2.

In addition to reporting the court's holdings, the *NYT* Article reported in its second paragraph that Judge Daniels had stated that the Retracted Fox News Story was false and misleading.  *Rich*, 322 F. Supp. 3d at 497.  This statement was drawn directly from Judge Daniels's memorandum order in the Parents' Lawsuit, in which he stated:

> [E]ven though Zimmerman's statements in the Zimmerman/Fox
> Article and to Plaintiffs about the FBI report were false, such "false

14

> statements or misrepresentations—even if intentionally made—do
> not rise to the level of extreme and outrageous conduct."

*Rich*, 322 F. Supp. 3d at 500 (quoting *Baraliu v. Vinya Capital, L.P.*, No. 07 Civ. 4626 (MHD),

2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009)).   A few paragraphs later, the *NYT* Article

paraphrased this statement by Judge Daniels, reporting that:

> Judge Daniels dismissed the accusations against them, as well,
> saying that even though the story they had put together was untrue,
> their behavior did not meet the legal standard of "extreme and
> outrageous conduct."

Fuller Decl. Ex. A at 2.

In discussing the Wheeler Lawsuit, the article reported that Judge Daniels had commented

on Wheeler's role in developing the Seth Rich conspiracy theory:

> Mr. Wheeler and his partners at Fox News had "embarked on a
> collective effort to support a sensational claim regarding Seth Rich's
> murder," Judge Daniels wrote. Mr. Wheeler, the judge concluded,
> "cannot now seek to avoid the consequences of his own complicity
> and coordinated assistance in perpetuating a politically motivated
> story not having any basis in fact."

*Id*.  Again, this reporting was drawn directly from Judge Daniels's memorandum order, in which

he stated:

* * *

> In this case, Plaintiff and Defendants embarked on a collective effort
> to support a sensational claim regarding Seth Rich's murder.
> Plaintiff cannot now seek to avoid the consequences of his own
> complicity and coordinated assistance in perpetuating a politically
> motivated story not having any basis in fact.

*Wheeler*, 322 F. Supp. 3d at 457.

Butowsky takes issue with The Times's reporting of these statements, arguing that Judge

Daniels's observations should be interpreted through the lens of Rule 12(b)(6)'s standard of

review, which assumes the truth of the plaintiff's factual allegations for the purpose of determining

whether those factual allegations state a claim.  TAC ¶ 94.  But nothing requires such an interpretation of Judge Daniels's *entire* opinion.  At various other points in his memorandum order, Judge Daniels cites the Riches' complaint when he sets forth their factual allegations, but he does not do so when he states that the Fox News story was "false," *Rich*, 322 F. Supp. 3d at 500, or when he states that Wheeler "cannot now seek to avoid the consequences of his own complicity and coordinated assistance in perpetuating a politically motivated story not having any basis in fact," *Wheeler*, 322 F. Supp. 3d at 457.  Indeed, the latter statement is separated from the Rule 12(b)(6) discussion in Judge Daniels's memorandum order by three asterisks, thus signaling a break from that discussion.[7]  *Wheeler*, 322 F. Supp. 3d at 457.

Moreover, Rule 12(b)(6) does not prohibit Judge Daniels from recognizing (as opposed to merely assuming) the truth of certain of the plaintiffs' allegations, or from offering his own comments or observations—particularly where he was dismissing the case anyway.  Here, stating that the Fox News story was "false and misleading" is an obvious proposition.  After all, Fox's quick retraction was an acknowledgement that the story was not accurate.  Moreover, it was entirely appropriate for Judge Daniels to make these observations.  As to the Parents' Lawsuit, his acknowledgment that the Retracted Fox News Story was untrue reads as an expression of empathy for a family whose son had been defamed, but for whom he believed the law provided no recourse.  As to the Wheeler Lawsuit, Judge Daniels's observation is a censure of a plaintiff whose conduct harmed the Riches, and who then sought to blame others for the consequences of his actions.

---

[7] Notably, the Second Circuit's decision in *Rich II* also includes statements about Seth Rich's murder and the debunked conspiracy theory surrounding it that are not expressly made through the lens of Rule 12(b)(6)'s standard of review.  *Rich II*, 939 F.3d at 117 ("Soon after Seth's murder, uncorroborated theories—contradicted by official U.S. intelligence reports—surfaced on the web. Seth had leaked thousands of DNC emails to WikiLeaks, the theories asserted, and that is why he had been assassinated.").  Other statements, including the opinion's "Factual Background" section, are expressly attributed to allegations in the plaintiffs' complaint.  *Id.* at 117 n.2.

Even if The Times's reporting did not perfectly capture the legal context in which these observations were made, the *NYT* Article is well within the broad protection of the fair report privilege.  Texas courts have repeatedly rejected defamation claims based on inaccuracies far more serious than the alleged errors here.  *See*, *e.g.*, *AOL, Inc. v. Malouf*, No. 05-13-01637-CV, 2015 WL 1535669, at *5 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (dismissing defamation claim based on reporting that the plaintiff had been charged with criminal fraud when, in fact, the charges were civil); *Basic Capital Mgmt., Inc. v. Dow Jones & Co.*, 96 S.W.3d 475, 481-82 (Tex. App.—Austin 2002, no pet.) (report that a company had been charged with "money laundering" was substantially true even though only two of its employees had been charged individually with fraud and conspiracy, "money laundering" was not among the charges, and the company had not been charged with anything); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69-70 (Tex. App.—Waco 1990, no writ) ("Although it may greatly exaggerate the libel-plaintiff's misconduct alleged in a judicial proceeding, an article is substantially true if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration.").  New York courts are in accord.  *Alf v. Buffalo News, Inc.*, 995 N.E.2d 168, 169 (N.Y. 2013) ("When determining whether an article constituted a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." (citation omitted); *Cholowsky*, 887 N.Y.S.2d at 595-96 (affirming dismissal of claim under fair report privilege despite article's overstatement of plaintiff's admitted wrongdoing).

In sum, Butowsky's quibbles over how the *NYT* Article covered Judge Daniels's decisions do not bring The Times's reporting outside the broad scope of the fair report privilege.  As a matter of law, Butowsky cannot overcome the privilege.  Under Texas law, a plaintiff can defeat the fair report privilege only by a showing of actual malice, and only after the issue reported on has ceased

17

to be a matter of public concern.   TEX. CIV. PRAC. & REM. CODE § 73.002(a).   The Seth Rich conspiracy theory (and, of course, Judge Daniels's rulings) were very much still a matter of public concern.   And, as demonstrated below, however, Butowsky fails to plead any facts that would plausibly support a finding of actual malice.   *See infra* at pp. 24-29.   Finally, under New York law, the privilege is absolute, so no showing of malice could suffice to pierce it.   *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013).

**D.      Butowsky fails to satisfy his burden as a public figure to plead actual malice.**

Even if the statements Butowsky challenges were actionable and not privileged, his defamation and disparagement claims against The Times must be dismissed because Butowsky fails to satisfy his burden to plead actual malice.   As a result of his prominent role in the Seth Rich conspiracy theory and in the media coverage of it, Butowsky is a limited-purpose public figure. As such, he must plausibly plead actual malice to avoid dismissal.   Courts regularly dismiss defamation claims by limited-purpose public figures at the Rule 12(b)(6) stage, particularly in cases involving hot-button political controversies.   *See, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 143-44 (D.D.C. 2017) (dismissing defamation claim by Russian businessman challenging reporting over alleged role regarding President Trump's campaign); *see also Walker*, 938 F.3d at 744 (affirming dismissal of defamation claim against media defendants allegedly involved in widespread conspiracy against minority individuals in Beaumont, Texas); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, No. 18-3254, 2020 WL 1056854, at *1-4 (8th Cir. Mar. 5, 2020) (affirming dismissal of defamation claim by plaintiff car dealership, a limited-purpose public figure, that media allegedly falsely reported criminal charges arose from dealership overcharging police departments for vehicles).   This Court should do the same here.   Butowsky does not come close to alleging facts to support a finding that The Times knew its reporting was false or that it acted with reckless disregard of the truth.

18

### a.      Butowsky is a limited-purpose public figure.

A limited-purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  Under Fifth Circuit precedent, this Court applies a three-part test in determining limited-purpose public figure status: (1) "[t]he controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must participate in the controversy in more than a trivial role;" and (3) the alleged defamation must be related to the plaintiff's participation in the controversy.  *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987) (citing *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987)).

In this case, the allegations in Butowsky's Third Amended Complaint confirm that he is a limited-purpose public figure—a status that has been cemented by his extensive public appearances and litigation since the initial NPR reporting at issue in *Butowsky v. Folkenflik*, No. 18-CV-442.  It cannot be disputed that the much-publicized and widely-discussed controversy surrounding the Seth Rich conspiracy theory is a "public controversy" under *Trotter*.  While Butowsky does not allege that he was personally involved in the law enforcement investigation over Seth's murder, he does claim that he was integral in promoting the conspiracy theory designed to undermine the public confidence in that investigation.

According to his Third Amended Complaint, Butowsky was contacted in the Fall of 2016—several months after Seth's murder—by a Fox News analyst who had met with Wikileaks' Julian Assange.  *Id.* at ¶¶ 34-35.  Assange allegedly told the Fox News analyst that Seth and his brother, Aaron, were responsible for leaking the DNC emails to Wikileaks.  *Id.* at ¶ 34.  The Fox News analyst did not want to have a public role in this controversy, so she asked Butowsky to

contact the Rich family.  *Id.* at ¶ 35.  Butowsky did not take any immediate action.  *Id.*  Over the next two months, however, "he grew increasingly frustrated" with how the public controversy surrounding the Russian hacking of the DNC was developing, *id.*, and he saw the Seth Rich conspiracy theory as a compelling counternarrative to the Russian hacking story, *id.* at ¶ 5.  On December 16, 2016, Butowsky sent a text message urging the Fox analyst to take a more public role in the controversy.  *Id.* at ¶ 35.  She again declined to thrust herself into the public controversy, but advised Butowsky that she had informed Bill Shine, then the co-president of Fox News, about her conversation with Assange.  *Id.*

The next day, knowing that this story had been shared at the highest echelons of Fox News and fully aware of its political ramifications, Butowsky dove in.  *Id.* at ¶ 36.  He "contacted Joel and Mary Rich, the parents of Seth, and he relayed the information" regarding Assange's allegations that he had received the DNC emails from Seth.  *Id.*  Butowsky arranged to have his fellow Fox News contributor, Rod Wheeler, hired by the Riches—all on Butowsky's dime.  *Id.* at ¶ 38.  Butowsky then worked with Wheeler and Fox producer Zimmerman to prepare a report promoting the conspiracy.  *Id.* at ¶¶ 38-40.  Even after the Fox News report was retracted, Butowsky continued to promote the conspiracy and to attack its critics.  *Id.* at ¶ 44.[8]

In light of these allegations, Butowsky's role in promoting the Seth Rich conspiracy theory and developing the Fox News report on it cannot be characterized as "trivial" or "tangential." According to Butowsky's own version of the story, he was an integral player in that controversy. Indeed, Butowsky's integral role was recognized in the *Bauman* case, where the court found that "much of [the controversy surrounding Seth Rich's murder was] created by Butowsky

---

[8]  Butowsky's attacks on his critics are also referenced in the *Wheeler* and *Bauman* decisions.  *Wheeler*, 322 F. Supp. 3d at 452 (discussing June 2017 Twitter statements by Butowsky); *Bauman*, 377 F. Supp. 3d at 13-14 (noting "[Bauman] and Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray" and citing as examples Butowsky's statements to CNN and to the Daily Intelligencer).

himself . . . ." *Bauman,* 377 F. Supp. 3d at 13; *cf. Brueggemeyer v. Am. Broadcasting Cos.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (businessman was limited-purpose public figure because he "'voluntarily engaged in a course of conduct that was bound to invite attention and comment'" (quoting *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978)); *Nelson Auto Center*, 2020 WL 1056854, at *4 (auto dealership was limited-purpose public figure in determining whether media defamed dealership by claiming criminal charges arose out of investigation over whether dealership had overcharged police departments for vehicles). As noted above, Butowsky incorporates the *Bauman* decision by reference into his Third Amended Complaint. TAC ¶ 77. Thus, accepting Butowsky's allegations as true, he is a limited-purpose public figure in the controversy surrounding the Seth Rich conspiracy theory and the retracted Fox News report on that conspiracy theory.

This Court's decision in *Folkenflik* does not compel a different conclusion. In that decision, the Court noted that the defendant's own challenged reporting cannot be the publicity that transforms the plaintiff into a public figure. *Butowsky v. Folkenflik*, No. 18-CV-442, 2019 WL 3712026, at *18 (E.D. Tex. Aug. 7, 2019). Thus, the issue addressed by the Court in *Folkenflik* was whether Butowsky was a limited-purpose public figure at the time of the initial NPR report, which was published in the early morning hours of August 1, 2017. Dkt. 1 ¶ 28. This was more than one year before the *NYT* Article was published. As such, even if Butowsky was a private figure at the time of the publication of the first NPR report, that does not mean that he was *still* a private figure one year later, when the *NYT* Article was published.

Indeed, in the year between publication of the first NPR report and the publication of the *NYT* Article, Butowsky participated in high-profile media coverage of the controversy and in high-

profile litigation over that controversy.[9]  For example, the day after the initial NPR report was published, Butowsky appeared on CNN's primetime program, *CNN Tonight*, where he was interviewed on-air by anchor Chris Cuomo.[10]  During that interview, Butowsky promoted a website referenced in his Third Amended Complaint, DebunkingRodWheelersClaims.net, which features audio recordings, texts, and other materials Butowsky believes support the Seth Rich conspiracy theory.[11]  TAC ¶ 46.  Butowsky also promoted his conspiracy theory through far-right media outlets, giving an extensive interview to The Gateway Pundit, which was published on March 17, 2018,[12] and sitting for a June 26, 2018 interview with Newsmax.[13]  As the Dallas Court of Appeals recognized in *Mohamed v. Center for Security Policy*, media appearances like these

---

[9]  By his own admission, Butowsky has long had easy access to media attention, even outside the Seth Rich murder controversy.  *See Gertz*, 418 U.S. at 344 ("[P]ublic figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.").  Butowsky's website claims he is "an internationally recognized expert in the investment wealth management industry," who is "regularly heard on radio shows around the country" and who has made "hundreds of appearances on national television" including appearances on CNN, ABC, CBS, NBC, CNBC, Fox Business News, FOX News Channel, Bloomberg TV, and China TV.  *See* Fuller Decl. Ex. E.

[10]  The video of the August 2, 2017 broadcast segment appears on CNN's website, https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn.cnn (last visited Aug. 21, 2019); Fuller Decl. Ex. F.  The 22-minute, full interview is available at https://www.cnn.com/videos/cnnmoney/2017/08/02/butowsky-fox-news-seth-rich-cuomo-intv-ctn-full-interview.cnn (last visited June 28, 2019); *see* Fuller Decl. Ex. F.  The Court may take judicial notice of the fact of these publicly-available media publications in resolving the public-figure issue at this stage in the case.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (holding that it is proper in resolving a Rule 12(b)(6) motion to take judicial notice of various publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"); FED. R. EVID. 201.

[11]  Butowsky alleges that this website was "launched in November 2017[.]"  TAC ¶ 46.

[12]  Cassandra Fairbanks, *Ed Butowsky Sits Down With Gateway Pundit for First Interview After Being Sued by Family in Seth Rich Murder Mystery*, THEGATEWAYPUNDIT.COM, (Mar. 19, 2018), https://www.thegatewaypundit.com/2018/03/ed-butowsky-sits-first-interview-gateway-pundit-sued-family-seth-rich-murder-mystery/ (last visited  Aug. 14, 2019).  *See* Fuller Decl. Ex. G.

[13]  Newsmax TV, *Ed Butowsky discusses the murder of Seth Rich*, YouTube (Jun. 26, 2018), https://www.youtube.com/watch?v=c_g59wv42xA (last visited Aug. 21, 2019).

transform a private figure into a limited-purpose public figure, as they reflect a choice by the plaintiff "to engage in activities that involve[] increased public exposure and media scrutiny[.]" 554 S.W.3d 767, 775 (Tex. App.—Dallas, 2018, pet. denied); *see also Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993) (holding that plaintiff was limited-purpose public figure under Fifth Circuit's *Trotter* test because he "actively participated in the controversy by appearing on television and giving interviews").

In addition to these media appearances, Butowsky has voluntarily participated in the public controversy over the Seth Rich conspiracy theory by filing high-profile lawsuits, including in this Court. On April 23, 2018, Butowsky sued the Charles Schwab Corporation for allegedly making defamatory statements about him, as well as for Schwab's decision to terminate its relationship with him—all of which allegedly took place after the initial NPR report. *See Chapwood Capital Investment Mgmt., LLC v. Charles Schwab*, No. 4:18-cv-00287-RAS (E.D. Tex. Apr. 23, 2018).[14] The complaint against Schwab recites in detail the controversy over Butowsky's role in the retracted Fox News story, the allegations against him in the Wheeler Lawsuit, and NPR's reporting on him. *Id.* at ¶¶ 15-23. Then, on June 21, 2018, Butowsky sued NPR, along with several of its reporters, editors, and management, over NPR's reporting on him. *Folkenflik*, No. 4:18-cv-00442-ALM-CMC (E.D. Tex. June 21, 2018). These lawsuits, which seek more than $100 million, further fanned the flames of the controversy surrounding Butowsky's role in the Seth Rich conspiracy. Moreover, as *Bauman*, *Wheeler*, and *Rich* demonstrate, Butowsky was sued in several high-profile lawsuits over his role in the Seth Rich conspiracy theory—again, all after NPR's first report.

---

[14] *Chapwood* was reassigned to this Court on August 6, 2018. No. 4:18-cv-00548-ALM-KPJ. Butowsky has conceded that his dispute with Schwab was subject to arbitration, Dkt. 14 at 1, but he nevertheless chose to file his suit on the public docket. *Chapwood* is currently pending arbitration. *Id.* (Dkt. 24).

Thus, based on the allegations in the Third Amended Complaint and materials the Court may consider at this stage, Butowsky was a limited-purpose public figure in connection with the controversy surrounding the Seth Rich conspiracy theory prior to the publication of the *NYT* Article.  Accordingly, because the statements he challenges relate to this controversy, Butowsky must properly plead actual malice to avoid dismissal of his claims against The Times.

### b.   Butowsky fails to plausibly allege actual malice.

Butowsky's factual allegations fall spectacularly short of satisfying his pleading burden on the issue of actual malice.  The First Amendment requires a clear and convincing showing by the plaintiff that the defendant knew its statement was false or acted with reckless disregard of its truth.  *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 560 (5th Cir. 1997).  A publisher acts with reckless disregard when it "entertain[s] serious doubts as to the truth of [the] publication" or has a "high degree of awareness of . . . probable falsity."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted).  This is a "'daunting'" standard, which is rarely met.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) ("Few public figures have been able clearly and convincingly to prove that the scurrilous things said about them were published by someone with 'serious doubts as to the truth of his publication.'" (quoting *St. Amant*, 390 U.S. at 731)).

The standard is no less "daunting" at the Rule 12(b)(6) stage, where a public-figure plaintiff must allege *facts* that would plausibly support a finding of actual malice.  *See Michel*, 816 F.3d at 701-02 (dismissing claim under Rule 12(b)(6) based on plaintiff's failure to plead facts plausibly supporting a finding of actual malice); *Biro v. Conde Nast*, 807 F.3d 541, 544-46 (2d Cir. 2015) (same); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same). General or conclusory allegations are insufficient, as are allegations that offer no more than "labels and conclusions" or merely parrot the legal standard.  *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84

24

(D.D.C. 2019) (citing *Iqbal*, 556 U.S. at 678).  Nevertheless, even after three tries, Butowsky's complaint fails to allege any facts that would support a finding that The Times published the *NYT* Article with actual malice.

As demonstrated above, the premise of Butowsky's claims against The Times is that the *NYT* Article inaccurately characterized two of Judge Daniels's statements as asserting facts when, according to Butowsky, they were merely describing allegations by the plaintiffs.  In order for Butowsky to satisfy his actual malice burden, he must plead and prove not only that Feuer got it wrong, but that Feuer *knew* he was getting it wrong and that he intended to mislead readers on this point.  There is no textual basis in Judge Daniels's memorandum orders, or alleged factual basis in Butowsky's pleading, for such a finding.  As noted above, Judge Daniels did not cite the plaintiffs' complaints for his statements that the Retracted Fox News Story was false, nor did he attribute those statements to the plaintiffs.  *Rich*, 322 F. Supp. 3d at 500; *Wheeler*, 322 F. Supp. 3d at 457.  Rather, the most reasonable interpretation of those statements is that Judge Daniels was simply acknowledging the consensus fact that the Retracted Fox News Story and the conspiracy theory it posited were "untrue."

Even if Judge Daniels's statements were susceptible of the interpretation Butowsky proposes, it is well established that such ambiguity cannot support a finding of actual malice.  *See Time, Inc. v. Pape*, 401 U.S. 279, 291-92 (1971).  In *Pape*, the plaintiff challenged *Time* magazine's coverage of a government commission's report on civil rights violations.  *Id.* at 282. The magazine erroneously reported as findings certain statements that were actually allegations by third parties.  *Id.*  One of the subjects of those allegations sued, arguing that the mischaracterization of the report was sufficient to support a finding of malice.  The Supreme Court disagreed, noting that the misinterpretation of a government document is not reckless disregard, especially where

25

the report contains ambiguity.  *Id.* at 292 ("[I]f 'the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive,' misstatements of this kind must have the protection of the First and Fourteenth Amendments." (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)).  Additionally, in *Nelson Auto Center*, the Eighth Circuit held that the plaintiff failed to establish actual malice over reporting that a "state vendor is now facing criminal swindling charges," when it was ambiguous whether "vendor" referred to the plaintiff car dealership or the dealership's manager (who was actually the subject of criminal charges).  2020 WL 1056854, at *5.  The court recognized that the "[f]ailure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth."  *Id.*

The same analysis applies with equal force to Butowsky's claim based on The Times's coverage of Judge Daniels's statements in the Parents' Lawsuit and the Wheeler Lawsuit.  Even if Butowsky could show that Feuer mistook Judge Daniels's recitation of factual allegations by the plaintiffs for his own independent observations, such an error is precisely the type of misinterpretation that *Pape* and *Nelson Auto Center* hold to be constitutionally protected.  *Pape*, 401 U.S. at 290; *Nelson Auto Center*, 2020 WL 1056854, at *5; *see also Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 856 (Tex. 2005) (no actual malice where reporter allegedly misinterpreted statement) (citation omitted).

Butowsky's inability to plead actual malice is highlighted by the conclusory nature of his allegations on this issue.  Without pleading any facts to support it, Butowsky alleges that The Times "deliberately misrepresented Judge Daniels's order."  TAC ¶ 97.  This allegation is nothing more than a conclusory assertion of knowing falsity, which courts have consistently held to be insufficient to avoid dismissal.  For example, in a recent decision dismissing the defamation claims of a controversial conservative public figure against The New York Times Company and one of

26

its columnists, the United States District Court for the District of Columbia held that the following

allegations came "nowhere close" to sufficiently pleading actual malice:

- "the Article's 'factual assertions [were] carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community . . . as well as with Republican establishment and donors'";

- "Defendants 'made and published false and defamatory statements . . . with malice'"; and

- "'Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity'".

*Arpaio*, 404 F. Supp. 3d at 84.  Butowsky's allegations that Feuer acted deliberately and that he

knew his article misrepresented Judge Daniels's order are similarly conclusory and therefore cannot

save Butowsky's claims from dismissal.  In *Walker*, the Fifth Circuit also recently rejected

similarly "scant assertions" in a three-times-amended complaint as insufficient to plead actual

malice, even where the plaintiff alleged that he asked the defendants to cease making the allegedly

defamatory statements.  938 F.3d at 745.  *See also Schatz*, 669 F.3d at 56 ("[Plaintiff's] complaint

used actual-malice buzzwords, contending that the [defendant] had 'knowledge' that its statements

were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they

were false.  But these are merely legal conclusions, which must be backed by well-pled facts.").

Moreover, Butowsky's assertion that Feuer deliberately misrepresented Judge Daniels's

orders because "[l]ike the *New York Times* itself, Mr. Feuer is a partisan leftist who detests

President Trump, and he knowingly smeared Mr. Butowsky because of his perceived affiliation

with President Trump" is also woefully inadequate.  TAC ¶ 97.  It is well established that even

credible allegations of ill will or bias are insufficient to plead actual malice.  *See, e.g.*, *Arpaio v.*

*Zucker*, 414 F. Supp. 3d 84, 87 (D.D.C. 2019) ("The Court will not pry open the gates of discovery

just because [the plaintiff] believes the erroneous communications were motivated by differences

27

in political opinions."); *Peter Scalamandre & Sons*, 113 F.3d at 561 (allegation that defendant disliked plaintiff and had profit motive did not support finding of actual malice); *see also New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff."); *Huckabee*, 19 S.W.3d at 425 ("[E]vidence of pressure to produce stories from a particular point of view, even when they are hard-hitting or sensationalistic, is no evidence of actual malice.").  In addition, Butowsky does not plead any actual facts to support his conclusory allegation that The Times was motivated by a politically-based desire to discredit Butowsky because he is a supporter of President Trump. *Michel*, 816 F.3d at 706 (conclusory allegation that newspaper was engaged in a campaign against plaintiff insufficient to satisfy actual malice pleading burden).

Again, the District of Columbia's recent decision in *Arpaio* is instructive.  In that case, another prominent supporter of President Trump, "Sheriff Joe" Arpaio, attempted to satisfy his actual malice burden by alleging political bias by The New York Times and its reporter, arguing that "'The New York Times' political partisanship and liberal bias know no reasonable bounds[.]'" 404 F. Supp. 3d at 85.  But the court noted that Arpaio "offers no facts in his Complaint to support this proposition."  *Id.*  It also noted that the challenged *New York Times* articles "do not demonstrate the type of animus that Plaintiff claims."  *Id.*  Thus, Arpaio's "unadorned claim of animus and bias cannot save his deficient pleading."  *Id.*  For the same reasons, Butowsky's "unadorned" accusation of bias against The Times is insufficient to satisfy his actual malice pleading burden.

Finally, Butowsky attempts to rely on The Times's decision not to issue a retraction after the publication of the *NYT* Article as proof of actual malice.  TAC ¶ 97.  Under Fifth Circuit precedent, however, the focus of a court's actual malice inquiry is on the defendant's state of mind

28

at the time of publication. *Danawala v. Hous. Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993).  Accordingly, post-publication developments, such as a publisher's decision not to retract a disputed report, are not relevant.  *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("[A]ctual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false." (citing *New York Times*, 376 U.S. at 286)); *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("[I]naccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication."); *Cantu*, 168 S.W.3d at 858 ("'Evidence concerning events after an article has been printed and distributed, has little, if any, bearing on that issue.'" (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174 (Tex. 2003)).

In sum, Butowsky's Third Amended Complaint contains only conclusory allegations that The Times acted with actual malice and fails to allege any facts that would support such a finding. As a result, his claims must be dismissed.

**E.    Butowsky's business disparagement claim fails for the same reasons as his defamation claim.**

The same grounds for dismissal of Butowsky's defamation claim apply with equal force to his claim for business disparagement.  To plead a valid claim for business disparagement, a plaintiff must allege facts to support the following elements:  "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (citation omitted); *see also Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 683 (Tex. App.—El Paso 2001, no pet.) ("The same protections which the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same defamatory publication.").  Thus,

for the reasons discussed above, Butowsky's failure to plead a valid defamation claim also requires that his business disparagement claim be dismissed.

## CONCLUSION

For the reasons set forth in this motion, and subject to Defendant Alan Feuer's motion to dismiss for lack of personal jurisdiction, Defendants The New York Times Company, Inc. and Alan Feuer respectfully request that the Court grant this motion and dismiss Plaintiff Edward Butowsky's claims.  Moreover, as this Court has acknowledged in stating that Butowsky will not be given further leave to amend, because Butowsky's claims fail as a matter of law, and because Butowsky has already amended his complaint twice in response to The Times's motion to dismiss, any request for leave to amend should be denied.   The Court should enter judgment in Feuer's and The New York Times Company, Inc.'s favor, along with all such other relief to which they are justly entitled.

Respectfully submitted,

*/s/ Marc A. Fuller*
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

***Attorneys for Defendants***
***The New York Times Company & Alan Feuer***

## CERTIFICATE OF SERVICE

This is to certify that this document was duly served on all counsel of record through the Court's electronic filing system on April 1, 2020.

*/s/ Marc A. Fuller*
Marc A. Fuller