## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**Edward Butowsky,**

     Plaintiff,

**v.**

    **Case No. 4:19-cv-00180-ALM-kpj**

**Michael Gottlieb, et al.,**

     Defendants

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION (hereinafter "Motion") (Doc. No. 221):

### Factual Background

On April 19, 2018 and October 1, 2018, the Vox Defendants published articles that portrayed Mr. Butowsky as a dishonest manipulator who took advantage of a grieving family for the purpose of advancing a false political narrative. *See* Third Amended Complaint (hereinafter "TAC")(Doc. No. 207) 42-46, ¶¶87-93. The particulars of the defamatory publications – and the reasons they are false – are detailed in Mr. Butowsky's complaint. *Id*. The allegations in the TAC govern for purposes of the Vox Defendants' Motion. *See Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir.

2019) and *Windfield v. Groen Div., Dover Corp*., 890 F.2d 764, 765 (5th Cir. 1989)(pleadings accepted as true in 12(b)(2) challenge to jurisdiction). The extensive counter-allegations in the Motion, on the other hand, are irrelevant. *Id*.

## Argument

The Vox Defendants err by citing various lower-court opinions that precede – and contradict – the U.S. Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).  They further confuse things by citing inapposite cases out of context, *e.g., Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013).   In *Herman*, there were no media defendants, and the allegedly defamatory statements were in no way connected to the forum state. In contrast, Defendant Coaston wrote about events in Texas and her stories were published by a company with a significant presence in Texas. Given the Vox Defendants' tendency to mix apples and oranges, the Plaintiff encourages the Court to review the full context of each case cited by the Vox Defendants.

## 1.   The Court has specific jurisdiction over both Vox Defendants.

The Vox Defendants rely heavily on various Fifth Circuit cases interpreting *Calder v. Jones*, 465 U.S. 783 (1984), but all of those cases predate *Walden*, wherein the Supreme Court itself clarified exactly what it meant in *Calder*:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. **The strength of that connection was largely a function of the nature of the libel tort**. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. *See* Restatement (Second) of Torts § 577, Comment b (1976); *see also ibid*. ("[R]eputation is the estimation in which one's character is held by his neighbors or associates"). Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication

in California that was read by a large number of California citizens. **Indeed, because publication to third persons is a necessary element of libel,** *see id.*, § **558, the defendants' intentional tort actually occurred in [C]alifornia**. *[K]eeton*, 465 U.S., at 777, 104 S.ct. 1473 ("**the tort of libel is generally held to occur <u>wherever</u> the offending material is circulated**"). In this way, the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 571 U.S. at 287–88, 134 S. Ct. at 1123–24 (emphasis added). The "crux" of *Calder*, and the crux of the Court's basis for jurisdiction over the Vox Defendants, is the fact that media defendants directed an intentional tort into another state, where the plaintiff lived and worked. In *Keeton v. Hustler Magazine, Inc.*, a magazine was subject to personal jurisdiction because it was a "national publication aimed at a nationwide audience." 465 U.S. 770, 781 (1984). Thus, the Court held, "[t]here is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Id*. The same is true here.

Since *Walden*, the Fifth Circuit has not addressed the uniqueness of the tort of defamation for purposes of personal jurisdiction, but other circuits have.

[The *Walden* Court] clarified that its prior holding in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), was "largely a function of the nature of the libel tort" that was involved, because the "crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Walden*, 571 U.S. at 287, 134 S.Ct. 1115. In *Calder*, an actress filed a libel suit in a California state court against a reporter and an editor, both of whom worked for the National Enquirer in Florida, based on an article they had written about her. The Supreme Court held that the California court could exercise jurisdiction over the defendants consistent with due process because their "intentional, and allegedly tortious, actions were expressly aimed at California." *Calder*, 465 U.S. at 789, 104 S.Ct. 1482.

*Curry v. Revolution Labs., LLC*, 949 F.3d 385, 397 (7th Cir. 2020). The D.C. Circuit

likewise concluded that *Walden* clarified the Supreme Court's holding in *Calder*.

> In glossing *Calder*'s "effects test," the *Walden* Court stressed defendants'
> intentional contacts with the forum. The "crux of *Calder* was that the reputation-
> based 'effects' of the alleged libel connected the defendants to California, not just
> to the plaintiff." *Walden*, 571 U.S. at 287, 134 S.Ct. 1115. "[B]ecause publication
> to third persons is a necessary element of libel ... the defendants' intentional tort
> actually occurred in California." *Id*. at 288, 134 S.Ct. 1115. Thus the "effects" of
> defendants' libelous article—reputational harms arising in California—"connected
> the defendants' conduct to California, not just to a plaintiff who lived there." *Id*.

*Estate of Klieman by & through Kesner v. Palestinian Auth*., 923 F.3d 1115, 1125 (D.C.

Cir. 2019); *see also Power Investments*, *LLC v. SL EC, LLC*, 927 F.3d 914, 918 (6th Cir.

2019)(citing *Walden* and noting the uniqueness of the tort of defamation).

Even if *Walden* does not modify Fifth Circuit law, the cases cited by the Vox

Defendants are still readily distinguished from this case.  In *Fielding v. Hubert Burda

Media, Inc.*, the plaintiffs sued a German publication in a Texas court for statements

published in Germany regarding events in Germany. 415 F.3d 419 (5th Cir. 2005). In

*Clemens v. McNamee*, the plaintiff sued a New York resident in Texas for statements

made in New York regarding events that happened in New York.  615 F.3d 374 (5th Cir.

2010).  In *Herman v. Cataphora, Inc.*, 730 F.3d 460 (5th Cir. 2013), the plaintiff sued a

California company in Texas for statements that were made to a California reporter about

a lawsuit in California. In an attempt to shoehorn this case into the same framework, the

Vox Defendants rewrite the pleadings by alleging that they are being sued for statements

that they made regarding lawsuits in D.C. and New York. That, however, is provably

false. None of the defamatory statements found in Paragraphs 87-93 of the TAC are

- 4 -

about or attributed to a lawsuit. Instead, the Vox Defendants accused the Plaintiff of participating in various conspiracies, *e.g.*, with *Fox News*, TAC 42, ¶87, and that begs a question: Where would the Plaintiff have been conniving and conspiring if not in Texas, where he lived and worked at all times relevant? *See* TAC 4 and 45, ¶¶9-10 and 93. Whether she wants to admit it or not, Defendant Coaston wrote a story about things that the Plaintiff purportedly did in Texas.

The Vox Defendants repeatedly cite *Wakefield v. British Med. Journal Publishing Group, Ltd.*, 449 S.W.3d 172, 188 (Tex. App. – Austin, no pet.), a decision that relies almost exclusively on the same Fifth Circuit cases that the Vox Defendants rely on, *i.e.*, cases that precede the Supreme Court's decision in *Walden*. And although *Wakefield* was issued seven months after *Walden*, it did not purport to resolve whether *Walden* modified the Fifth Circuit cases relied on in the *Wakefield* opinion. Furthermore, the plaintiff in *Wakefield* sued a British medical journal that had only a nominal presence in Texas. As set forth below, *Vox* has a much larger circulation in Texas.

The intermediate court decision in *Wakefield* must be contrasted with *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016), a subsequent Texas Supreme Court decision which summarized the state of the law both before and after *Walden*. In *TV Azteca*, a Mexican broadcasting company and one of its anchors acknowledged that allegedly defamatory statements were broadcast into Texas, but they argued that the plaintiff must satisfy the "subject-and-sources-test" in order to prove minimum jurisdictional contacts. The plaintiff lived in Texas at the time she filed suit, but the story concerned a criminal case against her when she previously lived in Mexico, ergo the defendants argued that the

focus of the story was in Mexico. The *TV Azteca* defendants, like the Vox Defendants, argued that jurisdiction was lacking because the story was not focused on Texas.

> Citing the Fifth Circuit's decision in *Clemens*, [Plaintiff] Trevino asserts that the subject-and-sources test is only one method of proving that a defamation defendant targeted the forum state, and it need not be met when evidence otherwise establishes that the defendant's statement was "aimed at or directed to" the state. *See Clemens*, 615 F.3d at 380. Petitioners disagree, arguing that "whether the forum state is the focal point of the story is a crucial criterion in determining whether the story is directed at the forum state." We agree with Trevino.

> When the Fifth Circuit first articulated the subject-and-sources test in *Revell*, it emphasized "[a]t the outset" that *Calder*'s " 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." 317 F.3d at 473 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001)). Adhering to *Revell* in *Fielding*, the court explained that a plaintiff can establish specific jurisdiction over a defamation defendant by showing either "(1) a publication with adequate circulation in the state" under *Keeton*, or "(2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there" under *Calder*. *Fielding*, 415 F.3d at 425. And then in *Clemens*, the court read *Calder* to require the subject-and-sources test, 615 F.3d at 380, but it did not hold that *Calder* established the only test for determining personal jurisdiction over a defamation defendant. *See id.* at 384 (Haynes, J., dissenting) ("[T]he *Calder* effects test is simply an additional, but not exclusive, vehicle for establishing personal jurisdiction over a nonresident defendant who may never have been to the forum state.").

> Even if the Fifth Circuit recognized the subject-and-sources test as the exclusive method for establishing personal jurisdiction over a defamation defendant, we would disagree. The test determines whether the forum state was "the focal point ... of the story," which in turn determines whether the defendant purposefully availed itself of the benefits of conducting activities in the state sufficient to establish minimum contacts. *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482. In *Keeton*, the plaintiff had no relevant contacts with New Hampshire, and the offending articles did not address events related to or drawn from sources within that state. 465 U.S. at 772–73, 104 S.Ct. 1473. Nevertheless, the Court found minimum contacts because the defendant had "continuously and deliberately exploited the New Hampshire market." *Id.* at 781, 104 S.Ct. 1473. We must likewise determine whether Petitioners had "an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi*, 480

U.S. at 112, 107 S.Ct. 1026).

*TV Azteca*, 490 S.W.3d at 48-49.  It is worth noting that the Texas Supreme Court found specific jurisdiction over both the broadcaster and the anchor. *Id*. at 56-57.

In this case, the Vox Defendants have conceded considerably more than did the defendant broadcasters in *TV Azteca*. The latter argued that they were not deliberately taking advantage of the Texas market, whereas Defendant Vox Media, Inc. acknowledges that it operates an office in Austin, Texas and employs 19 people in Texas.  Unlike the foreign publications in *Fielding* and *Wakefield*, *Vox* is a U.S. publication targeted to a national audience. The Vox Defendants argue that a relatively small portion of their readership is in Texas, but the same was true in *Keeton*, where only a small portion of *Hustler* magazine's circulation was in New Hampshire. While it may be true that only 6 percent of the "clicks" on Defendant Coaston's stories were from Texas residents, *Vox*'s readership is spread across 49 other states, just like the circulation of *Hustler* magazine in *Keeton*. According to census estimates available online, *see, e.g.*, https://www.census.gov/quickfacts/TX and https://www.census.gov/quickfacts/fact/table/US/PST045219, the population of Texas was roughly 8.75 percent of the overall U.S. population as of 2018, thus the "click rate" is not far removed from what one would expect for a national publication operating Texas. When the Texas office and employees are added in, *Vox* "continuously and deliberately exploited the [Texas] market, [therefore] it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *TV Azteca*, 490 S.W.3d at 40, quoting *Hustler*, 465 U.S. at 781.

## 2.  Defendant Coaston knew that she was writing about a Texas resident.

Defendant Coaston argues that she was unaware that Mr. Butowsky lived and worked in Texas, therefore she could not have known that she was targeting him in Texas. That argument fails for several reasons.  For starters, the TAC plainly alleges that Defendant Coaston knew Mr. Butowsky was a Texas resident, and it explains how she knew. TAC 7 and 45, ¶¶22 and 93. This is borne out by the very evidence that the Vox Defendants submitted to the Court in support of their motion to dismiss.  The Vox Defendants argue elsewhere that a hyperlink is the equivalent of an attribution, *see* DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER RULE 12(B)(6) (Doc. No. 223) 115, and the documents hyperlinked in Defendant Coaston's article clearly reflect the fact that Mr. Butowsky lives and works in Texas. *Id.*, EXHIBITS A2 AND A6 (DOC. NO. 223-2). In an attempt to sidestep this issue, Defendant Coaston pleads incompetence, *i.e.*, that she did not necessarily read the complaint that she was purportedly writing about, even though she hyperlinked that complaint to her article. Motion 10.  Defendant Coaston may well be incompetent, but she is asking this Court to decide *as a matter of law* that she did not read the complaint that she attached to her own article. Clearly, there is a factual dispute about what Defendant Coaston knew and when she knew it, and that dispute cannot be resolve in her favor at this stage. *See InterMoor Inc. v. US Wind, Inc*., 4:19-CV-3823, 2020 WL 374857, at *3 (S.D. Tex. Jan. 23, 2020) ("On a Rule 12(b)(2) motion to dismiss, Plaintiff need only show a prima facie case of the predicate facts; all disputed facts should be construed in favor of Plaintiff") citing *McFadin v. Gerber*, 587 F.3d 753,

758 (5th Cir. 2009). At the same time, it is more than a little disingenuous for Defendant Coaston to argue that her readers were supposed to open the hyperlinks and know that her statements were attributed to something found in the hyperlinked pages or documents, *see* DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER RULE 12(B)(6) (Doc. No. 223) 115, but Defendant Coaston herself was under no obligation to read the contents of the hyperlinked pages and documents.

If the TAC is taken as true, as it must be at this stage, then Defendant Coaston knew that her intentional smears were being directed at someone in Texas. Furthermore, most of the activities that Defendant Coaston wrote about, *e.g.*, Mr. Butowsky reaching out to Joel and Mary Rich by telephone, TAC 45, ¶92, were activities that occurred in Texas. In that sense, the connections between the story and the forum state are stronger in this case than in *TV Azteca* and *Clemens*, and infinitely stronger in this case than in *Keeton* (where the story had no connection whatsoever to the forum state of New Hampshire). Finally, the most important factor from *Keeton* and *TV Azteca* was publication in the forum state. *See Walden,* 571 U.S. at 287–88 ("the tort of libel is generally held to occur wherever the offending material is circulated"), quoting *Keeton,* 465 U.S. at 777. Defendant Coaston could not work for a national publication like *Vox* and plausibly argue that she did not know "national" would include Texas. Even if she could contradict the TAC on that point, and even if that argument had not been foreclosed by *Keeton* and *TV Azteca*, the rule that she proposes is a dubious one: if a reporter willfully remains ignorant of where people live and where the relevant events occurred,

that reporter may intentionally defame people without fear of being sued outside of her home state.

In the context of copyright, courts have held that one who provides an infringing publication to a national distributor is presumed to know that it will reach every state, ergo any state may assert personal jurisdiction. *Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 198 (D. Conn. 2015)(citing cases). Analogously, Defendant Coaston provided her defamatory articles to *Vox*, an online publication targeted to a national audience, thus she knew that its effects would be felt in Texas, where the Plaintiff lives and works.   For that reason, both Defendant Coaston and Defendant Vox Media, Inc. are subject to the Court's specific jurisdiction.

## 3.   The exercise of jurisdiction over the Vox Media Defendants would not violate traditional notions of fair play and substantial justice.

It has long been settled that "a plaintiff can establish specific jurisdiction over a defamation defendant by showing either '(1) a publication with adequate circulation in the state' under *Keeton*, or '(2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there' under *Calder*." *TV Azteca*, 490 S.W.3d at 48-49, citing *Fielding*, 415 F.3d at 425.   The Plaintiff herein has established both. As he explained above, he lives and works in Texas, so the activities that Defendant Coaston wrote about (*e.g.*, calling Joel and Mary Rich, working with Malia Zimmerman on her story, etc.) necessarily would have occurred in Texas. Under such circumstances, the Vox Defendants cannot plausibly allege any surprise or unfairness about being called before a Texas court.

In *Epstein v. Gray Television, Inc.*, 474 F. Supp. 2d 835 (W.D. Tex. 2007), South Carolina journalist Domonique Benn produced a story about malpractice claims filed in South Carolina against a neurosurgeon who had since moved to Texas. The story was later broadcast in Texas, and the neurosurgeon sued her in Texas along with the Texas television station. After analyzing the fairness of asserting jurisdiction over the South Carolina resident, the Court wrote as follows: "[I]f Defendant Benn picked a fight with an individual in Texas, she should consider that such a fight would be settled in Texas." *Id*. at 843. The same applies to Defendant Coaston.

## Conclusion

The Defendants' arguments are meritless and their Motion should be denied in all respects.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this document was filed electronically with the Court's ECF system on April 30, 2020, which should result in automatic notification to all counsel of record.

<u>**/s/ Ty Clevenger**</u>
Ty Clevenger