IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**Edward Butowsky,**

   Plaintiff,

v.

**Michael Gottlieb, et al.,**

   Defendants

Case No. 4:19-cv-00180-ALM-kpj

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6)

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER RULE 12(B)(6) (hereinafter "Motion") (Doc. No. 223):

## Factual Background

On April 19, 2018 and October 1, 2018, the Vox Defendants published articles that portrayed Mr. Butowsky as a dishonest manipulator who took advantage of a grieving family for the purpose of advancing a false political narrative. *See* THIRD AMENDED COMPLAINT (hereinafter "TAC")(Doc. No. 207) 42-46, ¶¶87-93. The details of the defamatory statements – and the reasons they are false – are explained in Mr. Butowsky's complaint. *Id*.

The Vox Defendants' "Factual Background" section, on the other hand, is downright bizarre. The Motion cites unsworn pleadings from other cases for the purpose

of contradicting the pleadings in the TAC. *See* Motion, 3-7, citing *Rich v. Fox News Network, LLC*, No. 18-cv-2223 (S.D.N.Y. filed Mar. 13, 2018)(among others). All of these counter-pleadings must be disregarded. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded facts as true and construe those facts "in the light most favorable to the non-movant." *Illinois Cent. R. Co. v. Cryogenic Transp., Inc.*, 686 F.3d 314, 316 (5th Cir. 2012); *see also Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016)(In considering a 12(b)(6) motion, "we consider only the pleadings and accept them as true").

## Argument

**1. The Plaintiff properly alleged defamation.**

The Vox Defendants' attack on the Plaintiff's defamation claims is fundamentally flawed. They cherry-pick only a few of the defamatory statements identified in Paragraphs 87-93 of the TAC, and then they argue that those statements are not really defamatory. The Plaintiff will address those arguments below, but he should begin by focusing on the bigger picture, namely the overall "gist" of the articles published by the Vox Defendants.

> In making the initial determination of whether a publication is capable of a defamatory meaning, we examine its "gist." *Neely* [*v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013)]. That is, we construe the publication "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *see also Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) ("It is well settled that 'the meaning of a publication and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements.'"(quoting *Turner*, 38 S.W.3d at 115)). Consistent with this approach, under the "substantial truth doctrine" a publication's truth or falsity depends on whether the publication "taken as a whole

is more damaging to the plaintiff's reputation than a truthful [publication] would have been." *KBMT Operating Co.*, 492 S.W.3d at 714 (quoting *Neely*, 418 S.W.3d at 63).

> In *Neely*, we reaffirmed the importance of assessing a publication's gist in evaluating a defamation claim. 418 S.W.3d at 63–64. We explained that a publication "with specific statements that err in the details but that correctly convey the gist of a story is substantially true." *Id*. (citing *Turner*, 38 S.W.3d at 115). Conversely, even if all the publication's individual statements are literally true, the story "can convey a false or defamatory meaning by omitting or juxtaposing facts." *Id*. (quoting *Turner*, 38 S.W.3d at 114).

*D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017), reh'g denied (Sept. 29, 2017). In this case, the Vox Defendants portrayed Mr. Butowsky as an underhanded manipulator who deceived a grieving family for nefarious purposes. TAC 42-46, ¶¶87-93. That's the gist, and it is defamatory because it subjects Mr. Butowsky to "public hatred, contempt, or ridicule." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637 (Tex. 2018). It is actionable because it is false. *Id*.

In a prior motion to dismiss, namely DEFENDANTS VOX MEDIA, INC. AND JANE COASTON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER RULE 12(B)(6) (Doc. No. 110), the Vox Defendants judicially admitted that at least some of their statements are defamatory:

> As discussed below, see infra at 15-19, the statements he challenges are actually reports of allegations made by the Riches and by others, not by the Vox Media Defendants. Nevertheless, even if the challenged statements could be construed as direct accusations, several of those statements are not actionable.

*Id*. The first sentence is demonstrably false, because *none* of the defamatory statements identified by the Plaintiff are attributed to another source. *See* Second Amended Complaint (Doc. No. 101) (hereinafter "SAC") 41-46, ¶¶99-105, now found at TAC 42-

46, ¶¶87-93. Instead, they are all "direct accusations" written by the author, Defendant Coaston. *Id*. As a result, the second sentence above becomes a judicial admission. If "several of those statements are not actionable," then by necessary inference, the remaining statements *are* actionable. In their latest Motion, the Vox Defendants likewise admit that only "[s]ome of the challenged statements are not defamatory or otherwise actionable," Motion 9, necessarily inferring that some <u>are</u> defamatory and actionable. Of course, the Vox Defendants don't try to distinguish between those that are and those that aren't actionable. Instead, the Motion ignores most of the statements identified in Paragraphs 87-93 of the TAC, even though those statements are facially defamatory and plainly alleged to be false. The Vox Defendants bear the burden of explaining why each false statement in Paragraphs 87-93 is or is not actionable, *see Abramson v. Florida Gas Transmission Co.*, 909 F. Supp. 410, 414 (E.D. La. 1995)("the moving party has the burden of showing that plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief"), citing *Baton Rouge Building and Construction Trades Council AFL–CIO v. Jacobs Constructors, Inc*., 804 F.2d 879, 881 (5th Cir.1986), therefore the Plaintiff will not attempt to rebut arguments that the Vox Defendants failed to make.

Even when the Vox Defendants try to attack specific statements, those attacks fail. On pages 10-11 of the Motion, for example, they present a bizarre argument about judicial estoppel. They argue that because Mr. Butowsky prevailed as a defendant in a case brought by another party in another jurisdiction, namely Brad Bauman in *Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019), that somehow judicially estops his claims

against the Vox Defendants in this case. In particular, they argue that because Mr. Bauman and Mr. Butowsky traded accusations of lying, and the D.C. court found that Mr. Butowsky's statement was not actionable, then Defendant Coastoan's accusations of lying are not actionable in this case. For purposes of judicial estoppel, however, "inconsistency between positions generally does not exist where two positions relate to different things or where the inconsistency is merely implied." *NGM Ins. Co. v. Bexar County, Texas*, 211 F. Supp. 3d 923, 932 (W.D. Tex. 2016), citing *In re Oparaji*, 698 F.3d 231, 237 (5th Cir.2012). To compare *Bauman* to this case is to compare apples to oranges. The *Bauman* opinion notes that "context is crucial," and that "Bauman was serving as a spokesman at the center of a heated public controversy over the Seth Rich murder, and he and Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray." *Bauman*, 377 F.Supp.3d at 13. Obviously, there was no "sparring" in the press between Defendant Coaston and Mr. Butowsky. Instead, she wrote what purports to be a factual news story wherein she falsely accused him of conspiring with others to craft a fraudulent news story, and the "gist" of her story was false.

The Vox Defendants' discussion of *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) on page 11 of the Motion is quite misleading. Unlike the plaintiff in *Hancock*, Mr. Butwosky has not parsed whether Defendant Coaston's statements are defamation *per se* or *per quod*. Even if they are not defamatory per se, they could still be defamatory *per quod. See, generally, Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 777 (Tex. App.—Dallas 2018, pet. denied)(distinguishing *per se* from *per quod*). Furthermore, there are two categories of defamation per se, and the Vox Defendants only address one

of them.

> Defamation *per se* refers to statements that are so obviously harmful that general damages may be presumed. *In re Lipsky*, 460 S.W.3d at 596. The law presumes certain categories of statements are defamatory *per se*, including statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) are falsehoods that injure one in his office, business, profession, or occupation. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

*Mohammed*, 554 S.W.3d at 777. In this case, the Vox Defendants accused the Plaintiff of "dishonesty, fraud, rascality" *and* "general depravity," and the Plaintiff has also explained how such falsehoods injure him "in his office, business, profession, or occupation." TAC 49, ¶101. Furthermore, the Plaintiff has alleged special damages insofar as he has alleged lost clients and a lost business opportunity. *Id*. at 3, ¶6. Accordingly, the Plaintiff properly pleaded the elements of both defamation per se and per quod.

**2. The Vox Defendants are not protected by the fair reporting privilege.**

The Plaintiff's claims in this case are quite similar to his claims in *Butowsky v. Folkenflik*, 4:18-cv-442, 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019), and the underlying facts overlap. The *Folkenflik* opinion creates real problems for the Vox Defendants, particularly insofar as the Court noted that the *Folkenflik* defendants, like the Vox Defendants, did <u>not</u> attribute various defamatory statements to third parties. To get around this problem, the Vox Defendants argue that their defamatory statements actually *were* attributed to court documents, third parties, etc., but that argument is disingenuous. The statements that they quote in the Motion are *not* the defamatory statements found in the TAC. Stated differently, the Plaintiff is not suing the Vox Defendants for the

*attributed* statements listed on page 15 of their Motion, he is suing them for the *unattributed* statements that he identified in his complaint. *See* TAC 42-46, ¶¶87-93. If one looks at the "gist" of Defendant Coaston's articles, they contain a host of statements *in her own voice* that accuse Mr. Butowsky of dishonesty and "rascality." In that sense, the circumstances of this case are identical to *Folkenflik*, and the fair reporting privilege does not apply.

The Vox Defendants next cite a Nevada Supreme Court opinion for the premise that they are saved by hyperlinks. MOTION at 15, citing *Adelson v. Harris*, 402 P.3d 665, 669-70 (Nev. 2017). Of course, Nevada law is not Texas law, and no Texas court has opined on the matter. Even so, the Plaintiff encourages the Court to read *Adelson* in its entirety, because it does not help the Vox Defendants.

> The primary test to resolve whether a report qualifies for the fair report privilege was articulated by the United States Court of Appeals for the Federal Circuit in a case interpreting the District of Columbia's fair report privilege. *See Dameron v. Wash. Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985); *see also* David Elder, Defamation: A Lawyer's Guide § 3:3 (2015) (stating that *Dameron* "has become the leading case" on what constitutes a report). In *Dameron*, the court considered whether an allegedly defamatory statement in a magazine article should be immunized under the fair report privilege. 779 F.2d at 737. The allegedly defamatory statement was based on the conclusion reached in a National Transportation Safety Board (NTSB) report. *Id*. at 740. However, nothing in the vicinity of the article's statement mentioned the NTSB report. *Id*. The court explained the fair report privilege's purpose and articulated the following rule:
>
>> The privilege's underlying purpose—encouraging the dissemination of fair and accurate reports—also suggests a natural limit to its application. ... The privilege is ... unavailable where the report is written in such a manner that the average reader would be unlikely to understand the article (or the pertinent section thereof) to be a report on or summary of an official document or proceeding. It must be apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings.

> *Id*. at 739. The court concluded that neither the overall context nor specific attributions allowed an average reader to determine the publication's statement was based on the NTSB report. *Id*. at 740.
>
> The *Dameron* test reflects Nevada's policy that citizens have a right to a fair account of what occurs during official proceedings. *See, e.g., Lubin*, 117 Nev. at 114, 17 P.3d at 427. By focusing on the average reader and specific attributions or overall context, the test also properly asks whether an average Nevada citizen can understand that the report is summarizing an official document or proceedings. For these reasons, we adopt the *Dameron* test and consider the petition's specific attributions to determine whether the AP hyperlink is sufficient to bring the petition within the fair report privilege as a matter of law on the record before us.

*Adelson*, 133 Nev. at 515–16, 402 P.3d at 668 (2017). As noted repeatedly herein, the TAC sets forth numerous defamatory statements, and nothing in any of those statements would lead an average reader to conclude that Defendant Coaston was attributing her statements to hyperlinked court documents. TAC 42-46, ¶¶87-93. In fact, the Vox Defendants' arguments about hyperlinked court documents are quite duplicitous. On one hand, Defendant Coaston asks the Court to believe that she did not read the federal complaint that she attached to her own news story, therefore she did not know that Mr. Butowsky was a Texas resident. *See* Defendants Vox Media, Inc. and Jane Coaston's Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 221) 10. On the other hand, she asks the Court to assume that her readers clicked on all of her hyperlinks and somehow figured out what was being attributed to whom. Motion 15.

The problems with her argument are particularly highlighted on pages 18-19 of the Motion, where the Vox Defendants contend that everything in Paragraph 89 of the TAC is supported by a hyperlinked *Newsweek* article. Motion 19, citing Fuller Decl. Ex. A(10).

Apparently the Vox Defendants were hoping that the Court and the Plaintiff would not bother reading the *Newsweek* article, because it says nothing about whether "Butowsky and Zimmerman had worked with Rod Wheeler, told him the FBI had information about Seth Rich's alleged connection with Wikileaks, and then set him loose – with absolutely no proof." TAC ¶89 (quoting March 23, 2018 *Vox* article). In the same excerpt, Defendant Coaston wrote that "there was no FBI investigation, either – the FBI had never seen Seth's laptop," *id*., but nothing would lead the reader to believe that she was attributing that statement to the *Newsweek* article, the person quoted in the *Newsweek* article (Brad Bauman), or to any public record or proceeding. If the Vox Defendants want to know what "pervasive sourcing language" looks like, Motion 15, quoting *Dallas Morning News v. Hall*, 579 S.W.3d 370, 381 (Tex. 2019), they should contrast their own bush-league journalism with the *Newsweek* article. Consider the following excerpt from the *Newsweek* article:

> Speaking with *Newsweek* on Wednesday, Brad Bauman, the family's representative, says he also has knowledge that the FBI is not investigating Rich's murder. "We have said all along that the fundamental facts that underline yesterday's story were false, including the FBI's investigation, which does not exist, and their role in ever having, seeing or otherwise possessing computer equipment or other equipment that belonged to Seth Rich, either in a personal or professional capacity," he says.

Fuller Decl. Ex. A(10). If Defendant Coaston intended to attribute something to Mr. Bauman, then she should have attributed it to Mr. Bauman, as *Newsweek* did. Instead, she declared in her own voice (as an established fact) that there was no FBI investigation and that the FBI never examined Seth Rich's computer, then she used that declaration as proof that the Plaintiff and Ms. Zimmerman *fabricated* the story about an FBI

investigation. TAC ¶89.

For what it's worth, we now know that Mr. Bauman was lying, and that the Plaintiff and Ms. Zimmerman were telling the truth about an FBI investigation. In a March 20, 2020 deposition in *Folkenflik*, former Assistant U.S. Attorney Deborah Sines testified that (1) she was the prosecutor originally assigned to the Seth Rich murder case; (2) the FBI <u>did</u> investigate attempts to hack into Mr. Rich's electronic devices after his death; and (3) the FBI <u>did</u> examine Mr. Rich's laptop. *See* Transcript of Deposition of Deborah Sines (Exhibit 1) 35-40. *Newsweek* is not responsible for Mr. Bauman's lies because it properly attributed those lies to Mr. Bauman. The Vox Defendants <u>are</u>, however, responsible for those lies, and that's because they repeated them as fact and without attribution.

### 3. The Plaintiff alleged actual malice.

Rather than respond to the Vox Defendants' characterizations of the TAC, the Plaintiff would direct the Court to the complaint itself. It provides more than enough facts to infer actual malice. Paragraphs 87 through 93 of the TAC describe in detail how Defendant Coaston *knowingly* published false information about the Plaintiff. She knew well before she published either of her stories, for example, that Rod Wheeler's allegations against the Plaintiff were false. *Compare* TAC 19-20, ¶¶45-46 *with* TAC 42-44, ¶¶89 and 91. Paragraph 93 in particular explains that Defendant Coaston never even attempted to get both sides of the story, and that was because she was more interested in promoting the Russia Collusion Hoax. Finally, the complaint explains how the Vox Defendants refused to retract or modify the story after its falsity was brought to their

attention. *Id*.

With respect to the last issue, the complaint itself quoted *Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 283 (Tex. App.—Houston [14th Dist.] 1996, no writ) for the following premise: "Refusal to print a retraction is evidence of an action after the publication, but it can lend support to a claim that reckless disregard or knowledge existed at the time of publication." The Vox Defendants cite *Danawala v. Hous. Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993), and that case cites Texas law, but it obviously predates *Gonzales*. They also cite cases from other circuits, but those opinions are not relevant because they apply the law of other states. Their best argument comes from *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005), where the Texas Supreme Court held that "'[e]vidence concerning events after an article has been printed and distributed, has little, if any, bearing" on the issue of actual malice. The Plaintiff agrees that post-publication events are not determinative, but they may have at least a "little" bearing on the motives of the Vox Defendants. That is all the more true where, as here, the publication is an online publication and it could easily be corrected, yet the Defendants *continue* to publish the false information electronically.

As this Court noted in *Folkenflik*, the Texas Supreme Court has held that after-publication acts can be relevant to malice, and the entire excerpt is worth considering:

> While a failure to investigate by itself does not establish actual malice, a "purposeful avoidance of the truth" does. *Lane v. Phares*, 544 S.W.3d 881, 891 (Tex. App. – Fort Worth 2018, no pet.) (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 578–79 (Tex. App.–Austin 2007, pet. denied)). "Inherently improbable assertions and statements made on information that is obviously dubious may show actual malice." *Bentley*, 94 S.W.3d at 596. A defendant repeating another's words he or she knows is false or

improbable is relevant to help show actual malice, as well as "evidence that a defendant conceived a story line in advance" and then "set out to make the evidence conform." *Gilmore v. Jones*, No. 3:18-CV-00017, 370 F.Supp.3d 630, 2019 WL 1418291, at *24 (W.D. Va. Mar. 29, 2019) (quoting *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Virg. 2016) (citations omitted); see also *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657, 668, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)). Additional considerations in determining actual malice include the relation of the parties, the circumstances around the publication, the terms of the publication, and a defendant's words or acts before, at, or after the time of the communication. *Dolcefino v. Turner*, 987 S.W.2d 100, 111 (Tex. App. –Houston [14th Dist.]1998), aff'd sub nom. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000) (citations omitted).

*Butowsky v. Folkenflik*, 4:18CV442, 2019 WL 3712026, at *10 (E.D. Tex. Aug. 7, 2019).

Consider Paragraph 93 of the TAC, which at the very least describes "purposeful avoidance of the truth." And note that Defendant Coaston kept repeating false statements from Rod Wheeler's discredited lawsuit *even after his frivolous claims had been dismissed*:

> The October 1, 2018 story by Defendant Coaston was… malicious and false. She wrote:
>
>> ...Fox News ran a story, 'Slain DNC Staffer Had Contact with WikiLeaks, Say Multiple Sources." A second story, also published May 15, said that Wheeler was the source. But none of this was true — in fact, the only people who had told Wheeler about WikiLeaks contacts or an FBI investigation (also a part of the original, and false, story) were Butowsky and Fox News investigative reporter Malia Zimmerman.
>
> The foregoing paragraph is utterly false, and Defendant Coaston knew it was false at the time she wrote her article. As noted above, Mr. Wheeler had previously admitted in a television interview that he confirmed Seth Rich's role in the DNC leak using his own sources. Furthermore, Mr. Wheeler's frivolous lawsuit had been dismissed almost two months before Ms. Coaston wrote the October 1, 2018 article. The story itself notes that Mr. Wheeler's lawsuit had been dismissed, yet Defendant Coaston repeated the false allegations as if they were true. In other words, she knowingly and maliciously defamed Mr. Butowsky.

TAC 44, ¶91. Perhaps the clearest evidence of malice is the fact that Defendant Coaston

*fabricated* statements that she attributed to Mr. Butowsky. 45, ¶92. "Under Texas law, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 431 (5th Cir. 2009)(citations omitted). At the absolute least, reasonable jurors could find that Defendant Coaston acted with reckless disregard for the truth.

**4. The Plaintiff properly stated a claim for business disparagement.**

"To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015)(citations omitted).

> Business disparagement and defamation are similar in that both involve harm from the publication of false information. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc*., 434 S.W.3d 142, 155 (Tex.2014). The respective torts, however, serve different interests. Whereas "defamation actions chiefly serve to protect the personal reputation of an injured party, [ ] a business disparagement claim protects economic interests." *Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 170 (Tex.2003). Business disparagement or "injurious falsehood applies to derogatory publications about the plaintiff's economic or commercial interests." 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 656, at 615 (2d ed.2011). The tort does not seek to redress dignitary harms to the business owner, but rather redresses aspersions cast on the business's commercial product or activity that diminishes those interests. *Hurlbut v. Gulf Atl. Life Ins. Co*., 749 S.W.2d 762, 766–67 (Tex.1987).

*Id*. at 591. The Plaintiff has properly pleaded defamation claims for the reasons described above. With the respect to special damages, the Plaintiff alleged that he lost one-third of his clients, and he lost a specific business opportunity, namely the opportunity to launch a television program. TAC 3, ¶6. The Vox Defendants suggest that the allegation of lost clients is "conclusory," but they cite no authority for the premise that he must name each

and every lost client.  Likewise, they do not explain what additional details they think they need about the television program. Obviously, any such details can be obtained during discovery.

## Conclusion

The Plaintiff properly stated claims for defamation and business disparagement. The Defendants' arguments are meritless and their MOTION should be denied in all respects.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## **CERTIFICATE OF SERVICE**

I certify that a copy of this document was filed electronically with the Court's ECF system on April 30, 2020, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**
Ty Clevenger