**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **EDWARD BUTOWSKY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:19-cv-0180-ALM-KPJ** |
| | § | |
| **MICHAEL GOTTLIEB,** *et al.* | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT ALAN FEUER'S REPLY IN SUPPORT OF
MOTION TO DISMISS THIRD AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION**

Defendant Alan Feuer files this reply in support of his motion to dismiss Plaintiff Edward Butowsky's claims against him for lack of personal jurisdiction, and states as follows:

**INTRODUCTION**

Butowsky fails to offer any basis for the Court to exercise specific jurisdiction over Feuer, and he abandons his general jurisdiction argument. Butowsky's response to Feuer's motion is based entirely on his allegations that Feuer "would have known that he was writing for a national publication, and he would have known that his [allegedly] false statements would be published in the state where [Butowsky] lived." Dkt. 230 at 6. Under binding Fifth Circuit precedent, those facts cannot support specific jurisdiction over Feuer, regardless of whether Feuer knew Butowsky lived in Texas. Rather, Butowsky must show the *NYT* Article's "subject and sources" reflect an attempt by Feuer to target the state. *Clemens v. McNameee*, 615 F.3d 374, 380 (5th Cir. 2010). He cannot make that showing. Texas is not mentioned in the article, and none of the reporting took place here.

Unable to reconcile his jurisdictional argument with established Fifth Circuit precedent, Butowsky relies on a misinterpretation of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014). *Walden* does not undermine the Fifth Circuit's "subject and sources" standard. It merely cites decades-old precedent holding that the substantial circulation of a print publication in the forum can support personal jurisdiction over a nonresident publishing company. *Id.* at 287-88 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984)). Butowsky cannot rely on *Keeton* to support exercising jurisdiction over Feuer, who did not personally distribute any copies of *The New York Times* in Texas. *Keeton*, 465 U.S. at 781 n.13 ("It does not of course follow from the fact that jurisdiction may be asserted over [the publisher] that jurisdiction may also be asserted over [any individual-defendant employees]."). Butowsky does not make an argument under *Keeton*, and he does not make any other argument that Feuer targeted his reporting at Texas. Thus, *Walden* does not support Butowsky's attempt to avoid the Fifth Circuit's "subject and sources" test or his attempt to drag Feuer, a New York-based reporter, into Texas to defend this case.

## ARGUMENT

### A. Butowsky abandons any argument based on general jurisdiction.

Butowsky's response says nothing about general jurisdiction. As a result, he has abandoned the issue. *Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006) (arguments not addressed in response to dispositive motion deemed abandoned). Regardless, as argued in Feuer's motion, general jurisdiction is a nonstarter. Feuer lives and works in New York, and he has no continuous and systematic contacts with Texas. Dkt. 221-1 ¶¶ 3-7. This undisputed evidence precludes general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (general jurisdiction requires that the defendant's "affiliations with the

State are so 'continuous and systematic' as to render [it] essentially at home in the forum State" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011))).

### B.   Butowsky cannot establish specific jurisdiction over Feuer under the Fifth Circuit's "subject and sources" test for defamation claims.

Butowsky also fails to offer any factual or legal basis for the Court to exercise specific jurisdiction over Feuer. The Fifth Circuit recognizes two alternative tests under which a libel plaintiff may establish personal jurisdiction over an out-of-state defendant:

> Specific jurisdiction for a suit alleging the intentional tort of libel exists for (1) a publication with adequate circulation in the state, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984), or (2) an author or publisher who "aims" a story at the state knowing that the "effects" of the story will be felt there. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (emphasis added). While Butowsky notes in passing that *The New York Times* "has a substantial presence in Texas," Dkt. 230 at 4, he does not attempt to satisfy the *Keeton* "adequate circulation" test as to Feuer. It is undisputed that Feuer is not personally responsible for *The New York Times* subscriptions, nor does he know the extent to which the paper is distributed in Texas. Dkt. 221-1 at ¶¶ 8-9; *see also Keeton*, 465 U.S. at 781 n.13 ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him").

Butowsky also cannot satisfy the *Calder* "aims a story" test, especially as it has been applied by the Fifth Circuit. The Fifth Circuit reads *Calder* to require that the forum be the "focal point" of the challenged publication, such that "(1) the **subject matter** of and (2) the **sources** relied upon for the article were in the forum state." *Fielding*, 415 F.3d at 426 (emphasis added) (citing *Revell v. Lidov*, 317 F.3d 467, 474 (5th Cir. 2002)). Butowsky makes no argument that he can satisfy this test as to Feuer, and for good reason. Texas is not mentioned in the *NYT* Article, and

3

none of Feuer's reporting was from Texas. Dkt. 221-1 ¶ 7. Feuer merely reported on two decisions by a federal court in New York.

Moreover, Butowsky has abandoned any argument that the Court could exercise jurisdiction over Feuer based on the allegation that "Feuer knew Mr. Butowsky was a resident of Texas," Dkt. 207 ¶ 20, as he fails to make any such argument in his response. *See* Dkt. 230; *Taylor Pipeline Constr.*, 438 F. Supp. 2d at 706. But even if Butowsky had not abandoned this argument, his conclusory allegation would not change the jurisdictional analysis. Whether Feuer is deemed to have reviewed all of the pleadings in the lawsuits involving Butowsky, as opposed to just the court decisions discussed in the *NYT* Article, makes no difference in the jurisdictional analysis. The Fifth Circuit has repeatedly held that even *actual* knowledge of a plaintiff's forum ties does not establish specific jurisdiction. *Clemens*, 615 F.3d at 380; *Herman v. Cataphora*, 730 F.3d 460, 465-66 (5th Cir. 2013).

Butowsky's insistence that these Fifth Circuit cases are "inapposite," Dkt. 230 at 2, is particularly confounding given their obvious similarities. *Herman* involved a defamation claim based on statements that, like the *NYT* Article, appeared in a national media publication—the *Above the Law* website. 730 F.3d at 462-63.[1] So did *Clemens*, where the court found no jurisdiction even though the allegedly defamatory statements were published on *Sports Illustrated*'s website. 615 F.3d at 379-80; *see also Revell*, 317 F.3d at 473 (no jurisdiction though publication was made on website for Columbia University's journalism school). Indeed, most of these cases involved publications or broadcasts more closely tied to Texas than the *NYT* Article. *See, e.g.*, *Herman*, 730 F.3d at 465 (article reported in part on litigation taking place in forum);

---

[1] The Fifth Circuit in *Herman* even noted that the defendant's statements appeared to refer to persons who were involved in litigation in the forum state. 730 F.3d at 465.

*Clemens*, 615 F.3d at 377 (defendant had travelled to Texas approximately 35 times to work with plaintiff); *Fielding*, 415 F.3d at 426 (publisher acknowledged limited use of Texas sources).

    1.  *Walden* **supports the Fifth Circuit's "subject and sources" standard.**

Unable to satisfy the Fifth Circuit's "subject and sources" test for determining *Calder* jurisdiction, Butowsky argues that the test has been undermined by the Supreme Court's decision in *Walden*. Dkt. 230 at 3. Not so. *Walden* did not overturn *Calder*, nor is it inconsistent with the Fifth Circuit's application of *Calder* in defamation cases.

*Walden* was not a defamation case—the plaintiff in *Walden* sued in Nevada, where he lived, for alleged Fourth Amendment search-and-seizure violations that occurred in Georgia, where he was searched. *Walden*, 571 U.S. at 281-82, 288-89. The Ninth Circuit had held that the defendant's act of making a statement he knew would affect persons in the forum state meant that he had expressly aimed his conduct at the forum. *Id.* at 282. The Supreme Court reversed, finding insufficient mere knowledge that the effects of an intentional tort will be felt in the plaintiff's home state. *Id.* at 289. The Supreme Court distinguished *Calder*, noting that the defendants in *Calder* had made phone calls to the forum state and had written an article about the plaintiff's forum-based activities. *Id.* at 287 (citing *Calder*, 465 U.S. at 788-89). This distinction mirrors the Fifth Circuit's focus on the same types of contacts to assess whether jurisdiction is proper under *Calder*. *See Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 426; *Revell*, 317 F.3d at 474. *Walden* also cited *Keeton* for the straightforward proposition that an intentional tort occurs where the harm is felt. *Id.* at 288 (quoting *Keeton*, 465 U.S. at 777). But *Keeton*'s alternative, "adequate circulation" test does not apply to Feuer for the reasons explained *supra*.

No case holds that *Walden* overruled *Calder* or undermined the Fifth Circuit's "subject and sources" test. To the contrary, courts—including Butowsky's cited cases—have interpreted *Walden* as narrowing *Calder*. *See, e.g.*, *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d

5

96, 103 (5th Cir. 2018) (noting *Walden* clarified and narrowed *Calder*'s "effects" test). In *Curry v. Revolution Laboratories, LLC*, which is not a defamation case, the Seventh Circuit held *Walden* "confirmed that the inquiry into specific jurisdiction has not changed"—it focuses on the *defendant's* contacts with the forum. 949 F.3d 385, 396 (7th Cir. 2020). *Estate of Klieman v. Palestinian Authority*—also not a defamation case—found *no* jurisdiction, noting *Walden* rejected allowing "a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis."[2] In short, *Walden* supports the Fifth Circuit's "focal point" test, and Butowsky is wrong to argue otherwise.

    **2.**  ***TV Azteca* does not undermine the Fifth Circuit's "subject and sources" test.**

Butowsky is also wrong to rely on the Texas Supreme Court's decision in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 48-49 (Tex. 2016). Dkt. 230 at 4-6. Even if *TV Azteca* were inconsistent with Fifth Circuit precedent, that Fifth Circuit precedent would be binding on this Court on this issue of federal due process. *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir. 1980) (holding Texas Supreme Court's minimum contacts analysis, a federal due process issue, is not binding on federal court because "the federal courts are not bound by state court determinations of what the Constitution requires"). And there is nothing inconsistent between *TV Azteca* and Fifth Circuit precedent. *TV Azteca* involved special jurisdictional considerations applicable to television broadcasts in border regions, where a broadcast signal originates in one jurisdiction and is received in the neighboring jurisdiction. 490 S.W.3d at 38, 52. *TV Azteca* did

---

[2] 923 F.3d 1115, 1125 (D.C. Cir. 2019), *cert. granted, judgment vacated sub nom. Estate of Klieman v. Palestinian Auth.*, No. 19-741, 2020 WL 1978929 (U.S. Apr. 27, 2020); *see also Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 918-19 (6th Cir. 2019) (emphasizing that, even after *Walden*, courts should ask, as in *Calder*, if the defendants' actions were "expressly aimed" at the forum, as the "focal point" of the defendants' conduct, and finding jurisdiction in fraud case over defendant who built relationship with forum resident and communicated with him in the forum thousands of times for over a year).

not decide how specific jurisdiction should be determined for journalists writing for national publications, and it held that the availability of the broadcast in the forum state—even when combined with knowledge that harm would be felt there—is insufficient to support specific jurisdiction. *Id.* at 45-46.

Nor are Feuer's contacts in this case analogous to the contacts the Texas Supreme Court found sufficient in *TV Azteca*. Indeed, Feuer does not have *any* significant contacts with Texas, much less any contacts relating to the *NYT* Article or his reporting more generally. Dkt. 222-1 ¶¶ 4-7. In *TV Azteca*, by contrast, the reporter physically traveled to Texas "to promote her books about the [program at issue,] *Ventaneando*, and to Dallas to host a live broadcast of *Ventaneando*." 490 S.W.3d at 50. Thus, *TV Azteca* cannot support the Court's exercise of specific jurisdiction over Feuer.

### C. Butowsky will not be prejudiced by having to litigate any claims against Feuer in New York, where he is litigating similar claims.

Butowsky fails to identify any Texas interest in adjudicating these claims against out-of-state defendants who reported on out-of-state events.[3] If Butowsky genuinely wishes to litigate his frivolous claims against Feuer, he should do so in New York, where he is still defending against the underlying lawsuit brought by Seth Rich's parents. *See Rich v. Fox News Network, LLC*, 939

---

[3] Butowsky cites *Epstein v. Gary Television, Inc.*, 474 F. Supp. 2d 835, 841-42 (W.D. Tex. 2007), in arguing it would be "fair" to exercise jurisdiction over Feuer here. Dkt. 230 at 6-7. But *Epstein* followed *Calder*, distinguishing instances of national publication and finding jurisdiction when a reporter "interviewed [p]laintiff during a phone call to Texas," researched Texas's recording consent laws in advance of the phone call, and sent the broadcast to a Texas TV station. 474 F. Supp. 2d 835, 841-42 (W.D. Tex. 2007). Here, Butowsky does not dispute that Feuer "made no phone calls to Texas and did not otherwise knowingly communicate with any Texas residents, . . . did not obtain any documents from Texas, . . . [and] did not employ any stringers or freelancers in Texas" while reporting the *NYT* Article. Dkt. 222-1 ¶¶ 7-8. *Epstein* reinforces why Butowsky cannot satisfy the *Calder* test as to Feuer.

7

F.3d 112, 130 (2d Cir. 2019) (vacating dismissal of plaintiffs' claims against Butowsky and remanding for further proceedings).

## CONCLUSION

Defendant Feuer respectfully requests that the Court grant his Motion to Dismiss Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) and dismiss this action against him for lack of personal jurisdiction.

Respectfully submitted,

/s/     *Marc A. Fuller*
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

***Attorneys for Defendant Alan Feuer***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of May, 2020, a true and correct copy of the foregoing document was served via e-filing on all counsel of record.

*/s/   Marc Fuller*
Marc Fuller