**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **EDWARD BUTOWSKY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:19-cv-0180-ALM-KPJ** |
| | § | |
| **MICHAEL GOTTLIEB,** *et al.* | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS VOX MEDIA AND JANE COASTON'S
REPLY IN SUPPORT OF
MOTION TO DISMISS THIRD AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION**

Defendants Vox Media and Jane Coaston (collectively, the "Vox Media Defendants") file

this reply in support of their motion to dismiss Plaintiff Edward Butowsky's claims under Federal

Rule of Civil Procedure 12(b)(2), and state as follows:

**INTRODUCTION**

Butowsky's response to the Vox Media Defendants' motion relies on an argument the Fifth

Circuit has repeatedly rejected: that an out-of-state libel defendant who publishes an article online

is subject to personal jurisdiction wherever the plaintiff resides.  That is not the law.  Under binding

Fifth Circuit precedent, even when an online publisher knows the plaintiff resides in the forum,

there is no jurisdiction unless the article's "subject and sources" reflect the defendant's attempt to

target the forum.  Here, neither the subject nor the sources of the *Vox* Articles focused on Texas.

Texas is not mentioned in the articles, and none of the reporting took place here.  These undisputed

facts preclude the exercise of personal jurisdiction over the Vox Media Defendants, regardless of

whether Coaston knew Butowsky lived here.

Unable to find any Fifth Circuit authority to support his argument, Butowsky relies on a misinterpretation of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014). *Walden* does not undermine the Fifth Circuit's "subject and sources" test.  It merely cites decades-old precedent holding that substantial circulation of a print publication in the forum can be an alternative basis to support personal jurisdiction over a nonresident publishing company.  *Id.* at 287-88 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984)).  The "circulation" test is distinct from the "subject and sources" test, and it does not apply here.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005).  The Fifth Circuit has repeatedly refused to apply the "circulation" test in the online context, where publication is global and does not involve the physical delivery of a product into the forum.  Butowsky's argument that the Court should disregard longstanding Fifth Circuit precedent on this issue would subject any online publication—anywhere in the world—to jurisdiction wherever a plaintiff might be known to reside.  No authority cited by Butowsky supports such a radical departure from established jurisdictional principles.

Thus, this Court should grant the Vox Media Defendants' motion and dismiss the claims against them for lack of personal jurisdiction.  If Butowsky intends to proceed with his claims against the Vox Media Defendants, he should do so in Washington, D.C., where he is already litigating similar claims.

## ARGUMENT

### A.     Butowsky abandons any argument based on general jurisdiction.

Butowsky's response says nothing about general jurisdiction.  As a result, he has abandoned the issue.  *Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006) (arguments not addressed in response to dispositive motion deemed abandoned).  That is not surprising—Supreme Court precedent requires that Butowsky show that the Vox Media Defendants are "at home" in Texas.  *Daimler AG v. Bauman*, 571 U.S. 117, 139

(2014).   But Coaston lives and works in Washington, D.C., and she has no continuous and systematic contacts with Texas.  Dkt. 221-1 ¶¶ 2-8.  And Vox Media is incorporated in Delaware and headquartered in Washington, D.C., with its largest office in New York.  Dkt. 221-4 ¶ 3. Because the Vox Defendants are clearly not "at home" in Texas, they are not subject to general jurisdiction.

**B.      Butowsky cannot establish specific jurisdiction over the Vox Media Defendants under the Fifth Circuit's "focal point" test for defamation claims.**

Butowsky also fails to offer any factual or legal basis for the Court to exercise specific jurisdiction over the Vox Media Defendants.  The Fifth Circuit recognizes two alternative tests under which a libel plaintiff may establish personal jurisdiction over an out-of-state defendant:

> Specific jurisdiction for a suit alleging the intentional tort of libel exists for (1) a publication with adequate circulation in the state, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984), or (2) an author or publisher who "aims" a story at the state knowing that the "effects" of the story will be felt there. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

*Fielding*, 415 F.3d at 425.  Butowsky cannot invoke the *Keeton* "circulation" test because the *Vox* Articles were not published in any print medium; thus, there was no physical delivery into the state.  The *Vox* Articles were posted on a public website, available worldwide.  Butowsky also cannot satisfy the *Calder* "aims a story" test under established Fifth Circuit law.  And, far from undermining binding Fifth Circuit precedent, the U.S. Supreme Court's decision in *Walden* affirms the importance of *Calder*'s focus on whether the defendant specifically targeted the forum. Walden, 571 U.S. at 288-91 (emphasizing phone calls to forum-state sources and focus on forum-state events).

**1.      *Keeton* jurisdiction requires "substantial circulation" of physical copies in the forum, which is lacking here.**

In  support  of  his  argument  that  the  Vox  Media  Defendants  are  subject  to  personal

jurisdiction merely because they published the challenged articles on a public website, Butowsky

relies on the Supreme Court's 2014 decision in *Walden v. Fiore*—specifically on *Walden*'s cite to

the Supreme Court's 1984 decision in *Keeton*.  Dkt. 226 at 3.  *Keeton*, however, involved contacts

that do not exist here: physical delivery of print copies.  In *Keeton*, the Supreme Court found

specific jurisdiction over *Hustler* because the magazine's contacts with the state included 10,000

to 15,000 monthly subscriptions.  465 U.S. at 772.  In other words, the alleged libel in *Keeton* was

physically delivered into the state through substantial print circulation.  *See Walden*, 571 U.S. at

285 (citing *Keeton* and noting that "physical entry into the State" creates "a relevant contact").

The Vox Media Defendants do not have any such contacts with Texas.  They did not

distribute the *Vox* Articles through print, or even digital, subscriptions.  Rather, they published

them on a public website, www.vox.com.  Butowsky cannot identify any way in which Texas was

specially targeted by this online publication.  Under Butowsky's formulation of the jurisdictional

standards, any online publication would be subject to jurisdiction wherever a plaintiff resides.  But

under well-established and binding precedent from the Fifth Circuit, this is insufficient.

The Fifth Circuit has repeatedly instructed against exercising specific jurisdiction in

defamation cases based solely on the nationwide publication of the challenged statements.  *E.g.*,

*Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (no jurisdiction where allegedly

defamatory statements posted to *Above the Law*'s website); *Clemens v. McNamee*, 615 F.3d 374,

377, 379-80 (5th Cir. 2010) (no jurisdiction where allegedly defamatory statements published on

*Sports Illustrated*'s website were not "directed to Texas residents any more than residents of any

state"); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (jurisdiction lacking because publication

on Columbia University website "was not directed at Texas readers as distinguished from readers

in other states"); *Young v. New Haven Advocate*, 315 F.3d 256, 263-64 (4th Cir. 2002) (no

jurisdiction over out-of-state publisher based on publication of article on public website);

*Wakefield v. British Med. Journal Publ'g Grp., Ltd.*, 449 S.W.3d 172, 185-86 (Tex. App.—Austin

2014, no pet.) (online availability of allegedly defamatory article insufficient to support

jurisdiction under *Keeton*).   All of these cases would have been decided differently if online

publication were the jurisdictional equivalent of the "substantial" print circulation in *Keeton*.

> **2.    As applied by the Fifth Circuit, *Calder* jurisdiction requires that the forum be the "focal point" of the story, which it was not here**.

As the Fifth Circuit noted in *Clemens*, the "most instructive" precedent for assessing

specific jurisdiction in a case like this one is *Calder*.  *See Clemens*, 615 F.3d at 379.  The Fifth

Circuit reads *Calder* to require that the forum be the "focal point" of the challenged publication,

such that "(1) the **subject matter** of and (2) the **sources** relied upon for the article were in the

forum state."  *Fielding*, 415 F.3d at 426 (emphasis added) (citing *Revell*, 317 F.3d at 474 & n.48).

Butowsky does not fully address this test.  Instead, he claims Coaston "wrote about events in

Texas," Dkt. 226 at 2, 4-5 (quoting Dkt. 207 ¶¶ 87-93), but the portions of the Third Amended

Complaint that Butowsky cites refer to Coaston's reporting on lawsuits filed in Washington, D.C.

or New York, or to events outside of Texas.[1]  Texas is not mentioned in the articles, and none of

the reporting is from Texas.  Dkt. 221-1 ¶ 8.  Thus, under binding Fifth Circuit precedent,

Butowsky cannot establish *Calder* jurisdiction over the Vox Media Defendants.

> **(a)    *Walden* supports the Fifth Circuit's "subject and sources" analysis.**

Butowsky argues, however, that the *Calder* test repeatedly applied by the Fifth Circuit has

---

[1] *Compare* Dkt. 207 ¶¶ 87-93 (referring to statements like "the Riches' story isn't just about conspiracy theorists – it's about a conspiracy of Fox News contributors who concocted a lie while purporting to be trying to find Seth's killer"), *with* Dkt. 223-2 at 3-4 (containing quoted sentence between statements about how "emotional distress claims are incredibly difficult to prove in court" and "[t]he lawsuit alleges a conspiracy to create 'fake news'").

been undermined by the Supreme Court's decision in *Walden*.  Dkt. 135 at 2-6.  This is inaccurate.

*Walden* did not overturn *Calder*, nor is it inconsistent with the Fifth Circuit's application of *Calder*.

*Walden* was not a defamation case—the plaintiff in *Walden* sued in Nevada, where he

lived, for alleged Fourth Amendment search-and-seizure violations that occurred in Georgia,

where he was searched.  *Walden*, 571 U.S. at 281-82, 288-89.  The Ninth Circuit had held that the

defendant's act of making a statement he knew would affect persons in the forum state meant that

he had expressly aimed his conduct at the forum.  *Id.* at 282.  The Supreme Court reversed, finding

mere knowledge that the effects of an intentional tort will be felt in the plaintiff's home state is

insufficient.  *Id.* at 289.  The Supreme Court distinguished *Calder*, noting that the defendants in

*Calder* had made phone calls to the forum state and had written an article about the plaintiff's

forum-based activities.  *Id.* at 287 (citing *Calder*, 465 U.S. at 788-89).  This distinction mirrors the

Fifth Circuit's focus on the same types of contacts to assess whether jurisdiction is proper under

*Calder*.[2]  *See Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 426; *Revell*, 317 F.3d at 474.

No case holds that *Walden* overruled *Calder* or undermined the Fifth Circuit's "subject and

sources" test.  To the contrary, courts—including Butowsky's cited cases—have interpreted

*Walden* as narrowing *Calder*.  *See, e.g.*, *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d

96, 103 (5th Cir. 2018) (noting *Walden* clarified and narrowed *Calder*'s "effects" test).  In *Curry*

*v. Revolution Laboratories, LLC*, which is not a defamation case, the Seventh Circuit held *Walden*

"confirmed that the inquiry into specific jurisdiction has not changed"—it focuses on the

*defendant's* contacts with the forum.  949 F.3d 385, 397 (7th Cir. 2020).[3]  *Estate of Klieman v.*

---

[2] *Walden* also cited *Keeton* for the straightforward proposition that an intentional tort occurs where the harm is felt.  *Id.* at 288 (quoting *Keeton*, 465 U.S. at 777).  But, as discussed above, *Keeton*, does not apply because it involved physical delivery of print copies.

[3] The Seventh Circuit has also held that publication on a website and knowledge of a plaintiff's forum residence are insufficient to support jurisdiction under *Walden*.  *Advanced Tactical*

*Palestinian Authority*—also not a defamation case—found *no* jurisdiction, noting *Walden* rejected

allowing "a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis."[4]

*Walden* supports the Fifth Circuit's "focal point" test; Butowsky is wrong to argue otherwise.

**(b)    *TV Azteca* does not undermine the Fifth Circuit's "subject and sources" test.**

Butowsky is also wrong to rely on the Texas Supreme Court's decision in *TV Azteca v.*

*Ruiz*, 490 S.W.3d 29, 48-49 (Tex. 2016).  Dkt. 226 at 5-7.  Even if *TV Azteca* were inconsistent

with Fifth Circuit precedent, that Fifth Circuit precedent would be binding on this Court on this

federal due process issue.  *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir.

1980)  (holding Texas Supreme Court's minimum contacts analysis, a federal due process issue,

is not binding on federal court because "the federal courts are not bound by state court

determinations of what the Constitution requires").  And there is nothing inconsistent between *TV*

*Azteca* and Fifth Circuit precedent, especially as it relates to online defamation cases.  *TV Azteca*

involved the special jurisdictional considerations that apply to television broadcasts in border

regions, where a broadcast signal originates in one jurisdiction and is received in the neighboring

jurisdiction.  490 S.W.3d at 38, 52.  *TV Azteca* expressly stated that it was not deciding how Texas

courts should determine specific jurisdiction in an online defamation case, and it held that the

availability of the broadcast in the forum state—even when combined with knowledge that harm

---

*Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014) ("[I]f having an interactive website were enough . . . there is no limiting principle—a plaintiff could sue everywhere. [That] would violate the principles on which *Walden* and *Daimler* rest.").

[4] 923 F.3d 1115, 1125 (D.C. Cir. 2019), *cert. granted, judgment vacated sub nom. Estate of Klieman v. Palestinian Auth.*, No. 19-741, 2020 WL 1978929 (U.S. Apr. 27, 2020); *see also Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 918-19 (6th Cir. 2019) (emphasizing that, even after *Walden*, courts should ask, as in *Calder*, if the defendants' actions  were "expressly aimed" at the forum, as the "focal point" of the defendants' conduct, and finding jurisdiction in fraud case over defendant who built relationship with forum resident and communicated with him in the forum thousands of times for over a year).

7

would be felt in the forum—is insufficient to support specific jurisdiction.  *Id.* at 45-46.

Nor are Vox Media's and Coaston's contacts in this case analogous to the contacts the Texas Supreme Court found sufficient in *TV Azteca.*  Dkt. 226 at 7 (citing Vox Media's Austin office and 19 Texas employees, *Vox*'s national publication, and the 6% of page views originating from Texas).  In *TV Azteca*, the court found personal jurisdiction based on defendants' "physically 'enter[ing] into' Texas to produce and promote their broadcasts," including the particular program at issue, called *Ventaneando*, during the time when it aired the allegedly-defamatory stories.  490 S.W.3d at 49-50.  And the individual-defendant journalist who reported the allegedly-defamatory statements physically traveled to Texas "to promote her books about [*Ventaneando*], and to Dallas to host a live broadcast of *Ventaneando*."  *Id.* at 50.  The court also noted that the defendants "had over 1.5 million viewers in South Texas" and admitted that *Ventaneando* was "one of the most successful and influential programs in Mexico, the United States, and other Latin American countries." *Id.*  By contrast, Vox Media's Austin and Texas employees had no connection to the *Vox* Articles.  Each Texas employee has sworn that he or she "had no involvement in the development or publication" of the *Vox* Articles and was "not involved in the newsgathering, writing or editorial process" for those Articles.  *See* Dkts. 221-6 – 221-20 (declarations of Vox Media employees).  In fact, many of them do not even work on content for *Vox*, but for other Vox Media publications like Polygon.com,[5] or on non-editorial functions like software development and advertising.[6]  *TV Azteca* thus could not overturn the Fifth Circuit's binding "subject and

---

[5] *See, e.g.*, Dkt. 221-10 ¶ 2 (Plante Decl.: Editor in Chief of Vox Media's Entertainment and Gaming publication); Dkt. 221-11 ¶ 2 (Widner Decl.: Editor of Curbed Austin, about Austin real estate); Dkt. 221-12 ¶ 2 (Russell Decl.: Associate Editor of Eater Austin); Dkt 221-7 (McCarthy Decl.: Editor of Eater Dallas and Eater Houston).

[6] *See, e.g.*, Dkt. 221-13 ¶2 (Bakst Decl.: managing Vox Media's human resources and recruiting teams).

sources" test, nor does it support specific jurisdiction over the Vox Media Defendants.

### 3.      Butowsky offers no basis to support specific jurisdiction over Coaston.

Even if Butowsky could identify a basis for exercising specific jurisdiction over Vox Media

(he cannot), he offers no basis as to Coaston.  Like the defendant in the Fifth Circuit's most recent

online defamation case, *Herman v. Cataphora*, Coaston's statements were published on a public

website and did not focus on the forum.  *Herman*, 730 F.3d at 465-66.  Similarly, just as the

*Herman* court noted that *Above the Law* did not have a disproportionately high readership in the

forum, the undisputed evidence shows that www.vox.com does not have a disproportionately high

Texas readership.  Only approximately 6% of the page views for the *Vox* Articles were from Texas

readers.  Dkt. 221-4 at ¶ 6.  Thus, just as the Fifth Circuit found no specific jurisdiction over the

author in *Herman*, Coaston is not subject to specific jurisdiction here.[7]

Further factual development will not change this analysis.  Given several opportunities to

amend his complaint, Butowsky resorts to the implausible assertion that Coaston must have known

every detail of each lawsuit she covered—including that Butowsky resided in Texas.  Dkt. 226 at

8-9; *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d

587, 615 (N.D. Tex. 2014) (courts need not credit conclusory allegations).  Yet, even if this Court

assumes that Coaston read every line of every filing in every case she referenced in the *Vox*

Articles, that establishes (at best) constructive knowledge that Butowsky lives in Texas.  And the

Fifth Circuit has twice held that even *actual* knowledge of a plaintiff's residence is not sufficient

to establish personal jurisdiction.  *See Clemens*, 615 F.3d at 380; *Herman*, 730 F.3d at 466.  The

---

[7] Texas's 8.75% share of the U.S. population shows the articles *lacked* a disproportionately high Texas readership, with 6% of page views. Dkt. 226 at 7. This case is like *Herman*, 730 F.3d at 466, where *Above the Law* lacked a disproportionately high readership in Louisiana; not like *Calder*, where twice as many copies of the publication sold in California as in other states, 465 U.S. at 785.

issue is not whether the plaintiff's activities occurred in the forum, but whether the defendant's statements focused on the forum. *Herman*, 730 F.3d at 465 (statements "never mentioned Louisiana").

> **C.      Butowsky will not be prejudiced by having to litigate any claims against the Vox Media Defendants in Washington, D.C., where he is now litigating part of this case.**

Butowsky fails to identify any Texas interest in adjudicating these claims against out-of-state defendants who reported on out-of-state events.[8]  If Butowsky genuinely wishes to litigate his frivolous claims, he should do so in Washington, D.C., where some of this case is already being litigated.  *See* Dkt. 218-1.

## CONCLUSION

The Vox Media Defendants respectfully request that the Court grant their Motion to Dismiss Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(2).

---

[8] *Epstein v. Gary Television, Inc.*, cited by Butowsky, followed *Calder*, distinguishing mere online publication and finding jurisdiction when a reporter "interviewed [p]laintiff during a phone call to Texas," researched Texas's recording consent laws, and sent the broadcast to a Texas TV station. 474 F. Supp. 2d 835, 841-42 (W.D. Tex. 2007).

Respectfully submitted,

/s/      *Marc A. Fuller*
Thomas S. Leatherbury
State Bar No. 12095275
Marc A. Fuller
State Bar No. 24032210
Megan M. Coker
State Bar No. 24087323
Devin L. Kerns
State Bar No. 24110081
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7792
tleatherbury@velaw.com
mfuller@velaw.com
megancoker@velaw.com
dkerns@velaw.com

***Attorneys for Defendants***
***Vox Media & Jane Coaston***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of May, 2020, a true and correct copy of the foregoing document was served via e-filing on all counsel of record.

/s/    *Marc Fuller*
Marc Fuller

11