# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **EDWARD BUTOWSKY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO.  4:19-CV-00180-ALM-KPJ** |
| | § | |
| **MICHAEL GOTTLIEB, *et al.*,** | § | |
| | § | |
| **Defendants.** | | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are the following Motions:

(1) Defendants Anderson Cooper ("Cooper"), Gary Tuchman ("Tuchman"), Kayvon Oliver Darcy ("Darcy"), and Tom Kludt's ("Kludt") (collectively, "CNN Individual Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Personal Jurisdiction ("CNN Individual Defendants' Motion") (Dkt. 220), to which Plaintiff Edward Butowsky ("Plaintiff") filed a response (Dkt. 228), and CNN Individual Defendants filed a reply (Dkt. 236);

(2) Defendants Vox Media, Inc. ("Vox") and Jane Coaston's ("Coaston") (together, "Vox Defendants") Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction ("Vox Defendants' Motion") (Dkt. 221), to which Plaintiff filed a response (Dkt. 226), and Vox Defendants filed a reply (Dkt. 234); and

(3) Defendant Alan Feuer's ("Feuer") Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction ("Feuer's Motion") (Dkt. 222), to which Plaintiff filed a response (Dkt. 230), and Feuer filed a reply (Dkt. 232).[1]

The Court heard oral argument on the Motions. *See* Dkt. 247. Upon review of the pleadings, oral argument, and relevant law, the Court recommends that CNN Individual Defendants' Motion (220), Vox Defendants' Motion (Dkt. 221), and Feuer's Motion (Dkt. 222) be **GRANTED.**

---

[1] The Court will refer to CNN Individual Defendants' Motion, Vox Defendants' Motion, and Feuer's Motion collectively as the "Motions." The Court will refer to CNN Individual Defendants, Vox Defendants, and Feuer collectively as "Defendants."

# I.    **BACKGROUND**

Plaintiff's claims arise out of press coverage regarding several lawsuits involving Plaintiff and others in New York and Washington, D.C. *See* Dkt. 207. Specifically, Plaintiff alleges Defendants wrote or published defamatory articles and broadcasts about Plaintiff. *See id.* at 37–48.

Plaintiff is a citizen of Texas and resides within the Eastern District of Texas. *See id.* at 4. Plaintiff acknowledges that no Defendant is a resident of Texas. *See id.* at 4–7.

Defendant Cooper is a citizen of New York. *See id.* at 5. Plaintiff alleges the Court has jurisdiction over Cooper because he sold tickets for at least two live performances in Texas with Andy Cohen[2] and "has a vested financial interest in expanding his program[, *Anderson Cooper 360,*] into all states, including Texas." *Id.* Plaintiff further alleges the Court has jurisdiction over Cooper because his program has "thousands of viewers in Texas, and he seeks to expand his audience there in order to sell more advertising there." Dkt. 207 at 5.

Defendant Tuchman is a citizen of Georgia. *See id.* at 6. Plaintiff alleges jurisdiction is proper over Tuchman because he "knew that [Plaintiff] lived and worked in Texas because CNN had previously and repeatedly reported that [Plaintiff] lived and worked in Texas." *Id.*

Defendant Darcy is a citizen of New York. *See id.* Plaintiff alleges the Court has jurisdiction over Darcy because he "knew that [Plaintiff] resided in Texas because [he] had previously described him as a 'wealthy Texas businessman.'" *Id.*

Defendant Kludt is a resident of New York. *See id.* Plaintiff alleges the Court has jurisdiction over Kludt because prior to the video at issue, Kludt "wrote a profile of [Plaintiff] that

---

[2] It is undisputed that Cooper's Texas performances were wholly unrelated to Plaintiff. *See* Dkt. 220-3 at 1–2. Plaintiff conceded at the Hearing that the Court does not have general jurisdiction over Cooper. Accordingly, Plaintiff abandoned his argument that Cooper's two live performances with Andy Cohen establish jurisdiction over Cooper in this matter. *See* Dkt. 247.

noted [Plaintiff] started a wealth management firm 'in the Dallas area.'" Dkt. 207 at 6. Plaintiff further alleges that Kludt "knew that [Plaintiff] was a Texas resident as of 2017 because he cited [Plaintiff's] website and a lawsuit against [Plaintiff] in the 2017 profile, both of which reference the fact that [Plaintiff] lives in Texas and operates his business in Texas." *Id*.

Plaintiff alleges Defendant Vox is a media company headquartered in New York. *See id.* at 7. Plaintiff alleges the Court has jurisdiction over Vox because it publishes online and is "targeted to a national audience." *Id*. Plaintiff further alleges Vox "operates an office in Austin, Texas and employs 19 people in Texas."[3] *Id*.

Defendant Coaston is a citizen of Washington, D.C. *See id*. Plaintiff alleges jurisdiction is proper over Coaston because she "knew [Plaintiff] was a resident of Texas when she targeted [Plaintiff]." Dkt. 207 at 7. Plaintiff further alleges the lawsuits Coaston wrote about "mention the fact that [Plaintiff] is a Texas resident, and approximately 6 percent of the 'clicks' on Defendant Coaston's stories were from Texas residents." *Id*.

Defendant Feuer is a citizen of New York. *See id*. at 7. Plaintiff alleges the Court has jurisdiction over Feuer because he "knew [Plaintiff] was a resident of Texas when he targeted [Plaintiff]." *Id*. Plaintiff further alleges "the very lawsuit [Feuer] wrote about . . . mentions the fact that [Plaintiff] is a Texas resident."

Plaintiff filed this action on March 12, 2019, alleging defamation, business disparagement, malicious prosecution, civil conspiracy, civil rights violations, and violations of New York Judiciary Law § 487 against twenty-two Defendants. *See* Dkt. 1. On March 3, 2020, the Court held a hearing regarding Plaintiff's Motion for Leave to File Supplemental Complaint (Dkt. 192) and

---

[3] Plaintiff conceded at the Hearing that the Court does not have general jurisdiction over Vox, and Vox provided the Court with affidavits of all of its Texas employees stating that they did not work on the articles at issue in this suit. Thus, at the Hearing, Plaintiff confirmed abandonment of his argument that Vox's Texas office and employees support a finding of jurisdiction over Vox in this matter. *See* Dkt. 247.

deficiencies in the parties' briefing on the pending motions to dismiss. *See* Minute Entry on March 3, 2020. On March 4, 2020, the Court issued an Order (Dkt. 204) granting Plaintiff's Motion for Leave to File Supplemental Complaint and denying as moot the pending motions to dismiss. On March 11, 2020, Plaintiff filed his Third Amended Complaint (Dkt. 207), and on April 1, 2020, Defendants filed the Motions. *See* Dkts. 220, 221, 222. The Court heard oral argument on the Motions on June 10, 2020 (the "Hearing"). *See* Dkt. 247.

## II.      LEGAL STANDARD

Rule 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the defendant. *Holmes v. New Logic Business Loans Inc.*, 2015 WL 12748311, at *1 (E.D. Tex. Oct. 7, 2015); FED. R. CIV. P. 12(b)(2). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden." *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003)); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). However, the Court need not "credit conclusory arguments, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction. First, "the court must determine whether the forum state's long-arm statute confers personal jurisdiction

over the defendant," and second, the court must establish "whether the exercise of jurisdiction is consistent with due process under the United States Constitution." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 477 (E.D. Tex. 2019) (Mazzant, J.); *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Texas long-arm statute extends "to the constitutional limits;" thus, the Court need only consider "whether exercising personal jurisdiction over the defendant offends due process." *Clemens*, 615 F.3d at 378 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)). The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a non-resident defendant when the defendant (a) has "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (b) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id*.

## III.    ANALYSIS

The Court begins by analyzing whether its exercise of personal jurisdiction over the non-resident Defendants satisfies due process. First, the Court will consider whether minimum contacts have been established. Second, if minimum contacts are found, the Court will consider whether the exercise of jurisdiction over Defendants satisfies fair play and substantial justice. *See, e.g., Cunningham,* 359 F. Supp. 3d at 477.

Minimum contacts may give rise to either general or specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction exists where the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Specific jurisdiction arises where the defendant's contacts with

the forum "arise from, or are directly related to, the cause of action." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

### A. GENERAL JURISDICTION

In order for a court to have general jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must be so continuous and systematic that the defendant is "essentially at home" in the forum state. *See Daimler AG*, 571 U.S. at 137. The paradigm state in which an individual defendant is "at home" is the state of his domicile. *See id.* Domicile is generally the state in which the non-resident defendant lives and works, though courts also consider factors including "where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *See Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996). Generally, a corporation's domicile "falls into two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020). It is "incredibly difficult" to establish general jurisdiction in a forum other than the one in which a defendant is domiciled. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). A non-resident defendant's contacts with the forum state will only support a finding of general jurisdiction if the contacts are so substantial that the defendant is essentially at home in that state. *See Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437, 448 (1952).

In his Third Amended Complaint, Plaintiff generally asserts that the Court has jurisdiction over Defendants. See Dkt. 207 at 4. In his briefing on previous motions to dismiss before the Court, Plaintiff argued that the Court had both general and specific jurisdiction over Defendants. *See* Dkts. 135, 137, 139. In his response to the Motions, Plaintiff is silent as to general jurisdiction.

*See* Dkts. 226, 228, 230. At the Hearing, Plaintiff conceded that the Court does not have general jurisdiction over Defendants. *See* Dkt. 247.

Consistent with Plaintiff's concession, the Court finds general jurisdiction is not proper over any Defendant named herein. CNN Individual Defendants, Coaston, and Feuer do not live or work in Texas, do not own property in Texas, do not regularly transact business in Texas, and do not vote, file taxes, or hold any professional licenses in Texas. *See* Dkt. 220-2 at 1–2; Dkt. 220-4 at 1–2; Dkt. 220-5 at 1–2; Dkt. 220-6 at 1–2; Dkt. 221 at 1–2; Dkt. 222-1 at 1–2. Lacking these connections, it cannot be said that CNN Individual Defendants, Coaston, and Feuer are at home in Texas. *See Daimler AG*, 571 U.S. at 137.

While Plaintiff alleges that Cooper has transacted business through his two live performances in Texas, limited and infrequent business contacts such as Cooper's limited speaking engagements do not constitute contacts with Texas "so systematic and continuous" as to give rise to general jurisdiction. *See Helicopteros Nacionales*, 466 U.S. at 416 (finding no general jurisdiction over company whose president traveled to Texas for contract negotiations, sent employees to training in Texas, accepted checks from Texas purchasers, and bought materials from Texas sellers); *see also Chicky Tackle, LLC v. Vallentine*, No. 6:18-CV-00063-RWS, 2018 WL 4286186, at *3 (E.D. Tex. Sept. 7, 2018) (no general jurisdiction over fishing tournament organizer who hosted annual tournament in Texas); *Willshire v. HK Mgmt.*, No. CIV.A. 3:04-CV-0090B, 2004 WL 2974082, at *2 (N.D. Tex. Dec. 16, 2004) (no general jurisdiction over corporation that occasionally scheduled Aerosmith concerts in Texas). The Court finds these brief and infrequent appearances in Texas are not such that Cooper is essentially at home in Texas, and thus, subject to general jurisdiction in the state. *See Daimler AG*, 571 U.S. at 137.

Likewise, the facts as pled in the Complaint do not establish that the Court has general jurisdiction over Vox. As conceded by Plaintiff, Vox is neither headquartered nor incorporated in the state of Texas. *See* Dkt. 101 at 7; Dkt. 107 at 6. While Vox maintains a small office and some employees within the state, no facts have been alleged to support a finding that the contacts are so substantial as to support a finding of domicile in Texas. *See Daimler AG*, 571 U.S. at 139 (finding that the California court did not have jurisdiction over the defendant corporation with multiple California-based facilities and substantial sales in California because its contacts were not so "continuous and systematic" as to render the defendant at home in California). Thus, the Court concludes it may not exercise general jurisdiction over Vox.

## B.  SPECIFIC JURISDICTION

Specific jurisdiction exists when a nonresident defendant has purposefully directed contacts at the forum state and the alleged injury arises out of or relates to those contacts. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). The relevant contacts are those the defendant himself creates with the forum state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Clemens*, 615 F.3d at 379. Only "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there" are relevant for this analysis. *Walden*, 571 U.S. at 285.

Minimum contacts sufficient to confer specific jurisdiction exist when "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Clemens*, 615 F.3d at 379*; Panda Brandywine*, 253 F.3d at 869. A defendant may reasonably anticipate being haled into court in the forum state when he "purposely avails himself of the privilege of conducting activities with the forum [s]tate." *Clemens,* 615 F.3d at 379.

8

In a defamation case where the plaintiff alleges specific jurisdiction based on allegedly defamatory remarks published through the media, "the issue narrows to whether [the publication of the allegedly defamatory remarks] constituted purposeful availment such that [the defendant] could have reasonably anticipated being haled into a Texas court as a result of [the defendant's] statements." *See id*. "Specific jurisdiction for a suit alleging the intentional tort of libel exists for (1) a publication with adequate circulation in the state, [*see*] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984), or (2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there." *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 425 (5th Cir. 2005).

As applied to the author of an allegedly defamatory article, the test for "purposeful availment" is set forth in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). *See Fielding*, 415 F.3d at 425. *Calder* confers jurisdiction over an author who "aims" an article at the forum state knowing the "effects" of the article will be felt in the forum state. *See Clemens*, 615 F.3d at 379; *Fielding,* 415 F.3d at 425; *Calder*, 465 U.S. at 789–90. In this Circuit, when the author's sole relevant contact with the forum state is the published article, "the plaintiff seeking to assert specific personal jurisdiction . . . [must] show (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Clemens*, 615 F.3d at 380 (internal quotations omitted) (citing *Revell,* 317 F.3d at 474 n.48). The "subject" prong of this test requires that the plaintiff's activities in the forum state or the forum state itself is a "focus" of the article. *See Herman v. Cataphora, Inc.,* 730 F.3d 460, 465 (5th Cir. 2013*); Clemens*, 615 F.3d at 380; *Fielding,* 415 F.3d at 426–27. The "sources" prong of the test analyzes whether the article relied on sources from within the forum state that provided new and substantial disclosures or were more than marginally important to the article's focus. *See Fielding*, 415 F.3d at 426.

1. **U.S. Supreme Court and Fifth Circuit Precedent**

In response to each of the Motions, Plaintiff argues that Defendants "rely heavily on various Fifth Circuit cases interpreting *Calder v. Jones*, 465 U.S. 783 (1984), but all of those cases predate" *Walden v. Fiore*, 571 U.S. 277 (2014). Dkt. 226 at 2; *see* Dkt. 228 at 3; Dkt. 230 at 2. At the Hearing, Plaintiff clarified his position, arguing that *Walden* implicitly overruled the Fifth Circuit's interpretation of *Calder*. *See* Dkt. 274. Plaintiff further argues that other circuits' opinions suggest *Walden* clarified *Calder* in such a way that the Fifth Circuit's "subject and sources" interpretation of *Calder* is no longer good law. *See id*.; Dkt. 226 at 2–4. Specifically, Plaintiff argues that, after *Walden*, "[t]he 'crux' of *Calder*, and the crux of the Court's basis for jurisdiction over [Defendants], is the fact that the media defendants directed an intentional tort into another state, where [Plaintiff] lived and worked." *Id*. at 3. Thus, Plaintiff argues that under *Walden*'s clarification of *Calder*, a defendant who allegedly defamed a plaintiff could reasonably be haled into court wherever the allegedly defamed plaintiff resides. *See* Dkt. 274.

In *Calder v. Jones*, the Supreme Court held that the defendant writer and editor of an allegedly defamatory magazine article were subject to personal jurisdiction in California due to the defendants' conduct related to California. *See Calder*, 465 U.S. at 789. Specifically, the Court noted that the allegedly defamatory article "was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id*. at 788–89. The Court further noted that the magazine had its largest circulation in California and stated that "[i]n sum, California is the focal point both of the story and of the harm suffered." *Id*. at 789–90. Thus, the Court held that the defendants "expressly aimed" their allegedly tortious conduct at California, such that jurisdiction was proper over the defendants in California. *Id*.

After *Calder*, the Fifth Circuit interpreted *Calder*'s test for specific jurisdiction in defamation claims in a line of cases beginning with *Revell v. Lindov*. *See Revell*, 317 F.3d at 467. In *Revell*, the Fifth Circuit held that, under *Calder*, the district court did not have jurisdiction over an out-of-state defendant who published allegedly defamatory information about the plaintiff because the article contained no reference to Texas or the plaintiff's activities in Texas, and was not "expressly aimed" at Texas as distinguished from other states. *See id.* at 473. The Fifth Circuit concluded by holding that "the sources relied upon and activities described in an allegedly defamatory publication should in some way connect with the forum if *Calder* is to be invoked." *Revell*, 317 F.3d at 474.

Three years later, in *Fielding v. Hubert Burda Media, Inc.*, the Fifth Circuit again interpreted *Calder*'s "effects" test. *See Fielding*, 415 F.3d at 425–28. In *Fielding*, the Fifth Circuit referred back to its *Revell* decision, holding: "to exercise specific jurisdiction in a libel action, the 'aim' of the plaintiff under the *Calder* test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Id.* at 426 (citing *Revell*, 317 F.3d at 474 & n.48). The Fifth Circuit concluded that the district court did not have jurisdiction over the defendant, who had published an allegedly defamatory article that focused on the plaintiff's activities in Germany, had very little circulation in Texas, and relied on Texas sources only for biological and background information. *See id.* at 426–27.

In 2010, the Fifth Circuit again interpreted *Calder* by applying its "subject and sources" test from *Revell* to determine whether a district court had specific jurisdiction over a defendant in a defamation case. *See Clemens*, 615 F.3d at 379–80. In *Clemens*, the Fifth Circuit held that the district court did not have jurisdiction over the non-resident defendant whose allegedly defamatory statements concerned the plaintiff's out-of-state activities and were not specifically directed to the

residents of Texas, despite the defendant's knowledge that the plaintiff resided within the forum state. *See id*. at 380.

Subsequently, in *Herman v. Cataphora, Inc.*, the Fifth Circuit, citing its decisions in *Fielding* and *Clemens*, held: "Even if the majority of the claimed harm is felt in the forum state, this court has declined to find personal jurisdiction when the statements focus on activities and events outside the forum state." *Herman*, 730 F.3d at 465. In Herman, the Fifth Circuit held that the defendant's allegedly defamatory statements focused on the plaintiffs' involvement and activities related to a lawsuit in California, despite the lawsuit arising out of a contract entered for services in the forum state of Louisiana. *See Herman*, 730 F.3d at 465. While the plaintiffs made a *prima facie* showing that harm would be suffered in the forum state, the Fifth Circuit held that the district court lacked jurisdiction over the defendants because the statements did not focus on Louisiana and were not directed specifically at Louisiana residents. *See id*. at 466.

One year after *Herman*, in *Walden v. Fiore*, the Supreme Court held that a district court in Nevada lacked personal jurisdiction over a Georgia police officer who allegedly wrongfully seized money from Nevada residents in a Georgia airport. *See Walden*, 571 U.S. at 279. In so holding, the Supreme Court rejected the Ninth Circuit's finding that the defendant "expressly aimed" his submission of an allegedly false affidavit at Nevada by submitting the affidavit "with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id*. at 282.

As part of its analysis, the Supreme Court discussed *Calder. See id*. at 286–88. In illustrating how the district court in *Calder* had jurisdiction, the Supreme Court stated:

> A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.
>
> *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, illustrates the application of these principles. . . .

We held that California's assertion of jurisdiction over the defendants was consistent with due process. Although we recognized that the defendants' activities "focus[ed]" on the plaintiff, our jurisdictional inquiry "focuse[d] on 'the relationship among the defendant, the forum, and the litigation.'" *Id.,* at 788, 104 S.Ct. 1482 (quoting *Shaffer,* 433 U.S., at 204, 97 S.Ct. 2569). Specifically, we examined the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story.

We found those forum contacts to be ample: The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. 465 U.S., at 788–789, 104 S.Ct. 1482. "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Id.,* at 789, 104 S.Ct. 1482. Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Ibid.*

The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. . . .  In this way, the "effects" caused by the defendants' article—*i.e.,* the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California,* not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 571 U.S. at 286–88.

The Court finds that *Walden* is not inconsistent with the Fifth Circuit's approach to specific jurisdiction for defamation claims. While *Walden* states that the reputation-based effects of a libel tort can connect a defendant with a forum state, the Supreme Court also emphasized the importance of the defendant's additional forum contacts in *Calder* that "gave the article a California focus." *Walden*, 571 U.S. at 288. Interpreting *Calder* to allow jurisdiction in a defamation case wherever the plaintiff suffers injury, as argued by Plaintiff, would render analysis of the defendant's numerous forum contacts related to the defamatory article—as highlighted in both *Calder* and *Walden*—superfluous. Thus, the Court finds that the Fifth Circuit's interpretation of *Calder* in

13

*Revell* and its progeny is consistent with *Walden*, as *Walden* does not afford specific jurisdiction over a defendant in a defamation case simply wherever a plaintiff can show injury.

Plaintiff cites to circuits outside of the Fifth Circuit in arguing that *Walden* implicitly overruled *Revell* and its progeny.  *See* Dkt. 226 at 3–4; Dkt. 228 at 4–5; Dkt. 230 at 3–4. However, these cases do not lead to such a conclusion. Rather, they highlight *Calder*'s emphasis on the defendant's intentional contacts with the forum, such as use of forum sources and discussion of the plaintiff's forum activities. *See Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 397 (7th Cir. 2020) (listing the *Calder* defendant's forum contacts); *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 918 (6th Cir. 2019) (same); *Estate of Klieman v. Palestinian Authority*, 923 F.3d 1115, 1125 (D.C. Cir. 2019) ("In glossing *Calder*'s 'effects test,' the *Walden* Court stressed defendants' intentional contacts with the forum.").

The Eastern District of Texas has similarly interpreted *Walden*'s clarification of *Calder*. In *Allergan, Inc. v. Actavis, Inc.*, the court stated:

> In *Walden,* the Supreme Court reiterated that the jurisdictional inquiry is "focused on the relationship among the defendant, the forum and the litigation." *Id.* at 1123 (internal citations and quotations omitted). The Court further warned that where the only basis for an assertion of specific personal jurisdiction was "defendant's relationship with a plaintiff or third party," then such exercise is inconsistent with the requirements of due process. *Id.* Applying these principles, the Court concluded that the Nevada district court could not exercise jurisdiction over a Georgia police officer (Walden) who had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Walden,* 134 S.Ct. at 1124.
>
> The Court reconciled its *Walden* holding with its prior decision in *Calder,* by explaining that, "the crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 1123–24. Under *Calder*, as now clarified in *Walden,* "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

*Allergan, Inc. v. Actavis, Inc.*, Case No. 2:14-CV-638, 2014 WL 7336692, at \*5–6 (E.D. Tex. Dec. 23, 2014) (Gilstrap, C.J.).

Additionally, in *Sangha v. Navig8 ShipManagement Private Ltd.*, decided after *Walden*, the Fifth Circuit's analysis of *Walden* and *Calder* is consistent with its analysis in *Revell*. *See Sangha*, 882 F.3d 96 (5th Cir. 2018). In *Sangha*, the Fifth Circuit held that the district court did not have personal jurisdiction over a non-resident corporate defendant who allegedly defamed the resident plaintiff. *See id*. at 99 n.1, 102. Similarly to Plaintiff in this case, the plaintiff in *Sangha* argued that the *Calder* "effects" test allowed the district court to exercise personal jurisdiction over the defendant because it committed an act "expressly aimed at work that [the plaintiff] was performing in and from Texas ports, . . . and the harm, including termination, was felt in Houston." *Id*. at 103. In addressing this argument, the Fifth Circuit held:

> The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum. *Walden*, 134 S.Ct. at 1125. . . . The proper question is not whether [the plaintiff] experienced an injury or effect in a particular location, but whether [the defendant's] conduct connects it to the forum in a meaningful way. [The plaintiff's] presence in the Gulf of Mexico/Port of Houston is largely a consequence of *his* relationship with the forum, and not of any actions [the defendant] took to establish contacts with the forum.

*Id*. at 103–04 (emphasis in original). Accordingly, the Court rejects Plaintiff's argument. The "subject and sources" interpretation of *Calder* employed in *Revell*, *Fielding*, *Clemens*, and *Herman* is the proper test for determining personal jurisdiction in defamation cases and is consistent with *Walden's* analysis of *Calder*.

## 2. *Calder* Subject and Sources Analysis

The Court will now analyze whether the allegedly defamatory publications at issue give rise to personal jurisdiction over each Defendant as laid out in *Revell*.

### a. CNN Individual Defendants

Plaintiff alleges personal jurisdiction is proper over CNN Individual Defendants because "they participated in intentional torts that were designed to hurt the Plaintiff in Texas," and they

knew Plaintiff was a resident of Texas. *See* Dkt. 207 at 4, 6. Specifically, Plaintiff alleges Tuchman made defamatory statements about Plaintiff during Cooper's show, which was broadcast on CNN on March 27, 2018 (the "Tuchman Segment"), and Plaintiff alleges his name was mentioned during Cooper's show. *See id.* at 39–40. Plaintiff alleges Darcy wrote two defamatory articles about Plaintiff that mention him by name (the "Darcy Articles"). *See id.* at 38. Plaintiff alleges Kludt produced a defamatory "propaganda video" that was featured in a CNN web story (the "Kludt Video"). *See id.* at 38–39. Plaintiff alleges Cooper aired the allegedly defamatory Tuchman Segment on his CNN show, and conducted an interview with Michael Gottlieb ("Gottlieb") in which both Cooper and Gottlieb made defamatory statements about Plaintiff and referred to him by name and as a "Texas businessman."[4] *See id.* at 40.

Upon review of the Kludt Video and Tuchman Segment, Plaintiff is never mentioned by name; however, the Kludt Video appears on the same web page as the Darcy Article, which references Plaintiff by name. *See* Dkt. 220-1 at 4, 6, 7.

    i.    *Subject Prong*

Under the facts as pled, the Court cannot exercise specific jurisdiction over CNN Individual Defendants, as Texas is not the focus of the allegedly defamatory publications. To satisfy the *Calder* "subject" prong, the allegedly defamatory communications must focus on the forum state itself and Plaintiff's activities within that state. *See Clemens*, 615 F.3d at 380. Even assuming CNN Individual Defendants knew Plaintiff was a Texas resident, Kludt and Tuchman did not mention Texas or Plaintiff by name in the Kludt Video and Tuchman Segment, but instead, discussed activities taking place in other states, including investigations based in Washington, D.C., and the publication and retraction of news stories by media organizations based in New York and

---

[4] Plaintiff is not bringing a defamation claim against Cooper based on Gottlieb's statements. *See* Dkt. 229 at 7 n.1.

Washington, D.C. While Cooper's interview with Gottlieb and the Darcy Articles contain references to Plaintiff by name, as well as his Texas residency, the interview and Darcy Articles similarly focused on activities taking place in other states, including the filing of lawsuits in New York, investigations based in Washington, D.C., and the publication and retraction of news stories by media organizations based in New York and Washington, D.C.

Plaintiff does not allege that any of CNN Individual Defendants' allegedly defamatory publications have any connection to Texas other than Plaintiff's Texas residency. *See Walden*, 571 U.S. at 290 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."). While Plaintiff argues CNN Individual Defendants' publications focus on Plaintiff's "concoction" of a "conspiracy theory," which is activity that must have occurred in Plaintiff's home state of Texas, the Court is unpersuaded by this argument. Plaintiff's argument that he "concocted" any alleged conspiracy theory in Texas would not necessarily show that the CNN Individual Defendants chose to aim the publications at Texas, as the CNN Individual Defendants either did not know of the Texas connection to this activity or declined to make it a focus of the publications by mentioning Texas in any capacity other than as Plaintiff's residency. *See Fielding*, 415 F.3d at 425. Further, CNN Individual Defendants did not describe any specific activities associated with a "concoction" of a "conspiracy theory" that Plaintiff alleges would have necessarily occurred in Texas. Since Texas was not mentioned in any of CNN Individual Defendants' publications in connection to a "concoction" of a "conspiracy theory," CNN Individual Defendants did not make Texas the focus of the publications sufficient to satisfy the subject prong of a *Calder* analysis. *See Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 425 ("Our Circuit has underscored the importance of the direction of defendants' action in the scheme of purposeful availment."). Hence, Texas is not the focus of any of CNN Individual Defendants'

17

publications under *Calder*. *See Fielding*, 415 F.3d at 427 ("[P]laintiff's mere residence in the forum state is not sufficient to show that the defendant had knowledge that effects would be felt there; a 'more direct aim is required.'") (quoting *Revell*, 317 F.3d at 476).

ii.     *Sources Prong*

Under the sources prong of the *Calder* analysis, Plaintiff does not allege that Cooper, Kludt, or Tuchman relied upon or consulted any Texas source in compiling their video and broadcasts. *See* Dkt. 207 at 38–40. Absent any allegation by Plaintiff to the contrary, the Court concludes that Cooper, Kludt, and Tuchman did not rely upon Texas sources in developing the allegedly defamatory broadcasts and video. Thus, the "sources" prong of the *Calder* analysis is not satisfied as to Cooper, Kludt, or Tuchman.

As to Darcy, Plaintiff alleges that he spoke to Darcy "by telephone and emailed him evidence" prior to the publication of the Darcy Articles; however, Plaintiff alleges Darcy "ignored all of that evidence" in the Darcy Articles. *See id*. at 38. Upon review of the Darcy Articles, each article references an interview with Plaintiff and quotes Plaintiff directly on his thoughts about the pending lawsuits against him. *See* Dkt. 220-1 at 4–5, 9–10, 12–13. Specifically, the first Darcy Article states:

> [Plaintiff] told CNN Tuesday night that he did not "understand this lawsuit at all."
>
> "This whole thing has caused unbelievable damage to my life and my family," he said. "And the idea that somebody has capitalized is ridiculous. It just doesn't make any sense to me."

*Id*. at 5. The second Darcy Article quoted Plaintiff as telling a reporter, "Nobody else in the world would find it remotely interesting except you and CNN." *Id*. at 10. Plaintiff is further quoted as wanting to know "how many more family members" of Seth Rich wanted to sue him. *Id*. In the last Darcy Article, Darcy states the following:

> When previously asked about the lawsuit, [Plaintiff] told CNN he had no idea what Aaron Rich was "talking about" and asked, "I have nothing else to say, other than how many more family members do the Riches have that want to sue me?"

*Id*. at 13.

Under the sources prong, the Court must consider whether "the sources *relied upon* for the article were in the forum state." *Fielding*, 415 F.3d at 426 (emphasis added). In *Fielding*, the Fifth Circuit held that use of forum state sources which "led to no new substantial disclosures and supplied little more than the biographical backdrop for their story's protagonist" were not enough to confer jurisdiction when the subject of the article was the plaintiff's activities outside of the forum state. *Id*. The Fifth Circuit wrote that while forum sources were used in drafting the allegedly defamatory articles, "the clear thrust of the articles," an affair involving a Texas citizen that occurred in Germany, "shows the marginal importance of this Texas research." *Id.* Here, Plaintiff fails to allege that Darcy actually relied on any Texas sources in publishing the Darcy Articles. *See* Dkt. 207 at 38. The one Texas source alleged regarding the Darcy Articles—Plaintiff's own statements[5]—all concern lawsuits in New York and Washington, D.C. *See* Dkt. 220-1 at 5, 10, 13. The Court finds these statements by Plaintiff, similar to the Texas sources in *Fielding*, were "merely collateral to the focus of the articles." *Fielding*, 415 F.3d at 427. Therefore, the sources prong of the *Calder* analysis is not satisfied as to Darcy.

Because the Court finds that Plaintiff has not satisfied the subject or the sources prongs of the *Calder* analysis, and has not alleged facts showing other sufficient minimum contacts between CNN Individual Defendants and Texas, Plaintiff has failed to make a *prima facie* case that CNN Individual Defendants established minimum contacts with Texas.

---

[5] It is unclear to the Court whether these statements made by Plaintiff occurred during Plaintiff's telephone call with Darcy, *see* Dkt. 207 at 38, or if Plaintiff made these statements while appearing on a CNN broadcast, as described in the CNN Individual Defendants' Motion. *See* Dkt. 220 at 10.

b.    <u>Vox Defendants</u>

Plaintiff alleges personal jurisdiction is proper over Vox Defendants because "they participated in intentional torts that were designed to hurt the Plaintiff in Texas," and they knew Plaintiff was a resident of Texas. *See* Dkt. 207 at 4, 6. Specifically, Plaintiff alleges Coaston published defamatory statements about Plaintiff in two articles posted on Vox's website, wherein Plaintiff is mentioned by name. *See id*. at 42–45. Plaintiff alleges Coaston knew Plaintiff was a Texas resident because the lawsuits she wrote about mention his Texas residency. *See id*. at 7.

i.    *Subject Prong*

Even if Coaston knew Plaintiff lived in Texas, an author's knowledge that her article's subject resides in the forum state alone does not establish that Texas is the focus of the article. *See Clemens*, 615 F.3d at 380 (finding Texas was not the focus of the athletic trainer's statements that he injected a Texas-resident athlete with steroids in other states, though the trainer knew the athlete was a resident of Texas, when Texas was not mentioned in the resulting article). The key to purposeful availment pursuant to *Calder* is the defendant's choice—in writing about the forum state—to aim the article at the state. *See Calder*, 465 U.S. at 789; *Fielding*, 415 F.3d at 427. Because Coaston did not mention Texas in her articles, and instead discussed activities taking place in other states, including the filing of lawsuits in New York, investigations based in Washington, D.C., and the publication and retraction of news stories by media organizations based in New York and Washington, D.C., Texas is not the focus of the articles pursuant to *Calder*. *See Fielding*, 415 F.3d at 427.

Similar to his response to CNN Individual Defendant's Motion, Plaintiff argues the Vox Defendants' articles focus on Plaintiff's participation in a "conspiracy theory," which Plaintiff must have done in his home state of Texas. *See* Dkt. 226 at 5. As stated above, the Court is not

persuaded by this argument, as it does not illustrate that Vox Defendants chose to aim the articles at Texas, as Texas is not mentioned in the articles while other states are. *See Fielding*, 415 F.3d at 425. Since Texas was not mentioned in Coaston's articles in any capacity, Vox Defendants did not make Texas the clear focus of the articles sufficient to satisfy the subject prong of a *Calder* analysis. *See Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 425.

ii.     *Sources Prong*

Under the sources prong of the *Calder* analysis, Plaintiff does not allege that Coaston relied upon or consulted any Texas source in compiling her stories. *See* Dkt. 207 at 7. Coaston asserts she did not consult any Texas source. *See* Dkt. 221-1 at 2. Absent any allegation by Plaintiff to the contrary, the Court finds no basis on which to find that Coaston relied upon Texas sources in developing the allegedly defamatory articles. Thus, the "sources" prong of the *Calder* analysis is not satisfied.

Because the Court finds that Plaintiff has not satisfied the subject or the sources prongs of the *Calder* analysis, and has not alleged facts showing other sufficient minimum contacts between Vox Defendants and Texas, Plaintiff has not made out a *prima facie* case that Vox Defendants have minimum contacts with Texas.

c.     Defendant Feuer

In the case at hand, only Feuer's own contacts with Texas, not those of his employer, Defendant The New York Times Company, are relevant to the Court's analysis of whether it may exercise specific jurisdiction over Feuer. *See Clemens*, 615 F.3d at 379.

Similar to the forgoing parties above, Plaintiff alleges personal jurisdiction is proper over Feuer "because Mr. Feuer knew [Plaintiff] was a resident of Texas when he targeted [Plaintiff]," and "[t]he very lawsuit that Mr. Feuer wrote about . . . mentions the fact that [Plaintiff] is a Texas

resident." Dkt. 101 at 7. Notably, at the Hearing, Plaintiff conceded that if *Walden* did not implicitly overrule *Revell* and its progeny (which this Court finds to be true), the Court likely does not have jurisdiction over Feuer. *See* Dkt. 274.

       i.     *Subject Prong*

As discussed above, even assuming Feuer knew Plaintiff lived in Texas, an author's knowledge that his article's subject resides in the forum state is not sufficient to show the author intended the forum state to be a focus of the article when the forum state is not mentioned in the article while other states are. *See Clemens*, 615 F.3d at 380. Instead, to satisfy the *Calder* "subject" prong, the allegedly defamatory article must focus on the forum state itself and Plaintiff's activities within that state. *See Clemens*, 615 F.3d at 380. As Feuer chose not to mention Texas in the article and instead discussed activities taking place in other states, including the filing of lawsuits in New York, investigations based in Washington, D.C., and the publication and retraction of news stories by media organizations based in New York and Washington, D.C., the focus of the article is clearly not Texas or Plaintiff's activities therein. *See Fielding*, 415 F.3d at 427.

       ii.    *Sources Prong*

Under the sources prong of the *Calder* analysis, Plaintiff does not allege Feuer relied upon or consulted any Texas source in compiling his article. *See* Dkt. 207 at 7. Feuer confirms that he did not consult any Texas source. *See* Dkt. 222-1 at 2. Accordingly, the Court finds no basis to find that Feuer relied upon Texas sources in developing the allegedly defamatory articles. Thus, the "sources" prong of the *Calder* analysis is not satisfied.

Because the Court finds Plaintiff has not satisfied the subject or the source prongs of the *Calder* analysis and has not alleged facts showing other sufficient minimum contacts between Feuer and Texas, Plaintiff has not presented a *prima facie* case that Feuer established minimum

contacts with Texas. Thus, Plaintiff has failed to establish specific jurisdiction as to any of the Defendants.

### 3. *Keeton* Adequate Circulation Analysis

Courts may exercise specific jurisdiction over a nonresident defendant in a libel suit when the allegedly libelous publication has adequate circulation within the forum state under *Keeton v. Hustler Magazine*. In *Keeton*, the Supreme Court held that jurisdiction was proper in New Hampshire over a defendant magazine that published an allegedly libelous article nationally because the defendant magazine had "continuously and deliberately exploited the New Hampshire market," and thus, "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Keeton*, 465 U.S. at 781.

a. Defendant Cooper

Plaintiff argues that Cooper "has a vested financial interest in expanding the reach of *Anderson Cooper 360* into all fifty states, including Texas," and "the harm he caused [] Plaintiff is directly related to the fact that his program . . . deliberately reaches the Texas market." Dkt. 228 at 7–8. However, Plaintiff does not allege that Cooper targeted Texas more than any other state under the *Calder* analysis. Plaintiff appears to argue that specific jurisdiction is proper over Cooper under *Keeton v. Hustler Magazine*, due to his status as a producer for *Anderson Cooper 360*. *See* Dkt. 228 at 7–8. The Supreme Court in *Keeton* made clear that its analysis did not apply to individual employees. *See Keeton*, 465 U.S. at 781 n.13 (noting that "each defendant's contacts with the forum State must be assessed individually" and a finding of jurisdiction over the defendant magazine did not lead to an automatic finding of jurisdiction over the individual defendant who was the magazine's publisher, editor, and owner). Other jurisdictions have found that a plaintiff must allege more than just that a defendant hosts a national broadcast or manages a national

broadcasting company in order for a court to have specific jurisdiction under *Keeton*. *See Norman v. B.E.T. Television*, Case No. 2:16-CV-113 RLM, 2016 WL 3881184, at *3–4 (N.D. Ind. July 18, 2016) (holding that the court lacked jurisdiction over the defendant who was a host of a "nationally syndicated talk show" and the defendant who was the president of programming for B.E.T.).[6] Therefore, the Court declines to apply *Keeton*'s test for jurisdiction to Cooper's contacts, as pled here.

b. Defendant Vox

Plaintiff likewise argues that specific jurisdiction is proper because Vox took advantage of the Texas market, and thus, this case is similar to *Keeton v. Hustler Magazine, Inc.* Dkt. 226 at 7. The Fifth Circuit has distinguished between the publication of magazines and rendering an article accessible online. *See Revell*, 317 F.3d at 475 ("[M]ore than simply making the news article accessible to [residents of the forum state] by defendants' posting of the article on their internet sites was needed for assertion of jurisdiction: 'The [defendants] must, through the Internet postings, manifest an intent to target and focus on [forum state] readers.'") (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)). Further, Vox provided undisputed evidence to the Court that approximately six percent of the views on Coaston's articles came from Texas users, which is disproportionately less than Texas' percentage of the total population of the

---

[6] In Plaintiff's responses to the Motions, Plaintiff argues *TV Azteca v. Ruiz*, a Texas Supreme Court case, should control the Court's analysis. *See* Dkt. 226 at 5–7; Dkt. 228 at 6–7; Dkt. 230 at 5–6 (discussing *TV Azteca v. Ruiz*, 490 S.W.3d 29, 48–49 (Tex. 2016)). However, "federal courts are not bound by state court determinations of what the Constitution requires." *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir. 1980). Even if the Court were to analyze whether *TV Azteca* supports a finding of jurisdiction over Cooper under *Keeton*, this case is distinguishable. In *TV Azteca*, the Texas Supreme Court found that jurisdiction over defendant television broadcasters was proper under *Keeton* due to the evidence provided by the plaintiff that the defendants "continuously and deliberately exploited the [Texas] market." *TV Azteca*, 409 S.W.3d at 52. Specifically, the Texas Supreme Court pointed to "[t]he evidence that Petitioners physically 'entered into' Texas to produce and promote their broadcasts, derived substantial revenue and other benefits by selling advertising to Texas businesses, and made substantial efforts to distribute their programs and increase their popularity in Texas." *Id*. No such specific allegations have been made here, as Plaintiff merely alleges that he "has a vested financial interest in expanding the reach of *Anderson Cooper 360* into all fifty states, including Texas," and Cooper made two public appearances in Texas wholly unrelated to the allegedly defamatory articles. Dkt. 228 at 7–8.

country. *See* Dkt. 221-4 at 2; Dkt. 226 at 7. Mere online availability of the articles in Texas does not subject Vox to specific jurisdiction in Texas when, pursuant to *Calder*, the articles themselves do not focus on Texas. *See Revell*, 317 F.3d at 475; *Clemens*, 615 F.3d at 379–80; *Fielding*, 415 F.3d at 425.

### C.  FAIR PLAY AND SUBSTANTIAL JUSTICE

For the reasons set forth above, the Court finds that exercising personal jurisdiction over Defendants would violate traditional notions of fair play and substantial justice. *See Fielding*, 415 F.3d at 427–28 (finding that "focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms" contravenes "traditional notions of fair play"). The fair play and substantial justice factors include: "(1) the defendant's burden; (2) the judicial state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 771 (N.D. Tex. 2007). Forcing Defendants, all non-residents of Texas who have no meaningful contacts with Texas, to defend a lawsuit in Texas when the Court finds that Defendants did not purposefully aim any conduct at Texas as compared to any other state would impose an unjustified and unconstitutional burden on each Defendant. *See id.* at 773 n.5. Thus, the Court finds that exercising personal jurisdiction over Defendants would violate traditional notions of fair play and substantial justice.

### IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that CNN Individual Defendants' Motion (220), Vox Defendants' Motion (Dkt. 221), and Feuer's Motion (Dkt. 222) be **GRANTED.**

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 16th day of July, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE