IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**Edward Butowsky,**

   Plaintiff,

v.

**Michael Gottlieb, et al.,**

   Defendants

Case No. 4:19-cv-00180-ALM-kpj

## PLAINTIFF'S OBJECTION TO MAGISTRATE REPORT

NOW COMES Edward Butowsky, the Plaintiff, objecting to the Report and Recommendation of United States Magistrate Judge (hereinafter "Motion") (Doc. No. 253) as follows:

### Introduction

The Plaintiff does not object to the magistrate's recommendation to dismiss most of the individual defendants for lack of personal jurisdiction, but he does object to the magistrate's recommendations regarding Defendants Vox Media, Inc. and Anderson Cooper.

### Argument

As the Report indicates, "[s]pecific jurisdiction for a suit alleging the tort of libel exists for (1) a publication with adequate circulation in the state, [*see*] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984), or (2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there." Report 9,

quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005). The Court has jurisdiction over Vox Media because it has "adequate circulation in the state" as well as an office and 19 employees in the state. Mr. Cooper, meanwhile, is a business entity in his own right, and he regularly conducts business in Texas. The Report erred by treating him as a run-of-the-mill reporter or employee of a media company.

**1.  The Court has specific jurisdiction over Vox Media because it has adequate circulation in Texas.**

The Court will note that neither The New York Times nor Turner Broadcasting, Inc. (hereinafter "CNN") challenged the Court's jurisdiction, and for good reason. It has long been established that national publication companies, like the New York Times, may be subject to jurisdiction wherever their hard copies are circulated. *See, e.g., Stabler v. New York Times, Co.*, 569 F. Supp. 1131, 1135 (S.D. Tex. 1983). Likewise, national broadcasting companies, like CNN, may be sued in states where they regularly broadcast their content. *See Edy Clover Productions, Inc. v. Nat'l Broad. Co., Inc.*, 572 F.2d 119, 120 (3d Cir. 1978)(copyright infringement). The Report, however, carves out a strange exception for national media companies, like Vox Media, that publish their content solely on the Internet.

Relying primarily on *Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002), the Report concludes that Internet publications should be treated differently from hard-copy publishers and broadcasters, regardless of whether the Internet publishers are targeted to a national audience. *Revell* does not stand for that proposition, however, and it can be readily distinguished from the facts of this case. The Defendant in *Revell* was Columbia

University, and it was sued because of an allegedly defamatory post on an online bulletin board hosted by the university in New York. The outcome of *Revell* was not surprising, as federal courts have long held that local newspapers are not subject to nationwide jurisdiction merely because their publications are also available on the Internet. *See, e.g., Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 215 (D.D.C. 2008) and *Jackson v. California Newspapers P'ship*, 406 F. Supp. 2d 893, 896 (N.D. Ill. 2005). But Vox Media is not a local newspaper publisher, nor is it a university bulletin board. Vox Media and other national online publishers (like *The Daily Beast* and *Yahoo!News*) target readers in every state, just like *The New York Times* and CNN target readers (or viewers) in every state. Under such circumstances, it is arbitrary at best to treat Internet publications so differently from hard-copy publications or broadcasters.

> [T]he reasoning in *Revell* suggests that "the analysis applicable to a case involving jurisdiction based on the Internet ... should not be different at its most basic level from any other personal jurisdiction case." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1073.1 (3d ed.2004); *see also id*. (noting that "[a]lthough the Internet and the other new communications technologies do present some strikingly new factual patterns ..., little substantive doctrine should be affected").

*S. U.S. Trade Ass'n v. Unidentified Parties*, CIV.A. 10-1669, 2011 WL 2457859, at *10 (E.D. La. June 16, 2011). Vox should not be treated any differently from *The New York Times* or *Hustler Magazine* merely because it does not publish hard copies.

Overall, the Report's discussion of personal jurisdiction, as it relates to Vox Media, is surprisingly limited, *see* Report 24-25, particularly since the legal issue is far from settled.

> District courts within the Fourth Circuit are indeed in disagreement on how *Calder's* "effects test" applies to Internet publishers with a national focus, who nonetheless target forum states with state-specific coverage. Moreover, neither the Supreme Court nor the Fourth Circuit has opined on personal jurisdiction regarding online publishers catering to a national audience in the seventeen years since *Young* and *ALS Scan* were decided. *See In re Trump*, 928 F.3d at 369 (citing *Mohawk Indus., Inc.* v. Carpenter, 558 U.S. 100, 110–11 (2009)) ("'[D]istrict courts should not hesitate to certify an interlocutory appeal' under § 1292(b) when a decision 'involves a new legal question or is of special consequence'"). Evidenced by differing approaches taken by district courts within the Fourth Circuit, there is a "substantial ground for difference of opinion" on this question, as understood under § 1292(b).

*Gilmore v. Jones*, 3:18-CV-00017, 2019 WL 4417490, at *6 (W.D. Va. Sept. 16, 2019). The *Gilmore* court had previously concluded that it had personal jurisdiction over the internet publication defendants, despite the fact that none of them had a physical presence in Virginia. *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 645 (W.D. Va. 2019). Given the uncertainty of the law, however, the *Gilmore* court certified the issue for interlocutory appeal to the Fourth Circuit. 2019 WL 4417490, at *1-2.

This case differs somewhat insofar as *Vox's* reporting on Mr. Butowsky was not as targeted at Texas as the *Gilmore* defendants' stories were targeted at events in Virginia. Even so, the case for personal jurisdiction here is considerably stronger than it was in *Gilmore*. As the Court well knows, one of the foremost jurisdictional inquires is whether a defendant has "purposefully availed" itself of the privilege of conducting business in the forum state.

> This circuit applies a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020), quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Compare that quote with the following excerpt from the Third Amended Complaint ("TAC"): "Defendant Vox Media, Inc. operates an office in Austin, Texas and employs 19 people in Texas." TAC ¶21. In the proceedings thus far, Vox Media has tried to muddy the waters by emphasizing that (1) none of those Texas employees worked on the stories about Mr. Butowsky; and (2) none of its Texas employees work for the *Vox* "brand." *See* June 28, 2020 Declaration of Jeff Chin ¶8 (Doc. No. 107-4). Those distinctions are unavailing. Mr. Butowsky is not suing a brand within the company; he is suing the company itself. Vox Media acknowledges that it publishes multiple such brands, *id*. at ¶4, all of which appear to be exclusively online publications. Accordingly, Vox Media is in the business of publishing online content, and it has an office and 19 employees in Texas for that purpose.

    Vox Media "purposefully availed itself of the privileges of conducting [online publishing] activities" in Texas, *E. Concrete*, 948 F.3d at 296, and Mr. Butowsky's causes of action arise from such publishing, regardless of whether any of the Texas employees wrote the specific article. In *Keeton*, for example, there is no record that *Hustler Magazine* employed anyone in New Hampshire, much less that the writer was in New Hampshire, yet its regular distribution there created "minimum contacts" between the magazine company and New Hampshire. 465 U.S. at 774, 104 S. Ct. at 1478. By locating 19 employees in Texas, Vox Media has established "minimum contacts" with

the state as well as a clear intent to target Texas readers. *See Edwards v. Associated Press*, 512 F.2d 258, 267–68 (5th Cir. 1975)(presence of Associated Press employees and de facto office in Mississippi supported exercise of jurisdiction over the Associated Press). It is simply untrue to claim that Vox Media has "no meaningful contacts with Texas." Report, 25.

In an attempt to downplay Vox Media's presence in Texas, the Report notes that "approximately six percent of the views on Coaston's articles from Texas users, which is disproportionately less than Texas' percentage of the total population of the country." Report 24-25. The Report cites no legal authority for the premise that "adequate circulation" requires a defendant's readership to match the forum state's percentage of the total population of the country, and the Plaintiff is not aware of any such authority.

> The Vox Defendants argue that a relatively small portion of their readership is in Texas, but the same was true in *Keeton*, where only a small portion of Hustler magazine's circulation was in New Hampshire. While it may be true that only 6 percent of the "clicks" on Defendant Coaston's stories were from Texas residents, *Vox*'s readership is spread across 49 other states, just like the circulation of *Hustler* magazine in Keeton. According to census estimates available online, *see, e.g.*, https://www.census.gov/quickfacts/TX and https://www.census.gov/quickfacts/fact/table/US/PST045219, the population of Texas was roughly 8.75 percent of the overall U.S. population as of 2018, thus the "click rate" is not far removed from what one would expect for a national publication operating Texas.

Plaintiff's Response in Opposition to Defendants Vox Media, Inc. and Jane Coaston's Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction ("Plaintiff's Response") (Doc. No. 226) 7. Defendant Coaston's March 23, 2018 article had 62,218 total page views, and 3,819 of those views were from Texas. *See* Declaration of Jeff Chin ¶6. Her October 1, 2018 article had 46,968 total page views, 2,790 of them in

Texas. *Id*. Those are not insignificant numbers, and the somewhat-lower readership levels in Texas are most likely explained by the fact that *Vox* is a left-wing publication and Texas is a relatively conservative state.

In his response to Vox Media's motion to dismiss, Mr. Butowsky discussed *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016), wherein a Mexican broadcasting company and one of its anchors acknowledged that allegedly defamatory statements were broadcast into Texas, but they argued that the plaintiff must satisfy the "subject-and-sources-test" in order to prove minimum jurisdictional contacts. Plaintiff's Response 5-7.[1] The *TV Azteca* plaintiff lived in Texas at the time she filed suit, but the story concerned a criminal case against her when she previously lived in Mexico, ergo the defendants argued that the focus of the story was in Mexico. The *TV Azteca* defendants, like Vox Media, argued that jurisdiction was lacking because the story was not focused on Texas.

> Citing the Fifth Circuit's decision in *Clemens*, [Plaintiff] Trevino asserts that the subject-and-sources test is only one method of proving that a defamation defendant targeted the forum state, and it need not be met when evidence otherwise establishes that the defendant's statement was "aimed at or directed to" the state. *See Clemens*, 615 F.3d at 380. Petitioners disagree, arguing that "whether the forum state is the focal point of the story is a crucial criterion in determining whether the story is directed at the forum state." We agree with Trevino.
>
> When the Fifth Circuit first articulated the subject-and-sources test in *Revell*, it emphasized "[a]t the outset" that *Calder*'s " 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." 317 F.3d at 473 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th

---

[1] The Plaintiff knows that a state court decision is not binding on this Court. He cited *TV Azteca* in Plaintiff's Response merely as persuasive authority.

> Cir.2001)). Adhering to *Revell* in *Fielding*, the court explained that a plaintiff can establish specific jurisdiction over a defamation defendant by showing either "(1) a publication with adequate circulation in the state" under *Keeton*, or "(2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there" under *Calder*. *Fielding*, 415 F.3d at 425. And then in *Clemens*, the court read *Calder* to require the subject-and-sources test, 615 F.3d at 380, but it did not hold that *Calder* established the only test for determining personal jurisdiction over a defamation defendant. *See id.* at 384 (Haynes, J., dissenting) ("[T]he *Calder* effects test is simply an additional, but not exclusive, vehicle for establishing personal jurisdiction over a nonresident defendant who may never have been to the forum state.").
>
> Even if the Fifth Circuit recognized the subject-and-sources test as the exclusive method for establishing personal jurisdiction over a defamation defendant, we would disagree. The test determines whether the forum state was "the focal point ... of the story," which in turn determines whether the defendant purposefully availed itself of the benefits of conducting activities in the state sufficient to establish minimum contacts. *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482. In *Keeton*, the plaintiff had no relevant contacts with New Hampshire, and the offending articles did not address events related to or drawn from sources within that state. 465 U.S. at 772–73, 104 S.Ct. 1473. Nevertheless, the Court found minimum contacts because the defendant had "continuously and deliberately exploited the New Hampshire market." *Id.* at 781, 104 S.Ct. 1473. We must likewise determine whether Petitioners had "an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026).

*TV Azteca*, 490 S.W.3d at 48-49. It is worth noting that the Texas Supreme Court found specific jurisdiction over both the broadcaster and the anchor. *Id*. at 56-57. Much like *TV Azteca* and *Hustler Magazine*, Vox Media has "continuously and deliberately exploited the [forum state] market," therefore the company should not complain about being hauled before a Texas court.

**2. The Court has specific jurisdiction over Anderson Cooper.**

All of the legal arguments above apply with equal force to Mr. Cooper. Contrary to the Report, Mr. Cooper is not merely a reporter or a producer like the other individual

CNN Defendants, nor is he just a managerial employee of CNN. Mr. Cooper is more akin to a sub-contractor operating his own national broadcasting business under the auspices of CNN:

> The Court has jurisdiction over Mr. Cooper because, contrary to his June 28, 2019 affidavit (Doc. No. 50-2), he does transact business in Texas. From his website http://www.ac2live.com, he sold tickets for a live performance in Sugarland, Texas with Andy Cohen. According to the *Houston Chronicle*, "Anderson Cooper and Andy Cohen just can't stay away from each other. And the Houston area." Mr. Cooper has sold tickets to at least one other performance in Texas, and he is not merely the anchor of a cable program. The program bears his name, and he has a vested financial interest in expanding his program into all states, including Texas. Mr. Cooper's program has thousands of viewers in Texas, and he seeks to expand his audience there in order to sell more advertising there.

TAC ¶15. In other words, Mr. Cooper is operating a business, and that business broadcasts in Texas and deliberately exploits the Texas market, not unlike *TV Azteca* or CNN itself. Mr. Cooper had an opportunity to dispute the foregoing allegations, but he did not. *See* Supplemental Declaration of Anderson Cooper in support of the CNN Individual Defendants' Motion to Dismiss (Doc. No. 220-3).

The Report relies primarily on *Norman v. B.E.T. Television*, Case No. 2:16-CV-113 RLM, 2016 WL 3881184 (N.D. Ind. July 18, 2016), but that reliance is badly misplaced. LaSandra Norman was a *pro se* litigant who filed a 42 U.S.C. §1983 form complaint. *Id*. at *1. "Ms. Norman appears to be asserting claims of 'criminal behaviors' by the defendants, claims for race and gender discrimination and/or sexual harassment, and a claim for violation of federal copyright laws. Ms. Norman seeks $2 billion for her pain, suffering, and medical bills." *Id*. The Report seems to consider the case analogous because "Wendy Williams," one of the defendants, hosted a nationally-syndicated

television show bearing her stage name. It is not clear what, if anything, Ms. Norman alleged in her complaint to establish personal jurisdiction over Ms. Williams or anyone else. Ms. Williams, however, testified in a declaration that "she has never directed, targeted, or focused any marketing activities or advertisements to Indiana in particular." *Id*. at *3. That differs significantly from this case, where the TAC alleges that Mr. Cooper *did* seek to expand his business in Texas. TAC ¶15. Insofar as the jurisdictional allegations are undisputed, Mr. Cooper should be subject to jurisdiction in Texas just like Vox Media, *The New York Times*, CNN, or any other media business that targets Texas.

## Conclusion

The Report's recommendations with respect to Vox Media and Mr. Cooper should be rejected, and their motions to dismiss on jurisdictional grounds should be denied.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

- 10 -

## CERTIFICATE OF SERVICE

      I certify that a copy of this document was filed electronically with the Court's ECF system on July 30, 2020, which should result in automatic notification to all counsel of record.

                                **/s/ Ty Clevenger**
                                Ty Clevenger